UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SNYDER'S-LANCE, INC. and PRINCETON VANGUARD, LLC, | ) ) ) |
| Plaintiffs, | ) No. 3:17-cv-652 ) |
| v. | ) ) **COMPLAINT** |
| FRITO-LAY NORTH AMERICA, INC., | ) ) ) |
| Defendant. | ) |

Plaintiffs Snyder's-Lance, Inc. and its wholly owned subsidiary, Princeton Vanguard, LLC ("Princeton Vanguard") (together, "Snyder's-Lance"), by their undersigned attorneys, Ellis & Winters LLP and Debevoise & Plimpton LLP, for their Complaint against Defendant Frito-Lay North America, Inc. ("Frito-Lay") allege as follows:

**PRELIMINARY STATEMENT**

1. This is a case about the validity of the PRETZEL CRISPS trademark. For more than a decade, PRETZEL CRISPS crackers have been beloved by consumers nationwide, who have enjoyed more than a billion dollars' worth of PRETZEL CRISPS products. Notwithstanding the popularity of the brand, snack food giant Frito-Lay – which sells products that directly compete with PRETZEL CRISPS crackers – has challenged the validity of the PRETZEL CRISPS mark. In particular, Frito-Lay filed proceedings at the Trademark Trial and Appeal Board ("TTAB") to have the PRETZEL CRISPS trademark declared generic and the PRETZEL CRISPS trademark registration cancelled. In response to Frito-Lay's challenge, a panel of TTAB administrative law judges held that (1) the PRETZEL CRISPS trademark is generic when used in connection with pretzel crackers and (2) the PRETZEL CRISPS trademark

fails to serve as a source identifier to consumers and therefore lacks secondary meaning. Because Snyder's-Lance believes the TTAB panel's administrative decision is wrong as a matter of fact and as a matter of law, Snyder's-Lance brings this action pursuant to 15 U.S.C. § 1071(b) to appeal the TTAB panel's decision and obtain an order affirming the validity of the PRETZEL CRISPS trademark.

2. In 2004, Princeton Vanguard created a brand-new snack food concept: the pretzel cracker. At that time, no other flat pretzel cracker was available on the market. The unique characteristics of PRETZEL CRISPS crackers were the result of a patented technology that created a perfectly thin and crunchy pretzel cracker unlike any other pretzel product or cracker product on the market.

3. Despite the explosion in pretzel cracker products since the introduction of PRETZEL CRISPS crackers, PRETZEL CRISPS crackers are the market leader, enjoying double-digit sales growth almost every year since the brand's launch. Snyder's-Lance has sold hundreds of millions of bags of PRETZEL CRISPS crackers, at a retail value of more than $1.4 billion. The PRETZEL CRISPS brand has been featured in more than $50 million worth of advertising, marketing, and promotional campaigns, including on the radio, in magazines, on websites, at point of purchase displays, and through social media.

4. In fact, the PRETZEL CRISPS brand recently became the number one product in the entire "deli cracker" section in which it principally competes. PRETZEL CRISPS crackers have captured a nearly 30% share of the deli cracker market, and the brand's success has driven growth in the entire deli cracker market. (Deli crackers are a term of art in the industry; the deli category includes such products as bagel chips, pita chips, pretzel crackers, flatbreads, crackers,

2

Case 3:17-cv-00652-KDB-DSC   Document 1   Filed 11/06/17   Page 2 of 20

hummus, guacamole, dips and other products that are typically sold in the deli section of supermarkets and grocery stores.)

5. This success has not gone unnoticed by Snyder's-Lance's competitors. In 2011, several companies – including Frito-Lay – expressed an interest in acquiring the PRETZEL CRISPS brand. At the same time, Frito-Lay was pursuing a campaign to cancel the PRETZEL CRISPS trademark through opposition and cancellation actions before the TTAB, in an effort to make the brand less attractive to the other companies who were considering the acquisition.

6. Ultimately, it was Snyder's-Lance, Inc. – the successor to Snyder's of Hanover and Charlotte-based Lance – who acquired the business in 2012. When Snyder's-Lance, Inc. acquired the PRETZEL CRISPS brand, it joined Snyder's-Lance Inc.'s portfolio of similarly iconic snack foods, including Lance's peanut butter sandwich crackers, Snyder's pretzels, and Stella D'Oro cookies.

7. Notwithstanding the fact that Snyder's-Lance, Inc. was the successful buyer of the PRETZEL CRISPS brand, Frito-Lay has continued its war to cancel the PRETZEL CRISPS trademark. It has done so even though Frito-Lay itself concedes that there is an accepted generic name for this category of goods: "pretzel crackers." Indeed, the market is rife with pretzel cracker products, none of which uses the trademarked term PRETZEL CRISPS to describe its product.

8. Nevertheless, in 2014, the TTAB panel ruled in Frito-Lay's favor, holding the PRETZEL CRISPS trademark generic. Snyder's-Lance appealed that ruling to the U.S. Court of Appeals for the Federal Circuit.

9. The Federal Circuit unanimously reversed in 2015, holding that the TTAB panel "took the type of short-cut analysis we have said is prohibited and ignored evidence that might

3

compel a contrary conclusion." *Princeton Vanguard, LLC v. Frito-Lay North America, Inc.*, 786 F.3d 960, 969 (Fed. Cir. 2015). The Circuit held the TTAB panel erred by analyzing the terms "pretzel" and "crisps" individually. Instead, the Circuit held, "Where, as here, the record is replete with evidence of the public's perception of the term PRETZEL CRISPS as a whole, it is unclear why the Board would resort to analyzing the terms individually or why it would believe doing so would aid its analysis." *Id*.

10. On remand, the same TTAB panel, in 2017, repeated its holding that PRETZEL CRISPS is generic. In so doing, the TTAB panel once again failed to consider all the evidence of the public's perception of the PRETZEL CRISPS brand, despite clear direction from the Federal Circuit to do so. The TTAB panel's 2017 opinion also went a step further, finding, in the alternative, that the PRETZEL CRISPS mark lacks secondary meaning. Accordingly, the TTAB panel ordered the PRETZEL CRISPS trademark cancelled.

11. Through this action, Snyder's-Lance appeals to this Court for a fair and full consideration of a record "replete with evidence of the public's perception of the term PRETZEL CRISPS." *Id*. Snyder's-Lance also seeks to expand that record beyond 2012 (when fact discovery closed in the underlying TTAB action) to include five additional years' worth of evidence of the public's perception of the PRETZEL CRISPS trademark.

12. Snyder's-Lance respectfully submits that a fulsome review of the expanded record – including evidence of the continuing success of the PRETZEL CRISPS brand since 2012 – allows for only one conclusion: that consumers understand PRETZEL CRISPS is a brand name that designates a particular source of pretzel cracker snacks and is, therefore, a trademark entitled to registration.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this matter pursuant to Section 21(b) of the U.S. Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. § 1071(b), which permits a party to challenge a final decision of the TTAB by filing a Federal District Court action. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

14. Personal jurisdiction over Frito-Lay is proper under N.C. Gen. Stat. § 1-75.4. On information and belief, Frito-Lay regularly has solicited business in the State of North Carolina and in this District, has transacted and done business in North Carolina and in this District, and derives substantial revenue from interstate commerce. In particular, without limitation and upon information and belief, Frito-Lay has promoted its snack food products within North Carolina, has sold its snack food products within North Carolina, and maintains production and distribution centers and/or offices within North Carolina.

15. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Frito-Lay is subject to personal jurisdiction in this District. In particular, on information and belief, Frito-Lay regularly promotes and sells its snack food products in this District and its parent company is incorporated in the State of North Carolina. In addition, this case concerns the ownership of Snyder's-Lance's PRETZEL CRISPS trademark, and given that Snyder's-Lance has its principal place of business in this District, a substantial part of the property that is the subject of this suit is located in this District.

## THE PARTIES

16. Snyder's-Lance, Inc. is a corporation organized under the laws of the State of North Carolina with its principal place of business in this District at 13515 Ballantyne Corporate Place, Charlotte, NC 28277. Snyder's-Lance, Inc. is a national snack food manufacturer with a history of providing high-quality snacks dating back over 100 years. Princeton Vanguard, a

wholly owned subsidiary of Snyder's-Lance, Inc., is a corporation organized under the laws of the State of Delaware with its principal place of business in this District at 13515 Ballantyne Corporate Place, Charlotte, NC 28277.

17. Upon information and belief, Frito-Lay North America, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 7701 Legacy Drive, Plano, TX 75024.

18. Upon information and belief, Frito-Lay is one of the largest snack food manufacturers in the world, selling billions of dollars of snack food products globally each year. Frito-Lay sells pretzel products – including pretzel crackers – under its ROLD GOLD brand, and sells premium deli snacks – including pita chips and, for a time, pretzel crackers – under its STACY'S brand, including in this District.

## U.S. PATENT & TRADEMARK OFFICE PROCEEDINGS AND HISTORY

19. In 2004, Princeton Vanguard applied to register the PRETZEL CRISPS trademark with the United States Patent and Trademark Office ("USPTO"). The USPTO examining attorney ("Trademark Examiner") denied registration of the mark on the Principal Register at that time, but allowed registration on the USPTO's Supplemental Register – the secondary register for trademarks that, though descriptive, may still act as a source-identifier for the applied-for goods and services. Registration on the Supplemental Register reflected the Trademark Examiner's conclusion that the PRETZEL CRISPS trademark was *not* generic; otherwise, the Trademark Examiner would not have allowed registration at all.

20. Given the relatively recent introduction of PRETZEL CRISPS crackers, Princeton Vanguard accepted the decision and reserved its position that "the coined term PRETZEL CRISPS is unique and distinctive for a unique new product, pretzel crackers, which are the first

6

of its kind." *See* Response to Office Action, U.S. Trademark Application Serial No. 78/405596, at 3 (filed May 11, 2015).

21. On June 26, 2005, the USPTO granted registration for PRETZEL CRISPS, Registration No. 2,980,303, on the Supplemental Register.

22. Two years later, Princeton Vanguard applied to register a stylized version of its PRETZEL CRISPS mark on the Principal Register, U.S. Trademark Application Serial No. 77/192054 (filed May 9, 2007); two years after that, it applied to register the PRETZEL CRISPS word mark on the Principal Register, U.S. Trademark Application Serial No. 76/700,802 (filed Dec. 11, 2009).

23. Prior to approving these two new applications, the Trademark Examiner sought additional evidence regarding whether PRETZEL CRISPS had gained secondary meaning (i.e., identified a single source of pretzel crackers). Princeton Vanguard submitted over 200 pages of evidence, including a declaration from Warren Wilson, the co-inventor of PRETZEL CRISPS crackers; copies of advertisements of PRETZEL CRISPS crackers in widely circulated magazines and snack food industry publications; evidence of significant unsolicited discussions of the PRETZEL CRISPS brand on television and the Internet; a brand awareness survey that showed that 95% of respondents associated unlabeled photographs of PRETZEL CRISPS crackers with the PRETZEL CRISPS brand; and details of the significant advertising expenditures for the PRETZEL CRISPS brand.

24. The Trademark Examiner – who reviews such evidence and makes decisions on these issues day in and day out – found that the evidence was sufficient to establish that the PRETZEL CRISPS marks had acquired secondary meaning and merited registration on the Principal Register.

25. On May 15, 2009 and July 2, 2010, Frito-Lay filed oppositions to Princeton Vanguard's trademark applications (Proceeding Nos. 91190246 and 91195552). On September 10, 2010, Frito-Lay filed a cancellation petition against Princeton Vanguard's trademark registration (Proceeding No. 92053001). The TTAB consolidated these actions on December 10, 2010.

26. In the consolidated action, Frito-Lay principally argued that the trademark PRETZEL CRISPS was generic – that is, that it identifies the category of goods (i.e., pretzel crackers) rather than a brand or single source of pretzel crackers. Frito-Lay also argued that the mark lacked secondary meaning.

27. On February 28, 2014, the TTAB panel issued its ruling finding PRETZEL CRISPS generic. (The decision did not address Frito-Lay's alternative argument that the mark lacked secondary meaning.) Rather than weigh the substantial record evidence of how consumers perceive the PRETZEL CRISPS trademark as a whole, the TTAB panel erroneously deconstructed the term PRETZEL CRISPS into its constituent parts – "pretzel" and "crisps" – and concluded that, because it believed each was generic, the term PRETZEL CRISPS must be generic. *See Princeton Vanguard*, 786 F.3d at 969 ("[T]he Board took the type of short-cut analysis that we have said is prohibited and ignored evidence that might compel a contrary conclusion.").

28. Notably, both Frito-Lay and the TTAB panel agreed that "pretzel crackers" generically and appropriately describes the product category. This case is, therefore, quite different than the typical genericness challenge where permitting registration of an allegedly generic mark may, practically speaking, foreclose competition. For example, forcing others to sell "vacuum-sealed bottles" rather than thermoses, or "acetyl salicylic acid tablets" rather than

aspirin would seriously hamstring legitimate competition. Because "pretzel crackers" is both an easy and accepted generic reference for this category, there is no such anti-competitive concern here. For these reasons, the TTAB panel did not find that competition will suffer if others cannot use the PRETZEL CRISPS mark; indeed, it could not have, given the conceded availability of a suitable alternative term.

29. Snyder's-Lance timely appealed and the Federal Circuit unanimously reversed on May 15, 2015. *See id.* at 962. In blunt language, the Circuit took the TTAB panel to task for "short-cut[ting]" its consideration of the factual record by selecting just "a few pieces" of relevant evidence and disregarding others "without explanation." *Id.* at 970.

30. The Circuit further criticized the TTAB panel for its flawed analysis that overlooked the record evidence and instead simply concluded that, because the constituent terms "pretzel" and "crisps" are generic, so, too, was PRETZEL CRISPS: "Where [] the record is ***replete with evidence of the public's perception of the term PRETZEL CRISPS as a whole***, it is unclear why the board would resort to analyzing the terms individually or why it would believe doing so would aid its analysis." *Id.* at 969 (emphasis added).

31. The Court of Appeals then instructed the TTAB panel to not only analyze PRETZEL CRISPS as an integrated mark, but also to "***examin[e] the record as a whole***, taking into account both the evidence that justifies ***and detracts from [the] agency's opinion***." *Id.* at 970 (emphasis added). "Though the Board is not required to discuss every piece of evidence, it cannot focus primarily on evidence of the word 'crisps' in isolation, select a few pieces of evidence involving the combined term 'pretzel crisps' and conclude that the trademark is generic." *Id.*

32. On remand, the TTAB panel did the same thing. Notwithstanding the Circuit's instructions, the panel began by "analyzing the constituent terms 'PRETZEL' and 'CRISPS' . . . consider[ing] the meaning of each to the consuming public as indicated by dictionary definitions and other competent sources." *Frito-Lay North America, Inc. v. Princeton Vanguard, LLC*, Opposition No. 91195552; Cancellation No. 92053001, 2017 WL 3948367, at *4 (T.T.A.B. Sept. 6, 2017). Similarly, despite the Federal Circuit's direction, the TTAB panel repeated the exercise of cherry-picking evidence to support its belief that PRETZEL CRISPS is generic rather than "taking into account both the evidence that justifies and detracts from" its position. *Princeton Vanguard*, 786 F.3d at 970.

33. Perhaps nothing demonstrates the TTAB panel's failure to consider the record as a whole, including evidence that supports and detracts from a finding of genericness, better than the panel's treatment of the extensive media analysis Princeton Vanguard submitted. That analysis reviewed 260 articles and concluded that 83 percent of them clearly used PRETZEL CRISPS as a brand. Just 36 articles – 14 percent – used the term in a potentially generic way. The TTAB panel's opinion quoted from 30 of the 36 negative articles in concluding that "consumers reading these articles may see [Princeton Vanguard] as a potential source of 'pretzel crisps,' or 'pretzel crackers,' but would not view the applied-for mark 'PRETZEL CRISPS' as a trademark identifying the source of the goods." *Frito-Lay*, 2017 WL 3948367, at *10. The opinion failed to quote a single one of the 216 articles that supported Princeton Vanguard's position, much less explain why a few dozen negative articles trumped the overwhelming evidence that the media recognizes PRETZEL CRISPS as a brand, as reflected in more than 80 percent of the submitted articles.

34. Moreover, the TTAB panel disregarded multiple, unrebutted affidavits from those in the industry who testified that the industry and consumers understand PRETZEL CRISPS as a brand name. *Id.* at *12–13.

35. As to Princeton Vanguard's survey showing that a majority of consumers with an opinion (60 percent) recognized PRETZEL CRISPS as a brand, the TTAB panel held that surveys are admissible only where an arbitrary or fanciful brand name (such as thermos or aspirin) is alleged to have become generic. That ruling is difficult to square with the Federal Circuit's direction that the TTAB panel "***must*** give appropriate consideration to the proffered survey evidence." *Princeton Vanguard*, 786 F.3d at 971 (emphasis added).

36. Finally, the TTAB panel rejected Princeton Vanguard's secondary meaning survey, which showed that, of the respondents who had an opinion, 45 percent of them associated the name PRETZEL CRISPS with one company. *Frito-Lay*, 2017 WL 3948367, at *27. In reaching that conclusion, the TTAB panel improperly disregarded substantial precedent that a recognition rate of 30 percent is sufficient to establish secondary meaning. In fact, Frito-Lay's own expert conceded as much.

37. In short, the most recent TTAB panel opinion engages in the same flawed analysis as the first opinion, deconstructing PRETZEL CRISPS into its constituent parts while ignoring a record replete with evidence (much of it unrebutted) of the public's perception that PRETZEL CRISPS is a brand.

38. Today – with five additional years of sales, advertising expenditures, and social media growth, and the ascension of PRETZEL CRISPS to the number one brand in the deli cracker section – the TTAB panel's opinion is even more untenable.

11

## SUCCESS OF THE PRETZEL CRISPS BRAND

39. With its launch in 2004, the PRETZEL CRISPS product created a brand-new, innovative snack food concept – the pretzel cracker. At that time, no other flat pretzel crackers were available on the market. PRETZEL CRISPS crackers thus single-handedly created and drove the growth of the entire pretzel cracker category.

40. PRETZEL CRISPS crackers are the result of a patented technology that creates a perfectly thin and crunchy – yet also sturdy – pretzel cracker unlike any other cracker or pretzel product on the market.

41. PRETZEL CRISPS crackers are available in mass market retail stores, warehouse clubs, discount stores, supermarkets, delis, convenience stores, bodegas, mom and pop grocery stores, drugstores, gas stations, schools, office cafeterias, vending machines, and online. They are sold primarily in the deli section of supermarkets and grocery stores and compete there with other premium crackers, such as STACY'S pita chips, BAGEL CRISPS crackers, and CRUNCHMASTER crackers. Notably, even to this day, Frito-Lay never has challenged BAGEL CRISPS, Reg. No. 1,306,252, which is registered on the Principal Register.

42. Prior to the introduction of PRETZEL CRISPS crackers, the term PRETZEL CRISPS was very rarely used by the general public. A LexisNexis search shows only three uses of the term "pretzel crisps" between 1994 and 2004. That is because Princeton Vanguard devised PRETZEL CRISPS as an original brand name for its new snack food creation.

43. Moreover, the term "pretzel crisps" appears in no dictionary or encyclopedia other than Wikipedia, which correctly identifies it as a brand name.

I.  **The PRETZEL CRISPS Brand Has Enjoyed Tremendous Growth And Sales**

44. The PRETZEL CRISPS brand has experienced extraordinary success and popularity since its introduction in 2004. Indeed, it was the PRETZEL CRISPS brand's rapid

12

growth and strong brand value that prompted interest from several large snack food companies – including Frito-Lay – who sought to acquire the brand.

45. In the approximately eight years from launch until it was acquired by Snyder's-Lance in 2012, the PRETZEL CRISPS brand enjoyed double-digit growth nearly every year and significantly increased its annual sales volume. Since its acquisition, the PRETZEL CRISPS brand has grown almost 40 percent and has been among the top ten cracker products in the United States. Retail sales since 2004 have topped $1.4 billion dollars.

46. In 2014, according to Nielsen's Food Survey, PRETZEL CRISPS Original flavored crackers were the highest selling individual pretzel product in America.

47. In 2017, PRETZEL CRISPS crackers became the number one deli cracker, beating its main competitor, Frito-Lay's STACY'S pita chips. The PRETZEL CRISPS brand continues to hold that top spot today, with a market share of almost 30 percent of deli cracker sales nationwide.

48. These high sales and market share numbers are not only commercially impressive, but also legally significant, as they are strong indicators that the market recognizes the PRETZEL CRISPS mark as a brand.

II. **The PRETZEL CRISPS Brand Is Featured Extensively In Advertising And Promotional Campaigns**

49. Through 2017, Snyder's-Lance spent more than $50 million on advertising, marketing, and promoting the PRETZEL CRISPS brand through traditional channels like print and billboard; online channels like social media; and interactive efforts, including field marketing, in-store displays and demonstrations, sampling events, and contests.

50. In 2016, Snyder's-Lance launched a nationwide "Snack Genius" advertising campaign; secured 244 million consumer impressions from its print and online advertising of PRETZEL CRISPS; and reached 71 million people through social media campaigns.

51. This year (to date), the PRETZEL CRISPS website has already had nearly half a million views.

52. The PRETZEL CRISPS brand also enjoys a strong following on social media. As of November 2017, PRETZEL CRISPS had over 440,000 followers on Facebook, 41,000 on Twitter, and 23,500 on Instagram. By comparison, STACY'S had 350,000 followers on Facebook, 752 on Twitter, and 1,727 on Instagram.

53. These efforts are complemented by field marketing teams that travel the country interacting directly with consumers to promote the PRETZEL CRISPS brand. In 2017 alone, those teams distributed some 600,000 product samples at events that prominently featured the PRETZEL CRISPS trademark.

54. Snyder's-Lance also leverages in-store displays, trade publications, and dozens of trade shows to build the PRETZEL CRISPS brand.

55. As with the sales figures, these facts are not only commercially important, but also legally significant; they demonstrate that the PRETZEL CRISPS trademark is seen by millions of consumers, further establishing the mark as a brand, not a category descriptor.

**BRAND RECOGNITION OF PRETZEL CRISPS**

56. The substantial efforts described above have resulted in the media, the snack food industry, and consumers all understanding PRETZEL CRISPS as a brand name rather than a generic category description.

## I. The Media Recognizes PRETZEL CRISPS As A Brand

57. For more than a decade, PRETZEL CRISPS crackers have garnered unsolicited attention from magazines, television shows, radio programs, Internet websites, and blogs.

58. High-profile publications such as *The New York Times*, *Chicago Tribune*, *New York Daily News*, *The Philadelphia Inquirer*, *Philadelphia Magazine*, *Women's Health*, *SHAPE*, and *OK!*, all have written about PRETZEL CRISPS crackers.

59. Print and online publications consistently use the term PRETZEL CRISPS to refer to Snyder's-Lance's brand of pretzel crackers. A search of the LexisNexis news database shows that, in the past five years (from September 2012 to September 2017), there have been over 950 references to the term "Pretzel Crisps" in news reports. Of those articles, 878 (92%) used the term as a trademark rather than generically.

60. Google searches conducted in October 2017 also showed that the first 100 results for the term "pretzel crisps" clearly referenced Snyder's-Lance's trademark.

61. PRETZEL CRISPS crackers also have been highlighted on numerous television shows over the last ten years, including on the *Rachael Ray Show*, *NBC's Today Show*, *The Nate Berkus Show*, *CBS Early Show*, *Good Morning America*, CNBC's *Mike On the Money*, *Unwrapped*, *E! News*, and *How I Met Your Mother*.

62. Unsolicited media references to the PRETZEL CRISPS brand are strong evidence that the media (and therefore the general public) knows that PRETZEL CRISPS is a brand.

## II. Consumers Overwhelmingly Recognize PRETZEL CRISPS As A Brand

63. As described above, the evidence before the TTAB panel included two consumer surveys, both of which confirmed that consumers view PRETZEL CRISPS as a brand. Dr. Deborah Jay conducted a genericism survey that showed 60 percent of consumers with an opinion understood PRETZEL CRISPS as a brand name. George Mantis conducted a secondary

15

meaning survey, which established that 45 percent of respondents who had an opinion believed PRETZEL CRISPS came from one company. Those survey results are strong evidence, under established precedent, that PRETZEL CRISPS is a brand name.

64. That survey evidence is consistent with consumers' online posts and reviews that clearly reference PRETZEL CRISPS as a brand of pretzel crackers. In those online and social media posts and comments, consumers overwhelmingly use PRETZEL CRISPS as a brand, whereas they use terms like "pretzel crackers," "pretzel chips," and "pretzel thins" to refer to the category.

### III. The Snack Food Industry Recognizes PRETZEL CRISPS As A Brand

65. PRETZEL CRISPS crackers have also been the subject of articles in leading trade publications such as *Baking & Snack*, *Convenience Store News*, *Deli Business*, *Fancy Food & Culinary Products*, *Food Business News*, *Prepared Foods*, *Progressive Grocer*, *Snack Food & Wholesale Bakery*, *Stagnito's New Products Magazine*, and *Today's Grocer*.

66. Snack food distributors and retailers use the PRETZEL CRISPS mark to refer to Snyder's-Lance's brand of pretzel crackers, not to pretzel crackers generically. In the underlying TTAB action, Princeton Vanguard submitted declarations from four independent distributors who testified that the term PRETZEL CRISPS is used by the industry exclusively to refer to the PRETZEL CRISPS brand of pretzel crackers, and that snack food distributors, brokers, and wholesalers all understand PRETZEL CRISPS to be a brand name. This evidence was uncontroverted – Frito-Lay did not cross-examine these witnesses and did not submit any evidence to the contrary.

67. Competitors also recognize PRETZEL CRISPS as a brand name. Today, the pretzel cracker market includes, among others: (1) Gratify pretzel crackers; (2) Weightwatchers Mini Dijon pretzel thins; (3) Town House pretzel thins; (4) Pepperidge Farm Baked Naturals

16

pretzel thins; (5) Town House pretzel flip sides thins; (6) Pepperidge Farm pretzel Gold Fish Snack Cracker; (7) HEB pretzel crackers; (8) Deutsche Küche pretzel crackers; (9) Dream Pretzels All Natural Pressels pretzel chips; (10) Laurel Hill oven baked pretzel chips; and (11) Glutino gluten-free pretzel chips. ***Not one*** of these brands uses the name PRETZEL CRISPS to describe or identify their products.

68. Frito-Lay itself has introduced several pretzel cracker products, none of which used the PRETZEL CRISPS trademark, including: (1) ROLD GOLD Pretzel Thins; (2) ROLD GOLD Pretzel Waves; (3) STACY'S Pretzel Thins; and (4) ROLD GOLD Thin Crisps, which on information and belief was recently introduced. Frito-Lay also markets STACY'S Snack Mix, which contains pretzel crackers in the mix. As with the rest of the market, none of Frito-Lay's competing products uses PRETZEL CRISPS as a name or product descriptor.

69. When, in 2010, a competing pretzel cracker product, RITZ MUNCHABLES, started using the PRETZEL CRISPS mark, Princeton Vanguard immediately challenged the use; Kraft immediately agreed to cease use of the mark and subsequently adopted the terms "pretzel thins" and "pretzel rounds" to describe its products, thereby acknowledging Princeton Vanguard's rights in the PRETZEL CRISPS mark.

70. That none of the more than a dozen pretzel cracker products uses the term PRETZEL CRISPS is key evidence that the trademark is not generic – evidence not mentioned, much less analyzed, by the TTAB panel in its September 6, 2017 decision.

## COUNT ONE

### Appeal From Decision Of The Trademark Trial And Appeal Board Pursuant To 15 U.S.C. § 1071(b))

71. Snyder's-Lance repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

17

72. Snyder's-Lance appeals the erroneous September 6, 2017 decision of the Trademark Trial and Appeal Board in the matter of *Frito-Lay North America, Inc. v. Princeton Vanguard, LLC*, Opposition No. 91195552 and Cancellation No. 92053001.

73. The September 6, 2017 TTAB decision is a final decision subject to review under Section 21 of the Lanham Act, 15 U.S.C. § 1071.

74. The TTAB panel's conclusions of law are incorrect and its findings of fact in its September 6, 2017 decision are not supported by substantial evidence to warrant refusal and/or cancellation of registration.

75. Snyder's-Lance has taken no appeal of the September 6, 2017 decision to the United States Court of Appeals for the Federal Circuit.

76. Snyder's-Lance seeks a *de novo* review of the TTAB's September 6, 2017 decision by civil action under Section 21(b) of the Lanham Act, 15 U.S.C. § 1071(b).

77. Snyder's-Lance seeks an order reversing the TTAB's September 6, 2017 decision on the basis that the primary significance of the term PRETZEL CRISPS as used in connection with pretzel crackers is as a trademark, that the term PRETZEL CRISPS is not generic, and that the term PRETZEL CRISPS has gained secondary meaning pursuant to Section 2(e)-(f) of the Lanham Act, 15 U.S.C. § 1052(e)-(f). Snyder's-Lance further seeks an order requiring that the USPTO not cancel Registration No. 2,980,303 and that it register U.S. Trademark Application Serial No. 76/700,802 on the USPTO's Principal Register.

## COUNT TWO

### Request For Declaratory Judgment
### Pursuant To 28 U.S.C. §§ 2201 And 2202

78. Snyder's-Lance repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

79. Snyder's-Lance's Supplemental Registration No. 2,980,303 and U.S. Trademark Application Serial No. 76/700,802 for the mark PRETZEL CRISPS for use in connection with pretzel crackers have been challenged by Frito-Lay on the grounds that the PRETZEL CRISPS mark is generic or alternatively, is merely descriptive and has not gained secondary meaning.

80. A such, there exists an actual controversy among the parties as to the registrability of the trademark PRETZEL CRISPS, with respect to which Snyder's-Lance requests a declaratory judgment pursuant to 28 U.S.C. § 2201.

81. Snyder's-Lance seeks an order declaring that the mark PRETZEL CRISPS, as used in connection with pretzel crackers, is not generic, has acquired secondary meaning, and is registerable as a trademark with the USPTO.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Snyder's-Lance respectfully prays that this Court enter judgment:

A. Reversing the September 6, 2017 decision of the Trademark Trial and Appeal Board in the matter of *Frito-Lay North America, Inc. v. Princeton Vanguard, LLC*, Opposition No. 91195552 and Cancellation No. 92053001 referenced herein, pursuant to 15 U.S.C. § 1071(b);

B. Ordering that the mark PRETZEL CRISPS, as used in connection with pretzel crackers, is not generic, has acquired secondary meaning, and is registerable as a trademark with the USPTO;

C. Ordering the United States Patent and Trademark Office to register Serial No. 76/700,802 on the Principal Register;

D. Ordering the United States Patent and Trademark Office not to cancel Registration No. 2,980,303; and

E. Awarding Snyder's-Lance such other relief as this Court may deem just and proper.

This the 6th Day of November, 2017.

        ELLIS & WINTERS LLP

        /s/Jonathan D. Sasser
        Jonathan D. Sasser
        N.C. State Bar No. 10028
        Alexander M. Pearce
        N.C. State Bar No. 37208
        Post Office Box 33550
        Raleigh, North Carolina 27636
        Telephone: (919) 865-7000
        jon.sasser@elliswinters.com
        alex.pearce@elliswinters.com

        DEBEVOISE & PLIMPTON LLP
        David H. Bernstein*
        James J. Pastore*
        Neelima Teerdhala*
        Michael C. McGregor*
        919 Third Avenue
        New York, New York 10022
        Telephone: (212) 909-6000
        dhbernstein@debevoise.com
        jjpastore@debevoise.com
        nteerdhala@debevoise.com
        mcmcgregor@debevoise.com

        *Counsel for Plaintiffs Snyder's-Lance, Inc. and Princeton Vanguard, LLC*

        *Applications for pro hac vice forthcoming