**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISON
Civil Action No.: 3:17-CV-00652**

SNYDER'S-LANCE, INC. and PRINCETON
VANGUARD, LLC,

                   Plaintiffs,

   v.

FRITO-LAY NORTH AMERICA, INC.,

                 Defendant.

**FRITO-LAY NORTH AMERICA, INC.'S
MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT**

      Plaintiffs Snyder's-Lance, Inc. ("Snyder's-Lance") and Princeton Vanguard, LLC ("Princeton") appeal a decision of the Trademark Trial and Appeal Board ("TTAB") of the U.S. Patent and Trademark Office ("USPTO") finding that its chosen product name—"PRETZEL CRISPS"—is generic. As explained in this brief, summary judgment is clearly warranted in this particular case for several reasons, including the following:

1. This case is an appeal of an agency decision subject to deferential review;

2. This appeal comes to this Court with a full evidentiary record, having been litigated for over nine years culminating in a trial and two final decisions on the merits by the TTAB;

3. In view of this record, additional discovery and evidence is not necessary—or even appropriate—as it is not relevant to the genericness issue in this Motion (or case);

4. The extensive evidence in this case confirms Plaintiffs' product name is generic; and

5. Fourth Circuit case law shows that summary judgment is appropriate on questions of genericness, and that consumer surveys are irrelevant to the genericness issue in this case.

This dispute has already endured extensive discovery, several rounds of briefing, and a previous appeal and remand. But in all that time and effort, the facts underlying the decision challenged by

Plaintiffs are inescapable and cannot be changed by any amount of additional discovery or evidence. Frito-Lay requests summary judgment affirming the TTAB's decision that Plaintiffs' chosen product name is generic.

## PROCEDURAL HISTORY

Plaintiffs seek federal trademark protection for the term PRETZEL CRISPS to refer to their products, which they identify as "pretzel crackers." Twice, the TTAB has denied that protection, finding based on mountains of evidence that "pretzel crisps" is a generic term for pretzel crackers and thus incapable of functioning as a trademark. With this action, Plaintiffs attempt yet another bite at the apple, hoping that review in this Court might result in a different outcome. But regardless of the forum or the standard of review they pursue, Plaintiffs cannot escape the conclusion that "pretzel crisps" is generic for pretzel crackers.

When Princeton first applied for federal registration of PRETZEL CRISPS as a source identifier for "pretzels," it was refused registration because "the proposed mark merely describes the goods." Declaration of Diana Rausa ("Rausa Decl.") ¶ 3, **Ex. 1**, at 1.[1] In response, Princeton amended its description of goods from "pretzels" to "pretzel crackers," disclaimed exclusive rights in the term "pretzel," and accepted a registration instead on the Supplemental Register of the USPTO (the "Supplemental Registration").[2] Rausa Decl. ¶ 4, **Ex. 2**, at 1–3. Princeton later filed

---

[1] All evidence cited in this memorandum was part of the evidentiary record before the TTAB, including the relevant files for the trademark applications at issue. *See* 37 C.F.R. 2.122. On August 7, 2018, pursuant to 15 U.S.C. § 1071(b)(3), this Court ordered that record transferred from the TTAB and admitted in this case. See Doc. 17. For purposes of this Motion, the cited exhibits were retrieved from the USPTO's Trademark Status and Document Retrieval Service ("TSDR") or from the TTAB Inquiry System ("TTABVUE"), which are publicly available at http://tsdr.uspto.gov/ and http://ttabvue.uspto.gov/ttabvue/, respectively.

[2] Supplemental Registration No. 2,980,303, issued on July 26, 2005. The Supplemental Register is available for certain marks (*e.g.*, merely descriptive marks) that do not meet the requirements for registration on the Principal Register. *See* 15 U.S.C. § 1091. Applications for the Supplemental Register are not subject to opposition. *See id.* Trademarks on the Supplemental Register also do not enjoy the same benefits of those registered on the Principal Register, such as presumptions of

another application (the "Application") to register PRETZEL CRISPS (also disclaiming "PRETZEL") on the USPTO's Principal Register, claiming the mark has acquired distinctiveness under 15 U.S.C. § 1052(f).[3] Rausa Decl. ¶ 5, **Ex. 3**, at 5–6, 8, 11.

Frito-Lay opposed Princeton's Application once it was published on the grounds that the term "pretzel crisps" is generic and, alternatively, is highly descriptive and has not acquired and cannot acquire distinctiveness.[4] Frito-Lay also petitioned to cancel Princeton's Supplemental Registration on genericness grounds,[5] and the proceedings were consolidated.[6] On October 9, 2012, the parties stipulated to trial on the consolidated proceedings based on the evidence submitted with the parties' previously filed motions for summary judgment and supplemental expert declarations. Rausa Decl. ¶ 8, **Ex. 6** (stipulation); Rausa Decl. ¶ 9, **Ex. 7** (TTAB order).

On February 28, 2014, in a precedential decision, the TTAB sustained Frito-Lay's opposition and cancellation actions, finding that PRETZEL CRISPS is generic for pretzel crackers. *Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, 109 U.S.P.Q.2d 1949, 1960 (TTAB 2014). Princeton appealed to the U.S. Court of Appeals for the Federal Circuit, which vacated and remanded the TTAB's decision after concluding the TTAB had applied the wrong legal standard. *See Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 964–65 (Fed. Cir. 2015). The Federal Circuit directed the TTAB on remand to "consider evidence of the relevant public's understanding of the term PRETZEL CRISPS in its entirety." *Id.* at 969.

On remand, following a renewed round of briefing, the TTAB followed the Federal

---

validity, ownership, or exclusive right to use the mark. *See id.* § 1057.
[3] Application Serial No. 76/700,802, filed December 11, 2009, published May 4, 2010.
[4] Opposition No. 91195552, filed July 2, 2010.
[5] Cancellation No. 92053001, filed September 10, 2010.
[6] Frito-Lay had also opposed another of Princeton's applications (Serial No. 77/192,054), Opposition No. 91190246, filed May 15, 2009. The three proceedings were consolidated, with 91190246 as the parent. Rausa Decl. ¶ 6, **Ex. 4**. Princeton eventually abandoned Ser. No. 77/192,054, at which point Opp. No. 91195552 became the parent case. Rausa Decl. ¶ 7, **Ex. 5**.

Circuit's direction and came to the same conclusion in another precedential decision (the "2017 TTAB Decision"), finding again that PRETZEL CRISPS is generic.[7] *Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, 124 U.S.P.Q.2d 1184, 1206 (TTAB 2017). The TTAB began by noting that the parties do not dispute its findings as to the genus of the product in question ("pretzel crackers") or the relevant consuming public ("ordinary consumers who purchase and eat pretzel crackers") for purposes of the genericness inquiry. *Id.* at 1187 & n.10. The TTAB then considered the evidence. First, following Federal Circuit precedent, the TTAB undertook the "first step" in the analysis, considering the constituent terms ("pretzel" and "crisps") and determining that both are generic, respectively, for "pretzel" and "crackers." *Id.* at 1188 ("'[P]retzel crackers' is a subcategory of the broader product category 'pretzel.'"); *id.* at 1189 ("A 'crisp' may therefore also be a 'cracker.'"); *id.* at 1201 ("We find, based on all the evidence of record, that Plaintiff has proven by a preponderance of the evidence both that there is no question that 'PRETZEL' would be understood by the relevant public primarily as referring to any 'pretzel,' including a pretzel cracker and that 'CRISPS' would be understood by the relevant public primarily as referring to 'crackers,' also including pretzel crackers.").

The TTAB then examined in careful detail the evidence regarding the term as a whole, concluding such evidence further confirmed that "pretzel crisps" is generic. The TTAB found that "the media references, product reviews, and the consumer feedback support a conclusion that the term 'PRETZEL CRISPS' is more likely to be perceived by the relevant public as a name for a type of snack product that may derive from multiple sources, rather than as a brand that emanates from a single source." *Id.* at 1194. The TTAB also found that while Princeton purports to use

---

[7] The TTAB also found, in the alternative, that the term is at best "highly descriptive" and has not acquired distinctiveness as required for registration on the Principal Register. *Frito-Lay*, 124 U.S.P.Q.2d at 1206.

"PRETZEL CRISPS" as a source identifier, "it has also used the term 'pretzel crisps' to identify the type of goods, which has contributed to and otherwise reflects a generic understanding of the term." *Id.* at 1195; *see also id.* at 1204 ("Defendant's own marketing strategies have contributed to the generic understanding of the term 'PRETZEL CRISPS.'").  Regarding consumer surveys proffered in the case, the TTAB held that such surveys are irrelevant to the question of genericness where, as here, the mark in question was not inherently distinctive when adopted. *Id.* at 1196, 1202 (citing several circuits, including the Fourth Circuit's decision in *Hunt Masters, Inc. v. Landry's Seafood Restaurant, Inc.*, 240 F.3d 251, 255 (4th Cir. 2001)).[8]  The TTAB concluded, "the record demonstrates that the primary consumer perception of the term 'PRETZEL CRISPS,' as a whole, is likely to be that of a common name for the identified goods, 'pretzel crackers.'"  *Id.* at 1204.

Plaintiffs then filed this action for review of the decision under 15 U.S.C. § 1071(b).

## FACTUAL BACKGROUND

There is ample evidence in the record that "pretzel crisps," including its component terms, is generic. This evidence consists of use by media, third-parties, and consumers; dictionaries; and statements from Plaintiffs themselves.  When viewing the terms separately or as a whole there is no genuine dispute that "pretzel crisps" is a generic term for Plaintiffs' pretzel-cracker products.

## I.    Generic Use of "Pretzel" and "Crisps"

Along with abundant evidence showing generic use of "pretzel crisps" as a whole (discussed below), the record contains overwhelming evidence that the component terms— "pretzel" and "crisps"—are each generic.  In fact, in 2009, Princeton's Vice President of Marketing, Perry Abbenante, reached out to a marketing firm for help coming up with a creative

---

[8] The TTAB further held that even if the surveys were admissible, it would reach the same conclusion, "find[ing] that—to the extent they can be understood to measure something—the survey results overall would support a finding of genericness." *Id.* at 1204.

name to use as a brand, explaining that "pretzel crisps" consists of "two pretty generic words" and could be vulnerable to a challenge. Rausa Decl. ¶ 10, **Ex. 8**, at 50. Mr. Abbenante was correct, as the evidence in the record amply demonstrates.

### A. "Pretzel" is generic

There is no dispute that "pretzel" is a generic term for Plaintiffs' products. In fact, the USPTO noted that "pretzel" is "the generic name for the goods" when it refused Princeton's original application, which sought to register PRETZEL CRISPS for "pretzels." Rausa Decl. ¶ 3, **Ex. 1**, at 1. In response to the refusal to register PRETZEL CRISPS on the Principal Register, Princeton disclaimed "pretzel," amended its identification of goods to "pretzel crackers," and amended the application instead to the Supplemental Register. Rausa Decl. ¶ 4, **Ex. 2**, at 1–3.

These concessions are also reflected in Princeton's later Application to register PRETZEL CRISPS on the Principal Register. For that Application, Princeton did not even try to register based on inherent distinctiveness; instead, it submitted a contemporaneous amendment to register under Section 2(f) of the Lanham Act (which concedes the mark lacks inherent distinctiveness) and maintained its disclaimer of "pretzel." Rausa Decl. ¶ 5, **Ex. 3**, at 8, 11.

### B. "Crisps" is a generic synonym for crackers

### i. Generic use of "crisps" by Princeton

In addition to determining that "pretzel" is generic, the Examining Attorney evaluating Princeton's original application had this to say about "crisps":

> CRISPS refers to a particular type of food. See attached third party registrations in which CRISPS has been disclaimed for related goods. It is important to note that the registrations are newer than the applicant's Registration No. 2139135 for POPCORN CRISPS. The term has evolved in its treatment on the Principal [R]egister due to evidence regarding its definition. See attached definition *from The American Heritage ® Dictionary of the English Language*, Third Edition copyright © 1992 establishing the common meaning

of CRISPS. The applicant's mark is comprised of highly descriptive and generic terms. The combination of the terms does not create a separate commercial impression sufficient to obviate a refusal under Trademark Act Section 2(e)(1).

Rausa Decl. ¶ 3, **Ex. 1**, at 1. This analysis of the treatment of "crisps" on the Principal Register is correct, as explained in Section I.B.iv. below.

In fact, before this dispute, Princeton identified its own products generically as "crisps" on packaging and advertising. For example, a specimen of use Princeton submitted to the USPTO contains, in a prominent location at the top of the package, the phrase "NEW LOOK, MORE CRISPS." Rausa Decl. ¶ 11, **Ex. 9**, at 1. Additionally, for years Princeton's packaging included required nutrition information for a serving size that consisted of a particular number of "Crisps."

 

*See* Rausa Decl. ¶ 10, **Ex. 8**, at 24 –27. It is telling that during the course of this dispute, Princeton later substituted the synonym "Crackers" for "Crisps" in the Nutrition Facts. *See* Rausa Decl. ¶ 12, **Ex. 10**, at 91–93. This interchangeable use of "Crisps" and "Crackers," in the same location and typeface, reflects Princeton's own understanding that both terms are generic.

Additionally, in response to Frito-Lay's Requests for Admission, Princeton admitted "that 'crisps' can be used as a term for the product that is the subject of the Application." *Id.* at 76 (Response to Request for Admission No. 24).

ii. **Generic use of "crisps" in the snack food industry**

The evidence demonstrates that "crisps" is a term that is used generically to refer to a variety of food items, including snacks made from potatoes, bread, crackers, cheese, bagels, pita, and others, including, of course, pretzels. *See* Rausa Decl. ¶ 13, **Ex. 11**, at 88 (noting the examples

of the then-new products RITZ MUNCHABLES PRETZEL CRISPS and TOWNHOUSE FLATBREAD CRISPS). Information Resources Inc., a third-party database, lists nearly 700 UPC codes for salty snack products in the United States where the product name or descriptor includes "crisp" or "crisps." *Id.* at 98 (CD-ROM in evidence); 2–86 (printout of CD-ROM). Princeton's own document production illustrates the industry practice of products being referred to as "crisps." *See, e.g.*, Rausa Decl. ¶ 10, **Ex. 8**, at 52 ("pretzels have joined chips to become crisps"); *id.* at 53 (referring to Princeton's products as "Pretzel & Ciabatta Crisps" in header and as "ciabatta bread crisps" and "pretzel crisps" in body); *id.* at 55 (referring to "Crackers and Crisps" in the June 2011 issue of *Fancy Food & Culinary Products*)." Consumers and news media commonly use "crisps" alone to refer to Plaintiffs' products or discuss Plaintiffs' products as part of the "crisps" category. *See, e.g.*, *id.* at 28–47. And Frito-Lay has sold a variety of products, including crackers, using "crisps" as part of the generic product descriptor. Rausa Decl. ¶ 13, **Ex. 11**, at 88–89.

A walk through the aisles of any grocery store reveals the ubiquitous third-party use of "crisps" as a generic term for all different kinds of crackers. These include, *e.g.*, 34° Crisps, CHEEZ-IT Crisps, Deerfield Farms Oven Crisps, Doctor Kracker Fire Roasted Crisps, Family Foods Savory Snack Crisps, Genisoy Multigrain Crisps, GOLDFISH Crisps, Cold'N Krackle Cheese & Oregano Crisps, H-E-B Wheat Crisps, Inter-American Products Baked Wheat Crisps, Keebler WHEATABLES Nut Crisps, Kroger Baked Wheat Crisps and Baked Multigrain Crisps, Lesley Stowe Raincoast Crisps, Mishpacha Cracker Crisps, Nabisco CHEESE NIPS Thin Crisps, Pepperidge Farm Baked Naturals Cheese Crisps and Wheat Crisps, Special K Cracker Crisps, Target Baked Cheese Crisps, Topco Associates All Natural Ranch Soy Crisps, Triscuit Thin Crisps, Vineyard Collection Focaccia Crisps, and World Gourmet Garden Veggie Crisps. *See, e.g.*, Rausa Decl. ¶ 12, **Ex. 10**, at 19–67, 81–86, 102–224.

The USDA also uses the terms "chips" and "crisps" interchangeably. Rausa Decl. ¶ 13, **Ex. 11**, at 95. And international groups like the Food & Agriculture Organization of the United Nations and the World Health Organization rely on the generic term "crisps" to connote processes and styles of ready-to-eat snack food items. *Id.* at 96–97.

Finally, like Plaintiffs themselves, many snack makers publish their nutrition facts with respect to a stated number of "crisps." For example, Pepperidge Farm does so for a pretzel product highly similar to Plaintiffs'. Rausa Decl. ¶ 12, **Ex. 10**, at 94. Other manufacturers who provide serving sizes in terms of "crisps" include Frito-Lay, Kitchen Table Bakers, John Wm. Macy's Cheese Crisps, Sensible Portions Multi-grain Crisps, and Genisoy Multigrain Crisps. *Id.* at 95–101; Rausa Decl. ¶ 13, **Ex. 11**, at 88–89, 92–94.

### iii. Dictionary definitions show that "crisps" is generic

Multiple dictionaries define "crisp" as a noun for products such as those made by Plaintiffs. The first definition of the noun "crisps" in *Merriam-Webster's Collegiate Dictionary* is "something crisp or brittle"; the example provided is "rye crisps." Rausa Decl. ¶ 14, **Ex. 12**, at 256–59; *see also id.* at 260 (same definition appearing in the Merriam-Webster Online Dictionary). Other dictionaries define the term similarly. *The American Heritage Collegiate Dictionary* defines the noun "crisp" first as "[s]omething crisp or easily crumbled." *Id.* at 262–65. And the *Collins English Dictionary* defines the noun "crisp" as "something that is crisp." *Id.* at 266–68 (defining the adjective "crisp" as "dry and brittle.").

### iv. USPTO practice recognizes that "crisps" is generic

Third-party registrations incorporating a generic term for the food product in question followed by "crisps," including BAGEL CRISPS and PITA CRISPS (which Frito-Lay submits are also generic), date to the 1980s. However, newer applications following this construction have

9

repeatedly been refused registration. *See id.* at 120–255. This includes Princeton's own applications to register CIABATTA CRISPS for crackers, which were refused as generic in 2008 (Serial No. 77/457,081 for "crackers made from toasted bread" and Serial No. 78/963,000 for "Italian bread toast, namely ciabatta toasted crackers"). Rausa Decl. ¶ 12, **Ex. 10**, at 225–34. As one examining attorney wrote in the context of a similar application: "Industry usage indicates that the word 'CRISPS' is a generic term that is synonymous with the term CHIP that refers to a thin, firm, and brittle snack food." Rausa Decl. ¶ 15, **Ex. 13**, at 4; *accord* Rausa Decl. ¶ 14, **Ex. 12**, at 1–12, 11 ("[I]f applicant's snacks are crisp, they may be generically referred to as a type of crisp.").

The record shows that at the time of trial, more than 800 live applications and registrations included "crisps" in their descriptions of goods in Classes 29 and 30. Rausa Decl. ¶ 14, **Ex. 12**, at 13–35. Scores of applications disclaimed the "crisps" for goods including crackers. *Id.* at 36–40, 269–303; Rausa Decl. ¶ 13, **Ex. 11**, at 1. And the record contains dozens of examples where the USPTO required an applicant to disclaim "crisps" or else has simply refused registration on the Principal Register for marks with a "_____ CRISPS" (or "_____ KRISPS") formulation in Classes 29 and 30 for crackers, finding that such names were generic or merely descriptive for snack foods in those classes. Rausa Decl. ¶ 12, **Ex. 10**, at 2–5; Rausa Decl. ¶ 14, **Ex. 12**, at 41–119, 120–255.

## II.    Generic Use of "Pretzel Crisps"

When the terms "pretzel" and "crisps" are joined, the combined term "pretzel crisps" amounts to no more than the sum of its generic counterparts and remains generic, as has been abundantly proven by the record in this case and confirmed by two TTAB decisions.

### A.  The media uses "pretzel crisps" as a generic term

Even before Princeton introduced its product and filed its trademark applications,[9] the

---

[9] Princeton claims it first used PRETZEL CRISPS in October 2004. *See* Doc. 1 ¶¶ 2, 19; Rausa Decl. ¶ 4, **Ex. 2**, at 2; Rausa Decl. ¶ 5, **Ex. 3**, at 6.

media was already using the term "pretzel crisps" generically. For example, in April 1998, an article in *Men's Health* suggested a recipe for a low-calorie snack mix consisting of "flat pretzel crisps and crunchy pretzel sticks." Rausa Decl. ¶ 16, **Ex. 14**, at 98–99. In 1999, *The San Francisco Chronicle* included "Honey-mustard pretzel crisps" on its list of "Hot" grocery items. *Id.* at 96–97. In 2001, the *Charleston Gazette* recommended serving a dip recipe "at room temperature with pretzel crisps or crackers." *Id.* at 95.

Generic media usage of "pretzel crisps" as a category of snacks continued after Princeton purported to adopt the term as a brand. For example, several food ranking publications used "pretzel crisps" as a category name in the same typeface and capitalization used for other generic categories, in contrast to the treatment given to brands. In 2008, the award from *ChefsBest* for best "pretzel crisp" went to Pepperidge Farm Pretzel Thins. Rausa Decl. ¶ 10, **Ex. 8**, at 1–7. Explaining the methodology behind the ranking, the article noted that "the best pretzel crisps will be dark gold and have a light sheen," that "great pretzel crisps will deliver a pronounced level of toasted wheat and grain in both aroma and flavor," and that reviewers "found certain brands of pretzel crisps too brittle." *Id.* at 1. Similarly, in a 2009 *Consumer Reports* article on the "tastiest snack crisps," Princeton's product was not even mentioned among the "pretzel crisps" category, where the magazine evaluated offerings from brands New York Style and Pepperidge Farm. Rausa Decl. ¶ 12, **Ex. 10**, at 14–15; Rausa Decl. ¶ 16, **Ex. 14**, at 61–62. Also in 2009, *The San Francisco Chronicle* held a tasting competition for six brands of "Pretzel Crisps" (Pepperidge Farm, Trader Joes, The Snack Factory,[10] Mollie Stone's, Robert Rothschild Farm, and 365 Organic), with Pepperidge Farm taking the top spot and Snack Factory's product ranking third (and the review of Snack Factory's product noted: "These pretzel crisps were 'nicely browned' and 'bubbly' with a

---

[10] The Snack Factory is an affiliate of Princeton.

'great crunch' and only 'mildly salty flavor'"). Rausa Decl. ¶ 12, **Ex. 10**, at 16–18; Rausa Decl. ¶ 16, **Ex. 14**, at 68–69. In 2011, *Slashfood* conducted a taste test to determine the "best pretzels" in 12 different categories, including "sticks, extra-dark, honey wheat, multigrain, flavored, crisps, old fashioned, gluten-free, unsalted, rods, sourdough and traditional." Rausa Decl. ¶ 12, **Ex. 10**, at 8–13. Snack Factory's product was rated the best in the "pretzel crisps" category. *Id.* at 8.

The record is replete with more examples of generic media uses too numerous to recount in detail here, most of which have no apparent reference or relation to Plaintiffs or their affiliates. *See, e.g.*, Rausa Decl. ¶ 16, **Ex. 14**, at 9–94 (dozens of such articles from Plaintiffs' production). Even articles referencing Plaintiffs' products often feature "pretzel crisps" generically through context, capitalization, and typeface. *See id.* at 47 (comparing "Ritz Munchables Pretzel Crisps" to a "Snack Factory Pretzel Crisp"), 50 ("new pretzel crisps," "modern classics line of pretzel crisps," "pretzel crisps lineup"), 57–58 ("its pretzel crisps line"), 59–60 (same), 70–71 ("free pretzel crisps" and "Pretzel crisps come in varieties such as"), 74–75 ("The company makes pretzel crisps"), 76–77 ("SNACK FACTORY'S thin pretzel crisps"), 78–79 ("thin and crunchy pretzel crisps," "pretzel crisps have no trans fat"), 82–83 ("new chocolate covered pretzel crisps"), 87 ("All of the company's pretzel crisps"), 89 ("Snack Factory pretzel crisps (2 points for 10 crisps)").

### B. Competitors and consumers use "pretzel crisps" generically

Competing snack sellers have also used "pretzel crisps" as a category name or generic descriptor for pretzel crackers. When Kraft Foods introduced pretzel crackers under the mark RITZ MUNCHABLES in 2010, it prominently displayed "pretzel crisps" on the front of the package as the generic descriptor. Rausa Decl. ¶ 17, **Ex. 15**, at 16. Apparently in response to threats from Princeton and to avoid the expense of litigation, Kraft and Princeton agreed that Kraft would phase out use of the term "as a product descriptor – *i.e.*, the words commonly used *after the*

*product's trademark* on packaging to communicate to the consumer *what type of product it is*."
*Id.* at 9 (emphases added). The agreement also explicitly reserved Kraft's right to use the term if a tribunal finds it to be generic or merely descriptive. *Id.* at 12. Subsequently, Kraft changed the generic descriptor to "pretzel thins" and "pretzel rounds." *Id.* at 3, 6.

Similarly, private-label pretzel maker Pretzels Inc. described its product at a 2011 trade show as belonging to the "pretzel crisp" market category, listing certain "pretzel crisp facts" about that market. Rausa Decl. ¶ 10, **Ex. 8**, at 14–16. When Princeton complained, Pretzels Inc. responded by noting the industry's use of the generic term "pretzel crisps" and stating the obvious—that its "use of the generic term 'pretzel crisps' was merely a reference to a particular market segment described in industry publications." *Id.* at 8.

Consumers likewise refer to Plaintiffs' products and similar products generically as "pretzel crisps." For example, in an email to Princeton, a consumer compared "pretzel crisps" to other product categories he had tried as an alternative to potato chips, including "pita crisps" and "soy crisps." *Id.* at 17. Other consumers use the term generically in correspondence with Plaintiffs. *See, e.g.*, *id.* at 18 ("[Y]ou guys have the best pretzel crisps ever. The other day I bought another brand at a different store."); *id.* at 19, 20–21.

## C. Plaintiffs' own generic use of "pretzel crisps"

Plaintiffs' own treatment of the term "pretzel crisps" over the years shows that they too understand it to describe a product category. For example, Maureen Phelan, Princeton's VP of Sales, touted the company as "the original pretzel crisp company" in an apparent pitch to get the product carried in Starbucks stores, using "pretzel crisp" in lowercase letters to identify the relevant product category. Rausa Decl. ¶ 10, **Ex. 8**, at 51. Additionally, as noted above, Princeton's agreement with Kraft regarding the use of the term "pretzel crisps" acknowledges that

the term was used by Kraft—and understood by Kraft and Princeton—to describe a product category. *See* Rausa Decl. ¶ 17, **Ex. 15**, at 9. Additionally, in a declaration submitted to the TTAB, Princeton's founder, Warren Wilson, provided a list of other generic descriptors for pretzel crackers, including "pretzel thins" and "pretzel rounds," the very terms that Kraft substituted for "pretzel crisps" as the generic descriptor for its RITZ MUNCHABLES branded product. *See id.* at 2–3. Mr. Wilson also used the term generically in a published interview, noting, "We have been able to take the middle out of pretzel making the pretzel crisp a thin crunchy cracker-like snack." Rausa Decl. ¶ 16, **Ex. 14**, at 80–81.

## ARGUMENT

### I. Standard of Review

#### A. District Court review of TTAB decisions under 15 U.S.C. § 1071(b)

A party to a cancellation or opposition proceeding who is "dissatisfied with the decision of the . . . [TTAB]" has two options for appeal. 15 U.S.C. § 1071. First, it can appeal to the Federal Circuit, as Princeton did in 2014 the first time the TTAB found that its purported mark was generic. *See id.* § 1071(a). The second option is to file a civil action in district court. *Id.* § 1071(b). Having been denied registration of the generic term "pretzel crisps" at the TTAB for a second time, and desperate for a different outcome, Plaintiffs now pursue this alternative route in this Court.

In a review under Section 1071(b), a district court has the authority to cancel or refuse registration. *Id.* § 1071(b)(1); *see also id.* § 1119. The record from the USPTO "shall be admitted" on motion by a party and the evidence therein "shall have the same effect as if originally taken and produced in the suit." *Id.* § 1071(b)(3).[11] Where new evidence is introduced, "the district court reviews the record de novo and acts as the finder of fact." *Swatch AG v. Beehive Wholesale, LLC*,

---

[11] *See supra* Note 1.

739 F.3d 150, 155 (4th Cir. 2014) (internal quotation marks omitted) (quoting *Kappos v. Hyatt*, 566 U.S. 431, 445 (2012) (holding that such standard of review applies to 35 U.S.C. § 145, the patent analogue to Section 1071(b), where new evidence is introduced)).  However, "the district court may, in its discretion, consider the proceedings before and findings of the [TTAB] in deciding what weight to afford an applicant's newly-admitted evidence."  *Id.*  And TTAB decisions are generally "entitled to great weight" as persuasive authority given the TTAB's expertise in trademark law.  *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359, 386 (4th Cir. 2003) (Motz, C.J., dissenting); *see also Kelly Servs., Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 863 n.1 (6th Cir. 2017) ("[O]ur sister Circuits have generally treated TTAB decisions as persuasive authority entitled to respect because of the TTAB's expertise in trademark disputes (quotation marks and citations omitted)).

       If no new evidence is introduced, the TTAB's factual findings are reviewed for "substantial evidence," the highly deferential standard that applies to review of agency decisions.  *See Hyatt v. Kappos*, 625 F.3d 1320, 1336 (Fed. Cir. 2010), *aff'd and remanded*, 566 U.S. 431 ("[I]t is well settled that a reviewing court must apply the APA's court/agency standard of review to Patent Office fact findings when no new evidence is admitted in a § 145 action. If the parties to a § 145 action do not introduce any new evidence before the district court, the court reviews the case on the same record presented to the agency and the reviewing court must apply the APA's substantial evidence standard to Patent Office fact findings."); *Dome Patent, L.P. v. Rea*, 59 F. Supp. 3d 52, 78–79 (D.D.C. 2014) ("Where no new evidence is presented at all or with respect to certain facts found by the Board, the Court "must [instead] apply the APA's substantial evidence standard to Patent Office fact findings." (quoting *Hyatt*, 625 F.3d at 1336)).  Under this standard, a court may only set aside factual findings "unsupported by substantial evidence."  5 U.S.C. § 706(2)(E).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

### B. Standard for summary judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The relevant question on summary judgment is whether a reasonable factfinder could return a verdict for the non-movant on the record evidence presented. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to overcome summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphases in original). A non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quotation marks and citation omitted).

This case is perfect for resolution on summary judgment. The Fourth Circuit has often found summary judgment appropriate on the question of genericness. *See Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 537–38 (4th Cir. 2004); *Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 814 (4th Cir. 2001); *Ale House Mgmt., Inc. v. Raleigh Ale House*, 205 F.3d 137, 141 (4th Cir. 2000); *Convenient Food Mart, Inc. v. 6-Twelve Convenient Mart, Inc.*, 870 F.2d 654 (table), 1989 WL 21392, at *1 (4th Cir. 1989) (unpub. op.). Moreover, this action is a review of a TTAB

decision. Thus, it comes to this Court with a complete evidentiary record, a record that the parties agreed was sufficient to allow the TTAB to proceed to trial and make a decision on the merits. Additionally, this Court, and not a jury, will make a final determination in this case on that same record. And while parties in Section 1071(b) actions theoretically may be entitled to introduce additional evidence, because the instant motion seeks summary judgment on the ground that the mark was generic when adopted and when evaluated by the TTAB, more recent evidence cannot inform that inquiry or affect the outcome. Finally, if this Court affirms the TTAB's determination that "pretzel crisps" is generic, it need not reach the question of whether "pretzel crisps" is highly descriptive without acquired distinctiveness, the alternative basis for the 2017 TTAB Decision.

## II.    "Pretzel Crisps" is Generic

The evidence plainly shows, and the TTAB correctly found, that the primary significance of the term "pretzel crisps" to the relevant public is a generic term for pretzel crackers. This is evident from analysis of the term as a whole and from examination of its component parts, and no amount of additional discovery or evidence can change this determination.

A generic term can never function as a trademark. A trademark's purpose is "to identify and distinguish [one's] goods . . . from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. "Because a generic mark, by definition, neither signifies the source of goods nor distinguishes the particular product from other products on the market, a generic term cannot be protected as a trademark nor registered as one." *Retail Servs.*, 364 F.3d at 538. Because "pretzel crisps" is generic for pretzel crackers, it cannot be registered as a trademark on either the Principal or the Supplemental Register.

### A.  Burden of proof

In the Fourth Circuit, where a party (like Plaintiffs here) does not own a registration on

the Principal Register, that party bears the burden in the face of a genericness challenge of proving by a preponderance of the evidence that the mark is <u>not</u> generic and is entitled to registration. *See Ale House Mgmt.*, 205 F.3d at 140 ("[B]ecause Raleigh Ale House suggests that the term 'ale house' is generic and AHM has not registered it, AHM bears the burden of establishing that it is not generic.").[12] While an owner of a Principal Registration enjoys a presumption of validity for the registered mark,[13] no such presumption exists for holders of a Supplemental Registration. *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 392 n.8 (4th Cir. 2009) ("[U]nlike principal registration, supplemental registration is not *prima facie* evidence of the validity of the registered mark, of ownership of the mark, or of the registrant's exclusive right to use the registered mark in commerce." (citing 15 U.S.C. § 1057(b))).

### B. The standard for genericness

The test for whether a term is generic is to consider the "primary significance of the registered mark to the relevant public." *See* 15 U.S.C. § 1064; *Am. Online*, 243 F.3d at 822 (affirming summary judgment of genericness after considering "primary significance of the term"). If a term identifies the "common name of a product" or "refers to the genus of which the particular product is a species," that term is generic and cannot be protected as a trademark. *Retail Servs.*, 364 F.3d at 538. As the Fourth Circuit put it: "'The concepts of generic name and trademark are mutually exclusive' because a generic term 'can never function as a mark to identify and distinguish the products of only one seller.'" *Id.* (quoting 2 *McCarthy on Trademarks and Unfair*

---

[12] In contrast to the law in the Fourth Circuit, the TTAB held that the burden was on Frito-Lay to prove that "pretzel crisps" is generic by a preponderance of the evidence. *See Frito-Lay*, 124 U.S.P.Q.2d at 1187 (citing *Princeton Vanguard*, 786 F.3d at 960 n.2). Although Frito-Lay maintains that the burden of proof was misplaced, the TTAB still found that "pretzel crisps" is generic even after erroneously subjecting Frito-Lay to this burden of proof.

[13] In the Fourth Circuit, this presumption only shifts the initial burden of production to the party challenging the registered mark as generic; the ultimate burden of persuasion remains on the registrant. *Retail Servs.*, 364 F.3d at 542.

Case 3:17-cv-00652-KDB-DSC   Document 28-1   Filed 08/30/18   Page 18 of 26

*Competition* § 12:1 (5th ed.) (hereinafter "*McCarthy*")).

In considering whether a purported mark consisting of more than one word is generic, courts look to the mark as a whole, but this principle "does not preclude courts from considering the meaning of individual words in determining the meaning of the entire mark." *Hunt Masters*, 240 F.3d at 254 (considering the "clear" meaning of the component terms "crab" and "house" to conclude that "crab house" is a generic term for a restaurant that serves crabs); *Ale House Mgmt.*, 205 F.3d at 141 (affirming summary judgment, holding: "[W]e conclude that AHM has no protectable interest in the words 'ale house.' They are generic words for a facility that serves beer and ale"); 2 *McCarthy* § 11:27 ("[I]t is not a violation of the anti-dissection rule to separately view the component parts as a preliminary step on the way to an ultimate determination of probable customer reaction to the composite as a whole.").

The Fourth Circuit has held that common sources of evidence bearing on genericness can include "purchaser testimony, consumer surveys, listings and dictionaries, trade journals, newspapers, and other publications" as well as "generic use by competitors, generic use of the term by the mark's owners, and use of the term by third parties in trademark registrations." *Retail Servs.*, 364 F.3d at 544 (internal quotation marks and citations omitted). However, as noted in the 2017 TTAB Decision, the Fourth Circuit has also held that consumer surveys are not relevant in situations like this one. Surveys are only helpful to a genericness inquiry in cases where a term began as an inherently distinctive mark but later became generic through common usage, a situation known as "genericide" that is not applicable in this case. *See Hunt Masters*, 240 F.3d at 254–55. Where, as here, a purported mark was generic when adopted, surveys are not relevant evidence. *Id.* at 255 ("[I]t is not necessary to determine whether the term has become generic through common use, rendering Hunt's customer survey irrelevant.").

## C. The evidence establishes that "pretzel crisps" is generic

In its decision, the TTAB concluded that viewed as a whole, the term "pretzel crisps" is generic for pretzel crackers. This conclusion was based on reams of evidence, including use by Princeton itself, the media, consumers (including Princeton's own customers), and even, despite their limited probative value, the surveys conducted by *both* parties.

### i. Genericness of the terms "pretzel" and "crisps"

The TTAB properly considered and determined the nature of the component terms "pretzel" and "crisps" as a first step in its analysis, ultimately concluding that both terms are generic. Indeed, Princeton's own VP of Marketing conceded that the name consists of "two pretty generic words." Rausa Decl. ¶ 10, **Ex. 8**, at 50.

There is no dispute that "pretzel" is generic for Plaintiffs' pretzel products. Similarly, there can be no genuine dispute that "crisps" is generic for crackers. The generic meaning of "crisps" for crackers and similar crispy products is supported overwhelmingly by widespread usage of the term by Princeton itself on its earlier packaging, as well as by competitors, governments, and organizations; dictionary definitions; and consistent USPTO practice refusing registrations or requiring disclaimers for the term. *See supra* Section I.B.

The combination of generic terms into an equally generic composite sometimes is so obvious that little more is needed. *See Convenient Food Mart, Inc. v. 6-Twelve Convenient Mart, Inc.*, 690 F. Supp. 1457, 1464 (D. Md. 1988), *aff'd*, 870 F.2d 654 (4th Cir. 1989) (acknowledging that mark must be considered as a whole, but also finding "arrangement of the words 'Convenient Food Mart' obvious and meaning nothing more than a convenient food mart"). Other courts have held that similar terms like "liquid controls," "multistate bar examination," "surgicenter," "drug center," and "car care center" "can have no more significance than their obvious meanings and

therefore are generic." *Id.*

The Court in *Hunt Masters* faced a similar situation of a purported mark composed of two plainly generic terms. The plaintiff claimed rights in the term "crab house" for its seafood restaurants. *Hunt Masters*, 240 F.3d at 253. On appeal from the denial of a preliminary injunction, the Fourth Circuit considered whether the purported mark could be protected. The Court found it helpful to evaluate "the meaning of individual words in determining the meaning of the entire mark." *Id.* at 254. In doing so, the Court found the meaning of the words "crab" and "house" to be "fairly clear," with "crab" denoting "any of numerous chiefly marine broadly built crustaceans," while "house" is just one of many terms that means "restaurant." *Id.* Using this straightforward analysis, the Court reached the unsurprising conclusion that "'crab house' denotes a class of restaurant that serves crabs." *Id.* The Court further held that consumer surveys offered in the case were irrelevant because the term was not one that began as a coined term and later became generic. *Id.* at 254–55 (holding that because the court did not need "to determine whether the term has become generic through common use," it was entirely proper for the trial court to disregard the survey). Thus, because "crab house" is generic for a restaurant that serves crabs, the plaintiff was not entitled to trademark protection. *Id.* at 255.

Just as "crab house" denotes a restaurant that serves crabs, "pretzel crisps" denotes crackers made from a pretzel. The two generic terms combine simply to refer to the very class of products Plaintiffs sell—pretzel crackers. And competitors have every right to use the same combination of generic terms to refer to their own similar products.

## ii. **Generic use of "pretzel crisps" by Plaintiffs and others**

Princeton's own use of the term "pretzel crisps" in a generic manner confirms that even it knew the term had a generic connotation when adopted. A similar situation was presented in *Retail*

*Services*, where the plaintiff claimed rights in the term FREEBIES for its magazine advertising free offers and giveaways. *Retail Servs.*, 364 F.3d at 537. The district court considered the plaintiff's own generic use of the term "freebies" in its materials, found it to be consistent with generic use of the term by others, and granted summary judgment holding the mark generic. *Id.* at 545–46. The Fourth Circuit affirmed, noting that "evidence of the owner's generic use, in particular, 'is strong evidence of genericness.'" *Id.* at 545 (quoting 2 *McCarthy* at § 12.13). Likewise, Princeton's own use of "pretzel crisp(s)" belies its claim that the term is not generic. Princeton has referred to itself as a "pretzel crisp company," suggesting it is one of many in that category. Rausa Decl. ¶ 10, **Ex. 8**, at 51; *see also* Rausa Decl. ¶ 16, **Ex. 14**, at 80 –81 (company founder using "pretzel crisp" generically). Even in dealings with other companies in an attempt to police the use of this generic term, Princeton used the term in a way that suggests it is generic and interchangeable with others that Princeton admits are generic, such as "pretzel thins." *See, e.g.*, Rausa Decl. ¶ 17, **Ex. 15**, at 2–3, 9.

Plaintiffs' own generic uses of the term exist alongside significant generic usage by the media and general public. Although Princeton claims to have "coined" the term, *see* Doc.. 1 ¶ 20, the record shows that "pretzel crisps" was used before Princeton entered the market. *See, e.g.*, Rausa Decl. ¶ 16, **Ex. 14**, at 95, 96–97, 98–99. And such generic use continued thereafter, as has been shown by countless examples in the news media, consumer comments, and third-party uses.

That Plaintiffs are able to point to other media mentions of its "Pretzel Crisps" products and name is unsurprising, given their asserted position as the market leader and their aggressive marketing efforts. However, such emphasis is misplaced, as no amount of consumer recognition or "de facto secondary meaning" can create protection for a generic term. *See Am. Online*, 243 F.3d at 822 ("AOL's evidence of association [for term YOU HAVE MAIL] may establish what is

called 'de facto secondary meaning,' but such secondary meaning does not entitle AOL to exclude others from a functional use of the words." (citing 1 *McCarthy* at § 7:66)); *see also Retail Servs.*, 364 F.3d at 547 ("Evidence of an acquired secondary meaning, however, has no relevance unless the mark in question has been found not to be generic."). And as explained above, the same logic applies to consumer surveys for terms that were generic when adopted—generic terms cannot acquire distinctiveness, rendering such surveys irrelevant. *Hunt Masters*, 240 F.3d at 255.

The Supreme Court held long ago that there is "no basis" for applying the secondary meaning doctrine where a term is generic. *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938). This is especially true where the product in question is innovative, as Plaintiffs claim their product to be, or where it has been protected by a patent or otherwise subject to little competition, as such evidence "shows only that due to the long period in which the plaintiff or its predecessor was the only manufacturer of the product, many people have come to associate the product, and as a consequence the name by which the product is generally known, with the plaintiff's factory." *Id.*; *see also* Doc. 1 ¶ 2 (alleging that "[t]he unique characteristics of PRETZEL CRISPS crackers were the result of a patented technology that created a perfectly thin and crunchy pretzel cracker unlike any other pretzel product or cracker product on the market"). Rather, overcoming a finding of genericness requires a showing "that the primary significance of the term in the minds of the consuming public *is not the product but the producer*." *Kellogg*, 305 U.S. at 118 (emphasis added) (refusing trademark protection for "shredded wheat" for a previously patented product over which the producer had enjoyed a monopoly for several years). And as the record shows, the relevant public understands the primary significance of the term "pretzel crisps" to refer to a particular type of product, not a particular producer. This was true since before the term was adopted by Princeton, and, as a practical matter and a matter of law, has remained so. For this reason, Plaintiffs' desire

to "expand the record beyond 2012 . . . to include five additional years' worth of evidence of the public's perception of the PRETZEL CRISPS trademark" is futile. *See* Doc. 1 ¶ 11–12. No amount of additional evidence can create protectability for a mark that was generic when adopted.

There is sound policy behind the bedrock principle that a party cannot co-opt a generic term for itself, no matter how much time, money, and effort it invests in promoting that term. As Judge Friendly noted in a seminal trademark decision, "no matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). And the Supreme Court explained that once the patent for shredded wheat expired, the general public was "free to make shredded wheat when it chose to do so[,] and to call it by its generic name." *Id.* at 119. In addition to protecting mark owners, trademark law "likewise protects for public use those commonly used words and phrases that the public has adopted, denying to any one competitor a right to corner those words and phrases by expropriating them from the public linguistic commons." *Am. Online*, 243 F.3d at 821. Otherwise, "it would be difficult for competitors to market their own brands of the same product." *Retail Servs.*, 364 F.3d at 538.

Plaintiffs' products are pretzel crisps, or pretzel crackers, or pretzel thins, or whatever other generic name the public and competitors are equally free to use to describe the same or similar products. The fact that alternative generic terms exist is of no consequence. *See Convenient Food Mart*, 1989 WL at *1 (affirming summary judgment that mark was generic where trial court reasoned that "[t]he fact that one generic term is prevalent in public usage does not preclude the Court from finding that the adjective equivalent of the term is also generic"); *Ale House Mgmt.*,

205 F.3d at 141 (affirming summary judgment finding term ALE HOUSE generic, while also noting alternative generic names like "bar," "lounge," "pub," "saloon," and "tavern"); *see also* 2 *McCarthy* § 12:9 ("There is usually no one, single and exclusive generic name for a product. Any product may have many generic designations. *Any one of those is incapable of trademark significance*." (emphasis added)).   Plaintiffs' chosen name "pretzel crisps" falls within the "heartland of common meaning and usage" for pretzel crackers, and as such, Plaintiffs cannot exclude others from using the term.  *See Am. Online*, 243 F.3d at 821.

## CONCLUSION

Frito-Lay requests that the Court grant summary judgment in favor of Frito-Lay affirming the 2017 TTAB Decision on the ground the "pretzel crisps" is generic for pretzel crackers. Respectfully submitted, this the 30th day of August, 2018.

   /s/ Alice C. Richey
Alice C. Richey
N.C. State Bar No.: 13677
ALEXANDER RICKS PLLC
4601 Park Road, Suite 580
Charlotte, North Carolina 28209
Telephone:      (980) 335-0720
Facsimile:      (704) 365-3676
alice@alexanderricks.com

William G. Barber (admitted *pro hac vice)*
David E. Armendariz (admitted *pro hac vice)*
PIRKEY BARBER PLLC
600 Congress Ave.; Suite 2120
Austin, Texas 78701
Telephone: (512) 482-5223
Facsimile:  (512) 322-5201
bbarber@pirkeybarber.com
darmendariz@pirkeybarber.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the

CM/ECF system which will send notification of such filing to the following:

David H. Bernstein
James J. Pastore, Jr.
Jared I. Kagan
Michael Compton McGregor
DEBEVOICE & PLIMPTON LLP
dhbernstein@debevoise.com
jjpastore@debevoise.com
jikagan@debevoise.com
mcmcgregor@debevoise.com

Alexander Miller Pearce
Jonathan Drew Sasser
ELLIS & WINTERS, LLP
alex.pearce@elliswinters.com
jon.sasser@elliswinter.com

This 30th day of August, 2018.

    /s/ Alice C. Richey
Alice C. Richey
N.C. State Bar No.: 13677
ALEXANDER RICKS PLLC
4601 Park Road, Suite 580
Charlotte, North Carolina 28209
Telephone:    (980) 335-0720
Facsimile:    (704) 365-3676
alice@alexanderricks.com