

**United States Patent and Trademark Office**

Home|Site Index|Search|FAQ|Glossary|Guides|Contacts|eBusiness|eBiz alerts|News|Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Jun 12 04:35:45 EDT 2012*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |

| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At:        OR   Jump   to record:        **Record 3 out of 18**

| TARR Status | ASSIGN Status | TDR | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

# CRACKER CRISPS

| | |
|---|---|
| **Word Mark** | CRACKER CRISPS |
| **Goods and Services** | (ABANDONED) IC 030. US 046. G & S: Crackers |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 78835621 |
| **Filing Date** | March 13, 2006 |
| **Current Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Owner** | (APPLICANT) Royal Wine Corporation CORPORATION NEW YORK 63 North Hook Road Bayonne NEW JERSEY 07002 |
| **Attorney of Record** | Paulette R. Carey |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "cracker" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Abandonment Date** | March 2, 2007 |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST |

| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

| | |
|---|---|
| **To:** | Royal Wine Corporation (prcarey@buchmanlaw.com) |
| **Subject:** | TRADEMARK APPLICATION NO. 78835621 - CRACKER CRISPS - N/A |
| **Sent:** | 8/31/06 1:22:00 PM |
| **Sent As:** | ECOM105@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |
| | Attachment - 24 |

## UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO:** 78/835621

**APPLICANT:** Royal Wine Corporation

**CORRESPONDENT ADDRESS:**
PAULETTE R. CAREY
BUCHMAN LAW FIRM, LLP
SUITE 200

**\*78835621\***

**RETURN ADDRESS:**
Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

**MARK**:    CRACKER CRISPS

**CORRESPONDENT'S REFERENCE/DOCKET NO**:  N/A

**CORRESPONDENT EMAIL ADDRESS**:
        prcarey@buchmanlaw.com

Please provide in all correspondence:

1. Filing date, serial number, mark and applicant's name.
2. Date of this Office Action.
3. Examining Attorney's name and Law Office number.
4. Your telephone number and e-mail address.

# OFFICE ACTION

**RESPONSE TIME LIMIT**:  TO AVOID ABANDONMENT, THE OFFICE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF THE MAILING OR E-MAILING DATE.

**MAILING/E-MAILING DATE INFORMATION**:  If the mailing or e-mailing date of this Office action does not appear above, this information can be obtained by visiting the USPTO website at http://tarr.uspto.gov/, inserting the application serial number, and viewing the prosecution history for the mailing date of the most recently issued Office communication.

Serial Number  78/835621

The assigned trademark examining attorney has reviewed the referenced application and has determined the following:

## Search Results – No Likelihood of Confusion

The Office records have been searched and no similar registered or pending mark has been found that would bar registration under Trademark Act Section 2(d), 15 U.S.C. §1052(d).  TMEP §704.02.

However, please note the following grounds for refusal.

## Section 2(e)(1) - Descriptive Refusal

Registration is refused because the proposed mark merely describes the goods and/or services.  Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1); TMEP §§1209 *et seq.*

A mark is merely descriptive under Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1), if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the relevant goods and/or services. *In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987);  *In re Bed & Breakfast Registry*, 791 F.2d 157, 229 USPQ 818 (Fed. Cir. 1986); *In re MetPath Inc.*, 223 USPQ 88 (TTAB 1984); *In re*

*Bright?Crest, Ltd.*, 204 USPQ 591 (TTAB 1979); TMEP §1209.01(b). A mark that describes an intended user of a product or service is also merely descriptive within the meaning of Section 2(e)(1). *Hunter Publishing Co. v. Caulfield Publishing Ltd.*, 1 USPQ2d 1996 (TTAB 1986); *In re Camel Mfg. Co., Inc.*, 222 USPQ 1031 (TTAB 1984); *In re Gentex Corp.*, 151 USPQ 435 (TTAB 1966).

The determination of whether a mark is merely descriptive is considered in relation to the identified goods and/or services, not in the abstract. *In re Polo International Inc.*, 51 USPQ2d 1061 (TTAB 1999) (Board found that DOC in DOC-CONTROL would be understood to refer to the "documents" managed by applicant's software, not "doctor" as shown in dictionary definition);*In re Digital Research Inc.*, 4 USPQ2d 1242 (TTAB 1987) (CONCURRENT PC-DOS found merely descriptive of "computer programs recorded on disk;" it is unnecessary that programs actually run "concurrently," as long as relevant trade clearly uses the denomination "concurrent" as a descriptor of this particular type of operating system);*In re Venture Lending Associates*, 226 USPQ 285 (TTAB 1985); *In re American Greetings Corp.*, 226 USPQ 365, 366 (TTAB 1985) ("Whether consumers could guess what the product is from consideration of the mark alone is not the test"); TMEP §1209.01(b).

Applicant has applied to register the mark CRACKER CRISPS for crackers. The word CRACKER in the mark is generic for the goods and has been disclaimed by the applicant. The word CRISPS describes firm but easily broken or crumbled, which is a feature of the applicant's CRACKERS. See the attached dictionary definition. Please also see the attached third-party registrations where the Office has treated the word CRISPS as descriptive and required a disclaimer.

Applicant's mark immediately conveys to consumers that applicant's goods are CRACKERS that are firm but easily broken, or crispy. A term need not describe all of the purposes, functions, characteristics or features of the goods and/or services to be merely descriptive. For the purpose of a Section 2(e)(1) analysis, it is sufficient that the term describe only one attribute of the goods and/or services to be found merely descriptive. *In re H.U.D.D.L.E.*, 216 USPQ 358 (TTAB 1982); *In re MBAssociates*, 180 USPQ 338 (TTAB 1973); TMEP §1209.01(b).

Accordingly, registration of the proposed mark is refused because it is merely descriptive of applicant's goods.

Although the trademark examining attorney has refused registration, applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

**Supplemental Register**

Although an amendment to the Supplemental Register would normally be an appropriate response to this refusal, such a response is not appropriate in the present case. The instant application was filed under Trademark Act Section 1(b), 15 U.S.C. §1051(b), and is not eligible for registration on the Supplemental Register until an acceptable amendment to allege use under 37 C.F.R. §2.76 has been timely filed. 37 C.F.R. §2.47(d); TMEP §§815.02, 816.02 and 1102.03.

If applicant files an amendment to allege use and also amends to the Supplemental Register, please note that the effective filing date of the application will then be the date of filing of the amendment to allege use. 37 C.F.R. §2.75(b); TMEP §§206.01 and 816.02.

Although Supplemental Register registration does not afford all the benefits of registration on the Principal Register, it does provide the following advantages:

- The registrant may use the registration symbol ®;
- The registration is protected against registration of a confusingly similar mark under §2(d) of the Trademark Act, 15 U.S.C. §1052(d);
- The registrant may bring suit for infringement in federal court; and
- The registration may serve as the basis for a filing in a foreign country under the Paris Convention and other international agreements.

## Response Guidelines

TEAS PLUS APPLICANTS MUST SUBMIT DOCUMENTS ELECTRONICALLY OR SUBMIT FEE: TEAS Plus applicants should submit the following documents using the Trademark Electronic Application System (TEAS) at http://www.uspto.gov/teas/index.html: (1) written responses to Office actions; (2) preliminary amendments; (3) changes of correspondence address; (4) changes of owner's address; (5) appointments and revocations of attorney; (6) amendments to allege use; (7) statements of use; (8) requests for extension of time to file a statement of use, and (9) requests to delete a §1(b) basis. If any of these documents are filed on paper, they must be accompanied by a $50 per class fee. 37 C.F.R. §§2.6(a)(1)(iv) and 2.23(a)(i). Telephone responses will not incur an additional fee. NOTE: In addition to the above, applicant must also continue to accept correspondence from the Office via e-mail throughout the examination process in order to avoid the additional fee. 37 C.F.R. §2.23(a)(2).

Please note that there is no required format or form for responding to this Office action. However, applicant should include the following information on all correspondence with the Office: (1) the name and law office number of the examining attorney; (2) the serial number of this application; (3) the mailing date of this Office action; and, (4) applicant's telephone number.

When responding to this Office action, applicant must make sure to respond in writing to each refusal and requirement raised. If there is a refusal to register the proposed mark, then applicant may wish to argue against the refusal, i.e., explain why it should be withdrawn and why the mark should register. If there are other requirements, then applicant should simply set forth in writing the required changes or statements and request that the Office enter them into the application record. Applicant must also sign and date its response.

If applicant's attorney has questions about its application or needs assistance in responding to this Office action, please telephone the assigned trademark examining attorney directly at the number below.

/Pamela N. Hirschman/
Trademark Examining Attorney
Law Office 105
571-272-8272



**United States Patent and Trademark Office**

Home|Site Index|Search|FAQ|Glossary|Guides|Contacts|eBusiness|eBiz alerts|News|Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Jun 12 04:35:45 EDT 2012*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |

| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At:      OR   Jump   to record:      **Record 2 out of 18**

| TARR Status | ASSIGN Status | TDR | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

# POPCORN CRISPS

| | |
|---|---|
| **Word Mark** | POPCORN CRISPS |
| **Goods and Services** | (ABANDONED) IC 030. US 046. G & S: Snack chips made with popcorn and other ingredients that are formed into a chip similar in shape to other snack chips such as potato chips or corn chips; These snack chips may be seasoned with salt, cheese, spices and other flavorings; In some regions these chips may also be called "crisps", and would be sold as "popcorn crisps" |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 78973892 |
| **Filing Date** | September 13, 2006 |
| **Current Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Owner** | (APPLICANT) McGregor and McAllan CORPORATION NEVADA 925 Wild Oak Drive Santa Rosa CALIFORNIA 95409 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |

**Abandonment Date**      March 26, 2007

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

| | |
|---|---|
| **To:** | McGregor and McAllan (925wildoak@gmail.com) |
| **Subject:** | TRADEMARK APPLICATION NO. 78973892 - POPCORN CRISPS - N/A |
| **Sent:** | 9/26/2006 10:22:16 AM |
| **Sent As:** | ECOM102@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |

# UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO:** 78/973892

**APPLICANT:** McGregor and McAllan

**CORRESPONDENT ADDRESS:**
MCGREGOR AND MCALLAN
925 WILD OAK DR
SANTA ROSA, CA 95409-6122

## *78973892*

**RETURN ADDRESS:**
Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

**MARK:** POPCORN CRISPS

**CORRESPONDENT'S REFERENCE/DOCKET NO:** N/A

**CORRESPONDENT EMAIL ADDRESS:**
925wildoak@gmail.com

Please provide in all correspondence:

1. Filing date, serial number, mark and applicant's name.
2. Date of this Office Action.
3. Examining Attorney's name and Law Office number.
4. Your telephone number and e-mail address.

# OFFICE ACTION

**RESPONSE TIME LIMIT**: TO AVOID ABANDONMENT, THE OFFICE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF THE MAILING OR E-MAILING DATE.

**MAILING/E-MAILING DATE INFORMATION**: If the mailing or e-mailing date of this Office action does not appear above, this information can be obtained by visiting the USPTO website at http://tarr.uspto.gov/, inserting the application serial number, and viewing the prosecution history for the mailing date of the most recently issued Office communication.

The assigned examining attorney has reviewed the referenced application and determined the following.

## NO CONFLICTING MARK NOTED

The examining attorney has searched the Office records and has found no similar registered or pending mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. §1052(d). TMEP §704.02.

## MARK IS MERELY DESCRIPTIVE

Registration is refused because the proposed mark is merely descriptive of the identified goods. Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1); TMEP §§1209 *et seq*. Moreover, the proposed mark appears to be generic as applied to the goods and, therefore, incapable of functioning as a source-identifier for applicant's goods. *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987); *In re Pennzoil Products Co.*, 20 USPQ2d 1753 (TTAB 1991).

The applicant applied to register the mark **POPCORN CRISPS** for "snack chips made with popcorn and other ingredients that are formed into a chip similar in shape to other snack chips such as potato chips or corn chips; these snack chips may be seasoned with salt, cheese, spices and other flavorings; In some regions these chips may also be called 'crisps,' and would be sold as 'popcorn crisps.'"

The term "CRISPS" is defined as "something crisp or easily crumbled." *The American Heritage Dictionary of the English Language, 4th Ed.* (2000). See Exhibit 1. The applicant's identification indicates that the terms "CRISPS" and "CHIPS" are interchangeable. The applicant's goods are snack chips made with popcorn.

Under these circumstances, neither an amendment to proceed under Trademark Act Section 2(f), 15 U.S.C. §1052(f), nor an amendment to the Supplemental Register, can be recommended.

Although the examining attorney has refused registration, the applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

## RESPONSE GUIDELINES

Please note, there is no required format or form for responding to this Office action. The Office recommends applicants use the Trademark Electronic Application System (TEAS) to respond to Office actions online at http://www.uspto.gov/teas/index.html. However, if applicant responds on paper via regular mail, the response should include the following information: (1) the name and law office number of the examining attorney; (2) the serial number of this application; (3) the mailing date of this Office action; and, (4) applicant's telephone number.

When responding to this Office action, applicant must make sure to respond to each refusal and requirement raised. If there is a refusal to register the proposed mark, then applicant may wish to argue against the refusal, i.e., submit arguments and/or evidence as to why the refusal should be withdrawn and why the mark should register. If there are other requirements, then applicant should simply set forth in

writing the required changes or statements and request that the Office enter them into the application record. Applicant must also sign and date its response.

The applicant may wish to hire a trademark attorney because of the technicalities involved in the application. The Patent and Trademark Office cannot aid in the selection of an attorney. 37 C.F.R. §2.11.

If the applicant has any questions or needs assistance in responding to this Office action, please telephone the assigned examining attorney.

/Maria-Victoria Suarez/
Trademark Attorney
Law Office 102
571-272-9264
maria-victoria.suarez@uspto.gov

**HOW TO RESPOND TO THIS OFFICE ACTION:**
- ONLINE RESPONSE:  You may respond using the Office's Trademark Electronic Application System (TEAS) Response to Office action form available on our website at http://www.uspto.gov/teas/index.html.  If the Office action issued via e-mail, you must wait 72 hours after receipt of the Office action to respond via TEAS. **NOTE:  Do not respond by e-mail. THE USPTO WILL NOT ACCEPT AN E-MAILED RESPONSE.**
- REGULAR MAIL RESPONSE:  To respond by regular mail, your response should be sent to the mailing return address above, and include the serial number, law office number, and examining attorney's name. **NOTE:  The filing date of the response will be the *date of receipt in the Office*,** not the postmarked date.  To ensure your response is timely, use a certificate of mailing. 37 C.F.R. §2.197.

**STATUS OF APPLICATION:** To check the status of your application, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at http://tarr.uspto.gov.

**VIEW APPLICATION DOCUMENTS ONLINE:** Documents in the electronic file for pending applications can be viewed and downloaded online at http://portal.uspto.gov/external/portal/tow.

**GENERAL TRADEMARK INFORMATION:** For general information about trademarks, please visit the Office's website at http://www.uspto.gov/main/trademarks.htm

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINING ATTORNEY SPECIFIED ABOVE.**

215



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Jun 6 04:35:46 EDT 2012*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |

| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At:      OR   Jump   to record:      **Record 47 out of 74**

| TARR Status | ASSIGN Status | TDR | TTAB Status |   ( Use the "Back" button of the Internet
Browser to return to TESS)

# RICE CRISPS

| | |
|---|---|
| **Word Mark** | RICE CRISPS |
| **Goods and Services** | (ABANDONED) IC 030. US 046. G & S: Rice-based snack foods, namely, tortilla chips |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 85010417 |
| **Filing Date** | April 9, 2010 |
| **Current Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Owner** | (APPLICANT) Rice Investments, LP Composed of General Partner Utz Quality Foods, Inc. Pennsylvania Corporation LIMITED PARTNERSHIP DELAWARE 900 High Street Hanover PENNSYLVANIA 17331 |
| **Attorney of Record** | Kevin G. Smith |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "RICE" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Abandonment Date** | January 20, 2011 |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |

| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Case 3:17-cv-00652-KDB-DSC   Document 28-22   Filed 08/30/18   Page 13 of 60
216

| | |
|---|---|
| **To:** | Rice Investments, LP (tm@sughrue.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 85010417 - RICE CRISPS - S14579 |
| **Sent:** | 7/20/2010 1:11:21 PM |
| **Sent As:** | ECOM116@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |
| | Attachment - 24 |
| | Attachment - 25 |
| | Attachment - 26 |
| | Attachment - 27 |
| | Attachment - 28 |
| | Attachment - 29 |
| | Attachment - 30 |
| | Attachment - 31 |
| | Attachment - 32 |
| | Attachment - 33 |
| | Attachment - 34 |

217

Attachment - 35
Attachment - 36
Attachment - 37
Attachment - 38
Attachment - 39
Attachment - 40
Attachment - 41
Attachment - 42

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**APPLICATION SERIAL NO.**     85010417

**MARK**: RICE CRISPS

**CORRESPONDENT ADDRESS**:
KEVIN G. SMITH
SUGHRUE MION, PLLC
2100 PENNSYLVANIA AVE NW
WASHINGTON, DC 20037-3202

# *85010417*

**CLICK HERE TO RESPOND TO THIS LETTER:**
**http://www.uspto.gov/teas/eTEASpageD.htm**

**APPLICANT**:     Rice Investments, LP

**CORRESPONDENT'S REFERENCE/DOCKET NO**:
S14579
**CORRESPONDENT E-MAIL ADDRESS**:
tm@sughrue.com

# OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER
TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE**: 7/20/2010

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

## SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION

Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 2642172. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* See the enclosed registration.

Regarding the issue of likelihood of confusion, all circumstances surrounding the sale of the goods are considered. *See In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973). These circumstances include the marketing channels, the identity of the prospective purchasers, and the degree of similarity between the marks and between the goods and/or services. *See Indus. Nucleonics Corp. v. Hinde*, 475 F.2d 1197, 177 USPQ 386 (C.C.P.A. 1973); TMEP §1207.01. In comparing the marks, similarity in any one of the elements of sound, appearance or meaning may be sufficient to find a likelihood of confusion. *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988); *In re Lamson Oil Co.*, 6 USPQ2d 1041, 1043 (TTAB 1987); *see* TMEP §1207.01(b). In comparing the goods and/or services, it is necessary to show that they are related in some manner. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); TMEP §1207.01(a)(vi).

## Similarity of the Marks

Applicant's mark is RICE CRISPS in standard character form. The already-registered mark is RICE CRISPS and design. The marks are essentially phonetic equivalents and thus sound similar. Similarity in sound alone may be sufficient to support a finding of likelihood of confusion. *RE/MAX of Am., Inc. v. Realty Mart, Inc.*, 207 USPQ 960, 964 (TTAB 1980); *Molenaar, Inc. v. Happy Toys Inc.*, 188 USPQ 469, 471 (TTAB 1975); *see* TMEP §1207.01(b)(iv).

Also, the word portions are generally the dominant and most significant features of marks because consumers will call for the goods in the marketplace by that portion. *In re Appetito Provisions Co.*, 3 USPQ2d 1553, 1554 (TTAB 1987); *In re Drug Research Reports, Inc.*, 200 USPQ 554, 556 (TTAB 1978). For this reason, greater weight is often given to the word portions of marks in determining whether there is a likelihood of confusion. *In re Dakin's Miniatures, Inc.*, 59 USPQ2d 1593, 1596 (TTAB 1999); TMEP §1207.01(c)(ii). Thus, consumers will likely recall and ask for the goods using the wording RICE CRISPS and believe the goods come from the same source.

## Similarity of the Goods

The goods of the parties need not be identical or directly competitive to find a likelihood of confusion. *See Safety-Kleen Corp. v. Dresser Indus., Inc.*, 518 F.2d 1399, 1404, 186 USPQ 476, 480 (C.C.P.A. 1975); TMEP §1207.01(a)(i). Rather, it is sufficient that the goods are related in some manner and/or the conditions surrounding their marketing are such that they would be encountered by the same purchasers under circumstances that would give rise to the mistaken belief that the goods come from a common source. *In re Total Quality Group, Inc.*, 51 USPQ2d 1474, 1476 (TTAB 1999); TMEP §1207.01(a)(i); *see, e.g., On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086-87, 56 USPQ2d 1471, 1475-76 (Fed. Cir. 2000); *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 1566-68, 223 USPQ 1289,

1290 (Fed. Cir. 1984).

Applicant's goods are "rice-based snack foods, namely, tortilla chips" and registrant's goods are "rice crackers, rice, porridge, cereal-based snack food, rice-based beverages, pastries, biscuits, vinegar, candies, tea." In this case, applicant's and registrant's goods are closely related because they both provide snack foods. Also, registrant's cereal-based snack food could encompass "rice based tortilla chips." Therefore, it is presumed the goods will be marketed in the same trade channels to the same classes of purchasers.

Attached are copies of printouts from the USPTO X-Search database, which show third-party registrations of marks used in connection with the same or similar goods as those of applicant and registrant in this case. These printouts have probative value to the extent that they serve to suggest that the goods and/or services listed therein, namely tortilla chips, candies, rice crackers and cereal based snacks, are of a kind that may emanate from a single source. *In re Infinity Broad. Corp. of Dallas*, 60 USPQ2d 1214, 1217-18 (TTAB 2001); *In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1785-86 (TTAB 1993); *In re Mucky Duck Mustard Co.*, 6 USPQ2d 1467, 1470 n.6 (TTAB 1988); TMEP §1207.01(d)(iii).

**Conclusion**

In view of the foregoing, the potential for confusion is likely and registration is refused under Trademark Act Section 2(d).

Applicant should note the following additional ground for refusal.

**SECTION 2(e)(1) REFUSAL – MERELY DESCRIPTIVE**

Registration is refused because the applied-for mark merely describes a characteristic of applicant's goods. Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1); *see* TMEP §§1209.01(b), 1209.03 *et seq.*

A mark is merely descriptive if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the specified goods. TMEP §1209.01(b); *see In re Steelbuilding.com*, 415 F.3d 1293, 1297, 75 USPQ2d 1420, 1421 (Fed. Cir. 2005); *In re Gyulay*, 820 F.2d 1216, 1217-18, 3 USPQ2d 1009, 1010 (Fed. Cir. 1987).

Applicant has applied to register the mark RICE CRISPS for "*rice*-based snack foods, namely, tortilla chips. "Rice" is " the edible grains of a cereal plant of South Asian origin. Rice is served hot or cold after cooking in water or other liquid." A "crisp" is " something crisp or brittle." Please see attached definitions. In this case, the mark RICE CRISPS immediately identifies the subject matter of the goods, namely, rice-based tortilla crisps, or rice crisps.

The examining attorney also attaches Internet materials showing descriptive use of the term RICE CRISPS

in relation to chips.

Accordingly, the mark RICE CRISPS merely describes the identified goods and is refused registration under Trademark Act Section 2(e) (1).

Although applicant's mark has been refused registration, applicant may respond to the refusals by submitting evidence and arguments in support of registration.

**Assistance**

If applicant has questions about the application or this Office action, please telephone the assigned trademark examining attorney at the telephone number below.

/Michele-Lynn Swain/
Examining Attorney
(PH)571-272-9232
(FX)571-273-9116

**TO RESPOND TO THIS LETTER:** Use the Trademark Electronic Application System (TEAS) response form at http://teasroa.uspto.gov/roa/. Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov.

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/. Please keep a copy of the complete TARR screen. If TARR shows no change for more than six months, call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.

222



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Jun 6 04:35:46 EDT 2012*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout　Please logout when you are done to release system resources allocated for you.

Start　List At:　　OR　Jump　to record:　　**Record 46 out of 74**

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet*
*Browser to return to TESS)*

# BISCOTTI CRISPS

| | |
|---|---|
| **Word Mark** | BISCOTTI CRISPS |
| **Goods and Services** | (ABANDONED) IC 030. US 046. G & S: Grain-based snack foods. FIRST USE: 20100501. FIRST USE IN COMMERCE: 20100501 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 85069910 |
| **Filing Date** | June 23, 2010 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Owner** | (APPLICANT) Sahale Snacks, Inc. CORPORATION DELAWARE 3411 South 120th Place, Suite 100 Seattle WASHINGTON 98168 |
| **Attorney of Record** | Steven M. Bertone |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Abandonment Date** | April 6, 2011 |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

|.HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Case 3:17-cv-00652-KDB-DSC　Document 28-22　Filed 08/30/18　Page 20 of 60
223

File   Edit   View   Favorites   Tools   Help

Back | Search   Favorites

http://www.sahalesnacks.com/crispPomegranate.aspx | Go

Google Patents | KLGates Citrix | USCopyright | USPTO



SNACK BETTER

# SAHALE
## SNACKS®

About Us | Products | Shop | Store Locator | Ideas & Recipes | News

PRODUCT PHILOSOPHY

**Nutrition**

**How it's Made**

SEASONED NUTS

**Barbeque Almonds**

**Southwest Cashews**

**Tuscan Almonds**

SAHALE
BISCOTTI CRISPS

POMEGRANATE CASHEW

Pomegranate Cashew

For our Pomegranate Cashew Crisps we start with unbleached whole grain flour and add wholesome cashews, tender pieces of apple, pomegranate juice and real vanilla beans from Madagascar. The mix is lightly sweetened with honey and brown sugar. Then we twice bake the Crisps for a distinctive crunch.

Nutritional Info

Done                                                  ● Internet

Case 3:17-cv-00652-KDB-DSC   Document 28-22   Filed 08/30/18   Page 21 of 60   224

| To: | Sahale Snacks, Inc. (steve.bertone@klgates.com) |
| --- | --- |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 85069910 - BISCOTTI CRISPS - 2053182.0000 |
| **Sent:** | 10/5/2010 4:36:33 PM |
| **Sent As:** | ECOM105@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**APPLICATION SERIAL NO.**    85069910

**MARK**: BISCOTTI CRISPS

# *85069910*

**CORRESPONDENT ADDRESS**:
STEVEN M. BERTONE
K&L GATES, LLP
618 W RIVERSIDE AVE STE 300
SPOKANE, WA 99201-5102

**CLICK HERE TO RESPOND TO THIS LETTER:**
**http://www.uspto.gov/teas/eTEASpageD.htm**

**APPLICANT**:    Sahale Snacks, Inc.

**CORRESPONDENT'S REFERENCE/DOCKET NO**:
2053182.0000
**CORRESPONDENT E-MAIL ADDRESS**:
steve.bertone@klgates.com

# OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO

1

MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 10/5/2010**

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

## SEARCH RESULTS

The trademark examining attorney has searched the Office's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d). TMEP §704.02; *see* 15 U.S.C. §1052(d).

## SECTION 2(E)(1) – MERE DESCRIPTIVENESS REFUSAL

Registration is refused because the applied-for mark merely describes a feature of applicant's goods. Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1); *see* TMEP §§1209.01(b), 1209.03 *et seq.*

A mark is merely descriptive if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the specified goods. TMEP §1209.01(b); *see In re Steelbuilding.com*, 415 F.3d 1293, 1297, 75 USPQ2d 1420, 1421 (Fed. Cir. 2005); *In re Gyulay*, 820 F.2d 1216, 1217-18, 3 USPQ2d 1009, 1010 (Fed. Cir. 1987).

Here, applicant's mark combines **BISCOTTI**, meaning "*a crisp cookie or biscuit of Italian origin that is flavored usually with anise and filberts or almonds*" and **CRISPS**, meaning "*something crisp or brittle*" for **crisp cookies**. *See Attachment 1 – Merriam-Webster's Online Dictionary, 11th Edition definition of BISCOTTI; see also Attachment 2 – Merriam-Webster's Online Dictionary, 11th Edition definition of CRISP.* The composite of these terms is neither inventive nor does it evoke a unique commercial impression beyond the original descriptive significance of each component part. In fact, entities other than applicant use the phrase **BISCOTTI CRISPS** to identify the type of goods. *See Attachment 3 – websites of entities other than applicant using the phrase BISCOTTI CRISPS to identify the type of goods.* As used in this manner, and applicant's own use on the specimen of record, purchasers will not perceive the mark as identifying any one entity as the source of the goods.

Ultimately, when purchasers encounter applicant's **crisp cookies** using the mark **BISCOTTI CRISPS**, they will immediately understand the mark as an indication of a feature and/or the type of applicant's goods that they are **crisp cookies**, and not an indication that applicant is the **_source_** of the goods. Therefore, the mark is merely descriptive of a feature of applicant's goods and registration is refused pursuant to Section 2(e)(1) of the Trademark Act.

## Response to Section 2(e)(1) – Mere Descriptiveness Refusal

2

Case 3:17-cv-00652-KDB-DSC   Document 28-22   Filed 08/30/18   Page 23 of 60

Although the examining attorney has refused registration, the applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

### Advisory – Neither Principal Register Under Section 2(f) nor Supplemental Register Recommended

In addition to being merely descriptive, the applied-for mark appears to be generic in connection with the identified goods and, therefore, incapable of functioning as a source-identifier for applicant's goods. *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987); *In re Pennzoil Prods. Co.*, 20 USPQ2d 1753 (TTAB 1991); *see* TMEP §§1209.01(c) *et seq.*, 1209.02(a). Under these circumstances, neither an amendment to proceed under Trademark Act Section 2(f) nor an amendment to the Supplemental Register can be recommended. *See* TMEP §1209.01(c).

## ADVISORY - TEAS PLUS REQUIREMENTS

**TEAS PLUS APPLICANTS MUST SUBMIT DOCUMENTS ELECTRONICALLY OR SUBMIT FEE:** Applicants who filed their application online using the reduced-fee TEAS Plus application must continue to submit certain documents online using TEAS, including responses to Office actions. *See* 37 C.F.R. §2.23(a)(1). For a complete list of these documents, see TMEP §819.02(b). In addition, such applicants must accept correspondence from the Office via e-mail throughout the examination process and must maintain a valid e-mail address. 37 C.F.R. §2.23(a)(2); TMEP §§819, 819.02(a). TEAS Plus applicants who do not meet these requirements must submit an additional fee of $50 per international class of goods and/or services. 37 C.F.R. §2.6(a)(1)(iv); TMEP §819.04. In appropriate situations and where all issues can be resolved by amendment, responding by telephone to authorize an examiner's amendment will not incur this additional fee.

## RESPONDING TO THIS OFFICE ACTION

For this application to proceed toward registration, applicant must explicitly address each refusal and/or requirement raised in this Office action. If the action includes a refusal, applicant may provide arguments and/or evidence as to why the refusal should be withdrawn and the mark should register. Applicant may also have other options for responding to a refusal and should consider such options carefully. To respond to requirements and certain refusal response options, applicant should set forth in writing the required changes or statements and request that the Office enter them into the application record.

Applicant's response must be properly signed by (1) the individual applicant (for joint individual applicants, both must sign) or (2) someone with legal authority to bind a juristic applicant (e.g., a corporate officer or general partner). *See* 37 C.F.R. §§2.62(b), 2.193(a), (e)(2)(ii); TMEP §§611.03(b), 611.06 *et seq.*, 712.01. If applicant retains an attorney, the attorney must sign the response. 37 C.F.R. §2.193(e)(2)(i); TMEP §§611.03(b), 712.01. The individual(s) signing must personally sign or personally enter his/her electronic signature. *See* 37 C.F.R. §2.193(a), (e)(2)(ii); TMEP §§611.01(b), 611.02.

If applicant does not respond to this Office action within six months of the issue/mailing date, or responds by expressly abandoning the application, the application process will end, the trademark will fail to register, and the application fee will not be refunded. *See* 15 U.S.C. §1062(b); 37 C.F.R. §§2.65(a), 2.68(a), 2.209(a); TMEP §§405.04, 718.01, 718.02. In such case, applicant's only option would be to file

Case 3:17-cv-00652-KDB-DSC   Document 28-22   Filed 08/30/18   Page 24 of 60

a timely petition to revive the application, which, if granted, would allow the application to return to live status. *See* 37 C.F.R. §2.66; TMEP §1714. There is a $100 fee for such petitions. *See* 37 C.F.R. §§2.6, 2.66(b)(1).

If the applicant has any questions or needs further assistance, please telephone the assigned examining attorney.

/Myriah A. Habeeb/
Myriah A. Habeeb
Trademark Examining Attorney
Law Office 105
Phone: 571.272.8909
Informal Email: Myriah.Habeeb@uspto.gov

**TO RESPOND TO THIS LETTER:** Use the Trademark Electronic Application System (TEAS) response form at http://teasroa.uspto.gov/roa/. Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov.

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/. Please keep a copy of the complete TARR screen. If TARR shows no change for more than six months, call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.

229



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Jun 6 04:35:46 EDT 2012*



Logout   Please logout when you are done to release system resources allocated for you.

Start   List At:          OR   Jump   to record:        **Record 43 out of 74**

TARR Status    ASSIGN Status    TDR    TTAB Status    *( Use the "Back" button of the Internet Browser to return to TESS)*

# BAKED LENTIL CRISPS

| | |
|---|---|
| **Word Mark** | BAKED LENTIL CRISPS |
| **Goods and Services** | (ABANDONED) IC 029. US 046. G & S: Vegetable-based snack foods |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 85137969 |
| **Filing Date** | September 24, 2010 |
| **Current Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Owner** | (APPLICANT) The Mediterranean Snack Food Company, LLC LIMITED LIABILITY COMPANY NEW JERSEY 708 Main Street Boonton NEW JERSEY 07005 |
| **Attorney of Record** | John Brooks Baldini, Esq. |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Abandonment Date** | July 4, 2011 |

|.HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Case 3:17-cv-00652-KDB-DSC   Document 28-22   Filed 08/30/18   Page 27 of 60
230

| To: | The Mediterranean Snack Food Company, LL ETC. ( trademarks@mchattielaw.com) |
|---|---|
| Subject: | U.S. TRADEMARK APPLICATION NO. 85137969 - BAKED LENTIL CRISPS - N/A |
| Sent: | 1/4/11 10:30:19 AM |
| Sent As: | ECOM102@USPTO.GOV |
| Attachments: | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |
| | Attachment - 24 |
| | Attachment - 25 |
| | Attachment - 26 |
| | Attachment - 27 |
| | Attachment - 28 |
| | Attachment - 29 |
| | Attachment - 30 |
| | Attachment - 31 |
| | Attachment - 32 |
| | Attachment - 33 |

Attachment - 34
Attachment - 35
Attachment - 36
Attachment - 37
Attachment - 38
Attachment - 39
Attachment - 40
Attachment - 41
Attachment - 42
Attachment - 43
Attachment - 44

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**APPLICATION SERIAL NO.**    85137969

**MARK:** BAKED LENTIL CRISPS

# *85137969*

**CORRESPONDENT ADDRESS:**
    JOHN BROOKS BALDINI, ESQ.
    THE MCHATTIE LAW FIRM
    550 W MAIN ST
    BOONTON, NJ 07005-1168

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/teas/eTEASpageD.htm

**APPLICANT:**    The Mediterranean Snack Food Company, LL ETC.

**CORRESPONDENT'S REFERENCE/DOCKET NO:**
    N/A

**CORRESPONDENT E-MAIL ADDRESS:**
    trademarks@mchattielaw.com

## OFFICE ACTION

### STRICT DEADLINE TO RESPOND TO THIS LETTER
TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 1/4/2011**

**TEAS PLUS APPLICANTS MUST SUBMIT DOCUMENTS ELECTRONICALLY OR SUBMIT FEE:** Applicants who filed their application online using the reduced-fee TEAS Plus application must

continue to submit certain documents online using TEAS, including responses to Office actions. *See* 37 C.F.R. §2.23(a)(1). For a complete list of these documents, see TMEP §819.02(b). In addition, such applicants must accept correspondence from the Office via e-mail throughout the examination process and must maintain a valid e-mail address. 37 C.F.R. §2.23(a)(2); TMEP §§819, 819.02(a). TEAS Plus applicants who do not meet these requirements must submit an additional fee of $50 per international class of goods and/or services. 37 C.F.R. §2.6(a)(1)(iv); TMEP §819.04. In appropriate situations and where all issues can be resolved by amendment, responding by telephone to authorize an examiner's amendment will not incur this additional fee.

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62, 2.65(a); TMEP §§711, 718.03.

### Search Clause

The Office records have been searched and there are no similar registered or pending marks that would bar registration under Trademark Act Section 2(d), 15 U.S.C. §1052(d). TMEP §704.02.

### Section 2(e)(1) – Descriptiveness Refusal

Registration is refused because the applied-for mark merely describes a feature or ingredient of applicant's goods. Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1); *see* TMEP §§1209.01(b), 1209.03 *et seq.*

In addition to being merely descriptive, the applied-for mark appears to be generic in connection with the identified goods and, therefore, incapable of functioning as a source-identifier for applicant's goods. *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987); *In re Pennzoil Prods. Co.*, 20 USPQ2d 1753 (TTAB 1991); *see* TMEP §§1209.01(c) *et seq.*, 1209.02(a). Under these circumstances, neither an amendment to proceed under Trademark Act Section 2(f) nor an amendment to the Supplemental Register can be recommended. *See* TMEP §1209.01(c).

A mark is merely descriptive if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the specified goods and/or services. TMEP §1209.01(b); *see In re Steelbuilding.com*, 415 F.3d 1293, 1297, 75 USPQ2d 1420, 1421 (Fed. Cir. 2005); *In re Gyulay*, 820 F.2d 1216, 1217-18, 3 USPQ2d 1009, 1010 (Fed. Cir. 1987).

In the instant case, the applicant seeks to register the mark BAKED LENTIL CRISPS for vegetable-based snack foods. In relation to the subject goods, the mark is merely descriptive of a feature or ingredient.

The determination of whether a mark is merely descriptive is considered in relation to the identified goods and/or services, not in the abstract. *In re Abcor Dev. Corp.*, 588 F.2d 811, 814, 200 USPQ 215, 218 (C.C.P.A. 1978); TMEP §1209.01(b); *see, e.g., In re Polo Int'l Inc.*, 51 USPQ2d 1061 (TTAB 1999) (finding DOC in DOC-CONTROL would be understood to refer to the "documents" managed by applicant's software, not "doctor" as shown in dictionary definition); *In re Digital Research Inc.*, 4 USPQ2d 1242 (TTAB 1987) (finding CONCURRENT PC-DOS merely descriptive of "computer programs recorded on disk" where relevant trade used the denomination "concurrent" as a descriptor of a particular type of operating system). "Whether consumers could guess what the product is from consideration of the mark alone is not the test." *In re Am. Greetings Corp.*, 226 USPQ 365, 366 (TTAB 1985).

As the attached "Dictionary.com" evidence shows, the terms making up the mark merely describe the goods. The term baked merely describes a manner of cooking. The term lentil describes a legume used as a food source. The term crisps is defined as a type of thinly sliced food made from various sources.

Generally, a mark that merely combines descriptive words is not registrable if the individual components retain their descriptive meaning in relation to the goods and/or services and the combination results in a composite mark that is itself descriptive. TMEP §1209.03(d); *see, e.g.*, *In re King Koil Licensing Co. Inc.*, 79 USPQ2d 1048, 1052 (TTAB 2006) (holding THE BREATHABLE MATTRESS merely descriptive of beds, mattresses, box springs and pillows where the evidence showed that the term "BREATHABLE" retained its ordinary dictionary meaning when combined with the term "MATTRESS" and the resulting combination was used in the relevant industry in a descriptive sense); *In re Associated Theatre Clubs Co.*, 9 USPQ2d 1660, 1663 (TTAB 1988) (holding GROUP SALES BOX OFFICE merely descriptive of theater ticket sales services because such wording "is nothing more than a combination of the two common descriptive terms most applicable to applicant's services which in combination achieve no different status but remain a common descriptive compound expression").

Only where the combination of descriptive terms creates a unitary mark with a unique, incongruous, or otherwise nondescriptive meaning in relation to the goods and/or services is the combined mark registrable. *See, e.g.*, *In re Colonial Stores, Inc.*, 394 F.2d 549, 551, 157 USPQ 382, 384 (C.C.P.A. 1968).

In this case, both the individual components and the composite result are descriptive of applicant's goods and/or services and do not create a unique, incongruous or nondescriptive meaning in relation to the goods and/or services. Specifically, the attached GOOGLE search database evidence shows that "baked lentil crisps" are commonly used to describe a snack food item prepared from baked lentils. Moreover, the applicant's specimens of use indicate that the goods are made from real lentils.

Thus, the mark, BAKED LENTIL CHIPS, for vegetable-based snack foods, merely describes the goods. As such, the examining attorney must refuse registration pursuant to Section 2(e)(1) of the Trademark Act.

### Informality

Applicant is advised that, if the application is amended to seek registration on the Principal Register under Trademark Act Section 2(f) or on the Supplemental Register, applicant must disclaim "CHIPS" because such wording appears to be generic in the context of applicant's goods and/or services. *See attached* "Dictionary.com" evidence. *See* 15 U.S.C. §1056(a); *In re Wella Corp.*, 565 F.2d 143, 196 USPQ 7 (C.C.P.A. 1977); *In re Creative Goldsmiths of Wash., Inc.*, 229 USPQ 766 (TTAB 1986); TMEP §1213.03(b).

The following is the accepted format for a disclaimer:

**No claim is made to the exclusive right to use "CRISPS" apart from the mark as shown.**

TMEP §1213.08(a)(i).

### Response Guidelines

Applicant should include the following information on all correspondence with the Office: (1) the name and law office number of the trademark examining attorney, (2) the serial number and filing date of the application, (3) the date of issuance of this Office action, (4) applicant's name, address, telephone number

and e-mail address (if applicable), and (5) the mark. 37 C.F.R. §2.194(b)(1); TMEP §302.03(a).


/Matthew C. Kline/
Trademark Attorney
Law Office 103
(571) 272-9454


**TO RESPOND TO THIS LETTER:** Use the Trademark Electronic Application System (TEAS) response form at http://teasroa.uspto.gov/roa/. Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov.

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/. Please keep a copy of the complete TARR screen. If TARR shows no change for more than six months, call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Jun 6 04:35:46 EDT 2012*



| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At:        OR  Jump  to record:        **Record 3 out of 50**

| TARR Status | ASSIGN Status | TDR | TTAB Status | ( Use the "Back" button of the Internet

Browser to return to TESS)

# LEAN CRISPS

| | |
|---|---|
| **Word Mark** | LEAN CRISPS |
| **Goods and Services** | (ABANDONED) IC 029. US 046. G & S: Processed eggs; Protein based, nutrient-dense snack foods |
| | (ABANDONED) IC 030. US 046. G & S: Cookies and crackers |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 85366053 |
| **Filing Date** | July 7, 2011 |
| **Current Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Owner** | (APPLICANT) John Miller INDIVIDUAL UNITED STATES 23644 Maple Springs Dr. Diamond Bar CALIFORNIA 91765 |
| **Attorney of Record** | Jeffrey Jue |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Abandonment Date** | April 26, 2012 |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Case 3:17-cv-00652-KDB-DSC   Document 28-22   Filed 08/30/18   Page 34 of 60
237

| | |
|---|---|
| **To:** | John Miller (jjue@catalystipgroup.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 85366053 - LEAN CRISPS - JCM02 |
| **Sent:** | 10/25/2011 6:09:40 PM |
| **Sent As:** | ECOM117@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**APPLICATION SERIAL NO.**   85366053

**MARK**: LEAN CRISPS

**CORRESPONDENT ADDRESS**:
    JEFFREY JUE
    797 VIA SOMONTE
    PALOS VERDES ESTATES, CA 90274-1629

# *85366053*

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

**APPLICANT**:    John Miller

**CORRESPONDENT'S REFERENCE/DOCKET NO**:
    JCM02
**CORRESPONDENT E-MAIL ADDRESS**:
    jjue@catalystipgroup.com

# OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER
TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 10/25/2011**

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

### Search of the Office Records

The trademark examining attorney has searched the Office's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d). TMEP §704.02; *see* 15 U.S.C. §1052(d).

### Refusal to Register-Mark is Merely Descriptive
Registration is refused because the applied-for mark merely describes a feature of the applicant's goods.. Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1); *see* TMEP §§1209.01(b), 1209.03 *et seq.*

A mark is merely descriptive if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the specified goods and/or services. TMEP §1209.01(b); *see In re Steelbuilding.com*, 415 F.3d 1293, 1297, 75 USPQ2d 1420, 1421 (Fed. Cir. 2005); *In re Gyulay*, 820 F.2d 1216, 1217-18, 3 USPQ2d 1009, 1010 (Fed. Cir. 1987).

The determination of whether a mark is merely descriptive is considered in relation to the identified goods and/or services, not in the abstract. *In re Abcor Dev. Corp.*, 588 F.2d 811, 814, 200 USPQ 215, 218 (C.C.P.A. 1978); TMEP §1209.01(b); *see, e.g.*, *In re Polo Int'l Inc.*, 51 USPQ2d 1061 (TTAB 1999) (finding DOC in DOC-CONTROL would be understood to refer to the "documents" managed by applicant's software, not "doctor" as shown in dictionary definition); *In re Digital Research Inc.*, 4 USPQ2d 1242 (TTAB 1987) (finding CONCURRENT PC-DOS merely descriptive of "computer programs recorded on disk" where relevant trade used the denomination "concurrent" as a descriptor of a particular type of operating system). "Whether consumers could guess what the product is from consideration of the mark alone is not the test." *In re Am. Greetings Corp.*, 226 USPQ 365, 366 (TTAB 1985).

The applicant seeks to register LEAN CRISPS for use on processed eggs; protein based, nutrient-dense snack foods and cookies and crackers.

Generally, a mark that merely combines descriptive words is not registrable if the individual components retain their descriptive meaning in relation to the goods and/or services and the combination results in a composite mark that is itself descriptive. TMEP §1209.03(d); *see, e.g.*, *In re King Koil Licensing Co. Inc.*, 79 USPQ2d 1048, 1052 (TTAB 2006) (holding THE BREATHABLE MATTRESS merely descriptive of beds, mattresses, box springs and pillows where the evidence showed that the term "BREATHABLE"

239

retained its ordinary dictionary meaning when combined with the term "MATTRESS" and the resulting combination was used in the relevant industry in a descriptive sense); *In re Associated Theatre Clubs Co.*, 9 USPQ2d 1660, 1663 (TTAB 1988) (holding GROUP SALES BOX OFFICE merely descriptive of theater ticket sales services because such wording "is nothing more than a combination of the two common descriptive terms most applicable to applicant's services which in combination achieve no different status but remain a common descriptive compound expression").

Only where the combination of descriptive terms creates a unitary mark with a unique, incongruous, or otherwise nondescriptive meaning in relation to the goods and/or services is the combined mark registrable. *See, e.g., In re Colonial Stores, Inc.*, 394 F.2d 549, 551, 157 USPQ 382, 384 (C.C.P.A. 1968).

As set forth in the attached definitions, the term "LEAN" is an adjective that is defined as "containing little or no fat" and "CRISP" is a noun that is defined as "something crisp or easily crumbled." Both the individual components "LEAN" and "CRISPS" and the composite result "LEAN CRISPS" are descriptive of applicant's goods and/or services and do not create a unique, incongruous or nondescriptive meaning in relation to the goods and/or services. Specifically, they immediately describe two significant features of the applicant's goods.

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration.

### Supplemental Register Advisory
A mark in an application under Trademark Act Section 1(b) is not eligible for registration on the Supplemental Register until an acceptable amendment to allege use under 37 C.F.R. §2.76 has been filed. 37 C.F.R. §§2.47(d), 2.75(b); TMEP §§815.02, 1102.03. When a Section 1(b) application is successfully amended to the Supplemental Register, the effective filing date of the application will be the date on which applicant met the minimum filing requirements of 37 C.F.R. §2.76(e) for the amendment to allege use. 37 C.F.R. §2.75(b); TMEP §§816.02, 1102.03.

### Disclaimer
Applicant is advised that, if the application is amended to seek registration on the Principal Register under Trademark Act Section 2(f) or on the Supplemental Register, applicant must disclaim "CRISPS" because such wording appears to be generic in the context of applicant's goods and/or services. *See* 15 U.S.C. §1056(a); *In re Wella Corp.*, 565 F.2d 143, 196 USPQ 7 (C.C.P.A. 1977); *In re Creative Goldsmiths of Wash., Inc.*, 229 USPQ 766 (TTAB 1986); TMEP §1213.03(b).

The following is the standardized format for a disclaimer:

**No claim is made to the exclusive right to use "CRISPS" apart from the mark as shown.**

TMEP §1213.08(a)(i).

**TEAS PLUS APPLICANTS MUST SUBMIT DOCUMENTS ELECTRONICALLY OR SUBMIT**

**FEE:** Applicants who filed their application online using the reduced-fee TEAS Plus application must continue to submit certain documents online using TEAS, including responses to Office actions. *See* 37 C.F.R. §2.23(a)(1). For a complete list of these documents, see TMEP §819.02(b). In addition, such applicants must accept correspondence from the Office via e-mail throughout the examination process and must maintain a valid e-mail address. 37 C.F.R. §2.23(a)(2); TMEP §§819, 819.02(a). TEAS Plus applicants who do not meet these requirements must submit an additional fee of $50 per international class of goods and/or services. 37 C.F.R. §2.6(a)(1)(iv); TMEP §819.04. In appropriate situations and where all issues can be resolved by amendment, responding by telephone to authorize an examiner's amendment will not incur this additional fee.

/Patty Evanko/
Trademark Attorney
Law Office 117
571-272-9404
patty.evanko@uspto.gov (questions only)

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/. Please keep a copy of the complete TARR screen. If TARR shows no change for more than six months, call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.

242



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Jun 6 04:35:46 EDT 2012*



Logout Please logout when you are done to release system resources allocated for you.

Start List At:    OR Jump to record:    **Record 1 out of 50**

TARR Status | ASSIGN Status | TDR | TTAB Status    *( Use the "Back" button of the Internet Browser to return to TESS)*

# Parmesan Crisps

| | |
|---|---|
| **Word Mark** | PARMESAN CRISPS |
| **Goods and Services** | IC 005. US 006 018 044 046 051 052. G & S: Wheat-free and gluten-free cheese cracker for the treatment of special medical and health conditions. FIRST USE: 20060625. FIRST USE IN COMMERCE: 20060705 |
| | IC 029. US 046. G & S: Cheese food. FIRST USE: 20060625. FIRST USE IN COMMERCE: 20060705 |
| | IC 030. US 046. G & S: Cookies and crackers; Cracker and cheese combinations. FIRST USE: 20060625. FIRST USE IN COMMERCE: 20060705 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 85548127 |
| **Filing Date** | February 21, 2012 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Owner** | (APPLICANT) Kitchen Table Bakers DBA Kitchen Table Bakers LIMITED LIABILITY COMPANY NEW YORK 41 PRINCETON DR SYOSSET NEW YORK 11791 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

Case 3:17-cv-00652-KDB-DSC   Document 28-22   Filed 08/30/18   Page 40 of 60
243

| To: | Kitchen Table Bakers (snovick@kitchentablebakers.com) |
|---|---|
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 85548127 - PARMESAN CRISPS - N/A |
| **Sent:** | 6/2/2012 11:22:05 AM |
| **Sent As:** | ECOM102@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |
| | Attachment - 24 |
| | Attachment - 25 |
| | Attachment - 26 |
| | Attachment - 27 |
| | Attachment - 28 |
| | Attachment - 29 |
| | Attachment - 30 |
| | Attachment - 31 |
| | Attachment - 32 |
| | Attachment - 33 |
| | Attachment - 34 |

Attachment - 35
Attachment - 36
Attachment - 37
Attachment - 38
Attachment - 39
Attachment - 40
Attachment - 41
Attachment - 42
Attachment - 43
Attachment - 44
Attachment - 45
Attachment - 46
Attachment - 47
Attachment - 48
Attachment - 49
Attachment - 50
Attachment - 51
Attachment - 52
Attachment - 53
Attachment - 54
Attachment - 55
Attachment - 56
Attachment - 57
Attachment - 58
Attachment - 59
Attachment - 60

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**APPLICATION SERIAL NO.**   85548127

**MARK**: PARMESAN CRISPS

**CORRESPONDENT ADDRESS**:
KITCHEN TABLE BAKERS
KITCHEN TABLE BAKERS
41 PRINCETON DR
SYOSSET, NY 11791-6741

**APPLICANT**:   Kitchen Table Bakers

# *85548127*

**CLICK HERE TO RESPOND TO THIS LETTI**
http://www.uspto.gov/trademarks/teas/response_forms.j

CORRESPONDENT'S REFERENCE/DOCKET NO :
  N/A
CORRESPONDENT E-MAIL ADDRESS:
  snovick@kitchentablebakers.com

*OFFICE ACTION*

# STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST
RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE
ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 6/2/2012**

### Section 2(e)(1) Refusal

Registration is refused because the applied-for mark merely describes an ingredient and feature of
applicant's goods. Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1); *see* TMEP §§1209.01(b),
1209.03 et seq.

A mark is merely descriptive if it describes an ingredient, quality, characteristic, function, feature, purpose
or use of the specified goods and/or services. TMEP §1209.01(b); *see In re Steelbuilding.com*, 415 F.3d
1293, 1297, 75 USPQ2d 1420, 1421 (Fed. Cir. 2005); *In re Gyulay*, 820 F.2d 1216, 1217-18, 3 USPQ2d
1009, 1010 (Fed. Cir. 1987).

The determination of whether a mark is merely descriptive is considered in relation to the identified goods
and/or services, not in the abstract. *In re Abcor Dev. Corp.*, 588 F.2d 811, 814, 200 USPQ 215, 218
(C.C.P.A. 1978); TMEP §1209.01(b); see, e.g., *In re Polo Int'l Inc* ., 51 USPQ2d 1061 (TTAB 1999)
(finding DOC in DOC-CONTROL would be understood to refer to the "documents" managed by
applicant's software, not "doctor" as shown in dictionary definition); In re Digital Research Inc., 4
USPQ2d 1242 (TTAB 1987) (finding CONCURRENT PC-DOS merely descriptive of "computer
programs recorded on disk" where relevant trade used the denomination "concurrent" as a descriptor of a
particular type of operating system). "Whether consumers could guess what the product is from
consideration of the mark alone is not the test." *In re Am. Greetings Corp.*, 226 USPQ 365, 366 (TTAB
1985). In other words, when consumers see the proposed mark placed on the goods or in an advertisement
for the services, they will simply perceive it as conveying a descriptive characteristic of the goods and/or
services and will not perceive it as a source indicator for the goods and/or services.

"A mark may be merely descriptive even if it does not describe the 'full scope and extent' of the
applicant's goods or services." *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1173, 71 USPQ2d 1370,
1371 (Fed. Cir. 2004) (citing *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1346, 57 USPQ2d
1807, 1812 (Fed. Cir. 2001)); TMEP §1209.01(b). It is enough if the term describes only one significant
function, attribute or property. *In re Oppedahl*, 373 F.3d at 1173, 71 USPQ2d at 1371; TMEP
§1209.01(b).

The mere combination of descriptive words does not automatically create a new nondescriptive word or

phrase. *See, e.g., In re Tower Tech, Inc.*, 64 USPQ2d 1314 (TTAB 2002) (holding SMARTTOWER merely descriptive of "commercial and industrial cooling towers and accessories therefor, sold as a unit"); *In re Sun Microsystems, Inc.*, 59 USPQ2d 1084 (TTAB 2001) (holding AGENTBEANS merely descriptive of "computer software for use in development and deployment of application programs on a global computer network"); *In re Copytele, Inc.*, 31 USPQ2d 1540 (TTAB 1994) (holding SCREEN FAX PHONE merely descriptive of facsimile terminals employing electrophoretic displays); *In re Entenmann's, Inc .*, 15 USPQ2d 1750 (TTAB 1990) (holding OATNUT merely descriptive of bread containing oats and hazelnuts), *aff'd per curia* m, 928 F.2d 411 (Fed. Cir. 1991).

Applicant's proposed mark is PARMESAN CRISPS for various food items. Applicant's identification of goods indicates that cheese is an ingredient of the goods in each class. The term PARMESAN describes an ingredient of the goods. Further, the term CRISPS merely describes a feature of the goods, namely, that the goods are crisp.[1] Consumers are accustomed to viewing the terms in the mark in connection with the crackers and therefore will view the proposed mark as descriptive and not a source indicator.[2]

In this case, the combination of the descriptive words creates no incongruity, and no imagination is required to understand the nature of the goods. Consequently, the proposed mark is refused registration because it is descriptive under Section 2(e)(1) of the Trademark Act. Although applicant's mark has been refused registration, applicant may respond to the refusal by submitting evidence and arguments in support of registration.

In addition to being merely descriptive, the applied-for mark appears to be generic in connection with the identified goods and, therefore, incapable of functioning as a source-identifier for applicant's goods. *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987); *In re Pennzoil Prods. Co.*, 20 USPQ2d 1753 (TTAB 1991); *see* TMEP §§1209.01(c) *et seq.*, 1209.02(a). Under these circumstances, neither an amendment to proceed under Trademark Act Section 2(f) nor an amendment to the Supplemental Register can be recommended. *See* TMEP §1209.01(c).

If applicant responds to the refusal noted above, applicant must respond timely and completely to the issue below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62, 2.65(a); TMEP §§711, 718.03.

**Information Requirement**

Applicant must answer the inquiry below to permit proper examination of the application. *See* 37 C.F.R. §2.61(b); TMEP §§814, 1402.01(e).

1. Will the goods include parmesan cheese?
2. Describe the "cheese food" goods in class 29.

Failure to respond to a request for information can be grounds for refusing registration. TMEP §814; *see In re Cheezwhse.com, Inc.*, 85 USPQ2d 1917, 1919 (TTAB 2008); *In re DTI P'ship LLP* , 67 USPQ2d 1699, 1701-02 (TTAB 2003). Merely stating that information about the goods or services is available on applicant's website is an inappropriate response to a request for additional information, and is insufficient to make the relevant information of record. *See In re Planalytics, Inc.*, 70 USPQ2d 1453, 1457-58 (TTAB 2004).

**Specimens**

The specimens do not show the applied-for mark used in connection with any of the goods specified in the

application. An application based on Trademark Act Section 1(a) must include a specimen showing the applied-for mark in use in commerce for each class of goods and/or services. Trademark Act Sections 1 and 45, 15 U.S.C. §§1051, 1127; 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a); TMEP §§904, 904.07(a).

In this case, the specimens consist of two items. One item appears to be information about the applicant along with a phone number. The mark does not appear on this item. The second item is not legible. It appears to be a plastic package but it cannot be determined what are the goods or if the mark appears on the package. Applicant is reminded that it must submit a specimen for each class of goods. Therefore, applicant must submit the following:

> (1) A substitute specimen showing the mark in use in commerce for each class of goods specified in the application; and

> (2) The following statement, verified with an affidavit or signed declaration under 37 C.F.R. §2.20: "**The substitute specimen was in use in commerce at least as early as the filing date of the application.**" 37 C.F.R. §2.59(a); TMEP §904.05; *see* 37 C.F.R. §2.193(e)(1). If submitting a substitute specimen requires an amendment to the dates of use, applicant must also verify the amended dates. 37 C.F.R. §2.71(c); TMEP §904.05.

Examples of specimens for goods are tags, labels, instruction manuals, containers, photographs that show the mark on the actual goods or packaging, or displays associated with the actual goods at their point of sale. *See* TMEP §§904.03 *et seq.*

If applicant cannot satisfy the above requirements, applicant may amend the application from a use in commerce basis under Section 1(a) to an intent to use basis under Section 1(b), for which no specimen is required. *See* TMEP §806.03(c). However, if applicant amends the basis to Section 1(b), registration will not be granted until applicant later amends the application back to use in commerce by filing an acceptable allegation of use with a proper specimen. *See* 15 U.S.C. §1051(c), (d); 37 C.F.R. §§2.76, 2.88; TMEP §1103.

To amend to Section 1(b), applicant must submit the following statement, verified with an affidavit or signed declaration under 37 C.F.R. §2.20: "**Applicant has had a bona fide intention to use the mark in commerce on or in connection with the goods listed in the application as of the filing date of the application.**" 37 C.F.R. §2.34(a)(2); TMEP §806.01(b); *see* 15 U.S.C. §1051(b); 37 C.F.R. §§2.35(b)(1), 2.193(e)(1).

Pending receipt of a proper response, registration is refused because the specimen does not show the applied-for mark in use in commerce as a trademark mark for the identified goods. Trademark Act Sections 1 and 45, 15 U.S.C. §§1051, 1127; 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a); TMEP §§904, 904.07(a).


**TEAS PLUS APPLICANTS MUST SUBMIT DOCUMENTS ELECTRONICALLY OR SUBMIT FEE:** Applicants who filed their application online using the reduced-fee TEAS Plus application must continue to submit certain documents online using TEAS, including responses to Office actions. *See* 37 C.F.R. §2.23(a)(1). For a complete list of these documents, see TMEP §819.02(b). In addition, such applicants must accept correspondence from the Office via e-mail throughout the examination process and must maintain a valid e-mail address. 37 C.F.R. §2.23(a)(2); TMEP §§819, 819.02(a). TEAS Plus

applicants who do not meet these requirements must submit an additional fee of $50 per international class of goods and/or services. 37 C.F.R. §2.6(a)(1)(iv); TMEP §819.04. In appropriate situations and where all issues can be resolved by amendment, responding by telephone to authorize an examiner's amendment will not incur this additional fee.

/Christopher Buongiorno/
Christopher Buongiorno, Attorney
Law Office 102
(571) 272-9251
christopher.buongiorno@uspto.gov

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/. Please keep a copy of the complete TARR screen. If TARR shows no change for more than six months, call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.

---

[1] *See* attached dictionary definition of the term "crisps" retrieved from http://www.collinsdictionary.com on June 2, 2012.

[2] *See* attachments retrieved from a search on www.google.com performed on June 2, 2012.

250



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Jun 6 04:35:46 EDT 2012*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At:    OR  Jump  to record:    **Record 21 out of 50**

| TARR Status | ASSIGN Status | TDR | TTAB Status | ( Use the "Back" button of the Internet Browser to return to TESS)



SAN FRANCISCO SOURDOUGH CRISPS

| | |
|---|---|
| **Word Mark** | SAN FRANCISCO SOURDOUGH CRISPS |
| **Goods and Services** | IC 030. US 046. G & S: Bakery products. FIRST USE: 20111118. FIRST USE IN COMMERCE: 20111118 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 85320220 |
| **Filing Date** | May 13, 2011 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Date Amended to Current Register** | December 1, 2011 |
| **Registration Number** | 4094814 |
| **Registration Date** | January 31, 2012 |
| **Owner** | (REGISTRANT) Boudin IP, Inc. CORPORATION DELAWARE 221 Main Street, Suite 1250 San Francisco CALIFORNIA 94105 |
| **Attorney of Record** | Karen S. Frank |
| **Type of Mark** | TRADEMARK |
| **Register** | SUPPLEMENTAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

| To: | Boudin IP, Inc. (tm@cpdb.com) |
|---|---|
| Subject: | U.S. TRADEMARK APPLICATION NO. 85320220 - SAN FRANCISCO SOURDOUGH CRISPS - 03225-005 |
| Sent: | 6/24/2011 2:20:34 PM |
| Sent As: | ECOM110@USPTO.GOV |
| Attachments: | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**APPLICATION SERIAL NO.** 85320220

**MARK**: SAN FRANCISCO SOURDOUGH CRISPS

# *85320220*

**CORRESPONDENT ADDRESS**:
KAREN S. FRANK
COBLENTZ, PATCH, DUFFY & BASS, LLP
1 FERRY BUILDING STE 200
SAN FRANCISCO, CA 94111-4213

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

**APPLICANT**: Boudin IP, Inc.

**CORRESPONDENT'S REFERENCE/DOCKET NO**:
03225-005
**CORRESPONDENT E-MAIL ADDRESS**:
tm@cpdb.com

# OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

## SUMMARY OF ISSUES

- **Mark is Merely Descriptive**
### SECTION 2(e)(1) REFUSAL – MERELY DESCRIPTIVE

Registration is refused because the applied-for mark merely describes an feature and ingredient of applicant's goods and/or services. Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1); see TMEP §§1209.01(b), 1209.03 et seq.

A mark is merely descriptive if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the specified goods or services. TMEP §1209.01(b); see In re Steelbuilding.com, 415 F.3d 1293, 1297, 75 USPQ2d 1420, 1421 (Fed. Cir. 2005); In re Gyulay, 820 F.2d 1216, 1217-18, 3 USPQ2d 1009, 1010 (Fed. Cir. 1987). Moreover, a mark that identifies a group of users to whom an applicant directs its goods and/or services is also merely descriptive. TMEP §1209.03(i); see In re Planalytics, Inc., 70 USPQ2d 1453, 1454 (TTAB 2004).

Two major reasons for not protecting descriptive marks are (1) to prevent the owner of a descriptive mark from inhibiting competition in the marketplace and (2) to avoid the possibility of costly infringement suits brought by the trademark or service mark owner. In re Abcor Dev. Corp., 588 F.2d 811, 813, 200 USPQ 215, 217 (C.C.P.A. 1978); TMEP §1209. Businesses and competitors should be free to use descriptive language when describing their own goods and/or services to the public in advertising and marketing materials. See In re Styleclick.com Inc., 58 USPQ2d 1523, 1527 (TTAB 2001).

Generally, a mark that merely combines descriptive words is not registrable if the individual components retain their descriptive meaning in relation to the goods and/or services and the combination results in a composite mark that is itself descriptive. TMEP §1209.03(d); see, e.g., In re King Koil Licensing Co. Inc., 79 USPQ2d 1048, 1052 (TTAB 2006) (holding THE BREATHABLE MATTRESS merely descriptive of beds, mattresses, box springs and pillows where the evidence showed that the term "BREATHABLE" retained its ordinary dictionary meaning when combined with the term "MATTRESS" and the resulting combination was used in the relevant industry in a descriptive sense); In re Associated Theatre Clubs Co., 9 USPQ2d 1660, 1663 (TTAB 1988) (holding GROUP SALES BOX OFFICE merely descriptive of theater ticket sales services because such wording "is nothing more than a combination of the two common descriptive terms most applicable to applicant's services which in combination achieve no different status but remain a common descriptive compound expression").

Only where the combination of descriptive terms creates a unitary mark with a unique, incongruous, or otherwise nondescriptive meaning in relation to the goods and/or services is the combined mark registrable. See, e.g., In re Colonial Stores, Inc., 394 F.2d 549, 551, 157 USPQ 382, 384 (C.C.P.A. 1968).

In this case, both the individual components and the composite result are descriptive of applicant's goods and/or services and do not create a unique, incongruous or nondescriptive meaning in relation to the goods and/or services. Specifically, SAN FRANCISCO is where the goods originate and SOURDOUGH CRISPS is what the goods are. The wording is merely descriptive of the goods.

Accordingly, the mark is refused based on 2(e)(1) of the Trademark Act.

Although the examining attorney has refused registration, the applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

## SUPPLEMENTAL REGISTER

A mark in an application under Trademark Act Section 1(b) is not eligible for registration on the Supplemental Register until an acceptable amendment to allege use under 37 C.F.R. §2.76 has been filed. 37 C.F.R. §§2.47(d), 2.75(b), 2.76(b), (c); TMEP §§815.02, 1102.03. When a Section 1(b) application is successfully amended to the Supplemental Register, the effective filing date of the application will be the date applicant met the minimum filing requirements of 37 C.F.R. §2.76(e) for the amendment to allege use. 37 C.F.R. §2.75(b); TMEP §§206.01, 816.02, 1102.03, 1104.01.

### CONTACT THE EXAMINING ATTORNEY

If applicant has questions regarding this Office action, please telephone or e-mail the assigned trademark examining attorney. All relevant e-mail communications will be placed in the official application record; however, an e-mail communication will not be accepted as a response to this Office action and will not extend the deadline for filing a proper response. *See* 37 C.F.R. §2.191; TMEP §§709.04-.05. Further, although the trademark examining attorney may provide additional explanation pertaining to the refusal(s) and/or requirement(s) in this Office action, the trademark examining attorney may not provide legal advice or statements about applicant's rights. *See* TMEP §§705.02, 709.06.

*/Dezmona J. Mizelle-Howard/*
Dezmona J. Mizelle-Howard
Dezmona.Mizelle@uspto.gov
United States Patent and Trademark Office
Law Office 110
571.272.9368

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/. Please keep a copy of the complete TARR screen. If TARR shows no change for more than six months, call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.




LAW
LIBRARY

# Merriam-Webster's Collegiate® Dictionary

## ELEVENTH EDITION



Merriam-Webster, Incorporated
Springfield, Massachusetts, U.S.A.

0 |77/0|5
b 15729734



## A GENUINE MERRIAM-WEBSTER

The name *Webster* alone is no guarantee of excellence. It is used by a number of publishers and may serve mainly to mislead an unwary buyer.

*Merriam-Webster™* is the name you should look for when you consider the purchase of dictionaries or other fine reference books. It carries the reputation of a company that has been publishing since 1831 and is your assurance of quality and authority.

Copyright © 2004 by Merriam-Webster, Incorporated

Library of Congress Cataloging in Publication Data

Merriam-Webster's collegiate dictionary. — Eleventh ed.
    p.    cm.
    Includes index.
    ISBN 0-87779-807-9 (Laminated unindexed : alk. paper). — ISBN 0-87779-808-7 (Jacketed hardcover unindexed : alk. paper). — ISBN 0-87779-809-5 (Jacketed hardcover with CD-ROM : alk. paper). — ISBN 0-87779-810-9 (Leatherlook with CD-ROM : alk. paper). — 0-87779-813-3 (Canadian). — 0-87779-814-1 (international).
    1. English language—Dictionaries. I. Title: Collegiate dictionary. II. Merriam-Webster, Inc.
  PE1628.M36    2003
  423—dc21
                        2003003674
                            CIP

Merriam-Webster's Collegiate® Dictionary, Eleventh Edition, principal copyright 2003

COLLEGIATE is a registered trademark of Merriam-Webster, Incorporated

All rights reserved. No part of this book covered by the copyrights hereon may be reproduced or copied in any form or by any means—graphic, electronic, or mechanical, including photocopying, taping, or information storage and retrieval systems—without written permission of the publisher.

Made in the United States of America

456TT:QWV04

The

A 1

crim con abbr criminal conversation

crime \'krīm\ n [ME, fr. AF, fr. L crimen accusation, reproach, crime; prob. akin to L cernere to sift, determine] (14c) 1 : an act or the commission of an act that is forbidden or the omission of a duty that is commanded by a public law and that makes the offender liable to punishment by that law; esp : a gross violation of law 2 : a grave offense esp. against morality 3 : criminal activity <efforts to fight ~> 4 : something reprehensible, foolish, or disgraceful <it's a ~ to waste good food> syn see OFFENSE — crime·less \-ləs\ adj

crime against humanity (1945) : atrocity (as extermination or enslavement) that is directed esp. against an entire population or part of a population on specious grounds and without regard to individual guilt or responsibility even on such grounds

crime against nature (1828) : SODOMY

crim·i·nal \'krim-ə-n'l, 'krim-nəl\ adj [ME, fr. AF or LL: AF criminal, fr. LL criminalis, fr. L crimin-, crimen crime] (15c) 1 : relating to, involving, or being a crime <~ neglect> 2 : relating to crime or to the prosecution of suspects in a crime <~ statistics> <brought ~ action> 3 : guilty of crime; also : of or befitting a criminal <a ~ mind> 4 : DISGRACEFUL, SHAMEFUL — crim·i·nal·ly adv

²criminal n (ca. 1626) 1 : one who has committed a crime 2 : a person who has been convicted of a crime

criminal conversation n (1732) : adultery considered as a tort

criminal court n (1678) : a court that has jurisdiction to try and punish offenders against criminal law

crim·i·nal·ist \'kri-mə-n'l-ist, -nə-list\ n (1951) : a specialist in criminalistics

crim·i·nal·is·tics \,kri-mə-n'l-'is-tiks, ,krim-ə-'lis-\ n pl but sing in constr (1943) : application of scientific techniques in collecting and analyzing physical evidence in criminal cases

crim·i·nal·i·ty \,kri-mə-'na-lə-tē\ n (1611) 1 : the quality or state of being criminal 2 : criminal activity <urban ~>

crim·i·nal·ize \'kri-mə-n'l-,īz, 'krim-ə-,līz\ vt -ized; -iz·ing (ca. 1956) 1 : to make illegal : OUTLAW; also 2 : to turn into a criminal or treat as criminal — crim·i·nal·i·za·tion \,kri-mə-n'l-ə-'zā-shən, ,krim-nə-lə-'zā-\ n

criminal law (1769) : the law of crimes and their punishments

criminal lawyer n (1869) : a lawyer who specializes in criminal law; esp : a lawyer who represents defendants in criminal cases

crim·i·nate \'kri-mə-,nāt\ vt -nat·ed; -nat·ing [L criminatus, pp. of criminari, fr. crimin-, crimen accusation] (1645) : INCRIMINATE — crim·i·na·tion \,kri-mə-'nā-shən\ n

crimini var of CREMINI

crim·i·nol·o·gy \,kri-mə-'nä-lə-jē\ n [It criminalogia, fr. L crimin-, crimen + It -o- + -logia -logy] (1882) : the scientific study of crime as a social phenomenon, of criminals, and of penal treatment — crim·i·no·log·i·cal \-mə-n'l-'ä-ji-kəl\ adj — crim·i·no·log·i·cal·ly \-k(ə-)lē\ adv — crim·i·nol·o·gist \,kri-mə-'nä-lə-jist\ n

crim·ny \'krim-nə-nē, 'krī-\ interj [perh. alter. of Jiminy, gemini, mild oath, prob. euphemism for LL Jesu domine Jesus Lord] (1681) — used as a mild oath or to express surprise

¹crimp \'krimp\ vt [D or LG krimpen to shrivel; akin to MD crampe hook, cramp] (1712) 1 : to cause to become wavy, bent, or pinched as a : to form (leather) into a desired shape b : to give (synthetic fibers) a curl or wave like that of natural fibers c : to pinch or press together (as the margins of a pie crust) in order to seal 2 : to be an inhibiting or restraining influence on : CRAMP <sales had been ~ed by credit controls> — crimp·er \'krim-pər\ n

²crimp n (1863) 1 : something produced by or as if by crimping as a : a section of hair artificially waved or curled b : a succession of waves (as in wool fiber) 2 : a bend or crease formed in something 2 : something that cramps or inhibits : RESTRAINT, CURB

³crimp n [perh. fr. ¹crimp] (1758) : a person who entraps or forces men into shipping as sailors or into enlisting in an army or navy

⁴crimp n (1812) : to trap into military or sea service : IMPRESS

crimpy \'krim-pē\ adj crimp·i·er; -est (1883) : FRIZZY

¹crim·son \'krim-zən\ n [ME crimisin, fr. OSp cremesin, fr. Ar qirmizī kermes] (15c) 1 : CRIMINAL

²crimson n (1601) 1 : any of several deep purplish reds

³crimson adj (1601) : to make crimson — adj : BLUSH

crimson clover n (1839) : an annual European clover (Trifolium incarnatum) that has cylindrical heads of crimson flowers and is cultivated in the U.S. esp. as a cover crop

¹cringe \'krinj\ vi cringed; cring·ing [ME crengen; akin to OE cringan to yield, MHG krimpf weak] (13c) 1 : to draw in or contract one's muscles involuntarily (as from cold or pain) 2 : to shrink in fear or servility 3 : to behave in an excessively humble or servile way 4 : to recoil in distaste <Americans cringed ... at the use of a term now regarded as a slur —William Safire> syn see FAWN — cring·er n

²cringe n (1597) : a cringing act; specif : a servile bow

¹crin·gle \'kriŋ-gəl\ n [LG kringel, dim. of kring ring] (1627) : a loop or grommet at the corner of a sail to which a line is attached

¹crin·kle \'kriŋ-kəl\ vb crin·kled; crin·kling \-k(ə-)liŋ\ [ME crynkelen; akin to OE cringan to yield] vt (14c) 1 a : to form many short bends or ripples b : WRINKLE 2 : to give forth a thin crackling sound : RUSTLE <crinkling silk> ~ vi : to cause to crinkle : make crinkles in

²crinkle n (1596) 1 : WRINKLE, CORRUGATION, PUCKER 2 : any of several minute creases of plants marked by crinkling of leaves — crin·kly \-k(ə-)lē\ adj

crin·oid \'kri-,noid\ n [NL, fr. Gk krinon lily] (1847) : any of a large class (Crinoidea) of echinoderms (as sea lilies and feather stars) — crinoid adj

crin·o·line \'kri-nə-lən\ n [F, fr. It crinolino & obs. It crinolino, fr. crino horsehair (fr. L crinis hair) + lino flax, fr. L linum] (1830) 1 : an open-weave fabric of horsehair or cotton used esp. for stiffening and interlinings 2 : a full stiff skirt or underskirt made of crinoline

cri·o·llo \krē-'ōl-(,)yō, -'ō-(,)yō\ n, pl -llos [Sp — more at CREOLE] (1604) 1 a : a person of pure Spanish descent born in Spanish America b : a person born and usu. raised in a Spanish-American country 2 : a domestic animal of a breed or strain (as of cattle) developed in Latin America; esp. often cap : any of a breed of hardy muscular ponies orig. developed in Argentina — criollo adj

cripes \'krīps\ interj [euphemism for Christ] (1910) — used as a mild oath

¹crip·ple \'kri-pəl\ n [ME cripel, fr. OE crypel; akin to OE crēopan to creep — more at CREEP] (bef. 12c) 1 a sometimes offensive : a lame or partly disabled person or animal b : one that is disabled or deficient in a specified manner <a social ~> 2 : something flawed or imperfect

cripple adj (13c) : being lame, flawed, or imperfect

²crip·ple vt crip·pled; crip·pling \-p(ə-)liŋ\ (14c) 1 : to deprive of the use of a limb and esp. a leg (the accident left him crippled) 2 : to deprive of capability for normal or of strength, efficiency, or wholeness <an economy crippled by inflation> syn see MAIM, WEAKEN — crip·pler \-p(ə-)lər\ n — crip·pling·ly \-p(ə-)liŋ-lē\ adv

cri·sis \'krī-səs\ n, pl cri·ses \'krī-,sēz\ [ME, fr. L, fr. Gk krisis, lit., decision, fr. krinein to decide — more at CERTAIN] (15c) 1 a : the turning point for better or worse in an acute disease or fever b : a paroxysmal attack of pain, distress, or disordered function 2 a : an emotionally significant event or radical change of status in a person's life <a midlife ~> 2 : the decisive moment (as in a literary plot) 3 a : an unstable or crucial time or state of affairs in which a decisive change is impending; esp : one with the distinct possibility of a highly undesirable outcome <a financial ~> b : a situation that has reached a critical phase (the environmental ~) syn see JUNCTURE

¹crisp \'krisp\ adj [ME, fr. OE, fr. L crispus; akin to MHG crich curly] (bef. 12c) 1 : CURLY, WAVY <a ~ head of wiry curls or waves> 2 a : easily crumbled : BRITTLE <a ~ cracker> b : desirably firm and crunchy <~ lettuce> 2 a : notably sharp, clean-cut, and clear <a ~ illustration>; also : concise and to the point <a ~ reply> b : noticeably neat <~ new clothes> c : BRISK, LIVELY <a ~ tale of intrigue <~ musical tempo> d : briskly cold <~ winter weather>; also : FRESH, INVIGORATING <~ autumn air> <a ~ white wine> e : clean and powerfully executed <a ~ tennis serve> syn see FRAGILE — crisp·ly adv — crisp·ness n

²crisp vt (14c) 1 : CURL, CRIMP 2 : to cause to ripple : WRINKLE 3 : to make or keep crisp ~ vi 1 : CURL 2 : RIPPLE 3 : to become crisp

³crisp n (14c) 1 a : something crisp or brittle <burned to a ~> <cv-~s> b chiefly Brit : POTATO CHIP — usu. used in pl. 2 : a baked dessert of fruit with crumb topping <apple ~>

crisp·bread \'krisp-,bred\ n (ca. 1927) : a plain dry unsweetened cracker made from cracked grain (as wheat or rye)

crisp·en \'kris-pən\ vt (1931) : to make crisp ~ vi : to become crisp

²crisp·er \'kris-pər\ n (1931) : one that crisps; specif : a closed container in a refrigerator intended to prevent loss of moisture from fresh produce

crisp·head \'krisp-,hed\ n (1966) : ICEBERG LETTUCE

crispy \'kris-pē\ adj crisp·i·er; -est (14c) 1 : CRISP 1 <~ hair> 2 : appealingly crunchy : CRISP <~ fried chicken> — crisp·i·ness n

¹criss·cross \'kris-,krȯs\ vb [alter. of christcross, crisscross mark of a cross] (1818) 1 : to mark with intersecting lines 2 : to pass back and forth through or over ~ vi 1 : to go or pass back and forth 2 : OVERLAP, INTERSECT

²crisscross adj (1838) : marked or characterized by crisscrossing

³crisscross adv

⁴crisscross n (1833) 1 : a crisscross pattern : NETWORK 2 : the state of being at cross-purposes; also : a confused condition

cris·ta \'kris-tə\ n, pl cris·tae \-,tē, -,tī\ [NL, fr. L crest — more at CREST] (1859) : any of the inwardly projecting folds of the inner membrane of a mitochondrion

crit abbr criticism; criticized

cri·te·ri·on \krī-'tir-ē-ən\ also \-ər-\ n, pl -ria \-ē-ə\ also -ri·ons [Gk kritērion, fr. krinein to judge, decide — more at CERTAIN] (1622) 1 : standard on which a judgment or decision may be based 2 : a characterizing mark or trait syn see STANDARD
usage The plural criteria has been used as a singular for over half a century (let me now return to the third criteria —R. M. Nixon) (literally is the criteria —Bert Lance). Many of our examples, like the two foregoing, are taken from speech. But singular criteria is not common in edited prose, and its use is both in speech and writing seen to be increasing. Only time will tell whether it will reach the unquestioned acceptability of agenda.

cri·te·ri·um \krī-'tir-ē-əm\ n [F criterium competition, criterion, fr. LL criterium, fr. Gk kritērion] (1970) : a bicycle race over a closed course a number of laps on a closed course over public roads ... to normal traffic

¹crit·ic \'kri-tik\ n [L criticus, fr. Gk kritikos, fr. kritikos able to discern or judge, fr. krinein] (1588) 1 a : one who expresses a reasoned opinion on any matter esp. involving a judgment of its value, truth, righteousness, beauty, or technique b : one who engages in often disputatious or faultfinding analysis, evaluation, or appreciation of works of art or the performances 2 : one given to harsh or captious judgment

²critic n [Gk kritikē art of the critic, fr. fem. of kritikos] (15c) 1 archaic : CRITICISM 2 archaic : CRITIQUE

crit·i·cal \'kri-ti-kəl\ adj (1547) 1 a : of, relating to, or being a turning point or specially important juncture <a ~ phase> as 1 : relating to or being the state of a disease in which an abrupt change for better or worse may be expected; also : being or relating to an illness or condition involving danger of death <~ care> <a patient in ~ condition> 2 : relating to or being a state in which or a decision in or a point where something is about to happen ... <~ temperature>


Case 3:17-cv-00652-KDB-DSC   Document 28-22   Filed 08/30/18   Page 56 of 66



**WILLIAMS-SONOMA**

**MASTER MASHER**
OXO adjustable potato ricer

**SHOP NOW ›**



Merriam-Webster

m-w.com

Word Games     Word of the Day     New Words & Slang     Video     My Favorites



Get an education

crisps                                                                 Subm

**?!**   Quiz

**Test Your Vocabulary**
Take Our 10-Question Quiz

**crisp**                                              Save     Popularity
                                                        ☆        ↘↘

crisp (verb)
crisp (noun)
potato crisp (noun)

**Are You Writing a Book?**

www.iUniverse.com

Click to learn more »



**ST. EDWARD'S**
**UNIVERSITY**

**Take on your world.**

*Save more on*

*Focus more on*

²**crisp** *noun*

                                                                 Like

1  **a:** something crisp or brittle <burned to a *crisp*> <rye *crisps*>

   **b** *chiefly British*: POTATO CHIP —usually used in plural

2  **:** a baked dessert of fruit with crumb topping <apple *crisp*>

   ⌨ See crisp defined for English-language learners »

14th century

Reuben  calamari  chuck  curry  edamame  foie gras
hummus  leaven  nonpareil  peel

**MORE QUIZZES**



**Name That Thing**
Take our visual vocab quiz
**Test Your Knowledge »**



**True or False?**
A quick quiz about stuff worth knowing
**Take It Now »**

**STAY CONNECTED**



**Join Us on FB & Twitter**
Get the Word of the Day and More
**Facebook | Twitter**

⌨Thesaurus: All synonyms and antonyms for "crisp"
⌨Spanish-English Dictionary: Translation of "crisp"



**Get Our Free Apps**
Voice Search, Favorites,
Word of the Day, and More
**iPhone | iPad | Android | More**

- Next Word in the Dictionary: crispate
- Previous Word in the Dictionary: crisis theology
- All Words Near: crisp



**Top 10 Favorite Words From**
**Foreign Languages**
Karaoke, Chutzpah, Kerfuffle & More

**❝** Sug  V 5→ gh - r **❞**

What made you want to look up *crisp*? Please tell us where you
read or heard it (including the quote, if possible).



**Thanks Mom: Top 10 Words**
**That Come From "Mother"**
Metropolis, Matrix & More

‹ ›

Case 3:17-cv-00652-KDB-DSC   Document 28-22   Filed 08/30/18   Page 57 of 60

260



Comment using...

WILLIAMS-SONOMA

20% OFF COOKWARE
+ FREE SHIPPING

**Kathleen Johnson**
One of my manager's favorite things to say is: "We have to be very crisp when we talk to xyz."
Reply  Like

**Claire Purkis**
Weird! Crisp as in an apple? A potato chip? What?!
Reply  Like

**Brad Wickes**
lol
Reply  Like

**Kathleen Johnson**
crisp as in clear, no mistakes, on point, sharp... no fuzziness... not me...
Reply  Like

View Seen & Heard highlights from around the site »

Merriam-Webster on Facebook    Like   86k

**The Merriam-Webster Unabridged Dictionary**

Online access to a legendary resource.
Log In or Sign Up »

**Learning English? We can help.**

Visit our free site designed especially for learners and teachers of English.
LearnersDictionary.com »



**Our Dictionary, On Your Devices**
Merriam-Webster with Voice Search
Get the Free Apps! »

**Visit Our Store**
- Mugs
- T-Shirts
- Baby & Toddler
- Pet Bowls
- Totes
- & More



**Join Us**
Merriam-Webster on Twitter »

Merriam-Webster on Facebook »

**Bookstore: Digital and Print**
Merriam-Webster references for Mobile Kindle, print and more. See all »

**Other Merriam-Webster Dictionaries**
Webster's Unabridged Dictionary »
WordCentral for Kids »

Learner's ESL Dictionary »
Visual Dictionary »

Home  Help  About Us  Shop  Browser Tools  Advertising Info
Privacy Policy  About Our Ads  Contact Us
© 2012 Merriam-Webster, Incorporated

Browse the Dictionary
Browse the Thesaurus
Browse the Spanish-English Dictionary
Browse the Medical Dictionary
Browse the Concise Encyclopedia

Case 3:17-cv-00652-KDB-DSC   Document 28-22   Filed 08/30/18   Page 58 of 60
261



*The*

# AMERICAN
# HERITAGE
## College

*dic·tion·ar·y*

- COMPLETELY Revised and Updated
- 7,500 New Words and Senses
- EXPERT Usage Guidance
- UP-TO-DATE Biographical and Geographical Entries
- MORE THAN 2,500 Photographs, Drawings, and Maps

Case 3:17-cv-00652-KDB-DSC   Document 28-22   Filed 08/30/18   Page 59 of 60

262

*The*
# American Heritage®
# College Dictionary

FOURTH EDITION



Houghton Mifflin Company
Boston · New York

Case 3:17-cv-00652-KDB-DSC   Document 28-22   Filed 08/30/18   Page 60 of 60

263