UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| SNYDER'S-LANCE, INC. and PRINCETON VANGUARD, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:17-CV-00652 |
| FRITO-LAY NORTH AMERICA, INC., | ) ) ) ) | |
| Defendant. | ) | |

**SNYDER'S-LANCE, INC.'S AND PRINCETON VANGUARD, LLC'S
MEMORANDUM OF LAW IN OPPOSITION TO
<u>FRITO-LAY NORTH AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT</u>**

| DEBEVOISE & PLIMPTON LLP | ELLIS & WINTERS LLP |
|---|---|
| David H. Bernstein* | Jonathan D. Sasser |
| James J. Pastore* | N.C. State Bar No. 10028 |
| Jared I. Kagan* | Alexander M. Pearce |
| Michael C. McGregor* | N.C. State Bar No. 37208 |
| 919 Third Avenue | Post Office Box 33550 |
| New York, New York 10022 | Raleigh, North Carolina 27636 |
| Telephone: (212) 909-6696 | Telephone: (919) 865-7000 |
| dhbernstein@debevoise.com | jon.sasser@elliswinters.com |
| jjpastore@debevoise.com | alex.pearce@elliswinters.com |
| jikagan@debevoise.com | |
| mcmcgregor@debevoise.com | |
| | |
| *admitted *pro hac vice* | |

*Counsel for Plaintiffs Snyder's-Lance, Inc. and Princeton Vanguard, LLC*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

PROCEDURAL HISTORY ...................................................................................................... 2

FACTUAL BACKGROUND ..................................................................................................... 5

RECORD BEFORE THE COURT ............................................................................................. 6

LEGAL STANDARDS .............................................................................................................. 7

    I.     The Court Reviews the Record *De Novo* Under 15 U.S.C. § 1071(b). ........................ 7

    II.    Frito-Lay Bears the Burden of Proving PRETZEL CRISPS Is Generic. ...................... 8

    III.   Standard for Summary Judgment .............................................................................. 10

ARGUMENT ........................................................................................................................... 10

    I.     Frito-Lay Misapplies the Primary Significance Test. .................................................. 11

    II.    Frito-Lay Fails to Carry Its Evidentiary Burden. ......................................................... 13

      A.    The Voluminous Media References Establish PRETZEL CRISPS Is Not Generic. .... 14

      B.    The Other Uses Frito-Lay Cites Are Insufficient to Carry Its Burden. ...................... 16

      C.    Frito-Lay's Own Authority Demonstrates That It Is Not Entitled to Summary
           Judgment. ............................................................................................................... 19

    III.   Frito-Lay Cannot Overcome the Substantial Evidence in the Record Demonstrating
         PRETZEL CRISPS Is a Brand. ................................................................................. 22

CONCLUSION ........................................................................................................................ 24

Case 3:17-cv-00652-KDB-DSC   Document 33   Filed 10/29/18   Page 2 of 31

# TABLE OF AUTHORITIES

**CASES**

*Ale House Mgmt. v. Raleigh Ale House*,
205 F.3d 137 (4th Cir. 2000) ........................................................................8, 9, 19

*Am. Online, Inc. v. AT&T Corp.*,
243 F.3d 812 (4th Cir. 2001) .........................................................................20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).........................................................................................10

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
135 S. Ct. 1293 (2015)......................................................................................9

*Booking.com B.V. v. Matal*,
278 F. Supp. 3d 891 (E.D. Va. 2017) ............................................................ *passim*

*Coca-Cola Co. v. Overland, Inc.*,
692 F.2d 1250 (9th Cir. 1982) ........................................................................15

*Elliott v. Google, Inc.*,
860 F.3d 1151 (9th Cir. 2017) ....................................................................15, 19

*Estate of P.E. Beckwith, Inc. v. Comm'r of Patents*,
252 U.S. 538 (1920).........................................................................................12

*Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*,
109 U.S.P.Q.2d (BNA) 1949 (T.T.A.B. 2014) ...............................................2, 18

*Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*,
124 U.S.P.Q.2d (BNA) 1184 (T.T.A.B. 2017) ...............................................3, 4

*Glover v. Ampak, Inc.*,
74 F.3d 57 (4th Cir. 1996) ..............................................................................12

*Hunt Masters, Inc. v. Landry's Seafood, Inc.*,
240 F.3d 251 (4th Cir. 2001) ...............................................................20, 22, 23

*In re ACH Direct*,
Serial No. 76523001, 2006 WL 2646012 (T.T.A.B. Aug. 28, 2006) ...............13, 15

*In re Am. Online, Inc.*,
77 U.S.P.Q.2d 1618 (T.T.A.B. 2006) .............................................................13

*In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
828 F.2d 1567 (Fed. Cir. 1987)..............................................................13, 15, 23

*In re Trek 2000 Int'l Ltd.*,
    97 U.S.P.Q.2d 1106 (T.T.A.B. 2010) ...................................................................15

*JFJ Toys, Inc. v. Sears Holdings Corp.*,
    237 F. Supp. 3d 311 (D. Md. 2017) .....................................................................21

*Kappos v. Hyatt*,
    566 U.S. 431 (2012) ...............................................................................................7

*Kellogg Co. v. Nat'l Biscuit Co.*,
    305 U.S. 111 (1938) ........................................................................................23, 24

*Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc.*,
    3:08-CV-573-HEH, 2009 WL 2013599 (E.D. Va. July 10, 2009) .........................13

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*,
    146 F.3d 983 (D.C. Cir. 1998) ...............................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .............................................................................................10

*Otter Prods. LLC v. BaseOneLabs LLC*,
    105 U.S.P.Q.2d 1252 (T.T.A.B. 2012) .................................................................10

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*,
    188 F. Supp. 3d 22 (D.D.C. 2016) ......................................................................8, 9

*Primary Children's Medical Center Foundation v. Scentsy, Inc.*,
    No. 2:11-cv-1141-TC, 2012 WL 2357729 (D. Utah June 20, 2012)......................24

*Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*
    786 F.3d 960 (Fed. Cir. 2015).......................................................................*passim*

*Retail Servs., Inc. v. Freebies Publ'g*,
    364 F.3d 535 (4th Cir. 2004) ............................................................................7, 20

*San Diego Comic Convention v. Dann Farr Prods.*,
    14-cv-1865-AJB-JMA, 2018 U.S. Dist. LEXIS 143789 (S.D. Cal. Aug. 23, 2018)..............15

*Shammas v. Focarino*,
    784 F.3d 219 (4th Cir. 2015) ..................................................................................8

*STK LLC v. Backrack, Inc.*,
    Canc'n No. 92049332, 2012 WL 2024459 (T.T.A.B. May 21, 2012) ...................17

*Swatch AG v. Beehive Wholesale, LLC*,
    739 F.3d 150 (4th Cir. 2014) ..............................................................................6, 7

iv

*Te-Ta-Ma Truth Found. — Family of Uri v. World Church of the Creator*,
    297 F.3d 662 (7th Cir. 2002) ........................................................................18, 21

*TFWS, Inc. v. Franchot*,
    572 F.3d 186 (4th Cir. 2009) ...........................................................................1

*Unique Motorcars v. Carroll Hall Shelby Trust*,
    Opp'n Nos. 91150352 and 91155242, 2009 WL 722046 (T.T.A.B. Mar. 4, 2009) ...............17

## STATUTES

15 U.S.C. § 1051 ..........................................................................................2

15 U.S.C. § 1052 ..........................................................................................2

15 U.S.C. § 1064(3) ......................................................................................12

15 U.S.C. § 1071(b) ............................................................................. *passim*

15 U.S.C. § 1091 ..........................................................................................2

## OTHER AUTHORITIES

2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (5th ed.
    2018) ....................................................................................12, 18, 22, 23

Fed. R. Civ. P. 56(a) ....................................................................................10

TMEP § 1209.01(c) ......................................................................................10

Plaintiffs Snyder's-Lance, Inc. ("Snyder's-Lance") and Princeton Vanguard, LLC ("Princeton Vanguard") respectfully submit this memorandum of law in opposition to Defendant Frito-Lay North America, Inc.'s ("Frito-Lay") motion for summary judgment. For the reasons stated below, Frito-Lay's motion should be denied.

## INTRODUCTION

Since 2009, Frito-Lay has advanced a simple but flawed theory: Because the terms "pretzels" and "crisps" each is generic for certain items, the combined term PRETZEL CRISPS must be generic for pretzel crackers. *See* Frito-Lay Br. [D.E. 28-1] at 20 ("The combination of generic terms into an equally generic composite sometimes is so obvious that little more is needed."); *id.* at 5 ("[T]he record contains overwhelming evidence that the component terms — 'pretzel' and 'crisps' — are each generic.").

The Federal Circuit, however, already has decisively rejected that legal theory in this very case. The Federal Circuit held that the correct legal analysis "requires consideration of the mark as a whole," including a full review of a record "replete with evidence of the public's perception of the term PRETZEL CRISPS as a whole." *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 969 (Fed. Cir. 2015).[1] That record already establishes that PRETZEL CRISPS is not generic but rather serves as a brand name. Additional evidence of the PRETZEL CRISPS brand's continued growth and prominence during the intervening six years only bolsters that conclusion.

In its motion for summary judgment, Frito-Lay mischaracterizes controlling law, the factual record, and the Federal Circuit's holding. It once again proffers its flawed legal theory

---

[1] The Federal Circuit's holding on this point of law is binding on the Court under the law of the case doctrine. *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009) ("[O]nce the decision of an appellate court establishes the law of the case, it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal.").

1

that, because "[t]here is no dispute that 'pretzel' is a generic term for Plaintiffs' products" and because "'[c]risps is a generic synonym for crackers," PRETZEL CRISPS also must be generic. Frito-Lay Br. at 5–6. Frito-Lay's approach mirrors that taken by the Trademark Trial and Appeal Board (the "TTAB"), and disregards the Federal Circuit's admonition that Frito-Lay "cannot focus primarily on evidence of the word 'crisps' in isolation, select a few pieces of evidence involving the combined term 'pretzel crisps,' and conclude that the trademark is generic." *Princeton Vanguard, LLC*, 786 F.3d at 970.

As authorized by 15 U.S.C. § 1071(b), Plaintiffs seek *de novo* review of the "significant evidence" in the record, *Princeton Vanguard, LLC*, 786 F.3d at 970, and ask the Court to hold that, when the mark is considered as a whole, the public primarily views the PRETZEL CRISPS mark as a brand. Under the correct legal standard, the record evidence establishes, as a matter of law, that PRETZEL CRISPS is a brand name that refers to Plaintiffs' products. Frito-Lay's motion for summary judgment should be denied.

## **PROCEDURAL HISTORY**

In 2013, the TTAB granted Frito-Lay's petition to cancel the PRETZEL CRISPS trademark from the Supplemental Register and sustained Frito-Lay's opposition to register the mark on the Principal Register.[2] *Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, 109 U.S.P.Q.2d (BNA) 1949, 1959 (T.T.A.B. 2014). The TTAB held that the PRETZEL CRISPS mark was generic after analyzing the mark's constituent terms and concluding that, because the individual terms were each separately generic, the whole mark was generic. *Id.*

A panel of the Federal Circuit unanimously reversed. It found:

---

[2] The Principal Register affords trademark protection to distinctive marks or marks that have acquired distinctiveness. *See* 15 U.S.C. §§ 1051–52. "All marks capable of distinguishing applicant's goods or services and not registrable on the principal register" may be registered on the Supplemental Register. 15 U.S.C. § 1091.

> no evidence that the Board conducted the necessary step of
> comparing its findings with respect to the individual words to the
> record evidence demonstrating the public's understanding of the
> combined term: PRETZEL CRISPS. By failing to do so, the
> Board *took the type of short-cut analysis* we have said is prohibited
> and *ignored evidence* that might compel a contrary conclusion.

*Princeton Vanguard, LLC*, 786 F.3d at 969 (emphasis added). The Federal Circuit noted that the record was "replete with evidence of the public's perception of the term PRETZEL CRISPS as a whole," and questioned "why the Board would resort to analyzing the terms individually or why it would believe doing so would aid its analysis." *Id.*

A panel of the Federal Circuit also found that the TTAB "overlooked or disregarded a genericness survey as to which it apparently found no flaw," *id.* at 971, and noted the TTAB cannot "disregard the results of survey evidence without explanation." *Id.* at 970. "Just as it may not short-cut its legal analysis, the Board may not short-cut its consideration of the factual record before it." *Id.* The Federal Circuit made clear its expectations: "On remand, the Board will have the opportunity to make the relevant factual findings based on all of the evidence of record, and must give appropriate consideration to the proffered survey evidence." *Id.* at 971.

On remand, however, the TTAB largely repeated its earlier, erroneous analysis:

- In a section of its opinion titled "Evidence of Meaning of Terms 'Pretzel' and 'Crisps,'" the TTAB once again began by dissecting the PRETZEL CRISPS mark: "In analyzing the constituent terms 'PRETZELS' and 'CRISPS,' we consider the meaning of each to the consuming public as indicated by dictionary definitions and other competent sources." *Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, 124 U.S.P.Q.2d (BNA) 1184, 1188 (T.T.A.B. 2017).

- The TTAB next considered Plaintiffs' extensive media analysis, which showed 216 articles featuring PRETZEL CRISPS as a brand name and just 36 that used the term

3

in an arguably generic fashion. The TTAB went on to quote from 30 of the 36 negative articles. It quoted none of the 216 articles that used PRETZEL CRISPS as a brand. *Id.* at 1190–94.

- As to the four unrebutted declarations Plaintiffs submitted from snack food distributors, the TTAB held, in conclusory fashion, that they were "of limited probative value" because they were from "distributors, not end consumers" of PRETZEL CRISPS. *Id.* at 1195.

- As to the expert surveys in which — as the Federal Circuit noted — the TTAB "apparently found no flaw" when it initially reviewed the evidence, the TTAB, for the first time, held that such surveys "are not relevant when a term is not inherently distinctive." *Id.* at 1196.

- The TTAB also addressed, for the first time, the issue of acquired distinctiveness, and found the PRETZEL CRISPS mark lacked secondary meaning. Although the TTAB acknowledged the "evidence regarding sales and advertising is impressive," it relied on the surveys that it refused to consider on the genericness issue in holding that evidence "undercut" the "impressive" sales and advertising expenditures associated with the PRETZEL CRISPS brand. *Id.* at 1205.

In light of these multiple errors, Plaintiffs filed this action pursuant to 15 U.S.C. § 1071(b) seeking *de novo* review of the TTAB's 2017 decision, and an opportunity to supplement the record with six additional years of unsolicited media attention garnered by the PRETZEL CRISPS mark; continued "impressive" sales growth and advertising expenditures; and a host of social media mentions demonstrating that the public continues to perceive PRETZEL CRISPS primarily as a brand.

4

## FACTUAL BACKGROUND

In 2004, Princeton Vanguard, through its affiliate, Snack Factory, Inc. ("Snack Factory"), developed a novel product by combining the shape and flavor of a pretzel with the thinness of a cracker.[3]  Princeton Vanguard coined the term PRETZEL CRISPS to name this new product. With the launch of the innovative PRETZEL CRISPS products, Princeton Vanguard created the now-thriving pretzel cracker market.

The creation of this new market led numerous other companies to launch their own pretzel cracker products.  Today, the pretzel cracker market includes, among others, Gratify pretzel crackers, Weightwatchers Mini Dijon pretzel thins, Town House pretzel thins, Town House pretzel flip sides thins, HEB pretzel crackers, Deutsche Küche pretzel crackers, Dream Pretzels All Natural Pressels pretzel chips, Laurel Hill oven baked pretzel chips, and Glutino gluten-free pretzel chips.  *See* Declaration of Rachel M. Sasser (Oct. 29, 2018) ¶ 5.  None of these brands use the name PRETZEL CRISPS to describe or identify its product.  Frito-Lay also has introduced several pretzel cracker products, none of which used the PRETZEL CRISPS trademark, including Rold Gold pretzel thins, Rold Gold pretzel waves, Stacy's pretzel thins, and Rold Gold thin crisps.  Sasser Decl. ¶ 6; *see also* Def.'s Answer [D.E. 27] ¶ 68.  Competitors have had no problem selling their pretzel crackers under a variety of other descriptive terms. (Opp'n No. 91195552 at A1543, A1759–79).[4]

Despite the proliferation of pretzel cracker products, PRETZEL CRISPS crackers remain the market leader, enjoying impressive sales growth since the brand's launch.  (*See* Declaration

---

[3] Princeton Vanguard has granted Snack Factory an exclusive license to use the PRETZEL CRISPS mark.  (91195552 37 TTABVUE 4–5).  In October 2012, Princeton Vanguard and Snack Factory were acquired by Snyder's-Lance.

[4] Citations to the TTAB record refer to the proceeding number and Bates stamped page number. The TTAB record was admitted pursuant to 15 U.S.C. § 1071(b)(3) and the Court's August 7, 2018 order.  [D.E. 17]

of MaryCatherine Regan (Oct. 29, 2018) ¶ 5; Opp'n No. 91195552 at A543).  The PRETZEL CRISPS brand has been featured in more than $50 million worth of advertising, marketing, and promotional campaigns, including on the radio, in magazines, on websites, at point of purchase displays, and through social media.  (*See* Sasser Decl. ¶ 8; Opp'n No. 91195552 at A575–81). Members of the snack food industry and consumers recognize PRETZEL CRISPS as a brand name.  (Opp'n No. 91195552 at A4188, A1159–60; Opp'n No. 91190246 at A1449–52, A1454–56, A1458–60, A1462–64).  More than a decade since being introduced, the PRETZEL CRISPS brand remains the only cracker product on the market that uses the name PRETZEL CRISPS. The public continues to understand PRETZEL CRISPS to be a brand name for Plaintiffs' pretzel cracker products.

## **RECORD BEFORE THE COURT**

The TTAB record has been admitted into the record before the Court pursuant to 15 U.S.C. § 1071(b)(3) and the Court's August 7, 2018 order.  [D.E. 17]  In addition, Plaintiffs have the "unrestricted right to submit further evidence as long as it is admissible under the Federal Rules of Evidence and Civil Procedure."  *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014).   Pursuant to that statutory right, Plaintiffs submit the declarations of Rachel M. Sasser (Oct. 29, 2018), MaryCatherine Regan (Oct. 29, 2018), Christopher Lauzau (Oct. 24, 2018), Elliot Beaver (Oct. 29, 2018), Dr. E. Deborah Jay (Oct. 27, 2018), Gary Plutchok (Oct. 24, 2018), John O'Donnell (Oct. 23, 2018), Mark Finocchio (Oct. 23, 2018), and Salvatore D'Agostino (Oct. 29, 2018), and the exhibits attached thereto, pursuant to 15 U.S.C. § 1071(b)(3).  Those declarations and exhibits are being filed contemporaneously.

## LEGAL STANDARDS

**I.    The Court Reviews the Record *De Novo* Under 15 U.S.C. § 1071(b).**

Under 15 U.S.C. § 1071(b), the court "reviews the record *de novo* and acts as the finder of fact" where new evidence is submitted. *Swatch*, 739 F.3d at 155. "[T]he court must determine, among other things, 'how the new evidence comports with the existing administrative record,' and 'as a logical matter [it] can only make [this] determination[] de novo because it is the first tribunal to hear the evidence.'" *Id.* at 156 (quoting *Kappos v. Hyatt*, 566 U.S. 431, 444 (2012)).

Frito-Lay contends that, notwithstanding this clear precedent, the district court "may, in its discretion, consider the proceedings before and findings of the [TTAB] in deciding what weight to afford an applicant's newly-admitted evidence." Frito-Lay Br. at 15. In so arguing, Frito-Lay fails to cite critical text from *Swatch* that the law "*prohibit[s]* any . . . reliance on the TTAB's findings and conclusions," except where the new evidence was withheld without explanation from the TTAB. *Swatch*, 739 F.3d at 156 n.6 (emphasis added). That exception does not apply here — Plaintiffs' new evidence post-dates the close of fact discovery in the TTAB proceedings and thus was not available for submission to the TTAB. Frito-Lay's suggestion that the Court should afford "great weight" to the TTAB's decision "as persuasive authority given the TTAB's expertise in trademark law," Frito-Lay Br. at 15, is therefore an invitation to contravene black-letter law. *See Swatch*, 739 F.3d at 156.

The new evidence Plaintiffs submit includes media and industry usage of PRETZEL CRISPS as a brand name, and Snyder's-Lance's advertising and sales success since the close of discovery at the TTAB in 2012. This is precisely the type of evidence that — as even the authority upon which Frito-Lay relies concedes — is directly relevant to the Court's genericness inquiry. *See, e.g.*, *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 544 (4th Cir. 2004)

(evidence of the primary significance of a mark includes "purchaser testimony, consumer surveys, listings and dictionaries, trade journal, newspapers, and other publications"); *Ale House Mgmt. v. Raleigh Ale House*, 205 F.3d 137, 141 (4th Cir. 2000) (citations to newspapers, dictionaries, books, and other publications bear on public's understanding of a mark).

There is no "room for ambiguity" about the standard of review here: the Court reviews the *entire* record — including the newly submitted evidence — *de novo*. *Booking.com B.V. v. Matal*, 278 F. Supp. 3d 891, 899 n.2 (D. Md. 2017) (citing *Shammas v. Focarino*, 784 F.3d 219, 225 (4th Cir. 2015)).

Even if the Court were to apply a "substantial evidence" standard of review, as Frito-Lay suggests, Frito-Lay Br. at 15, Frito-Lay's challenge still fails. "[S]ubstantial evidence review 'requires an examination of the record as a whole, taking into account both the evidence that justifies and detracts from an agency's opinion.'" *Princeton Vanguard, LLC*, 786 F.3d at 970 (citation omitted). Reviewing the record under that standard, the evidence that detracts from the TTAB's opinion overwhelmingly demonstrates that the PRETZEL CRISPS mark is not generic. Substantial evidence demands "more than a mere scintilla" of evidence; it requires "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Id.* at 964 (quotation marks and citations omitted). The TTAB's process of cherry-picking only that evidence that supports its position fails to meet that standard. Accordingly, even if the Court were to apply a substantial evidence standard (and it should not, for the reasons set forth above), Frito-Lay's motion fails.

## II. Frito-Lay Bears the Burden of Proving PRETZEL CRISPS Is Generic.

Frito-Lay, as the party challenging Plaintiffs' trademark, bears the burden of proving, by a preponderance of the evidence, that PRETZEL CRISPS is generic. *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 3d 22, 97 (D.D.C. 2016) ("the

8

party that had the burden of proof before the TTAB 'must bear the burden of persuasion in district court'" (quoting *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 990–91 (D.C. Cir. 1998))); *Princeton Vanguard, LLC*, 786 F.3d at 965 n.2 ("[T]he burden [is] on Frito-Lay to prove genericness by a preponderance of the evidence"); *see also B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1300 (2015) ("The party opposing registration bears the burden of proof . . . and if that burden cannot be met, the opposed mark must be registered." (internal citations omitted)).

Frito-Lay erroneously contends that it bears no burden, citing *Ale House Mgmt, Inc. v. Raleigh Ale House, Inc.* as authority. Frito-Lay Br. at 18. *Ale House*, however, was *not* an action under 15 U.S.C. § 1071(b) and had nothing to do with whether the mark at issue was registerable. Instead, genericness was asserted as a *defense* to an infringement action brought by the plaintiff. *Ale House*, 205 F.3d at 140. *Ale House* stands for the unremarkable — and, here, inapposite — proposition that a plaintiff in a trademark infringement action bears the burden of demonstrating that it owns a valid trademark.

In contrast — and as the authority cited above amply demonstrates — when a district court conducts a *de novo* review under 15 U.S.C. § 1071(b), the party that had the burden of proof before the TTAB continues to bear the burden before the district court. *Material Supply*, 146 F.3d at 990–91; *see also Booking.com*, 278 F. Supp. 3d at 902 (observing that, in a § 1071(b) proceeding, "[t]he burden of proof rests with the party seeking to establish genericness"); *Paleteria*, 188 F. Supp. 3d at 97 (adopting the position that the challenger "bears the same burden . . . that it did during the cancellation proceeding before the TTAB").

Because the Court reviews the TTAB's decision *de novo*, Plaintiffs continue to enjoy the presumption that the registered PRETZEL CRISPS trademark is not generic. *Paleteria*, 188 F.

9

Supp. 3d at 97; *see also Otter Prods. LLC v. BaseOneLabs LLC*, 105 U.S.P.Q.2d 1252, 1255 (T.T.A.B. 2012) (a mark registered on the Supplement Register is presumed "descriptive," not generic); TMEP § 1209.01(c) (examiners must refuse registration on the Supplemental Register for generic terms).

## III.    Standard for Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant has the burden of showing that there is no genuine issue of fact for trial, *id.* at 256, and all factual inferences must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Here, for the reasons discussed below and in Plaintiffs' separately-filed cross-motion for summary judgment, the record establishes that there is no genuine dispute as to any material fact, and that, as a matter of law, Frito-Lay is not entitled to summary judgment.

## <u>ARGUMENT</u>

As the Federal Circuit already held, "[t]he record here contains *significant evidence* in the form of declarations, survey evidence, and evidence of use of PRETZEL CRISPS in the snack food industry and by the media and Frito-Lay *does not dispute* Princeton Vanguard's description of much of it."  *Princeton Vanguard, LLC*, 786 F.3d at 970 (emphasis added).  Although Frito-Lay may quibble at the margins with some of the underlying factual record, its real argument is a legal one:  Frito-Lay asserts that it is entitled to summary judgment because each of "pretzel" and "crisps" is generic, and therefore the term PRETZEL CRISPS also must be generic.  Frito-

10

Lay Br. at 15. This argument is contrary to controlling law and to the Federal Circuit's holding in this case, and is exactly "the type of short-cut analysis [the Federal Circuit has] said is prohibited." *Princeton Vanguard, LLC*, 786 F.3d at 969.

The controlling legal standard requires the court to consider the PRETZEL CRISPS mark as a whole, and to assess the purchasing public's perception of that unitary mark. When that test is applied to the record evidence showing that consumers perceive PRETZEL CRISPS as a brand name (like WHEAT THINS) and not as a product category (like potato chips), it is clear that there is no genuine dispute of material fact and that Frito-Lay is not entitled to summary judgment.

As it did before the TTAB, Frito-Lay cites to some news reports that use the term PRETZEL CRISPS generically (although those reports are less than 10 percent of all news reports discussing Pretzel Crisps), points to comments by Snack Factory executives, and notes that Snack Factory referred to the number of "crisps" in a serving. These cherry-picked facts do not entitle Frito-Lay to summary judgment. Even if credited, none of these facts (which are not themselves disputed) creates a genuine dispute on the core issue: that the overwhelming evidence shows that the consuming public perceives PRETZEL CRISPS as a brand name.[5]

## I. Frito-Lay Misapplies the Primary Significance Test.

In arguing that PRETZEL CRISPS is generic, Frito-Lay erroneously analyzes the constituent elements of the mark — "pretzel" and "crisps" — rather than the public's perception of the mark as a whole. Frito-Lay Br. at 5–10 (dissecting PRETZEL CRISPS mark including in sections headed "Generic Use of 'Pretzel' and 'Crisps,'" "'Pretzel' is generic," and "'Crisps' is a

---

[5] If the Court views some limited set of facts as disputed, the Court may, with consent of the parties, assess the entire record on the written submissions, and make all factual determinations that are necessary. The parties proceeded with this understanding before the TTAB, and the district court did likewise in the very similar case of *Booking.com*, 278 F. Supp. 3d at 900. Plaintiffs are willing to stipulate to the same procedure here.

generic synonym for crackers"). That argument misapplies the law. The relevant inquiry examines the "primary significance" of the mark, as a whole, to members of the relevant public. 15 U.S.C. § 1064(3); *Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996) ("proof that a mark has become an indicator of a class of product or service and not its source requires more than the subjective view of a casual purchaser; there must be evidence that this is the mark's primary significance to members of the 'relevant public.'") (citation omitted); *Princeton Vanguard, LLC*, 786 F.3d at 968 (the test for genericness requires consideration of "the record evidence of the public's understanding of the mark as a whole" (citations omitted)).

The "public's primary understanding of a mark 'is derived from it as a whole, not from its elements separated and considered in detail.'" *Booking.com*, 278 F. Supp. 3d at 904 (citation omitted). This is a century-old, bedrock principle of trademark law. *See Estate of P.E. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 545–46 (1920); *see also* 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:27 (5th ed. 2018) ("Under the anti-dissection rule, a composite mark is tested for its validity and distinctiveness by looking at it as a whole, rather than dissecting it into its component parts.").

Rather than engage in the requisite analysis, Frito-Lay instead focuses on the "component terms" — "pretzel" and "crisps" — dedicating a substantial portion, if not the majority, of its brief to dissecting the PRETZEL CRISPS mark. Frito-Lay Br. at 5–10; 20–21. Frito-Lay cites examples of purportedly generic uses of "crisps" in the snack food industry, including a dictionary definition of "rye crisps," and cherry-picks a few scattered media references that use the PRETZEL CRISPS mark generically. This is precisely the flawed analysis that the Federal Circuit rejected when it held that the TTAB "cannot focus primarily on evidence of the word 'crisps' in isolation, select a few pieces of evidence involving the combined

term 'pretzel crisps,' and conclude that the trademark is generic." *Princeton Vanguard, LLC*, 786 F.3d at 970.

Yet, Frito-Lay doggedly follows this approach, insisting that the "combination of generic terms into an equally generic composite sometimes is so obvious that *little more is needed*." Frito-Lay Br. at 20 (emphasis added). That statement is a telling admission that Frito-Lay is doing little more than inviting the Court to engage in the same flawed analysis already rejected by the Federal Circuit.

If Frito-Lay's position were correct, well-established marks such as AMERICAN AIRLINES, CHEESE NIPS, BAGEL CRISPS and VITAMINWATER would not exist. The case law is clear that even a combination of generic words can form a protectable trademark. *See, e.g.*, *Booking.com*, 278 F. Supp. 3d at 914–15 (composite mark made up of "booking" and ".com" was not generic for hotel reservation services); *Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc.*, 3:08-CV-573-HEH, 2009 WL 2013599, *5–6 (E.D. Va. July 10, 2009) (analyzing "lumber" and "liquidator" in composite mark LUMBER LIQUIDATORS and concluding the mark was not generic); *In re Am. Online, Inc.*, 77 U.S.P.Q.2d 1618, 1623 (T.T.A.B. 2006) (precedential) (concluding INSTANT MESSENGER was not generic); *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d 1567, 1571 (Fed. Cir. 1987) (CASH MANAGEMENT ACCOUNT not generic); *In re ACH Direct*, Serial No. 76523001, 2006 WL 2646012, at *5–6 (T.T.A.B. Aug. 28, 2006) (non-precedential) (ATMVERIFY not generic).

## II.    Frito-Lay Fails to Carry Its Evidentiary Burden.

To the extent Frito-Lay's motion does consider the meaning of PRETZEL CRISPS as a whole (and it does not meaningfully do so), Frito-Lay fails to carry its burden that the primary significance of the mark is generic. Frito-Lay, at best, establishes that there is *some* generic usage of PRETZEL CRISPS. That showing, however, is insufficient as a matter of law to

establish the mark's *primary significance* to the public is a generic indicator of the product genus.

### A. The Voluminous Media References Establish PRETZEL CRISPS Is Not Generic.

The evidence before the TTAB showed that 83 percent of unsolicited media references used the term PRETZEL CRISPS as a brand name in reference to Snyder's-Lance's products, and the results of a Google search for "pretzel crisps" revealed that 98 of the top 100 results indisputably were brand references. (Opp'n No. 91195552 at A1157, A1160). Plaintiffs now submit an additional 895 articles from 2012 through the present, of which 87.8 percent use the term PRETZEL CRISPS in a trademark fashion. *See* Declaration of Christopher Lauzau (Oct. 24, 2018) ¶ 7. In addition, 90 percent of the top search results on Google in October 2018 for "pretzel crisps" were brand references. *Id.* ¶ 8. Frito-Lay's attempts to counter this evidence fall short.

First, Frito-Lay simply misconstrues some of the articles that are in the TTAB record. For example, Frito-Lay cites a 2011 *Slashfood* article recounting a pretzel taste test in which "Snack Factory's product was rated the best in the 'pretzel crisps' category." Frito-Lay Br. at 12. The "'pretzel crisps' category" in the article, however, plainly referred to the PRETZEL CRISPS *brand* because Snack Factory's pretzel crackers were the only product in the PRETZEL CRISPS category, and the taste test was conducted using different flavor variations of Snack Factory's trademarked product. (Opp'n No. 91195552 at A3254–59).

Moreover, Frito-Lay characterizes the generic usages in the media as "too numerous to recount in detail" and asserts there are "countless examples" of such usages. In fact, the record shows that, of the 1,129 unique articles Plaintiffs submitted both before the TTAB and now before the Court, just 11 percent of them use the term in an arguably generic manner. *See*

Lauzau Decl. ¶¶ 4–7. Frito-Lay's florid descriptions are inadequate substitutes for careful consideration of the actual record evidence.

Second — and more importantly — Frito-Lay ignores that mixed uses of a mark in the media are insufficient as a matter of law to establish that the mark is generic. *See, e.g.*, *In re Merrill Lynch*, 828 F.2d at 1571 (a "mixture of usages" in media publications did not demonstrate that the "financial community views and uses the term CASH MANAGEMENT ACCOUNT as a generic, common descriptive term for the brokerage services to which [the applicant] first applied the term."); *In re Trek 2000 Int'l Ltd.*, 97 U.S.P.Q.2d 1106, 1113 (T.T.A.B. 2010) (precedential) (holding that limited evidence of generic use was "offset by applicant's evidence that shows not only a significant amount of proper trademark use but also trademark recognition by third parties" (internal quotations omitted)); *In re ACH Direct*, 2006 WL 2646012 at *5–6 (finding the ATMVERIFY mark not generic where half of the examples of use were not generic).

The law is well-settled that a "mark is not generic simply because it plays some role in denoting to the public what the product or service is; rather, a mark may serve a 'dual function — that of identifying a product [or service] while at the same time indicating its source.'" *Booking.com*, 278 F. Supp. 3d at 902; *see also Elliott v. Google, Inc.*, 860 F.3d 1151, 1158 (9th Cir. 2017) (quoting S. Rep. No. 98-627, at 5 (1984)), *cert denied*, 138 S. Ct. 362 (2017) (observing that "the mere fact customers ordered 'a coke,' i.e., used the mark as a noun," did not indicate that customers did not consider the mark as serving both as a name of a product as well as its source (citing *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1255 (9th Cir. 1982)); *San Diego Comic Convention v. Dann Farr Prods.*, 14-cv-1865-AJB-JMA, 2018 U.S. Dist. LEXIS

143789 (S.D. Cal. Aug. 23, 2018) (evidence of some lower case usage did not require a finding that the use was generic).

Frito-Lay fails to acknowledge this legal standard. For example, it concedes — as it must — that there are multiple trademark "media mentions of [Plaintiffs'] 'Pretzel Crisps' products and name," but it dismisses those mentions because Plaintiffs are "the market leader" and because of their "aggressive marketing efforts." Frito-Lay Br. at 22. Frito-Lay goes on to assert — in tautological fashion — that these media references are irrelevant "because no amount of consumer recognition . . . can create protection for a generic term." *Id.* In so arguing, Frito-Lay begs the very question before the Court: What is the primary significance of PRETZEL CRISPS in the mind of the public?

**B. The Other Uses Frito-Lay Cites Are Insufficient to Carry Its Burden.**

Aside from a handful of media references, Frito-Lay musters a few scattered third-party uses of PRETZEL CRISPS, and cites to certain evidence that it claims shows Plaintiffs used the term generically. This evidence fails to establish that PRETZEL CRISPS is a generic term.

First, Frito-Lay points to two competitors that briefly used the term PRETZEL CRISPS on or in connection with their products: Kraft Foods ("Kraft") and Pretzels Inc.

As to Kraft, Frito-Lay's own description of Kraft's use of PRETZEL CRISPS belies its argument that Kraft used the mark as a generic descriptor. Kraft "prominently displayed [PRETZEL CRISPS] on the front of the package," Frito-Lay Br. at 12, in a similar manner to Kraft's "MUNCHABLES" mark. In fact, when, in 2010, Kraft started using the PRETZEL CRISPS mark on its RITZ MUNCHABLES product, Princeton Vanguard immediately challenged the use. (Opp'n No. 91195552 at A1544). Kraft — a sophisticated marketer in the salty snack category — acknowledged "that Princeton Vanguard owns the Registration" for the term and immediately agreed to cease use of the mark. (*Id.* at A1797; *see also id.* at A1793–

16

1801). Kraft subsequently adopted the terms "pretzel thins" and "pretzel rounds" to describe its products, thereby acknowledging Princeton Vanguard's exclusive rights in the PRETZEL CRISPS mark. (*Id.* at A1544).

As to Pretzels Inc., Frito-Lay notes that Pretzels Inc. described its product as belonging to the "pretzel crisp" market category, and that when Princeton Vanguard complained, Pretzels Inc. responded by "noting the industry's use of the generic term 'pretzel crisps.'" Frito-Lay Br. at 13. Frito-Lay fails to mention, however, that Pretzels Inc. also acknowledged Princeton Vanguard's trademark rights in PRETZEL CRISPS — conceding that "[t]he wording was included innocently [by Pretzels Inc.] and without any knowledge of any potential infringement of a similar *proprietary mark*" — and agreed to "take[ ] reasonable steps to avoid the term 'pretzel crisps' in future materials." (Rausa Decl. Ex. 8 [D.E. 28-11], at 9 (emphasis added)).

Moreover, Snyder's-Lance has reached agreements with Wish Farms, Columbia County Bread, and Siegert Enterprises d/b/a Betty Jane Homemade Candies Inc. to cease using the PRETZEL CRISPS mark. Sasser Decl. ¶¶ 13–15, Exs. 5–7. In each case, these companies recognized Snyder's-Lance's rights in the PRETZEL CRISPS mark.

Far from demonstrating PRETZEL CRISPS is generic, agreements by Plaintiffs' competitors to stop using the mark support the conclusion that others in the industry recognize PRETZEL CRISPS as a brand name. *See, e.g.*, *STK LLC v. Backrack, Inc.*, Canc'n No. 92049332, 2012 WL 2024459, at *18 (T.T.A.B. May 21, 2012) (non-precedential) (competitors' agreements to cease using respondent's mark supports the conclusion that the mark functions as a brand name); *Unique Motorcars v. Carroll Hall Shelby Trust*, Opp'n Nos. 91150352 and 91155242, 2009 WL 722046, at *7–8 (T.T.A.B. Mar. 4, 2009) (non-precedential) (evidence

offered by applicant that competitors stopped use of applicant's mark after applicant sent cease and desist letters weighed in applicant's favor that mark was not generic).

Frito-Lay's argument also ignores the well-recognized fact that a company that introduces a new product category to the market — here, pretzel crackers — will inevitably suffer some inappropriate generic uses of its mark. *See* 2 MCCARTHY § 12:25 (noting that "[t]he situation of a new product with a name which is first used by the seller, is the classic context" in which there is a risk that the public will use the mark generically). For that reason, other courts have found it "helpful" in this circumstance "to ask whether one firm's exclusive use of the phrase will prevent a rival from naming itself and describing its product." *Te-Ta-Ma Truth Found. — Family of Uri v. World Church of the Creator*, 297 F.3d 662, 666–67 (7th Cir. 2002).

There is no dispute that "pretzel crackers" is the genus of goods and that the record is replete with evidence that competitors — including Frito-Lay itself — have competed and continue to compete with PRETZEL CRISPS crackers using a number of alternative descriptions, such as pretzel crackers, pretzel thins, pretzel chips, pretzel flatz, pretzel rounds, pretzel dippers, and pretzel snacks. *Frito-Lay N. Am., Inc.*, 109 U.S.P.Q.2d at 1952 ("There is no dispute that the category of goods here is adequately defined by defendant's identification of goods in the application and subject registration, 'pretzel crackers.'").

Rather than address that record evidence, Frito-Lay instead simply asserts that the "fact that alternative generic terms exist is of no consequence." Frito-Lay Br. at 24. That argument ignores case law to the contrary that applies a common-sense gloss on the primary significance test in evaluating allegedly generic marks: Whether there is evidence that others are able to fairly compete with the first mover without using its trademark to describe the goods. The evidence here plainly establishes robust competition that is inconsistent with the conclusion that

the term PRETZEL CRISPS is generic, and contradicts Frito-Lay's argument that "it would be difficult for competitors to market their own brands" of pretzel crackers if PRETZEL CRISPS is admitted to the Principal Register.  Frito-Lay Br. at 24.

Second, the purported evidence of generic usage by Plaintiffs is no more persuasive.  In one instance, a Princeton Vanguard employee touted the company as the "original pretzel crisp company," Frito-Lay Br. at 13, correctly identifying it as the creator of PRETZEL CRISPS. Similarly, the co-founder of the company aptly described the "pretzel crisp" as a "thin crunchy cracker-like snack."  *Id.* at 14.  Both usages of the term as a noun no more prove that PRETZEL CRISPS is generic than ordering "a coke" or "googling" an item prove that those terms are generic.  *Google, Inc.*, 860 F.3d at 1158.  In any event, as noted above, *some* generic usage of a mark does not establish that the *primary significance* of the mark is to serve as a generic identifier of the product genus.  *See* pp. 14–16, *supra*.

## C. Frito-Lay's Own Authority Demonstrates That It Is Not Entitled to Summary Judgment.

The cases Frito-Lay cites in its brief pointedly demonstrate the flaws in its argument.  In those cases in which marks were found to be generic, the court was presented with either (i) so little evidence of the public's understanding of the mark at issue that the court had to resort to, and rely almost exclusively upon, dictionary definitions, or (ii) overwhelming, one-sided evidence of the term's genericness.

- In *Ale House Mgmt*, 205 F.3d at 141, the defendant adduced "unrebutted" extensive evidence, including newspapers, dictionaries, books, and Internet search results that demonstrated the mark "ale house" was and had been used generically for years prior to its adoption by plaintiff.  The proponent of the mark even "conceded at oral

19

argument that other Florida food-and-drink facilities incorporate 'ale houses' in their names."

- In *Retail Servs., Inc.*, 364 F.3d at 545–46, the challenger provided overwhelming, "one-sided" evidence of genericness through deposition testimony, widespread use of the mark by competitors, and evidence that 1,600 websites used the alleged mark generically.

- In *Hunt Masters, Inc. v. Landry's Seafood, Inc.*, 240 F.3d 251, 254 n.1, 255 (4th Cir. 2001), the court looked to dictionary definitions and Internet search results that overwhelmingly demonstrated that a "multitude" of restaurants similarly used the mark "crab house" generically, "thereby demonstrating that Hunt's use of the term is neither original nor unique."

- In *Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 819–20 (4th Cir. 2001), the court concluded the mark "You Have Mail" was generic based on record evidence demonstrating that: the phrase had been used for a decade before America Online came into existence; the phrase had been widely used for the common, ordinary purpose of informing users of the arrival of email; America Online had never registered or attempted to enforce the mark; and America Online provided no evidence that it used the phrase distinctively.

Here, the record is absent of any of the types of evidence relied upon by the courts in those cases. For instance, Frito-Lay offers no dictionary evidence that PRETZEL CRISPS is a generic term and instead focuses on a single dictionary's use of "rye crisps" as an example of "something crisp or brittle." Frito-Lay Br. at 9. That evidence has no bearing on whether the term PRETZEL CRISPS is a generic name for pretzel crackers. On the contrary, the fact that

dictionaries include the term "rye crisps" but do not include "pretzel crisps" — over a decade after the launch of the pretzel cracker category — is itself powerful evidence that the mark is not generic. *See JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 333 (D. Md. 2017) (no dictionary definition for composite mark weighed in favor of finding mark was a brand name); *see also Te-Ta-Ma Truth Found.*, 297 F.3d at 666 (finding that, where composite mark did not appear in the dictionary, the district court erred by relying on the dictionary definitions of the mark's individual terms). In fact, PRETZEL CRISPS is not included as an entry in any known dictionary or encyclopedia. Lauzau Decl. ¶¶ 11–12.[6]

Nor does Frito-Lay offer any Internet search results or deposition testimony to support its position. That stands in stark contrast to the voluminous evidence Plaintiffs submitted before the TTAB and supplement here, including search results for "pretzels crisp(s)" showing that the vast majority of media articles, Google search results, and social media references are to Plaintiffs' brand, four unrebutted witness affidavits, and survey evidence. (*See generally* Lauzau Decl.; Declaration of Elliot Beaver (Oct. 29, 2018); Declaration of Dr. E. Deborah Jay (Oct. 27, 2018); Declaration of Gary Plutchok (Oct. 24, 2018); Declaration of John O'Donnell (Oct. 23, 2018); Declaration of Mark Finocchio (Oct. 23, 2018); Declaration of Salvatore D'Agostino (Oct. 29, 2018)).

Frito-Lay's failures of proof make this case easily distinguishable from the cases on which its motion relies. In contrast to those cases, the evidence here strongly supports the conclusion that the PRETZEL CRISPS mark is a brand name and is *not* generic.

---

[6] At the time the TTAB record closed, Pretzel Crisps was included as an entry in Wikipedia as a brand name for Snyder's-Lance's product. (91195552 36 TTABVUE 6–8). PRETZEL CRISPS, however, no longer even appears in Wikipedia.

**III. Frito-Lay Cannot Overcome the Substantial Evidence in the Record Demonstrating PRETZEL CRISPS Is a Brand.**

The Federal Circuit correctly observed that the "record here contains *significant evidence* in the form of declarations, survey evidence, and evidence of use of PRETZEL CRISPS in the snack food industry and by the media and Frito-Lay *does not dispute* Princeton Vanguard's description of much of it." *Princeton Vanguard, LLC*, 786 F.3d at 970 (emphasis added). Even now, Frito-Lay offers little to no meaningful critique of Plaintiffs' news article analysis, other evidence of unsolicited media and trade attention, or unrebutted witness testimony. Nor does Frito-Lay meaningfully challenge Plaintiffs' survey evidence showing that 55 percent of respondents understood PRETZEL CRISPS as a brand name. (Opp'n No. 91195552 at A4427). Frito-Lay instead adopts the TTAB's erroneous legal position that such surveys are "not relevant." Frito-Lay Br. at 19. Not only does this approach disregard the Federal Circuit's direction to "give appropriate consideration to the proffered survey evidence," *Princeton Vanguard, LLC*, 786 F.3d at 971, but it also misreads *Hunt Masters*.

In *Hunt Masters*, the purported owner of the mark did "not claim to have first coined the term 'crab house.'" Nor could it have, given the overwhelming evidence in the record of prior usage. Because "the term was commonly used prior to its association with the products at issue," the Fourth Circuit rejected a customer survey as "irrelevant." *Hunt Masters*, 240 F.3d at 255. That holding has engendered significant criticism among courts and scholars alike, all of whom have questioned the validity of the Fourth Circuit's holding. *See, e.g.*, *Booking.com*, 278 F. Supp. 3d at 917 n.15 (quoting 2 MCCARTHY § 12:17.50) ("It is an audacious thing for a court to state that consumer perception is irrelevant when the issue is whether a designation is perceived by the consuming public as a generic name or not.").

The Court need not wade into that dispute, however, because here — unlike in *Hunt Masters* — the record amply demonstrates that Princeton Vanguard coined the term PRETZEL CRISPS. Frito-Lay musters just three, non-applicant uses of the term PRETZEL CRISPS prior to Princeton Vanguard's adoption of it. These *de minimis* uses fail to establish that the term PRETZEL CRISPS was commonly used prior to its association with the products at issue. *See, e.g.*, *In re Merrill Lynch*, 828 F.2d at 1571 (a "mixture of usages" in media publications did not demonstrate that the "financial community views and uses the term CASH MANAGEMENT ACCOUNT as a generic, common descriptive term for the brokerage services to which [the applicant] first applied the term.").

To the contrary, the dearth of usage before Princeton Vanguard's adoption of the PRETZEL CRISPS mark is powerful evidence that Princeton Vanguard coined it. Under these circumstances, even *Hunt Masters* recognizes the relevance of survey evidence. 240 F.3d at 255 (acknowledging the relevance of survey evidence "where the term began life as a 'coined term'"); *see also Princeton Vanguard, LLC*, 786 F.3d at 969 (observing that consumer surveys are "de rigueur in litigation over genericness" and are "preferable to indirect forms of evidence") (internal citation omitted); *Primary Children's Medical Center Foundation v. Scentsy, Inc.*, No. 2:11-cv-1141-TC, 2012 WL 2357729, *5 (D. Utah June 20, 2012) ("[t]o state that consumer perception is irrelevant for a non-coined 'generic' word . . . is to assume the result before making an analysis of that which is to be decided" (quoting 2 McCarthy § 12:17.50)).

Frito-Lay's suggestion that *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 117 (1938) renders survey evidence irrelevant similarly misses the mark. Frito-Lay Br. at 23. In *Kellogg*, the purported owner of the "Shredded Wheat" mark used it generically to describe its product at inception and did not attempt to assert trademark rights in the mark until ten years after its

creation.  *Kellogg*, 305 U.S. at 117.  By that time, the public had come to know the product generically as shredded wheat.  *Id.*

Here, by contrast, Plaintiffs have used the PRETZEL CRISPS mark exclusively and continuously to identify the source of its particular pretzel cracker products, and has diligently policed its trademark rights.  Accordingly, and as the surveys amply demonstrate, the public has *not* come to know pretzel crackers generically as PRETZEL CRISPS.  As set forth more fully in Plaintiffs' separately-filed motion for summary judgment, Plaintiffs' surveys establish that 55 percent of respondents understood PRETZEL CRISPS as a brand name.  (Opp'n No. 91195552 at A4427; Jay Decl. ¶ 3 (1027/2018)).  That powerful evidence significantly undercuts Frito-Lay's argument that the PRETZEL CRISPS mark is generic, particularly given that the TTAB "found no flaw" with Plaintiffs' surveys.  *Princeton Vanguard, LLC*, 786 F.3d at 971.

## CONCLUSION

The overwhelming evidence establishes, as a matter of law, that PRETZEL CRISPS is a brand name.  Frito-Lay's motion ignores the direct evidence of customer recognition of the brand, including millions of consumers who purchase the brand's snack products and follow the brand on social media; the widespread, unsolicited media attention PRETZEL CRISPS has received; recognition by wholesalers, distributors, brokers, and competitors that PRETZEL CRISPS is a brand name; and consumer surveys which demonstrate that the public perceives PRETZEL CRISPS as a trademark.  Such extraordinary brand recognition would not be possible if PRETZEL CRISPS were not in fact a brand.

Rather than address contrary and persuasive evidence, Frito-Lay pursues the same flawed legal theory already rejected by the Federal Circuit. Consequently, and for the reasons set forth above, Frito-Lay's request for summary judgment should be denied.

Respectfully submitted, this the 29th day of October, 2018.

ELLIS & WINTERS LLP

/s/ Jonathan D. Sasser
Jonathan D. Sasser
N.C. State Bar No. 10028
Alexander M. Pearce
N.C. State Bar No. 37208
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
jon.sasser@elliswinters.com
alex.pearce@elliswinters.com

DEBEVOISE & PLIMPTON LLP
David H. Bernstein*
James J. Pastore*
Jared I. Kagan*
Michael C. McGregor*
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6696
dhbernstein@debevoise.com
jjpastore@debevoise.com
jikagan@debevoise.com
mcmcgregor@debevoise.com

*Counsel for Plaintiffs Snyder's-Lance, Inc. and Princeton Vanguard, LLC*

*admitted pro hac vice*

## CERTIFICATE OF SERVICE

I do certify that I electronically filed the foregoing with the Clerk of the Court using the

CM/ECF system, which will send notification of such filing to all counsel of record or interested

parties via the CM/ECF system.

This 29th day of October, 2018.


/s/ Jonathan D. Sasser
Jonathan D. Sasser
N.C. State Bar No. 10028
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
jon.sasser@elliswinters.com