UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| SNYDER'S-LANCE, INC. and PRINCETON VANGUARD, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:17-CV-00652 |
| FRITO-LAY NORTH AMERICA, INC., | ) ) ) | |
| Defendant. | ) ) | |

**SNYDER'S-LANCE, INC. AND PRINCETON VANGUARD, LLC'S
MEMORANDUM OF LAW
<u>IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

| | |
|---|---|
| DEBEVOISE & PLIMPTON LLP<br>David H. Bernstein*<br>James J. Pastore*<br>Jared I. Kagan*<br>Michael C. McGregor*<br>919 Third Avenue<br>New York, New York 10022<br>Telephone: (212) 909-6696<br>dhbernstein@debevoise.com<br>jjpastore@debevoise.com<br>jikagan@debevoise.com<br>mcmcgregor@debevoise.com<br><br>*admitted *pro hac vice* | ELLIS & WINTERS LLP<br>Jonathan D. Sasser<br>N.C. State Bar No. 10028<br>Alexander M. Pearce<br>N.C. State Bar No. 37208<br>Post Office Box 33550<br>Raleigh, North Carolina 27636<br>Telephone: (919) 865-7000<br>jon.sasser@elliswinters.com<br>alex.pearce@elliswinters.com |

*Counsel for Plaintiffs Snyder's-Lance, Inc. and Princeton Vanguard, LLC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

PROCEDURAL HISTORY ...................................................................................... 2

FACTUAL BACKGROUND ...................................................................................... 5

   I.    Marketing and Promotion of the PRETZEL CRISPS Mark. ............................. 6

   II.   Media Use of the PRETZEL CRISPS Brand. ............................................... 7

   III.  Industry and Third-Party Use and Recognition of the PRETZEL CRISPS Mark. ............. 8

RECORD BEFORE THE COURT .............................................................................. 10

LEGAL STANDARDS ........................................................................................... 11

     A.   Standard Under 15 U.S.C. § 1071(b). .................................................. 11

     B.   Standard for Summary Judgment. ...................................................... 12

ARGUMENT ...................................................................................................... 12

   I.    The PRETZEL CRISPS Mark Is Not Generic and Is Understood by the Relevant Public as a Trademark. ............................................................................ 13

     A.   The Media Uses PRETZEL CRISPS as a Brand Name. .............................. 14

     B.   The Industry Uses PRETZEL CRISPS as a Brand Name. ........................... 16

     C.   Survey Evidence Supports a Finding that PRETZEL CRISPS Is Not Generic. ........... 18

   II.   The PRETZEL CRISPS Mark Has Acquired Secondary Meaning. ...................... 21

     A.   Snyder's-Lance's PRETZEL CRISPS Sales and Market Share Are Significant. ........ 21

     B.   Snyder's-Lance's Advertising Has Reached Millions of Consumers. ................. 22

     C.   The PRETZEL CRISPS Mark Has Received Extensive Unsolicited Media Coverage. ............................................................................................ 22

     D.   Consumer Survey Evidence Demonstrates PRETZEL CRISPS Has Acquired Secondary Meaning. ...................................................................... 23

     E.   Snyder's-Lance Use of the PRETZEL CRISPS Mark Has Been Exclusive and Continuous. ................................................................................. 24

     F.   Others in the Industry Have Attempted to Copy the PRETZEL CRISPS Mark. ......... 25

CONCLUSION .................................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................................12

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
135 S. Ct. 1293 (2015) ...............................................................................................11

*Booking.com BV v. Matal*,
278 F. Supp. 3d 891 (E.D. Va. 2017) ............................................................. *passim*

*E.I. Du Pont de Nemours & Co. v. Yoshida Int'l, Inc.*,
393 F. Supp. 502 (E.D.N.Y. 1975) .............................................................................19

*Eagle Snacks, Inc. v. Nabisco Brands, Inc.*,
625 F. Supp. 571 (D. N.J. 1985) ................................................................................20

*Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*,
109 U.S.P.Q.2d (BNA) 1949 (T.T.A.B. 2014) ...........................................................4

*Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*,
124 U.S.P.Q.2d (BNA) 1184 (T.T.A.B. 2017) ............................................... *passim*

*Glover v. Ampak, Inc.*,
74 F.3d 57 (4th Cir. 1996) ................................................................................ 14, 18

*Hunt Masters, Inc. v. Landry's Seafood Restaurant, Inc.*,
240 F.3d 251 (4th Cir. 2001) .....................................................................................18

*IDV N. Am., Inc. v. S&M Brands*,
26 F. Supp. 2d 815 (E.D. Va. 1998) ..........................................................................21

*In re Am. Online, Inc.*,
77 U.S.P.Q.2d 1618 (T.T.A.B. 2006) .........................................................................15

*In re Carl Walther GmbH*,
Serial No. 77096523, 2010 WL 4502071, at *3 (T.T.A.B. Oct. 26, 2010) ...............24

*In re Hershey Chocolate and Confectionary Corp.*,
Serial No. 77809223, 2012 WL 2930639, at *6 (T.T.A.B. June 28, 2012) ...............23

*In re Minnetonka Inc.*,
3 U.S.P.Q.2d (BNA) 1711 (T.TA.B. 1987) ................................................................18

*In re Trek 2000 Int'l Ltd.*,
97 U.S.P.Q.2d (BNA) 1106 (T.T.A.B. 2010) ...................................................... 15, 17

Case 3:17-cv-00652-KDB-DSC   Document 35   Filed 10/29/18   Page 3 of 31

*JFJ Toys, Inc. v. Sears Holdings Corp.*,
    237 F. Supp. 3d 311 (D. Md. 2017) ........................................................16, 17, 18

*Kappos v. Hyatt*,
    566 U.S. 431 (2012) ........................................................................................11

*Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc.*,
    No. 3:08-CV-573-HEH, 2009 WL 2013599 (E.D. Va. July 10, 2009) ............................12, 18

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*,
    146 F.3d 983 (D.C. Cir. 1998) ........................................................................11

*McNeil-PPC, Inc. v. Granitic, Inc.*,
    919 F. Supp. 198, 37 U.S.P.Q.2d (BNA) 1713 (E.D.N.C. 1995) ...........................................23

*Monsieur Henry Wines, Ltd. v. Duran*,
    204 U.S.P.Q. (BNA) 601 (T.T.A.B. 1979) ...............................................................23

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*,
    188 F. Supp. 3d 22 (D.D.C. 2016) .....................................................................11

*Perini Corp. v. Perini Constr., Inc.*,
    915 F.2d 121 (4th Cir. 1990) .........................................................................21

*Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*
    786 F.3d 960 (Fed. Cir. 2015).................................................................. *passim*

*Putt-Putt, LLC v. 416 Constant Friendship, LLC*,
    936 F. Supp. 2d 648 (D. Md. 2013) ...............................................................12, 18

*Shuffle Master Inc. v. Awada*,
    No. 2:05-cv-01112, 83 U.S.P.Q.2d (BNA) 1054 (D. Nev. 2006)...........................................23

*Swatch AG v. Beehive Wholesale, LLC*,
    739 F.3d 150 (4th Cir. 2014) .........................................................................11

*Te-Ta-Ma Truth Found. — Family of Uri v. World Church of the Creator*,
    297 F.3d 662 (7th Cir. 2002) .........................................................................18

*Teaching Co. Ltd. Partnership v. Unapix Entertainment, Inc.*,
    87 F. Supp. 2d 567 (E.D. Va. 2000) ..........................................................21, 22, 23, 24

*Tri-Star Pictures, Inc. v. Unger*,
    14 F. Supp. 2d 339 (S.D.N.Y. 1998) (42%)...........................................................23

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992)....................................................................................20

*Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*,
  33 F. Supp. 2d 488 (E.D. Va. 1999) .......................................................................23

*Winchester Fed. Sav. Bank v. Winchester Bank, Inc.*,
  359 F. Supp. 2d 561 (E.D. Ky. 2004) (35%) .........................................................23

*Worsham Sprinkler Co. v. Wes Worsham Fire Prot. LLC*,
  419 F. Supp. 2d 861 (E.D. Va. 2006) ....................................................................21

STATUTES

15 U.S.C. § 1051 ...........................................................................................................2

15 U.S.C. § 1052 ...........................................................................................................2

15 U.S.C. § 1064(3) .....................................................................................................13

15 U.S.C. § 1071(b) ....................................................................................2, 10, 11, 13

15 U.S.C. § 1091 ...........................................................................................................2

OTHER AUTHORITIES

2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (5th ed.
  2018) ...............................................................................................................19, 20

E. Deborah Jay, Genericness Surveys in Trademark Disputes: Evolution of Species 99
  Trademark Rep. 1118 (2009)..................................................................................19

Fed. R. Civ. P. 56(a) ....................................................................................................12

Plaintiffs Snyder's-Lance, Inc. ("Snyder's-Lance") and Princeton Vanguard, LLC ("Princeton Vanguard") respectfully submit this memorandum of law in support of their cross-motion for summary judgment.

## PRELIMINARY STATEMENT

In 2004, Princeton Vanguard, through its affiliate Snack Factory (now part of Snyder's-Lance),[1] created an innovative product that combined the characteristics of a pretzel and a cracker. To describe the unique features of this product, Princeton Vanguard selected a new, unique brand name that was not in use in the pretzel or cracker categories: PRETZEL CRISPS. In 2005, Princeton Vanguard registered its PRETZEL CRISPS trademark with the United States Patent and Trademark Office ("USPTO").

With the launch of its PRETZEL CRISPS products, Princeton Vanguard created the now-thriving pretzel cracker market. Today, the brand is supported by an extensive promotional campaign that reaches hundreds of millions of individuals annually. Snyder's-Lance sells more than $150 million worth of PRETZEL CRISPS crackers at retail annually, and the PRETZEL CRISPS brand is the leading pretzel cracker brand in the market. During the past 14 years, consumers have purchased and consumed over *$2.5 billion* worth of PRETZEL CRISPS crackers.

In 2009, threatened by the commercial success of the PRETZEL CRISPS brand, Defendant Frito-Lay North America, Inc. ("Frito-Lay") (at the same time it was bidding to acquire the PRETZEL CRISPS brand) opposed Princeton Vanguard's application to register a new stylized version of the PRETZEL CRISPS trademark; in 2010, Frito-Lay petitioned to cancel Princeton Vanguard's existing PRETZEL CRISPS trademark registration. Frito-Lay

---

[1] Princeton Vanguard has granted Snack Factory, Inc. ("Snack Factory") an exclusive license to use the PRETZEL CRISPS mark. (91195552 37 TTABVUE 4–5). In October 2012, Snack Factory was acquired by Snyder's-Lance, Inc.

argued that the term PRETZEL CRISPS was a generic term (like popcorn or potato chips) or, in the alternative, that it was a descriptive term that has not acquired brand significance in the minds of consumers.

Those assertions are without merit. The overwhelming evidence demonstrates that the primary significance of the term PRETZEL CRISPS in the minds of consumers is as a brand name. The vast majority of those in the media and snack food industry also use the PRETZEL CRISPS mark specifically in reference to Snyder's-Lance's products, not to identify a type of product sold by other companies. Plaintiffs bring this action so that the Court can declare that the PRETZEL CRISPS trademark (i) is not generic, serves as a brand name, and is therefore entitled to trademark protection; and (ii) has acquired secondary meaning, which entitles the mark to be registered on the Principal Register.[2]

## PROCEDURAL HISTORY

In 2004, Warren and Sara Wilson, experienced entrepreneurs who had launched several successful snack food brands, created a brand-new snack food product: the pretzel cracker. The pretzel cracker product took the middle slice of a pretzel and produced it in a flat, cracker form. (Opp'n No. 91195552 at A1533).[3] The Wilsons coined the term PRETZEL CRISPS to name this new product. The Wilsons, through their company Princeton Vanguard, filed U.S. Trademark Application Serial No. 78/405,596, seeking to register PRETZEL CRISPS with the USPTO. The USPTO examining attorney ("Trademark Examiner") denied registration of the

---

[2] The Principal Register affords trademark protection to distinctive marks or marks that have acquired distinctiveness. *See* 15 U.S.C. §§ 1051–52. "All marks capable of distinguishing applicant's goods or services and not registrable on the principal register" may be registered on the Supplemental Register. 15 U.S.C. § 1091.

[3] Citations to the TTAB record refer to the proceeding number and Bates stamped page number. The TTAB record was admitted pursuant to 15 U.S.C. § 1071(b)(3) and the Court's August 7, 2018 order. [D.E. 17]

mark on the Principal Register at that time because she found that the mark was descriptive, but allowed registration on the USPTO's Supplemental Register. (Registration No. 2,980,303). The USPTO registered the mark in 2005.

In 2007 and 2009, Princeton Vanguard applied to register PRETZEL CRISPS on the Principal Register in stylized and plain text form (U.S. Trademark Application Serial Nos. 77/192,054 and 76/700,802, respectively). After the Trademark Examiner requested evidence regarding whether PRETZEL CRISPS had gained secondary meaning, Princeton Vanguard submitted over 200 pages of evidence, including: a declaration from Warren Wilson; copies of advertisements of PRETZEL CRISPS crackers in widely circulated magazines and snack food industry publications; evidence of significant unsolicited discussion of the PRETZEL CRISPS brand on television and the Internet; a brand awareness survey that showed that 95 percent of respondents associated unlabeled photographs of PRETZEL CRISPS crackers with the PRETZEL CRISPS brand; and details of the significant advertising expenditures for the PRETZEL CRISPS brand. The Trademark Examiner found the evidence sufficient to establish that the PRETZEL CRISPS marks had acquired secondary meaning and merited registration on the Principal Register. (Serial No. 76/700,802).

On May 15, 2009 and July 2, 2010, Frito-Lay filed oppositions to Princeton Vanguard's trademark applications before the Trademark Trial and Appeal Board (the "TTAB"). (Proceeding Nos. 91190246 and 91195552). In September 2010, Frito-Lay filed a petition to cancel Princeton Vanguard's trademark registration. (Proceeding No. 92053001). The TTAB consolidated the actions on December 10, 2010. Princeton Vanguard later abandoned its application for the stylized PRETZEL CRISPS mark, Serial No. 77/192,054, because it no longer

used that particular design, and Frito-Lay withdrew its opposition without prejudice.  The remaining consolidated proceedings continued with Opposition No. 91195552 as the parent case.

On February 28, 2014, after a trial on the papers, the TTAB held that the PRETZEL CRISPS mark was generic.  In reaching that decision, the TTAB relied on Frito-Lay's argument that "[t]he commonly understood meaning of the words 'pretzel' and 'crisps' demonstrates that purchasers understand that 'PRETZEL CRISPS' identifies 'pretzel crackers.'"  *Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, 109 U.S.P.Q.2d (BNA) 1949, 1959 (T.T.A.B. 2014).

A panel of the Federal Circuit unanimously reversed.  First, the court rejected the TTAB's holding that, because the constituent terms, "pretzel" and "crisps" each are generic, so, too, was PRETZEL CRISPS.  Rather, the court held, the relevant inquiry is the public's perception of the PRETZEL CRISPS mark as a whole.  Second, the appeals court criticized the TTAB's attempt to "short-cut" its consideration of the factual record by selecting just "a few pieces" of relevant evidence and disregarding the others "without explanation."  Rather, the court held, the TTAB must "examine the record as a whole," including the "evidence [submitted] in the form of declarations, survey evidence and evidence of [the] use of PRETZEL CRISPS in the snack food industry and by the media."  *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 970 (Fed. Cir. 2015).  Indeed, the Federal Circuit noted that the TTAB "must give appropriate consideration to the proffered survey evidence."  *Id.* at 971

Despite the Federal Circuit's instructions that the TTAB analyze the record as a whole and to avoid focusing on the component words "pretzel" and "crisps," the TTAB on remand engaged in the same flawed analysis.  It began by "analyzing the constituent terms 'PRETZEL' and 'CRISPS' . . . [and] consider[ed] the meaning of each to the consuming public as indicated by dictionary definitions and other competent sources."  *Frito-Lay N. Am., Inc. v. Princeton*

*Vanguard, LLC*, 124 U.S.P.Q.2d (BNA) 1184, 1188 (T.T.A.B. 2017). The TTAB also repeated the exercise of cherry-picking evidence to support its finding that PRETZEL CRISPS is generic, rather than "taking into account both the evidence that justifies and detracts from" its position. *Princeton Vanguard, LLC*, 786 F.3d at 970. The TTAB disregarded, among other evidence, (i) 216 articles (representing 83 percent of all media mentions in the record as of 2012) that used PRETZEL CRISPS as a brand name, (ii) multiple unrebutted affidavits from members of the industry, who testified that distributors, brokers, retailers, and consumers understand PRETZEL CRISPS as a brand name, and (iii) Princeton Vanguard's survey showing that a majority of consumers with an opinion — 60 percent — recognized PRETZEL CRISPS as a brand. *See Frito-Lay*, 124 U.S.P.Q.2d at 1192–93; 1194–95; 1197.

## FACTUAL BACKGROUND

When the Wilsons developed the novel pretzel cracker that combined the shape and flavor of a pretzel with the strength and thinness of a cracker, they coined a new term for their invention: PRETZEL CRISPS. When Princeton Vanguard introduced the PRETZEL CRISPS brand to the market in October 2004, there were no other products available with the unique characteristics of PRETZEL CRISPS crackers and no other products used the PRETZEL CRISPS name. (Opp'n No. 91195552 at A1533). Before Princeton Vanguard introduced PRETZEL CRISPS, the term "PRETZEL CRISPS" was not used by the general public: a comprehensive LexisNexis News search covering the ten-year period of 1994 to 2004 revealed only four uses of the term "pretzel crisp," one of which clearly referred to the PRETZEL CRISPS mark. (Opp'n No. 91195552 at A1159, A1446–66).

PRETZEL CRISPS crackers primarily are sold in the deli section in supermarkets and grocery stores, along with other deli snacks. (Opp'n No. 91195552 at A575). They compete with other premium crackers sold in the deli section as well as with other pretzel cracker

products.  (*Id.*; Opp'n No. 91190246 at A1350–60).[4]  PRETZEL CRISPS has enjoyed significant

sales growth in almost every year since the brand launched and sales have topped $2.5 billion at

retail.  (Declaration of MaryCatherine Regan (Oct. 29, 2018) ¶ 5; Opp'n No. 91195552 at A543).

According to a Nielsen's Food survey in 2014, PRETZEL CRISPS Original flavored crackers

were the highest selling individual pretzel product in America and PRETZEL CRISPS crackers

remain the market leader among pretzel cracker products, having captured a nearly 30 percent

share of the deli cracker market.  Sasser Decl. ¶ 7.  In 2017, PRETZEL CRISPS became the

number one product in the deli snacks category.  *Id.*

### I.  Marketing and Promotion of the PRETZEL CRISPS Mark.

The promotion of the PRETZEL CRISPS mark has been a key part of the brand's

success.  Consumers and industry professionals alike have come to recognize that PRETZEL

CRISPS refers to Snyder's-Lance's pretzel cracker products.  (Opp'n No. 91195552 at A4188,

A1159–60; Opp'n No. 91190246 at A1449–52, A1454–56, A1458–60, A1462–64).  Each

package of PRETZEL CRISPS crackers and all advertising for the brand prominently displays

the PRETZEL CRISPS mark.  (Opp'n No. 91995552 at A1532, A1551–55).  Snyder's-Lance has

spent more than $50 million on advertising, marketing, and promoting the PRETZEL CRISPS

brand through traditional marketing and advertising channels, as well as through social media,

in-store demonstrations, and "seeding" events and contests.  (Opp'n No. 9119552 at A1539;

Sasser Decl. ¶¶ 8–11).  In 2017 alone, field marketing teams distributed some 600,000 product

samples at events that prominently featured the PRETZEL CRISPS trademark.

Sasser Decl. ¶ 11.

---

[4] "Deli snacks" is a term of art in the industry; the PRETZEL CRISPS brand is one of the main competitors in the deli snacks section.  The deli category includes such products as bagel chips, pita chips, pretzel crackers, flatbreads, and crackers, as well as complementary products such as hummus, guacamole, dips, and other products that are typically sold in the deli section of supermarkets and grocery stores.  Declaration of Rachel M. Sasser (Oct. 29, 2018) ¶ 4.

Snyder's-Lance has been advertised in *Bon Appétit*, *Gourmet*, *People*, *Martha Stewart Living, Everyday with Rachael Ray*, *Good Housekeeping*, *Architectural Digest*, *House & Garden*, *House Beautiful*, and *This Old House* — each time with the PRETZEL CRISPS mark displayed prominently. (Opp'n No. 91195552 at A1536, A1594–97). Snyder's-Lance's nationwide "Snack Genius" advertising campaign in 2016 and 2017 secured 225 million consumer impressions through print and online advertising as well as through social media. Sasser Decl. ¶ 9. Snyder's-Lance has also expanded the PRETZEL CRISPS brand's online profile by advertising PRETZEL CRISPS crackers in website banner ads on sports, awards, and health websites. (Opp'n No. 91195552 at A578).

Snyder's-Lance uses social media to connect consumers with the PRETZEL CRISPS brand through free samples, contests, recipe suggestions, and coupons. (Opp'n No. 91195552 at A1539–40; Sasser Decl. ¶ 10). As of October 2018, the PRETZEL CRISPS brand had over 474,000 followers on Facebook, 47,800 on Twitter, and 42,500 on Instagram. *Id.* ¶ 10, Ex. 2. An analysis of social media mentions of "Pretzel Crisps" on Twitter demonstrates that a majority of tweets — 63 percent — refer to PRETZEL CRISPS as a brand. Declaration of Elliot Beaver (Oct. 29, 2018) ¶ 3. If the tweets that were posted by Snack Factory are excluded, 51 percent refer to PRETZEL CRISPS as a brand name while only 20 percent used "Pretzel Crisps" in an arguably generic manner. *Id.* ¶ 4. Most notably, no other company referred to their own products using "Pretzel Crisps" or "#pretzelcrisps." *Id.* ¶ 5.

## II. Media Use of the PRETZEL CRISPS Brand.

Snyder's-Lance's PRETZEL CRISPS crackers have garnered unsolicited attention from magazines, television shows, radio programs, Internet websites, and blogs. PRETZEL CRISPS has been featured in articles in *The New York Times*, *Chicago Tribune*, *New York Daily News*, *The Philadelphia Inquirer*, *Philadelphia Magazine*, *Women's Health*, *SHAPE*, and *OK!*. (Opp'n

No. 91195552 at A1541). A search of the LexisNexis Advance database shows that, in the past six years, there have been 895 unique references to the term "Pretzel Crisps" in news reports. Of those articles, 786 (87.8%) used the term as a trademark. Declaration of Christopher Lauzau (Oct. 24, 2018) ¶ 7. Similarly, Google searches conducted in October 2018 show that of the first 97 results for the term "pretzel crisps," 87 (90%) clearly referenced PRETZEL CRISPS as a brand name. *Id.* ¶ 8. Television shows such as *Rachael Ray Show*, *NBC's Today Show*, *The Nate Berkus Show*, *CBS Early Show*, *Good Morning America*, *CNBC's Mike On the Money*, *Unwrapped*, *E! News*, and *How I Met Your Mother* have all featured PRETZEL CRISPS crackers. (Opp'n No. 9119552 at A1540–41).

## III. Industry and Third-Party Use and Recognition of the PRETZEL CRISPS Mark.

Those in the snack food industry use PRETZEL CRISPS as a brand name. Four independent distributors testified that consumers, retailers, brokers, and wholesalers uniformly used PRETZEL CRISPS to refer to Snyder's-Lance's PRETZEL CRISPS crackers. (Opp'n No. 91190246 at A1449–64; *see also* Declaration of Gary Plutchok (Oct. 24, 2018) ¶ 5; Declaration of John O'Donnell (Oct. 23, 2018) ¶¶ 5–6; Declaration of Mark Finocchio (Oct. 23, 2018) ¶ 5; Declaration of Salvatore D'Agostino (Oct. 29, 2018) ¶ 5). Online grocers similarly identify PRETZEL CRISPS as a brand name and refer to the product category as "pretzel crackers," "pretzels," "chips & pretzels," or "popcorn & pretzels." Lauzau Decl. ¶ 9. Articles in leading trade publications such as *Baking & Snack*, *Convenience Store News*, *Fancy Food & Culinary Products*, *Prepared Foods*, *Progressive Grocer*, *Snack Food & Wholesale Bakery*, and *Whole Foods Magazine* have published articles featuring PRETZEL CRISPS crackers. (Sasser Decl. ¶12, Ex. 4; *see also* Opp'n No. 91195552 at A1541).

Since the PRETZEL CRISPS brand was launched, numerous other companies have launched their own pretzel cracker products, including Gratify pretzel crackers, Weightwatchers

Mini Dijon pretzel thins, Town House pretzel thins, Town House pretzel flip sides thins, HEB pretzel crackers, Deutsche Küche pretzel crackers, Dream Pretzels All Natural Pressels pretzel chips, Laurel Hill oven baked pretzel chips, and Glutino gluten-free pretzel chips. Sasser Decl. ¶ 5. None of these brands uses the name PRETZEL CRISPS to describe or identify their products. Frito-Lay also has introduced several pretzel cracker products, none of which used the PRETZEL CRISPS trademark; those products include Rold Gold pretzel thins, Rold Gold pretzel waves, Stacy's pretzel thins, and Rold Gold thin crisps. Sasser Decl. ¶ 6; *see also* Def.'s Answer [D.E. 27] ¶ 68. Competitors have had no problem selling their pretzel crackers under a variety of other descriptive terms. (Opp'n No. 91195552 at A1543, A1759–79).

In 2007, Princeton Vanguard entered into an agreement with Sabra Dipping Co. to co-package a product that included both SABRA hummus and PRETZEL CRISPS crackers. (Opp'n No. 91190246 at A617–18). The Sabra "To Go" product acknowledged the validity of the PRETZEL CRISPS mark by prominently displaying "PRETZEL CRISPS®" on its packaging and stating that "Pretzel Crisps® [is] used under license from the Snack Factory, Inc." (*Id*. at A617–18, A1002–07). In 2008, Frito-Lay purchased a 50 percent stake in Sabra. Despite Frito-Lays' ownership, the relationship between Princeton Vanguard and Sabra continued, and Sabra (with Frito-Lay as one of its parents) continued to use and acknowledge the validity of the PRETZEL CRISPS mark. In 2010, Sabra decided to use a different supplier of pretzel crackers and ceased using the PRETZEL CRISPS mark on its "to Go" cups. Once the relationship ended, Sabra changed its packaging to reference only "pretzels"; it did not use "PRETZEL CRISPS" as a generic reference for the pretzel crackers included with the product. (Opp'n No. 91190246 at A618).

Many successful products suffer their share of infringements and the PRETZEL CRISPS brand is no different. Most notably, Kraft's Nabisco unit began selling a competing pretzel cracker product under the RITZ MUNCHABLES PRETZEL CRISPS mark. Snyder's-Lance challenged the use and Kraft immediately agreed to cease use of the mark. Kraft subsequently adopted the terms "pretzel thins" and "pretzel rounds" to describe its products, acknowledging Snyder's-Lance's rights in the PRETZEL CRISPS mark. Snyder's-Lance continues to vigorously police unauthorized use of the PRETZEL CRISPS mark and has succeeded in stopping other infringements. (Opp'n No. 9119552 A1543–44, A1793–1802).

More recently, Wish Farms, a produce grower and shipper, provided a recipe for Blueberry PRETZEL CRISPS on its website. Sasser Decl. ¶ 13, Ex. 5. After Snyder's-Lance brought the infringing use to Wish Farm's attention, it apologized for the reference to Snyder's-Lance's trademarked product and removed all reference to PRETZEL CRISPS from its website. *Id.* Similarly, Snyder's-Lance brought infringing uses of the PRETZEL CRISPS mark to the attention of Columbia County Bread and Siegert Enterprises d/b/a/ Betty Jane Homemade Candies Inc. ("Betty Jane"). Columbia County Bread agreed to cease using the PRETZEL CRISPS mark, *id.* ¶ 14, Ex. 6, and Betty Jane took a limited license to sell-off its remaining inventory and agreed to no longer use the mark. *Id.* ¶ 15, Ex. 7. In each of these cases, the disputes were resolved consensually with recognition of Snyder's-Lance's rights in the PRETZEL CRISPS mark.

## **RECORD BEFORE THE COURT**

The TTAB record has been moved into the record pursuant to 15 U.S.C. § 1071(b)(3) and the Court's August 7, 2018 order. [D.E. 17] Plaintiffs are supplementing that record with the declarations of Rachel M. Sasser (Oct. 29, 2018), MaryCatherine Regan (Oct. 29, 2018), Christopher Lauzau (Oct. 24, 2018), Elliot Beaver (Oct. 29, 2018), Dr. E. Deborah Jay (Oct. 27,

2018), Gary Plutchok (Oct. 24, 2018), John O'Donnell (Oct. 23, 2018), Mark Finocchio (Oct. 23, 2018), and Salvatore D'Agostino (Oct. 29,2018), and the exhibits attached thereto, pursuant to 15 U.S.C. § 1071(b)(3). Those declarations and exhibits are being filed contemporaneously.

## LEGAL STANDARDS

### A. Standard Under 15 U.S.C. § 1071(b).

When a party is dissatisfied with a decision of the TTAB, that party may file a civil action under 15 U.S.C. § 1071(b). In such a proceeding, the court "reviews the record *de novo* and acts as the finder of fact." *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014). Because fact discovery in the TTAB proceeding closed in 2012, Plaintiffs are submitting with this motion additional evidence that expands the record — as section 1071(b) permits — to include six years of additional evidence of the public's perception of the PRETZEL CRISPS trademark. *Id.* at 156 ("[W]here new evidence is submitted, *de novo* review of the entire record is required because the district court 'cannot meaningfully defer to the PTO's factual findings,'" because the "'PTO considered a different set of facts.'") (quoting *Kappos v. Hyatt*, 566 U.S. 431, 445 (2012)).

Under section 1071(b), Frito-Lay, as the party challenging Plaintiffs' trademark, bears the ultimate burden of proving by a preponderance of the evidence that PRETZEL CRISPS is generic. *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 3d 22, 97 (D.D.C. 2016) ("the party that had the burden of proof before the TTAB 'must bear the burden of persuasion in district court'" (quoting *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 990–91 (D.C. Cir. 1998))); *Princeton Vanguard, LLC*, 786 F.3d at 965 n.2 ("the burden [is] on Frito-Lay to prove genericness by a preponderance of the evidence"); *see also B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1300 (2015) ("The party

opposing registration bears the burden of proof . . . and if that burden cannot be met, the opposed

mark must be registered" (internal citations omitted)).

### B. Standard for Summary Judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). Although the Court must view the record in the light most favorable to the non-moving

party, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position

will be insufficient" to overcome a motion for summary judgment. *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 252 (1986).

Courts in the Fourth Circuit have not hesitated to reject genericness challenges on

motions for summary judgment and to instead hold, as a matter of law, that the mark at issue is

registerable. *See, e.g.*, *Booking.com BV v. Matal*, 278 F. Supp. 3d 891, 918 (E.D. Va. 2017)

(holding defendant failed to prove mark was generic); *Putt-Putt, LLC v. 416 Constant

Friendship, LLC*, 936 F. Supp. 2d 648, 657 (D. Md. 2013) (rejecting challenger's Internet

evidence of generic use and concluding mark was not generic); *Lumber Liquidators, Inc. v. Stone

Mountain Carpet Mills, Inc.*, No. 3:08-CV-573-HEH, 2009 WL 2013599, *6 (E.D. Va. July 10,

2009) (rejecting defendant's proffer of separate dictionary definitions of component words in a

mark and holding the mark not generic). Where the material facts are beyond genuine dispute,

and those facts compel a finding that a mark is not generic, summary judgment is appropriate.

### <u>ARGUMENT</u>

The overwhelming evidence of record establishes that PRETZEL CRISPS is a brand

name. Frito-Lay cannot support its assertion that PRETZEL CRISPS is generic and not eligible

for registration. The evidence presented to the TTAB (current through the close of discovery in

2012) made clear that PRETZEL CRISPS is not the name of a type of product (like popcorn or

potato chips), but rather is understood by consumers as a brand name. That conclusion is reinforced by the facts developed since 2012 and submitted here, for the first time, as part of the updated record for the Court to consider under 15 U.S.C. § 1071(b). The last six years of consumer usage of the term PRETZEL CRISPS; additional brand sales, advertising expenditures, and recognition of the brand on social media; and the ascension of PRETZEL CRISPS to the number-one brand in the deli section bolster the conclusion that PRETZEL CRISPS is a brand, not a generic term, and is therefore entitled to registration.

As it did before the TTAB and on its own motion for summary judgment [D.E. 28], Frito-Lay likely will cite to some news reports that arguably use the term PRETZEL CRISPS generically (although those reports are less than 10 percent of all news reports discussing Pretzel Crisps), will point to comments by Snack Factory executives, and will note that Snack Factory referred to the number of "crisps" in a serving. These cherry-picked facts do not preclude summary judgment in favor of Plaintiffs. Even if credited, none of these facts (which are not themselves disputed) create a genuine dispute on the core issue: that the overwhelming evidence shows that the consuming public perceives PRETZEL CRISPS as a brand name.[5]

### I.  The PRETZEL CRISPS Mark Is Not Generic and Is Understood by the Relevant Public as a Trademark.

The key question here is whether PRETZEL CRISPS refers to a brand name or to the genus of the goods (here, pretzel crackers). The standard used to evaluate that question is the "primary significance" of the mark, as a whole, to members of the relevant public. 15 U.S.C. § 1064(3); *Booking.com*, 278 F. Supp. 3d at 904 ("The public's primary understanding of a mark

---

[5] If the Court views some limited set of facts as disputed, the Court may, with consent of the parties, assess the entire record on the written submissions, and make all factual determinations that are necessary. The parties proceeded with this understanding before the TTAB, and the district court did likewise in the very similar case of *Booking.com*, 278 F. Supp. 3d at 900. Plaintiffs are willing to stipulate to the same procedure here.

'is derived from it as a whole, not from its elements separated and considered in detail;' therefore, 'it should be considered in its entirety.'") (citation omitted); *see also Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996) ("proof that a mark has become an indicator of a class of product or service and not its source requires more than the subjective view of a casual purchaser; there must be evidence that this is the mark's primary significance to members of the 'relevant public.'") (citation omitted); *Princeton Vanguard, LLC*, 786 F.3d at 968 (the test for genericness requires consideration of "the record evidence of the public's understanding of the mark as a whole" (citations omitted)). That question here is whether PRETZEL CRISPS refers to a brand name or to the genus of the goods (here, pretzel crackers).

"A mark is not generic simply because it plays some role in denoting to the public what the product or service is; rather, a mark may serve a dual function — that of identifying a product [or service] while at the same time indicating its source." *Booking.com*, 278 F.3d at 902 (citation and quotation marks omitted). The relevant inquiry is the *primary* significance to consumers. Evidence of how the relevant purchasing public understands the term PRETZEL CRISPS can be shown through a variety of sources, including references in newspapers, trade journals, and other publications; dictionary definitions (of the mark as a whole); and consumer surveys. *Glover*, 74 F.3d at 59. The record here contains all of this evidence, which establishes, as a matter of law, that PRETZEL CRISPS is primarily understood by consumers as a brand name.

## A. The Media Uses PRETZEL CRISPS as a Brand Name.

For more than a decade, PRETZEL CRISPS pretzel crackers have garnered unsolicited attention from magazines, television shows, radio programs, Internet websites, social media, and blogs, including high-profile publications such as *The New York Times*, *Chicago Tribune*, *New York Daily News*, *The Philadelphia Inquirer*, *Philadelphia Magazine*, *Women's Health*, *SHAPE*,

and *OK!*; well-known television shows, including the *Rachael Ray Show*, *NBC's Today Show*, *The Nate Berkus Show*, *CBS Early Show*, *Good Morning America*, *CNBC's Mike On the Money*, *Unwrapped*, *E! News*, and *How I Met Your Mother*; and prominent social media sites, including Facebook (474,000 followers), Twitter (47,800 followers), and Instagram (42,500 followers). (Sasser Decl. ¶ 10, Ex. 2; *see also* Opp'n No. 91195552 at A1540–41).

The media overwhelmingly uses PRETZEL CRISPS as a brand name. Between 2004 and 2012, 83 percent of references used the term as a trademark. (Opp'n No. 91195552 at A1157; *see also* Lauzau Decl. ¶¶ 4, 6). More recently, between September 2012 and October 2018, 786 of the 895 news articles (87.8%) used the term PRETZEL CRISPS as a trademark. Lauzau Decl. ¶ 7. These numbers show that the media understands PRETZEL CRISPS to be a brand name rather than a generic term. That media usage closely mirrors search results on Google, where, as of October 2018, 90 percent of the first-page results of a Google search used PRETZEL CRISPS as a brand name. Lauzau Decl. ¶ 8.

These unsolicited trademark usages of PRETZEL CRISPS over the past decade provide compelling evidence that the mark is not generic. *See, e.g.*, *In re Am. Online, Inc.*, 77 U.S.P.Q.2d 1618, 1623 (T.T.A.B. 2006) (precedential) (concluding INSTANT MESSENGER was not generic where 43 out of 70 media articles used the term INSTANT MESSENGER as a trademark and specifically identified the applicant as the source of the services offered); *In re Trek 2000 Int'l Ltd.*, 97 U.S.P.Q.2d (BNA) 1106, 1113 (T.T.A.B. 2010) (precedential) (finding THUMBDRIVE was not generic where applicant provided evidence of "not only a significant

amount of proper trademark use but also trademark recognition by third parties" (internal quotes omitted)).[6]

### B. The Industry Uses PRETZEL CRISPS as a Brand Name.

Snyder's-Lance is the exclusive user of the term PRETZEL CRISPS in the pretzel cracker market. Today the pretzel cracker market includes many new competitors, including Frito-Lay, none of which uses the name PRETZEL CRISPS to describe or identify its product. Sasser Decl. ¶ 5. The lack of generic industry usage is strong evidence that the PRETZEL CRISPS mark is not generic. *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 333 (D. Md. 2017) (finding mark was not generic where competitors did not use plaintiff's mark to describe their product).

Others in the industry similarly recognize PRETZEL CRISPS as a brand name. PRETZEL CRISPS pretzel crackers have been the subject of articles in leading trade publications. *Baking & Snack*, *Convenience Store News*, *Fancy Food & Culinary Products*, *Prepared Foods*, *Progressive Grocer*, *Snack Food & Wholesale Bakery*, and *Whole Foods Magazine* have published articles featuring PRETZEL CRISPS crackers. (Sasser Decl. ¶ 12, Ex. 4; *see also* Opp'n No. 91195552 at A1541). Snack food distributors and retailers use the PRETZEL CRISPS mark to refer to Snyder's-Lance's brand of pretzel crackers, not to pretzel crackers generically. (Opp'n No. 91190246 at A1449–64).

Plaintiffs' uncontroverted declarations from four independent distributors further confirm that the industry understands PRETZEL CRISPS as a brand. Each testified in the TTAB

---

[6] In the proceedings before the TTAB, Princeton Vanguard submitted evidence that 83 percent of media references used PRETZEL CRISPS as a brand name. (Opp'n No. 91195552 at A1157). Despite this objective evidence of non-generic usage, the TTAB spent four pages quoting from 30 of the 36 articles where there was generic use, but completely ignored the vast majority of the news reports that showed the mark was not generic. *Frito-Lay*, 124 U.S.P.Q.2d at 1190–93. This demonstrates why the Court needs to review the evidence *de novo*, unconstrained by the TTAB's erroneous approach.

proceedings that the term PRETZEL CRISPS is used by the industry to refer exclusively to the PRETZEL CRISPS brand of pretzel crackers, and that snack food distributors, brokers, and wholesalers all understand PRETZEL CRISPS to be a brand name.  (Opp'n No. 91190246 at A1449–64).  Each also has provided an updated declaration in this action, and confirms eight years later that the term PRETZEL CRISPS still is used by the industry exclusively to refer to the PRETZEL CRISPS brand of pretzel crackers, and that snack food distributors, brokers, and wholesalers all understand PRETZEL CRISPS to be a brand name.  *See* Plutchok Decl. ¶ 5; O'Donnell Decl. ¶¶ 5 –6; Finocchio Decl. ¶ 5; D'Agostino Decl. ¶ 5.

That industry usage is confirmed by reviewing the websites of several online grocers, all of which sell PRETZEL CRISPS under product categories such as "pretzel crackers," "pretzels," "chips & pretzels," or "popcorn & pretzels" and identify PRETZEL CRISPS as a brand within the relevant product category.  Lauzau Decl. ¶ 9.  Notably, none uses PRETZEL CRISPS as a category name.

That is not surprising given the abundance of other available names — pretzel crackers, pretzel flatz, pretzel thins, pretzel chips, pretzel dippers, and pretzel snacks (Opp'n No. 91195552 at A1543, A1759–79) — which in and of itself constitutes compelling evidence that PRETZEL CRISPS is not generic.  *See JFJ Toys, Inc.*, 237 F. Supp. 3d at 333 (finding availability of other terms by which to refer to the product genus weighed against a finding that a mark was generic); *see also Trek 2000*, 97 U.S.P.Q.2d at 1113 (noting the availability of other terms for flash drives and the "complete absence of competitor use after ten years," indicated the mark THUMBDRIVE was not generic).

Courts have recognized that, particularly where the mark's owner has created a new product category, it may be "helpful to ask whether one firm's exclusive use of the phrase will

prevent a rival from naming itself and describing its product." *Te-Ta-Ma Truth Found. —*
*Family of Uri v. World Church of the Creator*, 297 F.3d 662, 666–67 (7th Cir. 2002). Where a
multitude of equally acceptable alternatives remain for competitors — as is the case here —
genericness is less likely to be found. *See In re Minnetonka Inc.*, 3 U.S.P.Q.2d (BNA) 1711,
1712 (T.TA.B. 1987) (ordering registration of the term SOFTSOAP based, in part, on the fact
that the record demonstrated that "a fairly substantial number of competitors exist and that none
of them use the term, but rather, appear to use" other terms to refer to liquid hand soap).

### C. Survey Evidence Supports a Finding that PRETZEL CRISPS Is Not Generic.

Courts in this circuit agree that consumer survey evidence is relevant to understanding
the public's perception of coined terms. *See Hunt Masters, Inc. v. Landry's Seafood Restaurant,*
*Inc.*, 240 F.3d 251, 255 (4th Cir. 2001) (indicating survey evidence is useful on the issue of
genericness when a trademark owner has coined a term); *Glover*, 74 F.3d at 59 (observing
consumer surveys are relevant to consumers' understanding of a mark); *Booking.com*, 278
F. Supp. 3d at 915–18 (finding plaintiff's survey was strong evidence that consumers identified
BOOKING.COM as a brand name); *JFJ Toys, Inc.*, 237 F. Supp. 3d at 329 (listing consumer
surveys among the forms of evidence that are relevant to whether a mark is generic); *Putt-Putt,*
*LLC*, 936 F. Supp. 2d at 656 (same); *Lumber Liquidators*, 2009 WL 2013599 at *5 (same).

Moreover, "[n]umerous courts agree that direct consumer evidence, e.g., consumer
surveys and testimony, is preferable to indirect forms of evidence such as dictionaries, trade
journals and other publications." *Booking.com*, 278 F. Supp. 3d at 918 (internal quotes omitted).
And in this case, the Federal Circuit specifically directed that, on remand, the TTAB "must give
appropriate consideration" to the survey evidence submitted by Plaintiffs that demonstrated that
PRETZEL CRISPS was understood by the majority of consumers to be a brand name, not a
generic term. *Princeton Vanguard, LLC*, 786 F.3d at 971.

For its survey, Plaintiffs retained Dr. E. Deborah Jay, one of the foremost experts on genericness surveys, to evaluate how the relevant public understands the term PRETZEL CRISPS.  (Opp'n No. 91195552 at A4419–44; *see* E. Deborah Jay, Genericness Surveys in Trademark Disputes:  Evolution of Species, 99 Trademark Rep. 1118 (2009)).  Dr. Jay designed a Teflon-style survey, the preferred method for determining the primary significance of a mark among the relevant public.  *E.I. Du Pont de Nemours & Co. v. Yoshida Int'l, Inc.*, 393 F. Supp. 502, 525 (E.D.N.Y. 1975); *see also* 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12:16 (5th ed. 2018).  The majority of respondents in Dr. Jay's survey identified PRETZEL CRISPS as a brand name.

Dr. Jay conducted a double-blind phone interview of 500 individuals, of which 347 satisfied the initial screening criteria.  (Opp'n No. 91195552 at A4424).  The survey respondents were provided with instructions explaining the difference between brand names and common (generic) names.  (*Id.* at A4424–25).  Respondents were then asked two gate-keeping questions designed to test their understanding of the distinction between brand names and common names.  (*Id.* at A4425).  Respondents who did not correctly answer the gate-keeping questions were excluded from the survey, consistent with established TTAB practice, which holds that, if a respondent does not understand the distinction between common and brand names, it is not appropriate to include that person in the survey.  (*Id.*)  Using six control terms — three brand names (CHEESE NIPS, FLAVOR TWISTS, and SUN CHIPS) and three common names (ONION RINGS, GOURMET POPCORN, and MACADAMIA NUT) — and the test term, PRETZEL CRISPS, respondents were asked whether each term was a brand name or a common name.  (*Id.* at A4426).

Dr. Jay's genericism survey showed 55 percent of consumers understood PRETZEL

CRISPS as a brand name.  (*Id.* at A4427).  Only 36 percent of respondents thought PRETZEL

CRISPS was a common (generic) name and 9 percent had not heard the term or stated they did

not know the answer.  (*Id.*).  When Dr. Jay used the standard practice of excluding respondents

who answer "don't know," the percentage of brand name responses increased to 60 percent.

(*Id.*).

In its initial decision, the TTAB "apparently found no flaw" with this survey.  *Princeton

Vanguard, LLC*, 786 F.3d at 969.  On remand, the TTAB did an about-face, rejected the survey

as irrelevant — despite the Federal Circuit's direction that the TTAB "must give appropriate

consideration to the proffered survey evidence" (*id.* at 971) — and criticized Dr. Jay's use of the

term "WHEAT THINS" as an example of a brand name in initial instructions.  *See Frito-Lay*,

124 U.S.P.Q.2d at 1197.

The TTAB's newly-minted criticism misses the mark.  Dr. Jay's use of a descriptive

brand name was proper because trademark status can apply to terms that are arbitrary, fanciful,

suggestive, *or descriptive*.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69

(1992); *see also* 2 MCCARTHY § 11:1.  As explained in the declaration now submitted by Dr. Jay,

and as supported by case law, it would have been questionable for Dr. Jay to exclude such a

descriptive mark since it could have implied to respondents that only very strong marks could be

trademarks.  Declaration of E. Deborah Jay (Oct. 27, 2018) ¶ 8; *Eagle Snacks, Inc. v. Nabisco

Brands, Inc.*, 625 F. Supp. 571, 576 (D. N.J. 1985) (failure to include a descriptive trademark in

a Teflon survey limited the survey's weight).

Accordingly, the Court can and should consider the survey results in finding that

PRETZEL CRISPS is not generic.

## II.     The PRETZEL CRISPS Mark Has Acquired Secondary Meaning.

Frito-Lay also challenges the PRETZEL CRISPS mark as being merely descriptive — in other words, Frito-Lay argues that the mark describes only products that are pretzel crackers and is not understood by consumers as signifying pretzel crackers that come from just one company. That argument is specious, and entirely unsupported by the record. The evidence shows that the mark PRETZEL CRISPS has acquired secondary meaning among the relevant purchasing public.

The Fourth Circuit has identified several factors that are relevant to the secondary meaning inquiry, including: "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; (6) the length and exclusivity of the mark's use." *Booking.com*, 278 F. Supp. 3d at 919 (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990)). A party need not prove all six factors. *Booking.com*, 278 F. Supp. 3d at 921; *see also Worsham Sprinkler Co. v. Wes Worsham Fire Prot. LLC*, 419 F. Supp. 2d 861, 869–72 (E.D. Va. 2006) (finding secondary meaning on the basis that three of the six factors were present).

Here, all of these factors are present and show that PRETZEL CRISPS has become synonymous in the mind of the public with Plaintiffs' PRETZEL CRISPS pretzel crackers.

### A.  Snyder's-Lance's PRETZEL CRISPS Sales and Market Share Are Significant.

PRETZEL CRISPS crackers are the market leader among pretzel cracker products, having enjoyed significant sales growth almost every year since the brand's launch. (Regan Decl. ¶ 4; Opp'n No. 91195552 at A543). Sales since 2004 have topped $2.5 billion dollars at retail. (Regan Decl. ¶ 5; Opp'n No. 91195552 at A543). This value far exceeds sales revenue numbers identified in other cases finding secondary meaning. *See, e.g.*, *Teaching Co. Ltd. Partnership v. Unapix Entertainment, Inc.*, 87 F. Supp. 2d 567, 580 (E.D. Va. 2000) (finding secondary meaning where sales reached $6 million in one year); *IDV N. Am., Inc. v. S&M*

*Brands*, 26 F. Supp. 2d 815, 823 (E.D. Va. 1998) (finding secondary meaning where sales exceeded $1 billion total over nine years).

Additionally, in 2017, PRETZEL CRISPS became the number one product in the entire "deli snacks" section in which it principally competes. Sasser Decl. ¶ 7. The PRETZEL CRISPS brand continues to hold that top spot today, with a market share of more than 30 percent of deli cracker sales nationwide. *Id.*

### B. Snyder's-Lance's Advertising Has Reached Millions of Consumers.

Through 2017, Snyder's-Lance spent more than $50 million on advertising, marketing, and promoting the PRETZEL CRISPS brand through traditional channels like print and billboard and online channels like social media. *Id.* ¶ 8; *see Teaching Co.*, 87 F. Supp. 2d at 580 (spending more than $11 million on advertising was indicative of secondary meaning). In 2016 and 2017, Snyder's-Lance secured 225 million consumer impressions from its print and online advertising of PRETZEL CRISPS. Sasser Decl. ¶ 9. Snyder's-Lance complements these print and online marketing efforts with field marketing teams that travel the country and interact directly with consumers to promote the PRETZEL CRISPS brand. In 2017 alone, those teams distributed some 600,000 product samples at events that prominently featured the PRETZEL CRISPS trademark. *Id.* ¶ 11. Finally, as noted above, the PRETZEL CRISPS brand enjoys a strong following on social media, which is further evidence of secondary meaning. Sasser Decl. ¶ 10, Ex. 2; Beaver Decl. ¶ 3; *see Booking.com*, 278 F. Supp. 3d at 922 (100,000 followers on Twitter demonstrated secondary meaning).

### C. The PRETZEL CRISPS Mark Has Received Extensive Unsolicited Media Coverage.

The PRETZEL CRISPS brand has received extensive unsolicited media coverage. In the TTAB proceeding, Princeton Vanguard presented evidence that 83 percent of unsolicited media

references used the term PRETZEL CRISPS as a brand name. (Opp'n No. 91195552 at A1157). A search of the LexisNexis Advance database, discussed above, shows that 87.8 percent of articles use PRETZEL CRISPS as a trademark referring to Snyder's-Lance pretzel cracker product, showing that the trend in media coverage is increasingly to use PRETZEL CRISPS as a brand name. Lauzau Decl. ¶ 7. This unsolicited media coverage "illustrates the nexus between the mark and the source, as is required for secondary meaning." *Teaching Co.*, 87 F. Supp. 2d at 580; *see also Booking.com*, 278 F. Supp. 3d at 921 (news articles referring to the BOOKING.COM mark indicated secondary meaning); *Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 33 F. Supp. 2d 488, 496–97 (E.D. Va. 1999) (recent news database search that disclosed hundreds of articles referring to the markholder demonstrated secondary meaning).

### D. Consumer Survey Evidence Demonstrates PRETZEL CRISPS Has Acquired Secondary Meaning.

In the TTAB proceeding, George Mantis, an expert in survey methodology, conducted a secondary meaning survey (the "Mantis Survey"). The Mantis Survey tested whether the name PRETZEL CRISPS, used in conjunction with a salty snack food product, has acquired secondary meaning. The survey found that 38.7 percent of respondents associated the term PRETZEL CRISPS with only one company. Among respondents who had an opinion, 44.7 percent associated the term with only one company. (Opp'n No. 91195552 at A 4176). Courts consistently recognize that secondary meaning is established by survey results in this range. *See, e.g.*, *McNeil-PPC, Inc. v. Granitic, Inc.*, 919 F. Supp. 198, 37 U.S.P.Q.2d (BNA) 1713, 1716 (E.D.N.C. 1995) (41%); *Shuffle Master Inc. v. Awada*, No. 2:05-cv-01112, 83 U.S.P.Q.2d (BNA) 1054, 1057 (D. Nev. 2006) (35%); *Winchester Fed. Sav. Bank v. Winchester Bank, Inc.*, 359 F. Supp. 2d 561, 566 (E.D. Ky. 2004) (35%); *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339,

349 (S.D.N.Y. 1998) (42%); *Monsieur Henry Wines, Ltd. v. Duran*, 204 U.S.P.Q. (BNA) 601, 605 (T.T.A.B. 1979) (37%); *In re Hershey Chocolate and Confectionary Corp.*, Serial No. 77809223, 2012 WL 2930639, at *6 (T.T.A.B. June 28, 2012) (non-precedential) (42%); *In re Carl Walther GmbH*, Serial No. 77096523, 2010 WL 4502071, at *3 (T.T.A.B. Oct. 26, 2010) (non-precedential) (33%). Although Frito-Lay complained about the Mantis Survey's methodology and the TTAB parroted those criticisms in its decision, Frito-Lay did not offer its own survey, nor did it offer other evidence of consumer perceptions of whether the brand had acquired secondary meaning.

The TTAB's conclusion that the Mantis Survey also should have been considered on the issue of genericness and that the results of less than 50 percent demonstrate that the mark is generic, *Frito-Lay*, 124 U.S.P.Q.2d at 55–56, is specious. The Mantis Survey "did *not* purport to measure genericness or the primary significance of the term PRETZELS CRISPS. Attempting to draw such conclusions from the survey is improper in that genericness surveys and secondary meaning surveys measure different things." (Opp'n No. 91195552 at A3101). A secondary meaning survey is intended to show whether consumers associate a descriptive mark with one source or more than one source, not to show what the primary significance of the mark is in the minds of consumers. *Id.* at 3103.

### E. Snyder's-Lance Use of the PRETZEL CRISPS Mark Has Been Exclusive and Continuous.

Snyder's-Lance is the exclusive user of the term PRETZEL CRISPS in the pretzel cracker market. Exclusive and continuous use of the PRETZEL CRISPS mark for 14 years is strong evidence of secondary meaning. *See, e.g.*, *Booking.com*, 278 F. Supp. 3d at 921 (uninterrupted use over 11 years demonstrated secondary meaning); *Teaching Co.*, 87 F. Supp. 2d at 580 (continuous use over eight years established secondary meaning).

**F.  Others in the Industry Have Attempted to Copy the PRETZEL CRISPS Mark.**

When, in 2010, a competing pretzel cracker product, RITZ MUNCHABLES, started using the PRETZEL CRISPS mark, Princeton Vanguard immediately challenged the use. (Opp'n No. 91195552 at A1544).  Kraft — a sophisticated marketer in the salty snack category — acknowledged "that Princeton Vanguard owns the Registration" for the term and immediately agreed to cease use of the mark.  (*Id.* at A1797; *see also id.* at A1793–1801).  Kraft subsequently adopted the terms "pretzel thins" and "pretzel rounds" to describe its products, thereby acknowledging Princeton Vanguard's exclusive rights in the PRETZEL CRISPS mark.  (Opp'n No. 91195552 at A1544).   In addition, Snyder's-Lance continues to police the use of its mark, reaching agreements — without resorting to litigation — with Wish Farms, Columbia County Bread, and Betty Jane to cease use of the PRETZEL CRISPS mark.   In each of these cases, the disputes were resolved consensually and the companies recognized Snyder's-Lance's rights in the PRETZEL CRISPS mark.  Sasser Decl. ¶¶ 13–15, Exs. 5–7.

## CONCLUSION

Plaintiffs respectfully request that the Court grant summary judgment in their favor, and order the registration of the PRETZEL CRISPS mark.

Respectfully submitted, this the 29th day of October, 2018.

DEBEVOISE & PLIMPTON LLP                    ELLIS & WINTERS LLP
David H. Bernstein (*pro hac vice*)
James J. Pastore (*pro hac vice*)           /s/ Jonathan D. Sasser
Jared I. Kagan (*pro hac vice*)             Jonathan D. Sasser
Michael C. McGregor (*pro hac vice*)        N.C. State Bar No. 10028
919 Third Avenue                            Alexander M. Pearce
New York, New York 10022                    N.C. State Bar No. 37208
Telephone: (212) 909-6696                   Post Office Box 33550
dhbernstein@debevoise.com                   Raleigh, North Carolina 27636
jjpastore@debevoise.com                     Telephone: (919) 865-7000
jikagan@debevoise.com                       jon.sasser@elliswinters.com
mcmcgregor@debevoise.com                    alex.pearce@elliswinters.com

*Counsel for Plaintiffs Snyder's Lance, Inc. and Princeton Vanguard, LLC*

25

## <u>CERTIFICATE OF SERVICE</u>

I do certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record or interested parties via the CM/ECF system.

This 29th day of October, 2018.

/s/ Jonathan D. Sasser
Jonathan D. Sasser
N.C. State Bar No. 10028
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
jon.sasser@elliswinters.com