IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No: 3:17-CV-00652

| | |
|---|---|
| SNYDER'S-LANCE, INC. and PRINCETON VANGUARD, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FRITO-LAY NORTH AMERICA, INC.,<br><br>Defendant. | FRITO-LAY NORTH AMERICA, INC.'S BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS |

For nearly two months, counsel for Defendant Frito-Lay North America, Inc. has attempted to obtain the production of key documents responsive to Frito-Lay's document requests and essential to the issues Plaintiffs raised in their Cross-Motion for Summary Judgment and their opposition to Defendant's Motion for Summary Judgment. Despite numerous communications with counsel for Plaintiffs and various attempts at resolution, Plaintiffs have refused to search for or produce documents responsive to three of Frito-Lay's document requests. Accordingly, Frito-Lay is forced to request from this Court an order compelling the production of documents in Plaintiff's possession responsive to those requests.

**<u>Background</u>**

On August 30, 2018, Frito-Lay filed a Motion for Summary Judgment on the basis that Plaintiffs' alleged brand name "pretzel crisps" is a generic term (and was when Plaintiffs adopted it in 2004). (Dkt. 28). On October 28, 2018, Plaintiffs filed a Response to Frito-Lay's Motion (Dkt. 33), as well as their own Cross Motion for Summary Judgment (Dkt. 34). In connection with both their Response to Frito-Lay's Motion and their own Cross-Motion, Plaintiffs filed thousands of documents purporting to support their arguments. (Dkts. 36–46).

On November 20, 2018, Frito-Lay served its First Requests for Production seeking documents necessary to respond to Plaintiffs' Response to Frito-Lay's Motion, Plaintiffs' Cross-Motion, and the voluminous pages of evidence submitted with both. Rausa Decl. ¶ 2, Ex. A. On December 20, 2018, Plaintiffs served their Responses and Objections to Frito-Lay's Requests. Rausa Decl. ¶ 3, Ex. B. Relevant to this Motion to Compel are three of Frito-Lay's Requests for Production: Request Nos. 7, 15, and 16.

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While the decision whether to grant a motion to compel is left within a district court's broad discretion, "[t]he rules of discovery are to be accorded broad and liberal construction." *Roundpoint Mortgage Servicing Corp. v. Five Brothers Mortgage Company Services and Securing, Inc.*, No. 3:15-CV-559, 2016 WL 6436575, at *2 (W.D.N.C. Oct. 28, 2016). Additionally, "[a] party's failure to provide or permit discovery may result in sanctions including the following: reasonable expenses caused by the failure; default judgment against the disobedient party; or treating as contempt of court the failure to obey any order. *Id.* (citing Fed. R. Civ. P. 37(b)–(d)).

## Requests for Production

**Request No. 7**

Request No. 7 seeks the following documents from 2012 (the close of discovery at the TTAB) to the present:

> All documents in which consumers use the term "crisp," "crisps," "pretzel crisps," and/or "pretzel crisps" in lowercase letters in connection with Plaintiffs' "PRETZEL CRISPS" products.

This type of evidence was requested and produced in the underlying TTAB proceeding from which this appeal was taken, and it was cited as persuasive evidence by the TTAB. In that proceeding, the TTAB noted several examples of Plaintiffs' own customers using the term "pretzel crisps" generically in emails to Princeton Vanguard and found based on context and capitalization that such emails showed that the author in each instance "perceived 'PRETZEL CRISPS' to refer to a product that may derive from multiple sources rather than to refer to a mark controlled by a single source." *Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, 124 U.S.P.Q.2d 1184, 1194 (2017). Accordingly, the TTAB concluded that this consumer feedback (along with related evidence of media references and product reviews) "support[s] a conclusion that the term 'PRETZEL CRISPS' is more likely to be perceived by the relevant public as a name for a type of snack product that may derive from multiple sources, rather than as a brand that emanates from a single source." *Id.*

Plaintiffs objected to Request No. 7 on the grounds that the request is "overly broad, unduly burdensome, and not proportional to the needs of the case," alleging that the request "could include a large volume of communications and correspondence relating to Plaintiffs' PRETZEL CRISPS products" and that "[s]earching for and producing such correspondence—even subject to the scope and timing limitations set forth in Plaintiffs' General Objections—would require a time-consuming and expensive search that would generate little if any information relevant to the claims or defenses in this matter." Based on these objections, Plaintiffs refused to search for or produce any documents in response to Request No. 7.

Given the relevance and importance of this type of information in the underlying proceeding, the relevance of this evidence here cannot be seriously disputed. However, in an effort to resolve the dispute and address Plaintiffs' stated concerns about the burden of searching for and producing the requested documents, Frito-Lay proposed that Plaintiffs instead produce "all

correspondence to and from consumers regarding Plaintiffs' 'PRETZEL CRISPS' products in the relevant timeframe" and offered that Frito-Lay would search the correspondence itself for the specific communications described in the request. Frito-Lay's goal with Request No. 7, both as originally propounded and with the proposed modification to accommodate Plaintiffs' stated concerns, was to obtain the production of emails, letters, and other communications to and from consumers that show how consumers use and understand the term "pretzel crisps" when communicating with Plaintiffs.

In the weeks that followed, Plaintiffs maintained their objections and refused to produce responsive letters and emails from consumers. In fact, counsel for Plaintiffs actually indicated to Frito-Lay that Plaintiffs were no longer in possession of such emails and letters, despite the fact that litigation was ongoing and that such documents are relevant and probative on the issues that are now before this Court. Instead, according to counsel for Plaintiffs, Plaintiffs recorded some information into various spreadsheets and databases regarding certain consumer communications over the years, without retaining the underlying communications. Plaintiffs did agree to produce these spreadsheets and records. But many of the spreadsheets appear to be mere summaries of communications created by employees, and for others it is impossible to tell if they are complete and/or verbatim records of the underlying communications at issue. Such records are insufficient substitutes for actual customer communications because they do not contain the context necessary for evaluating the use of the terms "pretzel crisps" by Plaintiffs' customers. Because it had appeared that the actual emails and letters from customers were not retained, Frito-Lay became concerned that that critical evidence had been destroyed by Plaintiffs.

However, on February 13, 2019, after weeks of representing that consumer emails and letters were not retained, and only after Frito-Lay expressed an intent to seek sanctions from this

Court for spoliation of relevant evidence, counsel for Plaintiffs for the first time informed Frito-Lay that an investigation revealed a "backup system" that they believe preserved emails to and from the email address info@pretzelcrisps.com, which for several years was the email address that Plaintiffs provided for consumers to contact the company. On February 15, 2019, counsel for Plaintiffs indicated that the "backup system" contains over 31,000 emails to and from info@pretzelcrisps.com between 2006 and the present. However, Plaintiffs maintained their refusal to search or produce the responsive emails on the backup system in response to Frito-Lay's request.

Actual emails and letters from consumers are highly relevant to the arguments Plaintiffs assert in this appeal, as they evidence the use and understanding of the term "pretzel crisps" among consumers of the product at issue. As such, Frito-Lay is entitled to these communications. Further, Plaintiffs' failure to conduct a full investigation early on in connection with their Responses and Objections to Frito-Lay's Requests and their inconsistent statements regarding the existence and location of relevant evidence have caused considerable delay and have complicated an otherwise simple discovery request.

Based on the foregoing, Frito-Lay requests that this Court order Plaintiffs to produce documents responsive to Request No. 7 in Plaintiffs' possession, including the emails identified on Plaintiffs' "backup system," and direct Plaintiffs to identify responsive documents, if any, that are no longer in Plaintiffs' possession for failure to preserve relevant evidence.

**Request Nos. 15 and 16**

Request No. 15 seeks the following documents from 2012 to the present:

> Documents related to any "social media agency hired by Snyder's-Lance" to manage social media with respect to Plaintiffs' claimed "PRETZEL CRISPS" brand and product, including communications with the agency, policies the agency is required to

> follow, instructions provided to the agency, and agreements with the agency.

Request No. 16 seeks the following documents from 2012 to the present:

> Documents related to search optimization practices with respect to the term "crisp," "crisps," "pretzel crisp," and/or "pretzel crisps" on any search engine, including Google, including but not limited to policies, strategies, purchases, agreements, and communications regarding same.

In their briefs, Plaintiffs made arguments and introduced evidence regarding their social media and internet presence as it relates to their "pretzel crisps" product, and Plaintiffs have explained that they engage a "social media agency"[1] for online activities. As such, these requests are designed to target documents related to those arguments and that evidence.

Plaintiffs objected to both requests on the grounds that they are "vague, overly broad, and unduly burdensome, and not proportionate to the needs of the case." Notwithstanding those objections, Plaintiffs agreed to produce certain narrow categories of documents responsive to the Requests, and indicated that with respect to communications with its social media agency,[2] its investigation was continuing.

On January 14, 2019, Plaintiffs' counsel informed counsel for Frito-Lay that it was in possession of 11,377 emails that hit on the term "pretzel crisps" and that were sent to or received from Plaintiffs' social media agency. However, even though these communications are responsive to Request Nos. 15 and 16, Plaintiffs refused to search and/or produce any of these communications.

In an attempt to reach a compromise, Frito-Lay suggested a limited set of search terms designed to reach the most relevant documents and reduce any burden on Plaintiffs. Despite this

---

[1] *See* Dkt. 45 (Decl. of Rachel M. Sasser) ¶ 10.
[2] Plaintiffs' counsel indicated in an email on January 14, 2019, that the same social media agency also handles search optimization for Plaintiffs.

proposal, Plaintiffs have steadfastly maintained their refusal to search and produce documents. In fact, Plaintiffs will not even agree to apply the search terms provided by Frito-Lay and report how many results are returned.

Communications to and from Plaintiffs' social media agency are relevant and necessary to evaluate Plaintiffs' arguments and evidence and are responsive to Frito-Lay's document requests. As such, Frito-Lay is entitled to those communications.

Based on the foregoing, Frito-Lay requests that this Court order Plaintiffs to produce the communications it has already identified to and from its social media agency in response to Frito Lay's Request Nos. 15 and 16.

## Conclusion

For weeks, Frito-Lay has tried to reach a resolution with Plaintiffs regarding the production of responsive documents, and despite those efforts Plaintiffs have refused to cooperate. Meanwhile, Frito-Lay has been unable to complete its briefing on the motions for summary judgment without the full and fair discovery to which it is entitled.[3] Thus, reluctantly, Frito-Lay is forced to ask the Court to intervene and compel the production of documents.

Accordingly, Frito-Lay respectfully requests an order from this Court compelling the production of the responsive documents as described above. Further, given the apparent volume of responsive documents, Frito-Lay further request that the Court order that Plaintiffs produce these documents as they are kept in the normal course of business including the accompanying metadata to allow Frito-Lay to load, organize, and search the documents in a standard document-review database.

---

[3] Frito-Lay is also filing a motion to suspend the briefing schedule pending resolution of this Motion to Compel and the production of any documents as required by the Court.

This 19th day of February, 2019.

    /s/ Alice C. Richey
Alice C. Richey
N.C. Bar No. 13677
Abigail W. Henderson
N.C. Bar No. 52182
ALEXANDER RICKS PLLC
4601 Park Road, Suite 580
Charlotte, North Carolina 28209
Telephone: 980-335-0720
Facsimile: 704-365-3676
alice@alexanderricks.com
abbie@alexanderricks.com

William G. Barber*
David E. Armendariz*
PIRKEY BARBER PLLC
600 Congress Ave.; Suite 2120
Austin, Texas 78701
Telephone: (512) 482-5223
Facsimile: (512) 322-5201
bbarber@pirkeybarber.com
darmendariz@pirkeybarber.com

*Attorneys for Defendant*

* admitted *pro hac vice*