UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| SNYDER'S-LANCE, INC. and PRINCETON VANGUARD, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:17-CV-00652-RJC-DSC |
| FRITO-LAY NORTH AMERICA, INC., | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS**

Plaintiffs Snyder's-Lance, Inc. and Princeton Vanguard, LLC (collectively, "Snyder's-Lance") respectfully submit this brief in opposition to Defendant Frito-Lay North America, Inc.'s ("Frito-Lay") Motion to Compel Production of Documents [D.E. 53]. The parties have reached an agreement with respect to Frito-Lay's motion to compel for Requests No. 15 and 16, which relate to the management of social media and search optimization practices, and the motion with respect to these requests should be adjudged moot. Ex. 1 at 1 (email dated Mar. 1, 2019 12:15 p.m.). Frito-Lay's motion to compel with respect to Request No. 7, which asks for "[a]ll documents in which consumers use the term 'crisp,' 'crisps,' 'pretzel crisp,' and/or 'pretzel crisps' in lowercase letters in connection with Plaintiffs' 'PRETZEL CRISPS' products," [D.E. 54-2 at 5] should be denied.

**PRELIMINARY STATEMENT**

During the initial attorneys' conference in this case, the parties agreed to limit discovery to that which is "directly related to, and necessary to evaluate, any declarations and

1

accompanying exhibits to their respective dispositive motions." [D.E. 31, ¶ 3]. The parties agreed to this narrow scope of discovery because an extensive record in this case already exists from proceedings that occurred before the Trademark Trial and Appeal Board ("TTAB"). In fact, Frito-Lay filed a motion for summary judgment in this case asserting that "additional discovery and evidence is not necessary – or even appropriate." [D.E. 28-1 at 1]. The discovery Frito-Lay now seeks through its motion to compel not only exceeds the parties' agreed-upon scope, but also is irrelevant, cumulative, and duplicative, and would impose on Snyder's-Lance burdens that are not proportional to the needs of the case.

Frito-Lay's Request No. 7 asks for "[a]ll documents in which consumers use the term 'crisp,' 'crisps,' 'pretzel crisp,' and/or 'pretzel crisps' in lowercase letters in connection with Plaintiffs' 'PRETZEL CRISPS' products." Snyder's-Lance already has produced documents reflecting thousands of consumer communications in which the term "pretzel crisps" is used in lowercase (and uppercase) letters. But Frito-Lay now seeks to compel Snyder's-Lance to search through more than 31,000 documents that reside on a back-up recovery system for more instances of lowercase usage of these terms. Frito-Lay provides no explanation as to why these additional documents are anything but cumulative and duplicative, nor how such a burdensome search would be proportional to the needs of the case. Accordingly, Frito-Lay's motion with respect to Request No. 7 should be denied.

## BACKGROUND

On August 30, 2018, Frito-Lay filed its answer to Snyder's-Lance's complaint along with a motion for summary judgment. [D.E. 27; 28; 28-1]. In its motion, Frito-Lay took the position that, given the extensive record in this case, "additional discovery and evidence is not necessary – or even appropriate." [D.E. 28-1 at 1].

On September 18, 2018, the parties filed a Rule 26(f) report and discovery plan, and agreed that "[t]he only additional discovery the parties believe may be necessary will be limited to that which is directly related to, and necessary to evaluate, any declarations and accompanying exhibits to their respective dispositive motions." [D.E. 31 at 1].

On October 29, 2018, Snyder's-Lance filed its opposition to Frito-Lay's motion for summary judgment [D.E. 33] and a cross-motion for summary judgment. [D.E. 34; 35]. Frito-Lay's deadline to file its reply in support of its motion for summary judgment and its response to Frito-Lay's cross-motion was November 12, 2018, but Frito-Lay moved, with Snyder's-Lance's consent, to extend Frito-Lay's deadline to February 1, 2019. [D.E. 47].

On November 20, 2018, Frito-Lay served its First Set of Requests for Production containing the request at issue (Request No. 7). [D.E. 54-2]. Snyder's-Lance served its written responses and objections on December 20, 2018. [D.E. 54-3]. Since that time, the parties have engaged in discussions regarding Request No. 7, and on January 28, 2019, Frito-Lay moved, again with Snyder's-Lance's consent, to extend Frito-Lay's summary judgment reply and response deadline to March 1, 2019. [D.E. 51].

**Background Regarding Request No. 7**

Overview

Request No. 7 sought "[a]ll documents in which consumers use the term 'crisp,' 'crisps,' 'pretzel crisp,' and/or 'pretzel crisps' in lowercase letters in connection with Plaintiffs' 'PRETZEL CRISPS' products." Snyder's-Lance objected to Request No. 7

> on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of this case. As written, Request No. 7 seeks the production of any documents and information that use any of the listed terms in connection with Plaintiffs' PRETZEL CRISPS products, which could include a large volume of communications and correspondence relating to Plaintiffs'

PRETZEL CRISPS products. Searching for and producing such correspondence—even subject to the scope and timing limitations set forth in Plaintiffs' General Objections—would require a time-consuming and expensive search that would generate little if any information relevant to the claims or defenses in this matter. Such a search is not proportional to the needs of the case.

Plaintiffs will accordingly not search for or produce any documents in response to Request No. 7 as currently propounded.

[D.E. 54-3 at 7–8].

Notwithstanding Snyder's-Lance's objections to Request No. 7, following the parties' discussions, and in an effort to compromise, Snyder's-Lance has since produced:

- A report from Snyder's-Lance's consumer relations database containing over 2,000 consumer communications, including verbatim communications, from August 2016 to the present;

- Spreadsheets of consumer communications, including many verbatim statements, that were logged into a SharePoint site maintained by Snyder's-Lance's consumer relations team from 2014 to 2016;

- A spreadsheet from 2013 in which Snyder's-Lance entered reports of consumer complaints and coupon requests; and

- Responsive emails from March 1, 2012 to September 13, 2013, maintained by a consumer relations employee of Snyder's-Lance.

These materials are in addition to the consumer communications Frito-Lay received during earlier litigation before the TTAB. Frito-Lay has never – in its motion or otherwise – explained why the produced materials are not sufficient to satisfy the needs of the case. Instead, Frito-Lay seeks to compel Snyder's-Lance to undertake a costly search through 31,000 emails – some eight gigabytes of data – on a back-up system on the grounds that some of that data may contain additional "relevant" consumer communications.

4

<u>Meet-and-Confer History of Request No. 7</u>

On January 9, 2019 – three weeks after Snyder's-Lance objected to producing any documents – Frito-Lay suggested Plaintiffs produce "all correspondence to and from consumers regarding Plaintiffs' 'PRETZEL CRISPS' products." Ex. 1 at 24–25 (email dated Jan. 9, 2019 3:17 p.m.). As a compromise, Snyder's-Lance agreed to produce consumer communications dating back to August 2016 from a consumer relations database. *Id.* at 6 (email dated Feb. 13, 2019 10:07 p.m.). As Snyder's-Lance explained, in the ordinary course of business, communications submitted by consumers via Snyder's-Lance's website from January 2017 forward were automatically populated – verbatim – into that database; communications received by phone were manually logged into that database by consumer affairs specialists; and the text in emails or letters from customers was copied – verbatim – into that database. *Id.* at 16 (email dated Jan. 25, 2019 10:30 a.m.). On January 18, 2019, Snyder's-Lance produced more than 2,000 consumer communications that used the term "pretzel crisps" in both upper- and lowercase letters, while maintaining its objections to the overbroad request. *See id.* at 6 (email dated Feb. 13, 2019 10:07 p.m.); Ex. 2 at 2 (email dated Jan. 18, 2019 6:28 p.m.).

Frito-Lay nonetheless continued to seek additional consumer communications. On January 29, 2019, while maintaining its objections, Snyder's-Lance produced documents reflecting thousands of additional consumer communications (including some verbatim communications) for the period 2013 to 2016. Ex. 2 at 1–2 (email dated Jan. 29, 2019 10:24 a.m.). These communications were from two sources: first, Snyder's-Lance extracted entries from a Microsoft SharePoint site and created a spreadsheet containing the relevant information;[1] second, Snyder's-Lance produced a spreadsheet maintained in the ordinary course of business

---

[1]    Snyder's-Lance's normal business practice during approximately 2014 to 2016 was to log consumer communications in the Microsoft SharePoint site; many were logged verbatim. Ex. 1 at 16 (email dated Jan. 25, 2019 10:30 a.m.).

that reflected consumer complaints and coupon requests during the 2013 time period. Ex. 1 at 16 (email dated Jan. 25, 2019 10:30 a.m.).

Frito-Lay sought still more documents: consumer communications dating from the close of discovery in the proceedings before the TTAB in March 2012 to the beginning of 2013. To accommodate Frito-Lay and without waiving its objections, Snyder's-Lance agreed to conduct a narrow investigation into the volume of emails associated with the consumer relations custodian, Darla Misier, from whom documents had been produced during the TTAB proceedings. *Id.* at 13–14 (email dated Feb. 6, 2019 6:33 a.m.). On February 15, 2019, Snyder's-Lance produced relevant emails from Ms. Misier for the period March 1, 2012 to September 13, 2013. Ex. 2 at 1 (email dated Feb. 15, 2019 3:51 p.m.).

On February 12, 2019, Frito-Lay, for the first time, informed Snyder's-Lance that it planned to move for sanctions for alleged spoliation of evidence because Snyder's-Lance did not retain every communication from a customer once it was entered into its databases. Ex. 1 at 11–12 (email dated Feb. 12, 2019 at 1:20 p.m.). Snyder's-Lance, however, subsequently identified and informed Frito-Lay of a back-up system that logged communications sent to or from the email address info@pretzelcrisps.com. *Id.* at 10 (email dated Feb. 13, 2019 9:30 a.m.). The back-up system is maintained primarily for disaster recovery purposes and was unknown to employees in the consumer relations department. *Id.* at 7 (email dated Feb. 13, 10:07 p.m.). The back-up system contains approximately 31,000 emails – some eight gigabytes of data – from 2006 to the present. *Id.* at 4 (email dated Feb. 15, 2019 2:46 p.m.). In light of the extensive volume of consumer communications Snyder's-Lance already had produced, and consistent with its overbreadth and proportionality objections to Request No. 7, Snyder's-Lance did not agree to undertake a search and review of this back-up system. *Id.*

**ARGUMENT**

Frito-Lay's motion should be denied because it seeks discovery that is cumulative, duplicative, and not proportional to the needs of the case. In addition, it violates the parties' explicit agreement to, and representation to the Court that they would, limit discovery to that which is "directly related to, and necessary to evaluate, any declarations and accompanying exhibits to their respective dispositive motions." [D.E. 31 at 1].

## I. Legal Standard

The decision to deny Frito-Lay's motion is "addressed to the sound discretion" of this Court. *Morgan v. Spivey*, No. 5:16-CV-365-FL, 2017 WL 6210896, at *2 (E.D.N.C. Dec. 8, 2017) (citation omitted). Under Rule 26, Frito-Lay may seek discovery of non-privileged matters only if they are both relevant *and* "proportional to the needs of the case" in light of, among other things, "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Because Frito-Lay claims that these requests are "important to resolve [certain] issues," it "should be able to explain the ways in which the underlying information bears on the issues." *Morgan*, 2017 WL 6210896, at *3 (alteration in original) (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment). If the discovery Frito-Lay seeks "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," Rule 26 "requires the court to limit the . . . extent of discovery." *Merz N. Am., Inc. v. Cytophil, Inc.*, No. 5:15-CV-262-H-KS, 2017 WL 4274856, *2 (E.D.N.C. Sept. 26, 2017) (quoting Fed. R. Civ. P. 26(b)(2)(C)).

## II.    Searching Through 31,000 Emails On A Back-Up System In Response to Request No. 7 Would Be Cumulative, Duplicative, and Disproportionate To The Needs Of The Case.

Frito-Lay already has received thousands of consumer communications in response to Request No. 7.  Frito-Lay fails to articulate why these documents are insufficient, or why additional consumer communications reflecting lowercase usage of certain terms would be anything other than duplicative or cumulative of documents already produced.  Instead, Frito-Lay simply asserts that because the documents at issue are "highly relevant . . . . Frito Lay is entitled to [them]."  Frito-Lay Br. at 5 [D.E. 54 at 5].  But under the standard set forth in Rule 26, "[t]hat's not good enough."  *Noble Roman's Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 311 (S.D. Ind. 2016).

Frito-Lay may not simply "beat[] the drum of 'relevancy'" without demonstrating why additional discovery would be "proportional to the needs to this case."  *Id.*  Frito-Lay's motion fails in this regard.  Frito-Lay "never attempts to demonstrate that the discovery is in any way proportional to the needs of this case considering such things as the amount in controversy, the importance of the information in resolving contested issues, whether the burden of the discovery outweighs its likely benefits, whether the information can be obtained from other and more convenient sources, or whether the information is cumulative to other discovery [the defendant] has obtained."  *Id.* (citing Fed. R. Civ. P. 26(b)).

Frito-Lay's assertion that this "type of evidence was requested and produced in the underlying TTAB proceedings," Frito-Lay Br. at 3 [D.E. 54 at 3], has no bearing on Request No. 7, and, in any event, mischaracterizes the scope of discovery during the TTAB proceeding.  There, Frito-Lay requested "all documents that contain or refer to communications or comments from consumers regarding [the] PRETZEL CRISPS Mark or products or services offered or planned to be offered under that mark."  Ex. 1 at 19 (email dated Jan. 22, 2019 2:19 p.m.).

Plaintiffs agreed to produce only "*representative* documents . . . reasonably related to [Frito-Lay's document request], and which specifically involve consumer communications regarding the branding of Applicant's PRETZEL CRISPS product." *Id.* (emphasis added). In contrast, the instant request seeks "all" documents that use "pretzel crisps" (among other terms) in lowercase letters. Even if the TTAB request were relevant (and it is not), Frito-Lay fails to explain why it now must have "all" documents reflecting lowercase usage of certain terms when it agreed before the TTAB to accept "representative" documents reflecting consumer usage of PRETZEL CRISPS.

The production of more consumer communications would be duplicative, cumulative, and disproportionate to the needs of the case. Any argument Frito-Lay seeks to make in its summary judgment briefing regarding "the use of the terms 'pretzel crisps' by Plaintiffs' customers," Frito-Lay Br. at 4 [D.E. 54 at 4], can be made based on the thousands of communications Snyder's-Lance has already provided that show how consumers use the term "Pretzel Crisps." The purpose of Rule 26(b) is to "guard against" the type of "redundant" discovery Frito-Lay seeks. Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

Given the extensive evidence already produced in response to Request No. 7 and Frito-Lay's inability to articulate how the discovery it seeks would be proportional to the needs of this case (rather than duplicative or cumulative), or how that discovery is "directly related to, and necessary to evaluate, any declarations and accompanying exhibits to [Snyder's-Lance's] dispositive motions," the Court should deny Frito-Lay's motion to compel. Were the Court inclined to grant the request, Snyder's-Lance respectfully submits the costs and fees of searching its backup system and any subsequent review and production should be borne exclusively by

9

Frito-Lay. *See, e.g.*, *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996) (noting that courts in this circuit enjoy "nearly unfettered discretion" to control discovery); Fed. R. Civ. P. 26(b)(2)(B) and (c)(1)(B) (permitting courts to limit discovery as to electronically stored information and to specify the terms under which it will be produced).

## CONCLUSION

For the foregoing reasons, Snyder's-Lance respectfully requests that the Court deny Frito-Lay's motion to compel with respect to Request No. 7 or, in the alternative, order that Frito-Lay bear the costs and fees of Snyder's-Lance searching its backup system and any subsequent review and production of documents in response to Request No. 7.

Respectfully submitted, this the 5th day of March, 2019.

ELLIS & WINTERS LLP
/s/ Alexander M. Pearce
Jonathan D. Sasser (N.C. Bar 10028)
Alexander M. Pearce (N.C. Bar 37208)
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
jon.sasser@elliswinters.com
alex.pearce@elliswinters.com

DEBEVOISE & PLIMPTON LLP
David H. Bernstein*
James J. Pastore*
Jared I. Kagan*
Michael C. McGregor*
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6696
dhbernstein@debevoise.com
jjpastore@debevoise.com
jikagan@debevoise.com
mcmcgregor@debevoise.com

*Counsel for Plaintiffs*

*admitted pro hac vice