## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISON
### Civil Action No.: 3:17-CV-00652

SNYDER'S-LANCE, INC. and PRINCETON VANGUARD, LLC,

                Plaintiffs,

    v.

FRITO-LAY NORTH AMERICA, INC.,

                Defendant.

**FRITO-LAY NORTH AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

In 2004, Princeton Vanguard, LLC ("Princeton") selected "Pretzel Crisps" as the name for its pretzel-cracker product. Unfortunately for Princeton, that name was doomed as a protectable trademark before it was adopted, as it was merely a combination of two generic terms and that combination was already in generic use in the media. Realizing its predicament, Princeton's Vice President of Marketing later sought help coming up with "some creative names [Princeton] might be able to use as an umbrella brand for Pretzel Crisps," because, as he put it, that name consists of "two pretty generic words" and "there could be a challenge to it." Opp'n No. 91195552 at A2094. The marketing firm came back with over 60 ideas for potential brand names, but Princeton chose to forgo a name change and assumed the risk associated with using a generic term as a product name. Ultimately that gamble did not pay off, as Plaintiffs' purported mark was indeed challenged by a competitor to ensure the snack industry's freedom to use the generic name, and was twice found generic by the Trademark Trial and Appeal Board ("TTAB" or "Board").

Now in this Court, Plaintiffs mischaracterize the TTAB's decisions and Frito-Lay's arguments, constructing strawmen rather than reckoning with the relevant and timebound evidence and arguments. Plaintiffs also criticize and ignore key Fourth Circuit precedent and brazenly invite

this Court to do the same, even though Plaintiffs chose to bring this appeal in this forum.

Because "pretzel crisps" was found generic, it can never later become a trademark under established principles of trademark law. *Booking.com B.V. v. Iancu*, 915 F.3d 171, 180 (4th Cir. 2019) ("Once a term is deemed generic, it cannot subsequently become non-generic" and "subsequent consumer recognition of the term as brand-specific cannot change that determination."). During the lengthy period since the record closed at the TTAB, Plaintiffs have toiled to develop additional facts in the vain hope of showing their chosen product name is somehow now not generic. But the "new" evidence Plaintiffs have submitted in this Court covering that subsequent time period is entirely irrelevant to the question presented in Frito-Lay's Motion for Summary Judgment, as no amount of investment, marketing, policing, commercial success, or even consumer recognition can convert a generic term into a protectable mark. Therefore, the Court should grant summary judgment affirming the TTAB's well-reasoned and well-supported decision finding "pretzel crisps" generic.

## ARGUMENT

### I.    The TTAB's Finding on Genericness Should Be Reviewed for Substantial Evidence

As a preliminary matter, it is important to understand the procedural posture of this case. This action is an appeal of an agency decision. Ordinarily a review of an agency decision is reviewed for substantial evidence. *See* 5 U.S.C. § 706(2)(E). Appeals to a district court from a TTAB decision, however, are sometimes different in that the statute allows a party to introduce new evidence. 15 U.S.C. § 1071(b)(3). Where a district court considers the TTAB record along with new evidence submitted for the first time on appeal on a particular issue, the district court reviews that combined record de novo and acts as the finder of fact. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155–56 (4th Cir. 2014) (citing *Kappos v. Hyatt*, 566 U.S. 431,

444–45 (2012)). The rationale is that de novo review is "necessary to take such evidence into account together with the evidence before the board." *Kappos*, 566 U.S. at 445.

Importantly, however, where no new evidence is introduced <u>that is relevant to an issue on appeal</u>—that is, where a district court is evaluating an issue based on the same evidence that the TTAB considered—the TTAB's decision should be reviewed for substantial evidence. This was explained in the underlying decision whose affirmance formed the basis for the Supreme Court's articulation of the standard of review in district court appeals. *See Hyatt v. Kappos*, 625 F.3d 1320, 1336 (Fed. Cir. 2010), *aff'd and remanded*, 566 U.S. 431 ("If the parties to a § 145 action do not introduce any new evidence before the district court, *the court reviews the case on the same record presented to the agency and the reviewing court must apply the APA's substantial evidence standard*." (emphasis added)); *see also id.* (confirming that *de novo* review only applies "to factual issues *to which the new evidence relates*" (emphasis added)).[1]

This principle has been confirmed in several cases since the Supreme Court's decision in *Kappos.* For example, a sister court in the Fourth Circuit has held that "factual findings made by the Board *which are untouched by new evidence* presented to the court are reviewed under the substantial evidence standard mandated by the Administrative Procedure Act." *Belmora, LLC v. Bayer Consumer Care AG*, 338 F.Supp.3d 477, 483–84 (E.D. Va. 2018) (emphasis added); *see also RXD Media, LLC v. IP Application Dev.*, No. 1:18-CV-486, 2019 WL 1394369, at *2 (E.D. Va. Mar. 27, 2019) ("If no new evidence is admitted *that relates to a disputed fact question*, the reviewing court must apply the APA substantial evidence standard to the PTO's findings of fact *on that issue*." (emphasis added)); *Johnston v. Rea*, No. 1:12-CV-440, 2013 WL 1499052, at *3 (E.D. Va. Apr. 9, 2013) ("If Plaintiff offers no new evidence [on a disputed fact question] . . . the

---

[1] 35 U.S.C. § 145 is the patent analogue to 15 U.S.C. § 1071(b). The Fourth Circuit has held that the same standard of review applies to both. *See Swatch AG*, 739 F.3d at 155.

Court must employ the deferential standard of review provided under the [APA].").

In *Belmora*, the court identified the factual findings at issue from the TTAB's decision and found that even though new evidence was before the court on appeal, "Belmora ha[d] not adduced any new evidence" related to these findings "that would require th[e] Court to review the underlying evidence *de novo*." 338 F.Supp. 3d at 488. Thus, the court reviewed the decision under the substantial evidence standard and affirmed on summary judgment. *Id.* ("Because Belmora has not offered any new evidence, and the Court finds that the Board's decision was not arbitrary, capricious, or otherwise not in accordance with law, this Court affirms the TTAB decision.").

Similarly, in *RXD Media*, the court identified the relevant TTAB fact findings and determined that none of the new evidence submitted related to those findings; as such, the court "need not undertake a de novo review of the evidence." 2019 WL 1394369, at *2. The court noted that "[t]he TTAB reached its decision after a full trial and after reviewing a voluminous record," "[t]he opinion is thorough and supported by the law," and "[t]he TTAB did not take arbitrary or capricious action here," and therefore affirmed the decision on summary judgment. *Id.* And in *Johnston*, the court applied substantial evidence review to the fact issues for which plaintiff had not offered new substantive evidence. 2013 WL 1499052, at *3 ("[B]ecause Plaintiff has not offered new evidence challenging USPTO's obviousness determination, the agency is entitled to deferential 'substantial evidence' standard of review.").

The sole issue raised in Frito-Lay's Motion is whether the TTAB properly found "pretzel crisps" generic (either when Princeton adopted it in 2004 or at any point up through the close of the record in the TTAB). The same evidence bearing on that issue that was presented at the TTAB is now before this Court on appeal, and none of Plaintiffs' new evidence relates to that issue. Indeed, in their initial complaint in this Court, Plaintiffs emphasized that they sought to "expand

[the TTAB] record *beyond 2012 (when fact discovery closed in the underlying TTAB action) to include five additional years' worth of evidence* of the public's perception of the PRETZEL CRISPS trademark." Pls.' Compl. ¶ 11 [Doc. 1] (emphasis added); *see also id.* ¶ 12 (explaining that the expanded record before this Court "includ[es] evidence of the continuing success of the PRETZEL CRISPS brand *since 2012*." (emphasis added)).  Plaintiffs' own arguments for *de novo* review make clear that all of their new evidence only speaks to the time period following the close of the TTAB record.[2]  Plaintiffs have not submitted or identified any new evidence relevant to the public's use or understanding of the term during the relevant time period considered by the TTAB.[3]

Because a term that began life as generic can never achieve trademark significance, *see Booking.com*, 915 F.3d at 177 ("Generic terms can never obtain trademark protection."), none of Plaintiffs' new evidence is relevant to the issue in Frito-Lay's Motion.  *Cf. RXD Media*, 2019 WL 1394369, at *3 (finding "new" evidence irrelevant because "RXD expressly stated that its new evidence was from after the constructive use date.").  Thus, the Court is necessarily reviewing the issue of genericness on the same record that the TTAB considered, and as such, the TTAB's fact findings should be reviewed for substantial evidence only.  Plaintiffs are hoping that the reams of

---

[2] Pls.' Opp'n Br. at 1 [Doc. 33] (referring to Plaintiffs' "[a]dditional evidence of the PRETZEL CRISPS brand's continued growth and prominence *during the intervening six years*." (emphasis added)); *id.* at 7 ("Plaintiffs' new evidence post-dates the close of fact discovery in the TTAB proceedings."); *id.* ("The new evidence Plaintiffs submit includes media and industry usage of PRETZEL CRISPS as a brand name, and Snyder's-Lance's advertising and sales success *since the close of discovery at the TTAB in 2012*." (emphasis added)); *see also* Pls.' Cross-Motion Br. at 11 [Doc. 35] ("Because fact discovery in the TTAB proceeding closed in 2012, Plaintiffs are submitting with this motion additional evidence that expands the record . . . to include six years of additional evidence."); *id.* at 13 (explaining that their new evidence consists of "facts developed since 2012 and submitted here, for the first time").

[3] Plaintiffs nevertheless argue that "[T]he Court reviews the *entire* record—including the newly submitted evidence—*de novo*," citing *Booking.com B.V. v. Matal*, 278 F. Supp. 3d 891, 899 n.2 (E.D. Va. 2017).  Pls.' Opp'n Br. at 8. But that case is inapplicable here, because there the district court explicitly found that "the new evidence before the Court bears on both" the genericness and descriptiveness questions.  *Booking.com*, 278 F. Supp 3d at 899 n.2. That is not so in this case.

irrelevant evidence they submitted will cause this Court to ignore the TTAB's analysis and findings and perhaps come to a different conclusion, but that is not the proposition for which *Kappos* stands. Where (as here) there is no additional evidence presented to the Court that is relevant to the issue decided by the TTAB, there is no justification to ignore or contradict its findings that are supported by substantial evidence. *See Dooyeaon Corp. v. Kiko S.p.A.*, No. 1:16-cv-01284, 2017 WL 7052284, at *1 (E.D. Va. Sept. 5, 2017) (granting summary judgment for defendant after holding "that the Plaintiff has not presented any new evidence not reviewed by the TTAB, and that the underlying decision of the TTAB is supported by substantial evidence").

## II. Plaintiffs Bear the Burden of Proof on Genericness in this Court

In arguing that Frito-Lay has the burden to prove genericness, Plaintiffs hope to reap the benefits, without having established the requirements, of registration on the Principal Register. But Fourth Circuit case law makes clear that in the face of a genericness allegation, and in the absence of a Principal Registration, the proponent of the alleged mark has the burden of proving it is not generic. *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 524 (4th Cir. 2002) (burden is on the proponent of unregistered term to show it is entitled to protection); *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 140 (4th Cir. 2000) ("[B]ecause Raleigh Ale House suggests that the term 'ale house' is generic and AHM has not registered it, AHM bears the burden of establishing that it is not generic."). Were the law otherwise, an owner of an unregistered term or Supplemental Registration would unfairly enjoy a presumption expressly reserved for holders of a Principal Registration.[4] Plaintiffs try to distinguish *Ale House* because it was an

---

[4] Plaintiffs themselves recently urged this very principle to the Federal Circuit in a brief they filed in a different case. *See* Armendariz Decl. ¶ 2, Ex. 1 (*Converse, Inc. v. Int'l Trade Comm'n*, No. 16-2497 (Fed. Cir.) (Amicus Brief filed March 1, 2017, at 2, 9) (presumption of validity "attaches *only* after a mark has gone through the registration process—a process that includes substantive review by the [PTO] and publication in the Official Gazette;" "in exchange for opening itself to this scrutiny [including opportunities for mark to be opposed by third parties], the registrant obtains

infringement action, but the Court made no such limitation when allocating the burden in that case.

Finding no authority in this jurisdiction supporting their argument, Plaintiffs turn to cases from other jurisdictions or involving wholly different issues. For example, Plaintiffs cite dicta in *B&B Hardware, Inc. v. Hargis Indus., Inc.*, for the proposition that a party opposing registration bears the burden of proof. *See* Pls.' Opp'n Br. at 9 [Doc. 33] (citing *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1300 (2015)). But that was not an action under Section 1071(b) either. The Court was merely discussing by way of background certain rules and procedures that apply in opposition proceedings at the TTAB, and was in no way addressing who should bear the burden of proof in a district court action like this one. Further, the original opposition at issue in *B&B Hardware* was grounded on alleged likelihood of confusion with the challenger's mark, not on an allegation that the applied-for mark was generic. *B&B Hardware*, 135 S. Ct. at 1299. A likelihood of confusion challenge requires an analysis of the relative rights between the parties. As such, it may make sense that a party alleging a likelihood of confusion bears the burden to prove it, as the mark would otherwise be registrable but for the prior user's rights. Genericness, on the other hand, involves the threshold issue of a term's validity and suitability as a trademark—if a term is generic, it cannot meet the definition of a trademark. *See* 15 U.S.C. § 1127 (defining "trademark" as "any word, name, symbol, or device, or any combination thereof" used to identify one's goods "from those manufactured and sold by others and to indicate the source of the goods").

Plaintiffs' other citations are also inapplicable here. *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.* involved cancellation of a Principal Registration, and as explained above, such registrations have a statutory presumption of validity. 188 F. Supp. 3d 22, 97 (D.D.C. 2016) ("A party seeking to cancel a registered mark must prove the grounds for

---

tangible benefits *once registration is granted*.") (emphasis added)). Plaintiffs' Supplemental Registration did not endure this scrutiny as it was not published for opposition. 15 U.S.C. § 1092.

cancellation and overcome the statutory presumption of validity that attaches to a registered mark."). *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.* involved a dispute over which party owned a particular mark. 146 F.3d at 983, 986 (D.C. Cir. 1998). And *Booking.com* was an ex parte appeal of a trademark examiner's refusals of registration, not an inter partes proceeding like this one. 278 F. Supp. 3d at 897–98. Thus, *Booking.com* is inapposite, because in contrast to an opposer like Frito-Lay, "in registration proceedings, the USPTO always bears the burden of establishing that a proposed mark is generic." *Booking.com*, 915 F.3d at 179.

## III. The TTAB Properly Found "Pretzel Crisps" As A Whole Generic

In an effort to obfuscate the issues in this appeal, Plaintiffs avoid confronting the TTAB's actual findings, instead mischaracterizing Frito-Lay's arguments and attacking a wholly imagined version of the TTAB's analysis. But a careful look at the TTAB's 2017 decision reveals it to be a correct application of the relevant law, and one that adheres to the guidance of the Federal Circuit's remand. Whatever issues the Federal Circuit may have found in the TTAB's first analysis in 2014 are not present in the Board's 2017 decision.

### a. The 2014 TTAB decision and the Federal Circuit opinion

When viewing the 2017 TTAB decision in light of the Federal Circuit's opinion, it is important to understand what the Federal Circuit did and did not do. For example, the court did ***not*** "reverse" the TTAB's 2014 decision, contrary to Plaintiffs' multiple assertions otherwise. Rather, the court merely *vacated* the decision and remanded it for the Board to apply the correct legal standard and provide sufficient explanation for its analysis. *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 970–71 (Fed. Cir. 2015). The distinction is important, because calling it a reversal suggests that the court changed the TTAB's ultimate conclusion on genericness. But the court made no holding in that regard; it only took issue with the level of

explanation and analysis the TTAB used to get there. *See id.* at 970 ("Our review under [the substantial evidence] standard can only take place when the agency explains its decisions with sufficient precision, including the underlying factfindings and the agency's rationale." (quotation marks and citation omitted)).

In its 2014 decision, the Board first analyzed evidence regarding the constituent terms "pretzel" and "crisps" and found them both to be generic. *Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, 109 U.S.P.Q.2d 1949, 1959–60. The Board also examined evidence regarding the meaning of the combined term "pretzel crisps." *Id.* The Board then concluded that "[t]he commonly understood meaning of the words 'pretzel' and 'crisps,' demonstrates that purchasers understand that 'PRETZEL CRISPS' identifies 'pretzel crackers.'" *Id.* at 1959.

On appeal, the Federal Circuit found certain deficiencies in the Board's analysis. The court acknowledged that it is sometimes "useful" for the TTAB "to consider the public's understanding of the individual words in a compound term as a first step in its analysis." *Princeton Vanguard*, 786 F.3d at 968. But after this "first step," "the Board must then consider available record evidence of the public's understanding of whether joining those individual words into one lends additional meaning to the mark as a whole." *Id.* at 969. The court found the Board's written decision contained "no evidence that the Board conducted the necessary step of comparing its findings with respect to the individual words to the record evidence demonstrating the public's understanding of the combined term: PRETZEL CRISPS." *Id.* Accordingly, the court remanded so the Board could perform its analysis under the appropriate legal standard. *Id.* at 971.[5]

---

[5] Plaintiffs' mention of the law of the case doctrine is perplexing. *See* Pls.' Opp'n Br. at 1 n.1 [Doc. 33]. In purporting to represent the "Federal Circuit's holding" that they claim is "binding on the Court," Plaintiffs cobble together a statement constructed from two separate quotations that appear in different sections on different pages in the court's opinion. *Id.* at 1. Thus, it is unclear what exactly Plaintiffs claim to be the law of the case. Additionally, Plaintiffs cite no authority for the proposition that this Court is bound by a decision in a different circuit. At any rate, the TTAB's

### b. The 2017 TTAB decision

On remand, the TTAB issued a second precedential opinion providing a detailed analysis as mandated by the Federal Circuit. *Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, 124 U.S.P.Q.2d 1184. The TTAB undertook the "first step" in the analysis and examined the component terms "pretzel" and "crisps," again finding both to be generic. *Id.* at 1201 ("[T]here is no question that 'PRETZEL' would be understood by the relevant public primarily as referring to any 'pretzel,' including a pretzel cracker and that 'CRISPS' would be understood by the relevant public primarily as referring to 'crackers,' also including pretzel crackers."). The TTAB then proceeded to analyze extensive evidence regarding "pretzel crisps" as a whole, including "media references, product reviews," "consumer feedback," and, importantly, Princeton's own use of the term. Based on this exhaustive review, the TTAB concluded that the combined term is generic, explaining that "the record demonstrates that the primary consumer perception of the term 'PRETZEL CRISPS,' *as a whole*, is likely to be that of a common name for the identified goods, 'pretzel crackers.'" *Id.* at 1204 (emphasis added).

Plaintiffs complain in conclusory fashion that "[o]n remand . . . the TTAB largely repeated its earlier, erroneous analysis" and purport to recount "multiple errors" committed by the TTAB. Pls.' Opp'n Br. at 3. But the list of grievances that follows does not actually identify a single error in the TTAB's decision. For example, Plaintiffs state that "the TTAB once again began by dissecting the PRETZEL CRISPS mark" to consider the meaning of the component terms. *Id.* But this is an appropriate first step, as acknowledged explicitly in the Federal Circuit's opinion and in Fourth Circuit caselaw. Next, Plaintiffs acknowledge that the TTAB "considered Plaintiffs'

---

2017 analysis and finding that "pretzel crisps" is generic is correct under the Federal Circuit's mandate, and both Federal and Fourth Circuit law generally, so the question of whether the court established any "law of the case" is meaningless.

Case 3:17-cv-00652-KDB-DSC   Document 72   Filed 06/14/19   Page 10 of 25

extensive media analysis," but they take issue with the articles the TTAB chose to highlight and presumably with the conclusions the TTAB drew from them, neither of which constitutes error. Third, Plaintiffs complain that the TTAB found the declarations submitted by Plaintiffs from interested distributors to be "of limited probative value." *Id* at 4. Plaintiffs characterize this finding as "conclusory," but fail to note the TTAB's analysis finding that "to the extent [the declarations] purport to convey the views and comments of [end] consumers, such commentary constitutes speculation and inadmissible hearsay" or offer any evidence or authority to rebut it. *See Frito-Lay*, 124 U.S.P.Q.2d at 1195. Fourth, Plaintiffs complain that the TTAB held that expert surveys were not relevant, but as explained at length in Frito-Lay's Motion and further below, this is a correct statement of the law, particularly in the Fourth Circuit, and in fact, the TTAB cited the Fourth Circuit in so holding. *See id.* at 1202.[6]

### c. Plaintiffs' erroneous characterizations of Frito-Lay's Motion

Throughout their Response, Plaintiffs repeatedly mischaracterize Frito-Lay's argument regarding the generic nature of "pretzel crisps." For example, Plaintiffs begin by claiming that "[s]ince 2009, Frito-Lay has advanced a simple but flawed theory: Because the terms 'pretzels' and 'crisps' each is generic for certain items, the combined term PRETZEL CRISPS must be generic for pretzel crackers." Pls.' Opp'n Br. at 1; *see also id.* at 10 ("Frito-Lay asserts that it is entitled to summary judgment because each of 'pretzel' and 'crisps' is generic, and therefore the term PRETZEL CRISPS must also be generic."). This simplistic distortion of Frito-Lay's arguments is disingenuous at best. By attempting to frame the issue in this manner, Plaintiffs are hoping to latch on to the Federal Circuit's criticism of the 2014 TTAB decision to craft a strawman version of Frito-Lay's argument they think is assailable. This is not the first time Plaintiffs have

---

[6] Plaintiffs similarly note, but fail to identify any error in, the TTAB's finding that "pretzel crisps" lacks secondary meaning, but that is not at issue in Frito-Lay's Motion.

employed this tactic. In its brief on remand at the TTAB, Princeton stated that "Frito-Lay's assertion that PRETZEL CRISPS must be generic because the words 'pretzel' and 'crisps,' when evaluated separately, are generic must fail." Opp'n No. 91195552 at A5017 (Applicant's Trial Brief on Remand at 48). Like here, this assertion ignores the pages of analysis Frito-Lay has dedicated to the use of the term as a whole.

Examination of the component terms is but the initial step in the analysis of the term as a whole, and by criticizing this step, Plaintiffs either misunderstand or deliberately misrepresent the relevant law. In fact, the Fourth Circuit itself recently confirmed that this step is appropriate, even using "pretzel crisps" and the TTAB's analysis in this very case for illustration.

In *Booking.com*, the Fourth Circuit explained that "when confronted with a compound term like PRETZEL CRISPS, courts may consider *as a first step* the meaning of each of the term's component marks" as part of the ultimate inquiry into "the term as a whole." 915 F.3d at 184 (emphasis added). The Court went on to explain that "in determining whether PRETZEL CRISPS is generic, a court may first determine based on dictionary definitions and other competent sources that PRETZEL is primarily understood to refer to the genus of pretzels, and that CRISPS would be understood as primarily referring to crackers," and the Court cited as support the portion of the TTAB's 2017 decision in this case that contains this very analysis. The Court went on to explain that the next step would involve consideration of evidence of use of the compound term "to determine whether the term PRETZEL CRISPS is perceived primarily to refer to a crispy pretzel or to a particular source," again citing to the TTAB's analysis—the same analysis that Plaintiffs now attempt to criticize on appeal. *Id.* at 184–85.

No authority cited by Plaintiffs forecloses the consideration of the constituent terms of a compound term as part of the overall analysis, and even the Federal Circuit opinion from Plaintiffs'

first appeal recognizes this as an appropriate "first step," a point the Federal Circuit has since confirmed. *See, e.g.*, *In re Driven Innovations, Inc.*, 674 Fed. Appx. 996, 999 (Fed. Cir. 2017) (citing the Federal Circuit's opinion in this case for the proposition that "it can be helpful for the court to consider the public's understanding of individual words in a mark with compound terms as a first step in the analysis."). The Fourth Circuit has made it equally clear that "the principle that a mark must be considered as a whole to determine its validity *does not preclude courts from considering the meaning of individual words in determining the meaning of the entire mark.*" *Hunt Masters, Inc. v. Landry's Seafood Rest., Inc.*, 240 F.3d 251, 254 (4th Cir. 2001) (emphasis added); *see also* 2 *McCarthy on Trademarks and Unfair Competition* § 11:27 (5th ed.) (hereinafter "*McCarthy*") ("[I]t is not a violation of the anti-dissection rule to separately view the component parts [of a composite term] as a preliminary step on the way to an ultimate determination of probable customer reaction to the composite as a whole.").

Of course, Plaintiffs have good reason to urge the Court to omit this first step of the analysis, because by ignoring the meaning of the component terms "pretzel" and "crisps," Plaintiffs hope to avoid the elephant in the room—that their chosen brand name is simply, as their own VP of Marketing put it, "two pretty generic words." In fact, Plaintiffs do not make any serious effort to rebut the argument that both "pretzel" and "crisps" are generic, nor do they explain how the combination of those generic words amounts to anything more than the sum of its generic parts. *See Convenient Food Mart, Inc. v. 6-Twelve Convenient Mart, Inc.*, 690 F. Supp. 1457, 1464 (D. Md. 1988), *aff'd*, 870 F.2d 654 (4th Cir. 1989) ("the Court finds CFM's arrangement of the words 'Convenient Food Mart' obvious and meaning nothing more than a convenient food mart."). But Frito-Lay has never argued that the analysis should stop at consideration of the component terms, and indeed it did not at the TTAB or in Frito-Lay's Motion.

As explained above, the very analysis of the term "pretzel crisps" undertaken by the TTAB in 2017 (and by Frito-Lay in this Court) was recently blessed by the Fourth Circuit in *Booking.com*. As such, Plaintiffs have no credible argument that either (1) analysis of the constituent terms "pretzel" and "crisps" is inappropriate or (2) the TTAB and Frito-Lay have not adequately analyzed the term "pretzel crisps" as a whole.

## IV. "Pretzel Crisps" Has Been Generic Since Before It Was Adopted by Plaintiffs

The record at the TTAB establishes that "pretzel crisps" was already used as a generic term before Plaintiffs adopted it as the name for their products. Additionally, because Plaintiffs do not dispute or rebut the TTAB's finding or Frito-Lay's argument that the terms "pretzel" and "crisps" are generic for Plaintiffs' pretzel-cracker products (and were when Plaintiffs adopted them[7]), the first step of the analysis already weighs in favor of a finding that "pretzel crisps" is generic. As explained below, the remainder of the analysis with respect to the combined term confirms that the term as a whole is also generic.

### a. "Pretzel crisps" is not a "coined" mark under trademark law

In trademark law, the more inherently distinctive a particular mark is, the more protection it generally receives. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). In assessing the distinctiveness of a purported mark, courts classify it into one of five categories: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *U.S. Search,* 300 F.3d at 523. "Fanciful (made-up words expressly coined to serve as trade or service marks), arbitrary (common words applied in unfamiliar ways), and suggestive marks (words that connote, rather than describe, some quality or characteristic of a product or service) are inherently distinctive, and

---

[7] Indeed, from the very outset Princeton itself used "pretzels" and "crisps" as generic terms for its products, e.g., identifying them as "Pretzels" in its 2004 trademark application, and using "Crisps" on its packaging from 2004-2010 to identify serving sizes and related nutrition facts.

thus receive the greatest protection." *Id.* Descriptive marks are not inherently distinctive, and thus are only protected if they have acquired distinctiveness, or "secondary meaning," in the eyes of the public. *Id.* And finally, "'[G]eneric' terms are the common name of a product or service itself, and can *never* be trademarks." *Sara Lee*, 81 F.3d at 464. Sometimes, a once-fanciful mark can fall into generic use over time. *Id.*

Thus, in trademark law, "coined" is a term of art referring to fanciful marks, which are "made-up words" specifically invented for use as trademarks and are the most distinctive class of marks. *Id.* ("Fanciful marks are, in essence, made-up words expressly *coined* for serving as a trademark"); *see also U.S. Search*, 300 F.3d at 523. Examples of coined or fanciful marks include Clorox, Kodak, Polaroid, and Exxon. *Sara Lee*, 81 F.3d at 464. "[C]oined marks . . . have no meaning other than their trademark significance." *McCarthy* § 11:6. By contrast, Plaintiffs concede that "pretzel crisps" is, at best, descriptive. *See Frito-Lay*, 124 U.S.P.Q.2d at 1203 (noting that Princeton's Supplemental Registration and Section 2(f) claim of acquired distinctiveness both "constitute admissions that the term 'PRETZEL CRISPS' is not inherently distinctive of 'pretzel crackers.'"). Thus, it cannot be a "coined" (i.e. fanciful) mark.

Several times in this litigation, Plaintiffs have claimed that "pretzel crisps" is a term "coined" by Princeton. *See, e.g.*, Pls.' Compl. ¶ 20; Pls.' Opp'n Br. at 5, 28. But this is certainly not true in a trademark sense. As the TTAB correctly found, "Although [Princeton] maintains that it created the term 'PRETZEL CRISPS,' it asserts rights in the term under Section 2(f) acquired distinctiveness, not as a coined term." *Frito-Lay*, 124 U.S.P.Q.2d at 1202 n.58. In fact, the evidence shows that the term had been used generically by the general public before Princeton adopted it, thus they did not even create or "coin" the combined term in a layman's sense. *See id.* at 1203.

**b. Plaintiffs' own generic use of "pretzel crisps"**

Remarkably, Plaintiffs attempt to downplay the significance of their own generic use of their purported brand name, but "evidence of the owner's generic use . . . 'is strong evidence of genericness.'" *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 545 (4th Cir. 2004) (quoting *McCarthy* § 12:13). For example, Princeton's VP of Sales called Princeton "the original pretzel crisp company" in a pitch to Starbucks, suggesting that there are other pretzel crisp companies that make a pretzel crisp product. Opp'n No. 91195552 at A2099. Plaintiffs try to characterize this as a statement that Princeton is "the creator of PRETZEL CRISPS," Pls.' Opp'n Br. at 19, but this is belied by the use of "pretzel crisp" in the singular to modify "company." Princeton's founder also made similar generic uses of "pretzel crisps" and "pretzel crisp" when describing its products. *See* Frito-Lay's Motion Br. at 13–14; 21–22 [Doc. 28-1]. Plaintiffs try to compare these uses to "ordering a 'coke' or 'googling' an item," Pls.' Opp'n Br. at 19, but COKE and GOOGLE truly are coined marks, unlike "pretzel crisps." In any event, the Fourth Circuit has held that generic uses by company officials are highly probative of genericness.

### c. Media and third-party references confirm that "pretzel crisps" is generic

In its Motion, Frito-Lay provided numerous examples of generic use of "pretzel crisps" in the media establishing that the public understands the term to be a generic descriptor and not a trademark. In response, Plaintiffs attempt to dismiss or downplay some of the most compelling examples while engaging the Court in a counting exercise by tallying what they believe to be the proportion of "brand references" in the record. Besides ignoring some of the most critical evidence in the case, there are several other flaws with Plaintiffs' approach.

One of the most compelling facts revealed by the TTAB record is that the term "pretzel crisps" was in generic use before Plaintiffs claim to have adopted it in 2004. Among the media mentions considered by the TTAB were articles from 1998, 1999, and 2001 using the term "pretzel

crisps" to refer to a food item. *See, e.g.*, Opp'n No. 91195552 at A1462–63 (snack recipe consisting of "flat pretzel crisps and crunchy pretzel sticks"); A1460–61 (list of "Hot" grocery items that includes "Honey-mustard pretzel crisps"); A1458 (advising serving dip recipe "with pretzel crisps or crackers"). Plaintiffs attempt to dismiss these generic media mentions prior to Princeton's adoption as "*de minimis*," Pls.' Opp'n Br. at 23, but these articles are absolutely devastating to Plaintiffs' key claims. The uses are clearly generic, which Plaintiffs do not dispute. Thus, they directly contradict and completely rebut Plaintiffs' claims that Princeton coined the term "pretzel crisps," *see* Pls.' Opp'n Br. at 23, and that Princeton "devised PRETZEL CRISPS as an original brand name for its new snack food creation," Pls.' Compl. ¶ 42. Even a single article with generic use of "pretzel crisps" prior to Plaintiffs' adoption would be enough to disprove these claims and support a genericness finding, so multiple articles can hardly be characterized as *de minimis*. *See, Cummins Engine Co. v. Continental Motors Corp.*, 359 F.2d 892, 894-95 (C.C.P.A. 1966) (relying on a single prior magazine article referring to "turbo-diesel," along with dictionary definitions of "turbo" and "diesel," to find composite term "turbodiesel" generic).

Frito-Lay also cited many other articles in the TTAB record that confirm the public continued to use and understand "pretzel crisps" to be a generic product descriptor after Plaintiffs' adoption. *See* Frito-Lay's Motion Br. at 11–12. Plaintiffs do not meaningfully confront these generic uses, except for one example. Plaintiffs take issue with a *Slashfood* article about a taste test held to determine the best pretzels in different categories. Pls.' Opp'n Br. at 14; Opp'n No. 91195552 at A3254–59. Plaintiffs claim that the use of "pretzel crisps" in this article to describe a category was a brand reference because Snack Factory's products were the only ones featured in this category. However, Plaintiffs ignore that "crisps" was just one pretzel category among 12; the other categories tested were "sticks, extra-dark, honey wheat, multigrain, flavored, old fashioned,

gluten-free, unsalted, rods, sourdough and traditional." Opp'n No. 91195552 at A3254–59. The inclusion of "pretzel crisps" as a category along with these other generic categories is plainly a generic use. The fact that Snack Factory's product was the only one in that category does not magically convert that one category descriptor listed alongside 11 others into a brand use.

Plaintiffs' criticism of the *Slashfood* article illustrates more pervasive problems with their treatment of media mentions in the record. First and foremost, Plaintiffs appear to automatically count as a "trademark" use any article that relates to their products, even if the author uses "pretzel crisps" generically within the article. But that is not correct (as the TTAB correctly recognized). For example, when an article references "Snack Factory pretzel crisps," that shows the author considers "Snack Factory" as the brand and "pretzel crisps" as a generic term. *See Frito-Lay*, 124 U.S.P.Q.2d at 1193 (noting such uses indicate that authors "view [Princeton] as only one of several potential sources of a 'pretzel crisps' product, i.e., as a genus of product, not a brand").

In addition, at the TTAB and in this Court, Plaintiffs submitted media evidence through Christopher Lauzau, a "Senior Legal Research Analyst" at the law firm of Plaintiffs' counsel. Opp'n No. 91195552 at A1156 et. seq. At the TTAB, Mr. Lauzau purported to categorize the media mentions of "pretzel crisps" based on whether he thought the term was used generically or as a trademark, and he reported the percentage he thought "clearly referred to PRETZEL CRISPS as a brand name of snacks produced by Snack Factory or its licensees," as well as the percentage he thought "referred to that phrase in a way that may have been a generic reference." *See id.* at A1157–58 (TTAB); [Doc. 41] at 2 (this Court). Besides the bias evident in his categorization ("*clearly* referred to PRETZEL CRISPS as a brand name" vs. "*may have been* a generic reference"), Mr. Lauzau does not explain the criteria he used to assign those categories, and at the TTAB, it was not clear which articles he assigned to which categories. Also, as the TTAB correctly

noted, Mr. Lauzau is not qualified or presented as an expert in trademark law. *Frito-Lay*, 124 U.S.P.Q.2d at 1190. In any event, the TTAB specifically rejected Mr. Lauzau's attempts to tally this evidence, concluding it "cannot give any weight to his finding as to the percentages that list the term in a particular fashion" and proceeding to "make [its] own findings." *Id.*

In contrast to the submissions in the TTAB, Plaintiffs' submissions of new media mentions of "pretzel crisps" in this Court (which are not relevant to this Court's evaluation of the TTAB decision) include notations purporting to indicate the category to which they assigned each article ("T" for a trademark use, "G" for an "arguably generic" use, "N" for a "false positive," and "D" for a duplicate article). This illuminates further how Plaintiffs' purported percentages are flawed. For example, Plaintiffs included as "trademark" uses around 258 articles that are obvious press releases from Plaintiffs or their affiliates. *See* Declaration of David Armendariz ("Armendariz Decl.") ¶ 7 (filed contemporaneously). Such self-serving documents are hardly evidence of the public's perception. Additionally, over two-dozen articles mention "pretzel crisps" in the context of this litigation, *see id.* ¶ 8, but astonishingly Plaintiffs include these as "trademark" uses, even with titles such as "*Are pretzel crisps crumbling into genericness*" (using "pretzel crisps" in lower-case letters in the title and throughout the article), [Doc. 41-5] at 214, or "*Pretzel Crisps Found Generic and Unregistrable*," [Doc. 42-3] at 125, or otherwise referencing Frito-Lay's success in challenging the mark as generic. Duplicate articles were overcounted by Plaintiffs as trademark uses, and over a dozen generic uses were miscategorized by Plaintiffs as trademark uses. Armendariz Decl. ¶ 3, Ex. 2. And generic references to other companies' "pretzel crisp" products were inexplicably counted as false hits. *See, e.g.*, [Doc 42-2] at 253 (referring to "Stacy's Pretzel Crisps"); [Doc. 42-6] at 131 (using "Pretzel Crisps" to refer to "Stacy's Bake Shop crisps.").[8]

---

[8] There are also over 50 records with no notation by Mr. Lauzau, so it is unclear how Plaintiffs are including those articles in their computations.

Plaintiffs make the remarkable claim that "mixed uses of a mark in the media are insufficient as a matter of law to establish that the mark is generic," Pls.' Opp'n Br. at 15, but the authority they cite stands for no such proposition. All of the cases cited for this point (including a non-precedential TTAB decision) involve genericness refusals by a trademark examiner, not inter partes proceedings like the one before this Court. In such examinations, the burden of proof is on the trademark examiner, who must show that the mark is generic by *clear evidence*. *See In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 1571 (Fed. Cir. 1987) ("[t]he burden of showing that a proposed mark is generic remains with the [PTO]," which "must be based on clear evidence of generic use"); *In Re Trek 2000 Int'l Ltd.*, 97 U.S.P.Q.2d 1106, 1108 (TTAB 2010) ("When a proposed mark is refused registration as generic, the examining attorney has the burden of proving genericness by 'clear evidence' thereof"); *In Re Ach Direct Inc.*, 2006 WL 2646012, at *5 (Aug. 28, 2006) (non-precedential) ("[T]he evidentiary burden of establishing genericness of a term rests with the Office and the showing must be based on clear evidence."). This is not the standard of proof in this case, and even Plaintiffs have not claimed otherwise.

Plaintiffs' simplistic counting exercise reveals very little in the way of public perception of the term "pretzel crisps." Even ignoring the errors in Plaintiffs' calculations, there is no magic threshold of media mentions that can save Plaintiffs' name from being a generic term. *See Booking.com,* 915 F.3d at 180 ("'[N]o matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification,' that user cannot claim the exclusive right through trademark protection to call the product . . . by its name" (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976))); *Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 822 (4th Cir. 2001) (no amount of "*de facto* secondary meaning" can create a proprietary right over a generic

term). The Board painstakingly analyzed all of the various types of media references, product reviews, and consumer feedback submitted by both parties and concluded they demonstrate "that the term 'PRETZEL CRISPS' is more likely to be perceived by the relevant public as a name for a type of snack product that may derive from multiple sources, rather than a brand that emanates from a single source." 124 U.S.P.Q.2d at 1190–94. There was no error in the Board's analysis.

### d. Plaintiffs' policing of generic use does not create a protectable mark

As in the TTAB, Plaintiffs point to some policing efforts as evidence that "pretzel crisps" is a protectable mark, but in fact all the evidence shows is that like the general public, the third parties that were threatened by Plaintiffs perceived and used "pretzel crisps" as a generic term.

For example (and as fully considered by the TTAB), when Kraft introduced pretzel crackers under its RITZ MUNCHABLES mark, it used "pretzel crisps" as the generic descriptor. The generic nature of this use is evident from the way "pretzel crisps" was set off from Kraft's RITZ MUNCHABLES mark in different typeface and color (see comparison below). Eventually, Kraft agreed not to use "pretzel crisps" "as a product descriptor — i.e., the words commonly used after the product's trademark on packaging to communicate to the consumer what type of product it is," but Kraft made no admission of liability or acknowledgement that Princeton was entitled to a registration for "pretzel crisps." Opp'n No. 91195552 at A1795, 1798. Kraft merely acknowledged the non-controversial fact that Princeton owns a registration on the Supplemental Register. Importantly, Kraft was careful to ensure that the settlement agreement contained a provision allowing Kraft to resume generic use of the term should a court or trademark office find the term to be generic. *Id.* at A1798. Following the settlement agreement, Kraft changed the generic descriptor "pretzel crisps" on its packaging to "pretzel thins" and "pretzel rounds" (two terms that Plaintiffs agree are not used as trademarks), demonstrating that Kraft considers all of

these terms to be generic. *See* Pls.' Opp'n Br. at 17 ("Kraft subsequently adopted the terms 'pretzel thins' and 'pretzel rounds' *to describe its products*" (emphasis added); *see also* Opp'n No. 91195552 at A1543 (declaration from Princeton's founder testifying that "pretzel thins" and "pretzel rounds" are "generic descriptors").

 

Similarly (and also considered by the TTAB), Pretzels, Inc. responded to Plaintiffs' cease-and-desist letter explaining that its "use of the generic term 'pretzel crisps' was merely a reference to a particular market segment described in industry publications." *Id.* at A1942.

Plaintiffs' more recent policing efforts (which are not relevant to this Court's review of the TTAB decision) likewise show that the third parties involved believed "pretzel crisps" is generic. For example, Wish Farms posted a recipe on its website for "Blueberry Pretzel Crisps" (see image below, left). [Dkt. 45-9] at 3. The recipe did not feature Plaintiffs' product, and the term "Pretzel Crisps" was used generically to refer to the recipe itself. *Id.* Plaintiffs actually suggested that Wish Farms "alter the recipe" to include Plaintiffs' product, *id.*, but Wish Farms declined, noting that "the photos were done with a different product and the quickest way that we could address your concern was to simply change the name," *id.* at 7.

 

In 2017, Plaintiffs sent a cease-and-desist letter to Betty Jane Homemade Candies over the use of the term "Pretzel Crisps" as a generic descriptor for an ingredient in its "Betty's Bites" snack (see image above, right). Armendariz Decl. ¶ 5, Ex. 4, at SLPC_00000035–36. The term was listed alongside other ingredients including "Caramel," "Milk Chocolate," and "Sea Salt" and was used in the same manner as those other generic terms. *Id.* In response to the letter, Betty Jane's owner stated that he "assumed [pretzel crisps] was a descriptor term for the type of pretzel item (similar to pretzel rod for example, describing the pretzel product)." *Id.* at SLPC_00000084. And in Plaintiffs' cease-and-desist letter to Columbia County Bread and Granola over the use of "pretzel crisps" on some of its packaging, Snyder's-Lance's own Assistant General Counsel stated that Columbia County Bread had used "pretzel crisps" "as a generic term." [Doc. 45-10] at 11.

None of these examples show any attempt by third parties to copy or trade on Plaintiffs' purported mark or goodwill. On the contrary, they all show generic uses of a commonly understood generic term. Plaintiffs argue that their successful policing efforts "support the conclusion that others in the industry recognize PRETZEL CRISPS as a brand name," Pls.' Opp'n Br. at 17, but they cite no relevant authority supporting that assertion. Instead, Plaintiffs cite two non-precedential TTAB decisions, both of which are inapposite.[9]

---

[9] The first involved competitors' use of a coined mark, *see STK LLC v. Backrack, Inc.*, Cancellation No. 92049332, 2012 WL 2024459, at *8 (TTAB May 21, 2012) (non-precedential) ("In 1988, one of respondent's founders coined the BACKRACK trademark."), and as explained above, "pretzel crisps" is not a coined mark. The second involved third parties creating "replicas" of the

Additionally, conspicuously absent in the record is any evidence that Plaintiffs have policed the numerous instances of generic use of "pretzel crisps" in the media. If Plaintiffs believed such uses were improper, one would expect they would have reached out to demand proper use of their purported mark or at least educate the media and the public regarding their alleged rights. However, in response to a request for production from Frito-Lay, Plaintiffs produced no documents showing that they have taken any such action with respect to the media. *See* Armendariz Decl. ¶ 4, Ex. 3 (Plaintiffs' Responses to RFP Nos. 2, 3, and 4).

### e. Surveys are irrelevant when the alleged mark was in common use

The Fourth Circuit has explained that there are two situations where a mark may be classified as generic: "(1) where the term began life as a 'coined term'[10]; and (2) where the term was commonly used *prior to its association with the products at issue*." *Hunt Masters*, 240 F.3d at 255 (emphasis added). "While consumer surveys are relevant to determining whether a term is generic in the former scenario, they are not in the latter." *Booking.com*, 915 F.3d at 183. The Fourth Circuit explained that surveys of consumer understanding might be relevant to genericness where "a coined word for a commercial product (such as 'aspirin,' 'teflon,' or 'thermos') . . . is alleged to have become generic through common usage." *Hunt Masters*, 240 F.3d at 255. However, where, as here, "it is not necessary to determine whether [a] term has become generic through common use," surveys of consumer understanding are "irrelevant" to the question of genericness. *Id.* There is ample evidence of common use of "pretzel crisps" prior to any association

---

applicant's car design, which the applicant argued was protectable trade dress. *Unique Motorcars v. Carroll Hall Shelby Trust*, Opposition Nos. 91150352 and 91155242, 2009 WL 722046, at *7–8 (TTAB Mar. 4, 2009) (non-precedential). Thus, both of these decisions involved actual copying of a mark, which is very different from the third-party generic uses described above.

[10] As explained previously, a "coined term" refers to a fanciful mark—that is, a made-up word designed exclusively for use as a mark and having no other meaning than its trademark significance. *Sara Lee*, 81 F.3d at 464; *McCarthy* § 11:6.

with Plaintiffs' products. Plaintiffs acknowledge three articles in the record showing generic use of the term prior to their claimed adoption of it in 2004. Further, in 2005, Princeton amended its original trademark application to the Supplemental Register, a tacit admission that the term lacked association in the minds of consumers sufficient to establish acquired distinctiveness at that time. *See* Opp'n No. 92053001 at 257–60. It was not until December 2009, when Princeton applied to register the mark on the Principal Register, that it even claimed that the term had actually acquired secondary meaning. Opp'n No. 91195552 at A5152. Of course, Frito-Lay maintains that the term has never acquired distinctiveness (as the TTAB found), but nevertheless, the record contains ample evidence of common use of "pretzel crisps" before Plaintiffs can even colorably claim that the term was associated with them or their products. As such, Plaintiffs' survey evidence is irrelevant to the genericness issue in this case.

## CONCLUSION

The TTAB properly found "pretzel crisps" generic based on the extensive record before it; the term was in common use before Plaintiffs adopted it and continued to be used and understood as a generic term throughout the relevant time period considered by the TTAB. Plaintiffs' "new" evidence cannot change that determination. Because the TTAB's decision on genericness is supported by substantial evidence, the Court should grant summary judgment affirming it.

This the 14th day of June, 2019.                Respectfully submitted,

William G. Barber (*admitted pro hac vice*)          /s/ Nathan A. White
David E. Armendariz (*admitted pro hac vice*)      Nathan A. White, N.C. Bar No.: 48684
PIRKEY BARBER PLLC                       Alice C. Richey, N.C. Bar No.: 13677
600 Congress Ave.; Suite 2120              ALEXANDER RICKS PLLC
Austin, Texas 78701                         1420 East 7th Street, Suite 100
Telephone: (512) 482-5223                  Charlotte, North Carolina 28204
Facsimile: (512) 322-5201                  Telephone:    (704) 365-3656
bbarber@pirkeybarber.com                 Facsimile:     (704) 365-3676
darmendariz@pirkeybarber.com             alice@alexanderricks.com
                                          nathan@alexanderricks.com