**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:17-CV-00652-KDB-DSC**

| | |
|---|---|
| PRINCETON VANGUARD, LLC AND SNYDER'S-LANCE, INC., <br><br> **Plaintiffs,** <br><br> v. <br><br> FRITO-LAY NORTH AMERICA, INC., <br><br> **Defendant.** | **ORDER** |

This case is before the Court *sua sponte* to consider whether this Court has subject matter jurisdiction over this dispute. The issue before the Court, which appears to be a matter of first impression in this Circuit and perhaps nationally, is whether Plaintiffs have the right to file a civil action in District Court to appeal an adverse remand decision of the Trademark Trial and Appeal Board ("TTAB") after Plaintiffs already appealed the TTAB's initial ruling that their trademark is generic to the United States Court of Appeals for the Federal Circuit. After a full review of the relevant proceedings in the TTAB and the Federal Circuit, the governing statute and the parties' arguments, the Court finds that Plaintiffs waived their right to proceed in District Court by initially taking their appeal to the Federal Circuit. Therefore, this action will be dismissed without prejudice for lack of subject matter jurisdiction.

I. **LEGAL STANDARD**

None of the parties raised the issue of subject matter jurisdiction in this action. However, because it defines a court's power to adjudicate cases and controversies, whether a court has subject matter jurisdiction is a "threshold matter" that a court must consider prior to reaching the merits of a dispute. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *Sucampo*

*Pharmaceuticals, Inc. v. Astellas Pharma, Inc*., 471 F.3d 544, 548 (4th Cir. 2006). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist*., 475 U.S. 534, 541 (1986). No other matter can be decided without subject matter jurisdiction. *See United States v. Cotton*, 535 U.S. 625, 630 (2002); *U.S. v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012).

Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived or forfeited by the parties. *Id.* Accordingly, questions of subject-matter jurisdiction may be raised at any point during the proceedings and indeed must be raised *sua sponte* by the court when it appears that the court may lack jurisdiction. *See Wilson*, 699 F.3d at 793; *Brickwood Contractors, Inc. v. Datanet Engineering, Inc*., 395 F.3d 385, 390 (4th Cir. 2004). A court must dismiss an action pursuant to Federal Rule of Civil Procedure 12(h)(3) "if the court determines at any time that it lacks subject matter jurisdiction." *See* Fed.R.Civ.P. 12(h)(3). The plaintiff bears the burden of proving subject matter jurisdiction. *Richmond, F. & P.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## II. FACTS AND PROCEDURAL HISTORY

Broadly stated, in this action the parties dispute whether Plaintiff Princeton Vanguard, LLC[1] is entitled to register the trademark PRETZEL CRISPS with the United States Patent and Trademark Office ("USPTO").[2] More specifically, Defendant Frito-Lay North America, Inc. ("Frito-Lay") asserts that the trademark is not entitled to registration because it is a generic mark

---

[1] Princeton Vanguard's co-Plaintiff is Snyder's-Lance, Inc., which is its parent company.

[2] The Court expresses no opinion on the merits of the parties' dispute.

or, in the alternative, lacks secondary meaning. *See Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, 109 U.S.P.Q.2d (BNA) 1949, 1950 (T.T.A.B. 2014).

In 2010, Frio-Lay filed its opposition to the registration of the mark with the USPTO. An extensive record of documents, declarations, expert witness testimony and other evidence was developed by the parties and was submitted by agreement to the TTAB for a trial on the papers. On February 28, 2014, the TTAB ruled in favor of Frio-Lay, finding that the mark was generic and cancelling the registration of the mark on the Supplemental Register and denying Princeton Vanguard's application to register the mark on the Principal Register. *Id*.

Plaintiffs appealed that ruling to the Federal Circuit pursuant to 15 U.S.C. § 1071(a). The Federal Circuit, in a thorough, published opinion, considered the evidence and proceedings in the TTAB and determined that the TTAB applied the incorrect legal standard in evaluating whether the mark was generic. Accordingly, the Federal Circuit vacated the TTAB decision and remanded the case for "application of the correct legal test." *Princeton Vanguard, LLC v Frito-Lay N. Am., Inc.*, 786 F.3d 960, 970 (Fed. Cir. 2015). In its opinion, the Federal Circuit plainly envisioned that it would be reviewing the case again after remand. *Id*. (declining to analyze all the parties' arguments with respect to the evidence of record "[g]iven … our decision to remand," but describing the nature of the Federal Circuit's future appellate review for "substantial evidence" and noting "[o]ur review under [the substantial evidence] standard 'can only take place when the agency explains its decisions with sufficient precision, including the underlying factfindings and the agency's rationale.' (citation omitted).")

On remand, neither party sought to introduce new or additional evidence into the record. The TTAB ordered the parties to rebrief the case on the original record, and the case was then considered on remand based on that record. *See Frito-Lay N. Am., Inc. v. Princeton Vanguard,*

3

*LLC*, 124 U.S.P.Q.2d 1184, 1204–06 (T.T.A.B. 2017). In its opinion on remand, the TTAB sought to follow the Federal Circuit's directions[3] and issued a lengthier, more detailed opinion describing its analysis of the parties' factual contentions and legal claims. Ultimately, however, the TTAB reached the same conclusion that the mark PRETZEL CRISPS was generic and, in the alternative, concluded that the mark was descriptive and had not acquired secondary meaning.

The Plaintiffs did not appeal the TTAB's opinion on remand to the Federal Circuit. Instead, on November 6, 2017, Plaintiffs filed a civil action in this Court seeking review of the TTAB's remand opinion pursuant to 15 U.S.C. § 1071(b). This matter was reassigned to the undersigned judge on June 14, 2019. In the course of reviewing the parties' respective motions for summary judgment, the Court determined that the issue of subject matter jurisdiction needed to be considered, and on September 27, 2019 asked the parties to file memoranda of law addressing jurisdiction.[4] The parties filed their memoranda on October 10, 2019 and the matter is ripe for decision.

### III. DISCUSSION

It appears that the issue before the Court has not previously been decided.[5] Therefore, the proper place for the Court to start its analysis of whether it has subject matter jurisdiction is with

---

[3] However, as noted below, one of Plaintiffs' repeated arguments in this Court is that the TTAB failed to follow the Federal Circuit's instructions on remand. *See, e.g.*, Complaint (Doc. 1) at ¶¶ 10, 32, 37.

[4] After the Court raised the issue, the parties split in their arguments to the Court, with the Plaintiffs arguing in favor of jurisdiction and the Defendant taking the position that the Court does not have jurisdiction.

[5] As discussed below, the parties have each cited limited authority that they contend is relevant to the actual question presented, but neither the parties nor the Court have identified any case that

15 U.S.C. § 1071, the statute under which Plaintiffs claim jurisdiction. If Plaintiffs do not have the right to appeal to the District Court under that statute, then the parties concede that this Court does not have subject matter jurisdiction to review the TTAB remand opinion.

In relevant part, 15 U.S.C. §1071 provides:

(a) Persons entitled to appeal; United States Court of Appeals for the Federal Circuit; waiver of civil action; election of civil action by adverse party; procedure

(1) An applicant for registration of a mark, party to an interference proceeding, party to an opposition proceeding, … , party to a cancellation proceeding, … , or an applicant for renewal, **who is dissatisfied with the decision of the Director or Trademark Trial and Appeal Board, may appeal to the United States Court of Appeals for the Federal Circuit <u>thereby waiving his right to proceed under subsection (b) of this section</u>**: *Provided,* That such appeal shall be dismissed if any adverse party to the proceeding, other than the Director, shall, within twenty days after the appellant has filed notice of appeal according to paragraph (2) of this subsection, files notice with the Director that he elects to have all further proceedings conducted as provided in subsection (b) of this section. Thereupon the appellant shall have thirty days thereafter within which to file a civil action under subsection (b) of this section, in default of which the decision appealed from shall govern the further proceedings in the case.

…

(b) Civil action; persons entitled to; jurisdiction of court; status of Director; procedure

(1) **Whenever a person authorized by subsection (a) of this section to appeal to the United States Court of Appeals for the Federal Circuit is dissatisfied with the decision of the Director or Trademark Trial and Appeal Board, said person may, <u>unless appeal has been taken to said United States Court of Appeals for the Federal Circuit</u>, have remedy by a civil action** if commenced within such time after such decision, not less than sixty days, as the Director appoints or as provided in subsection (a) of this section.

15 U.S.C. §1071 (emphasis added).

Thus, under Section 1071 a dissatisfied party has two options for appeal. It may appeal to the Federal Circuit under 15 U.S.C. §1071(a) or it may appeal by filing a civil action in a District

---

directly addresses the question of whether a dissatisfied party who has already appealed a ruling of the TTAB to the Federal Circuit can then appeal the TTAB's opinion on remand on the same matter to a District Court.

Court under 15 U.S.C. §1071(b). However, the statute makes clear – twice – that a dissatisfied party may not do both. In §1071(a), the statute says that a party who files an appeal with the Federal Circuit waives his right to seek District Court review under §1071(b), and then in §1071(b) the statute again specifically prohibits parties who have taken an appeal to the Federal Circuit from filing a civil action. Therefore, the plain language of the statute does not allow a dissatisfied party who has taken an appeal to the Federal Circuit under §1071(a) to later exercise the option to file a civil action under §1071(b).

Plaintiffs argue that despite the well-defined statutory choice given to dissatisfied parties to <u>either</u> seek review in the Federal Circuit or in the District Court, Section 1071 should be interpreted to give parties the option to appeal to the Federal Circuit or seek District Court review after each and every "decision" of the TTAB. The Court disagrees. While the statute refers to "the decision" of the Director or the TTAB in discussing when an appeal may be taken, nothing in that wording limits the scope of the resulting statutory waiver when a Federal Circuit appeal is taken. Rather, the statute broadly states that by taking an appeal a party "thereby waiv[es] his right to proceed under subsection (b) of this section" without any limitation as to time or a particular decision. Perhaps even more clearly, in Section 1071(b), the statute says that an appeal can be made to a District Court "unless appeal has been taken to [the] United States Court of Appeals for the Federal Circuit." Again, there is no language limiting the Federal Circuit appeal as to time or a particular decision before it precludes the District Court remedy. Finally, by using the words "the decision" instead of "a decision," the statute suggests that there is only one, rather than a possible series of decisions, to which the statutory choice between a Federal Circuit and a District Court appeal applies.

Another provision of 15 U.S.C. §1071 also supports interpreting the statute to give full effect to the waiver of a District Court review upon a Federal Circuit appeal. In Section 1071(a)(4), the statute provides that the Federal Circuit's determination of an appeal "shall govern the further proceedings in the case." If, despite this statutory requirement that the Federal Circuit's decision must control later proceedings, the statute were interpreted to permit *de novo* appeals to District Court of subsequent "decisions," as argued by Plaintiffs,[6] then the supposed *de novo* review might be undercut and, perhaps more problematically, the appellate review of any District Court decision by its governing Circuit Court of Appeals would be constrained by the Federal Circuit's ruling.[7]

The only interpretation of the statute that gives full effect to the mandated primacy of a Federal Circuit opinion under §1071(a)(4), and avoids the conflict of one Court of Appeals being "bound" by the decision of another Court of Appeals in an appeal from one of its District Courts, is to not allow parties to file an appeal in District Court after a Federal Circuit appeal has been filed. Appeals from TTAB opinions will thus be heard either by the Federal Circuit, who can best interpret and apply its own prior ruling in the event there was an earlier appeal, or in the first instance by a District Court and later the Court of Appeals for the circuit in which the District Court sits if there is no appeal to the Federal Circuit. This procedure, which gives full meaning to all of the provisions of §1071, is plainly a better and more efficient process for fairly resolving trademark disputes.

---

[6] *See, e.g.,* Complaint (Doc. 1) at ¶76; Memorandum in Support of Cross-Motion for Summary Judgment (Doc. 35) at p.11.

[7] Unlike appeals involving the Patent Trial and Appeal Board of the USPTO, the Federal Circuit does not have jurisdiction over appeals from a District Court's review of a TTAB decision under 15 U.S.C. §1071(b) (only direct appeals under Section 1071(a)) so an appeal from the District Court must be taken to its governing Circuit Court of Appeals. *See* 28 U.S.C. §1295(a)(4)(C); *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150 (4th Cir. 2014) (appeal to Fourth Circuit Court of Appeals following civil action filed under 15 U.S.C. §1071(b)).

Beyond the statutory text, the limited authority cited by the parties – along with the interests of justice and judicial economy – support the conclusion that this Court does not have subject matter jurisdiction. In response to the Court's request for briefing on the jurisdictional issue, Frito-Lay informed the Court that it found no trademark case addressing a situation like the one before the Court. However, it cited to the Court an "analogous" patent case where the court found that it lacked subject matter jurisdiction.[8]

In *Beaudet v. Quigg*, Civ. A. No. 86–2876, 1987 WL 16329 (D.D.C. Aug. 14, 1987), a patent applicant dissatisfied with a decision from the Board of Patent Appeals and Interferences ("Board") first appealed to the Federal Circuit pursuant to 35 U.S.C. § 141 (the patent analog to §1071(a)) *Id.* at *1. The Federal Circuit remanded for the Board to clarify whether it had considered certain evidence. After the Board issued an opinion on remand pursuant to the Federal Circuit's instructions, the applicant then appealed to the District Court alleging jurisdiction under 35 U.S.C. § 145 (the patent analog to §1071(b)).[9]

In determining that it lacked subject matter jurisdiction, the *Beaudet* court described a party's decision between appeal to the Federal Circuit and appeal to district court as a "binding election," rejecting the same argument Plaintiffs make in this case; that is, that the agency's remand

---

[8] The patent parallels to Section 1071 (35 U.S.C. § 141 (appeal to Federal Circuit) and 35 U.S.C. § 145 (appeal to district court)) are interpreted to operate similarly to Section 1071, including in the Fourth Circuit. *See Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155–56 (4th Cir. 2014) (applying Supreme Court precedent interpreting the patent parallels to a Section 1071 trademark appeal).

[9] Similar to Section 1071(a) and (b), Sections 141 and 145 of Title 35 provided at the time that "by filing [an appeal to the Federal Circuit] the applicant waives his or her right to proceed under section 145 of this title," 35 U.S.C. §141, and that a dissatisfied applicant had the option of a civil remedy (in the United States District Court for the District of Columbia) "unless appeal has been taken to the United States Court of Appeals for the Federal Circuit…" 35 U.S.C. §145.

8

decision was "a second, distinct decision" that allow them "to avoid the binding effect of [the] prior resort to direct appeal." *Id.*[10] The court explained its analysis of the governing statutes as follows:

> Indeed, the statutory language involved casts doubt on whether, under any circumstances, there can be multiple 'decisions' on an applicant's appeal of the rejection of a particular application. Both 35 U.S.C. § 141 and 35 U.S.C.A. § 145 refer to 'the decision of the Board' rather than 'a' decision of the Board, suggesting that the Board's initial affirmance of an examiner's decision (reversals will not be appealed further), as well as any subsequent reconsideration, should be considered a single decision of the Board. **Such an interpretation yields the entirely reasonable rule that when the Federal Circuit reverses a decision of the Board and remands for further proceedings, any subsequent appeals must be directed to the court which has already developed the 'law of the case.'**

*Id.* n.2 (emphasis added). Accordingly, the court dismissed the case for lack of subject matter jurisdiction. *Id.* at *2.

The Court finds that the same reasoning applies to this case. Here, not only have Plaintiffs argued that the Federal Circuit's ruling in the appeal of the 2014 TTAB opinion must be followed as the binding "law of the case," *see* Doc. 33 at 1, n.1, a centerpiece of Plaintiffs' argument is that this Court should find that the TTAB failed to follow the Federal Circuit's "direction(s)" or "instructions." *See* Complaint (Doc. 1) at ¶¶ 10, 32, 35; Doc. 33 at 8 (alleging that the TTAB did not comply with the Federal Circuit's "expectations"); *id.* at 27 (referring to the TTAB's allegedly "erroneous legal position" that Plaintiffs' claim "disregard[s] the Federal Circuit's direction"); *see also* Doc. 35 at 9 (criticizing the TTAB's analysis as contrary to "the Federal Circuit's instructions"); *id.* at 25 (alleging that the TTAB did not follow "the Federal

---

[10] While *Beaudet* might arguably be distinguished from this case because the Federal Circuit only asked the Board for clarification (rather than ordering a reconsideration under a different legal standard), the Federal Circuit in this case as in *Beaudet* expressed its intention to reach the full merits of the appeal after remand. See *Id.* at n.3.

9

Circuit's direction"). The Federal Circuit, rather than this Court, is far better suited, particularly in the trademark area in which that circuit has extensive expertise, to determine if the TTAB has faithfully followed its earlier ruling. Thus, this Court agrees with the *Beaudet* court that the "entirely reasonable rule" is that subsequent appeals by the Plaintiffs should go back to the Federal Circuit, the court to which the Plaintiffs initially appealed.

In its jurisdictional response, Plaintiffs cite to the Court a nearly 50-year-old case from the Ninth Circuit,[11] *Gillette Co. v. '42' Prods. Ltd.,* 435 F.2d 1114, 1118 (9th Cir. 1970), which they argue is "directly on point." The Court disagrees. In *Gillette*, '42' Products Limited ("42 Products") filed an application to register the mark EXECUTIVE, and Gillette Co. ("Gillette") opposed the application before the TTAB. 435 F.2d at 1115. The TTAB dismissed the opposition, and Gillette appealed to the Court of Customs and Patent Appeals ("CCPA"), the predecessor to the Federal Circuit. *Id.* The CCPA subsequently concluded that the TTAB had erred on the merits and remanded the case to the TTAB. On remand, the TTAB ruled for Gillette and sustained the opposition. *Id.* 42 Products, <u>which was not the party who earlier appealed to the Federal Circuit</u>, then filed a civil action pursuant to Section 1071(b) seeking review of the decision on remand. *Id.* In the civil action, the jurisdictional issue was whether 42 Products, having not previously appealed to the Federal Circuit, was nonetheless prohibited from appealing to the District Court because it had not elected to object to the earlier Federal Circuit appeal and proceed in District Court under Section 1071(b). Thus, *Gillette* is a different case

---

[11] Plaintiffs also cited to the Court a trademark treatise, 3 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 21:20 (5th ed.). However, that treatise cites no authority other than *Gillette*, which is readily distinguishable, and its analysis focused solely on the different circumstances found in *Gillette* and discussed *infra*. Thus, the treatise provides no assistance to the Court on the issues presented here.

10

than presented by the Plaintiffs, who were the dissatisfied parties who took the first appeal to the Federal Circuit and now want to appeal the remand opinion to a District Court.

Further, the reasoning of the Ninth Circuit in allowing the plaintiff to pursue a District Court appeal as its first appeal as a dissatisfied party[12] only emphasizes why Plaintiffs are not entitled to appeal to the District Court after their earlier appeal to the Federal Circuit. After quoting Section 1071 and discussing cases both finding and rejecting a waiver in various appeals, the court concluded, "[t]he cited cases only teach that the two remedies are intended to be alternative and not successive. Once the dissatisfied party has chosen a path of appeal from a particular decision, he cannot seek to pursue the other." *Id*. at 1116. The court then considered its view of the legislative purpose for the two remedies,[13] again emphasizing the single choice given to each party and the fact that the appeal to District Court was the plaintiff's first opportunity as a "dissatisfied" party to choose its appellate forum. *Id*. at 1117. ("By allowing an appeal from a second decision to a different reviewing body, *[plaintiff '42 Products] is getting an appeal in only one forum as Congress intended*." … "[plaintiff] had no way of knowing that it required a hearing in a civil action until it became the loser in the second decision …We find no reason why the dissatisfied party should be precluded from utilizing the processes of the

---

[12] While *Gillette* is distinguishable on its facts and legal reasoning as discussed in this opinion, the Court notes that there was a persuasive dissent filed in *Gillette* that would have not permitted the plaintiff to file a civil action with the District Court after it failed to elect that option at the time of the Federal Circuit appeal. *Id*. at 1119-1121.

[13] According to *Gillette*, the primary difference between an appeal to the Federal Circuit and to a District Court is that a party may introduce new evidence in the District Court that was not considered by the TTAB. A party, however, can take that opportunity into account when it first decides where to appeal. Further, in this action, Plaintiffs did not seek to introduce new evidence in the TTAB on remand, and the evidence they have introduced in this Court is simply evidence of the same kind on which the TTAB ruled (i.e., additional years of sales, advertising expenditures, etc.). *See* Complaint, Doc. 1 at ¶38.

11

forum best suited to its needs *as long as the aid of only one forum is invoked*.") (emphasis added).

In other words, *Gillette* holds only that each party gets at least one opportunity as a "dissatisfied" party to choose whether to appeal to the Federal Circuit or the District Court, not that parties can choose a different appellate forum after they have already appealed once to the other forum. Plaintiffs took their one bite at the proverbial apple when they opted for a Federal Circuit appeal and are not entitled to take another one in this Court.

In summary, Plaintiffs were given a full and fair opportunity to appeal to the District Court when they chose to appeal the TTAB's 2014 decision to the Federal Circuit. The Federal Circuit, "a court ideally fitted by its expertise and experience for a complete decision in this matter," *Gillette*, 435 F.2d at 1120, carefully considered the case and remanded it for reconsideration, with the clearly expressed expectation that it would completely address the merits after the TTAB issued its remand opinion. Allowing Plaintiffs – having already voluntarily chosen to proceed in the Federal Circuit – to appeal *de novo* to this Court is inconsistent with the plain language of 15 U.S.C. §1071 and would be wasteful in terms of judicial economy. Importantly, it would also remove the consideration of the merits from the court which is indisputably in the best position to render judgment on whether the TTAB followed the Federal Circuit's earlier opinion, which the statute provides "shall govern the further proceedings in the case." Accordingly, the Court finds that Plaintiffs waived their right to appeal to this Court by taking their appeal to the Federal Circuit, and this Court thus lacks subject matter jurisdiction to hear this action.

IV. **ORDER**

**NOW THEREFORE IT IS ORDERED THAT**:

This action is **DISMISSED** without prejudice for lack of subject matter jurisdiction. It is further **ORDERED** that the parties' cross motions for summary judgment (Doc. 28 and 34) are both denied as moot.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: October 21, 2019

Kenneth D. Bell
United States District Judge