**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 19-2316**

───────────────

SNYDER'S-LANCE, INC.; PRINCETON VANGUARD, LLC,

　　　　　　　Plaintiffs - Appellants,

　　　v.

FRITO-LAY NORTH AMERICA, INC.,

　　　　　　　Defendant - Appellee.

───────────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Kenneth D. Bell, District Judge.  (3:17−cv−00652−KDB−DSC)

───────────────

Argued:  January 28, 2021　　　　　　　　　　Decided:  March 17, 2021

───────────────

Before NIEMEYER, WYNN, and FLOYD, Circuit Judges.

───────────────

Reversed and remanded by published opinion.  Judge Wynn wrote the opinion, in which Judge Niemeyer and Judge Floyd joined.

───────────────

**ARGUED:**  Paul D. Clement, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellants.  William G. Barber, PIRKEY BARBER PLLC, Austin, Texas, for Appellee. **ON BRIEF:**  David H. Bernstein, James J. Pastore, DEBEVOISE & PLIMPTON LLP, New York, New York; George W. Hicks, Jr., Julie M.K. Siegal, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellants.  David E. Armendariz, PIRKEY BARBER PLLC, Austin, Texas, for Appellee.

───────────────

WYNN, Circuit Judge:

This case presents a narrow question of statutory interpretation: whether a party to a trademark dispute who appeals a decision of the Patent and Trademark Office's Trademark Trial and Appeal Board ("Trademark Board") to the Federal Circuit may, after vacatur and remand by the Federal Circuit and the issuance of a new decision by the Trademark Board, seek review of that second decision in federal district court.

The district court answered this question in the negative and dismissed the case for lack of jurisdiction. But we reach a different conclusion. In this matter of first impression for our Circuit, we join our sister circuits that have considered this question and hold that a district court may review a subsequent decision of the Trademark Board in such circumstances.

Accordingly, we reverse the district court's judgment dismissing the case for lack of subject matter jurisdiction and remand for further proceedings.

## I.

The Lanham Act is the United States' federal trademark law. Under the Lanham Act, trademarks that are "distinctive"—"those that are arbitrary ('Camel' cigarettes), fanciful ('Kodak' film), or suggestive ('Tide' laundry detergent)"—are entitled to the "valuable benefits" of registration on the principal register. *U.S. Pat. & Trademark Off. v. Booking.com B. V.*, 140 S. Ct. 2298, 2302 (2020) (most internal quotation marks omitted). These benefits include "a presumption that the mark is valid." *Id.*

By contrast, trademarks that are merely "descriptive"—such as "'Park 'N Fly' airport parking"—generally may only be registered on the supplemental register, which

"accords more modest benefits." *Id.* (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 718 F.2d 327, 331 (9th Cir. 1983), *rev'd on other grounds*, 469 U.S. 189 (1985)). There is an exception for descriptive terms which have "acquired distinctiveness" by "achiev[ing] significance in the minds of the public as identifying the applicant's goods or services," *id.* at 2303 (internal quotation marks omitted), such as "American Airlines," *OBX-Stock, Inc. v. Bicast, Inc.*, 558 F.3d 334, 340 (4th Cir. 2009) (capitalization modified). Such trademarks are eligible for registration on the principal register. *Booking.com*, 140 S. Ct. at 2303. Finally, generic terms are not eligible for registration on either register because "[t]he name of the good itself (*e.g.*, 'wine') is incapable of distinguishing one producer's goods from the goods of others." *Id.* (alterations and most internal quotation marks omitted).

In 2004, Plaintiff Princeton Vanguard, LLC[1] sought to register the mark "PRETZEL CRISPS" in reference to one of its products, flat pretzel crackers. The trademark examiner denied registration on the principal register as a distinctive mark but allowed registration on the supplemental register as a descriptive mark.

In 2009, Plaintiffs reapplied for registration on the principal register, believing that the mark had by that time acquired distinctiveness. However, Defendant Frito-Lay North America, Inc. opposed registration, arguing that "PRETZEL CRISPS" was "generic for pretzel crackers and thus . . . not registrable," or alternatively, that it was "highly descriptive of a type of cracker product and has not acquired distinctiveness." *Princeton Vanguard,*

---

[1] Co-Plaintiff Snyder's-Lance, Inc., acquired Princeton Vanguard, LLC in 2012.

3

*LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 963 (Fed. Cir. 2015). The dispute went before the Trademark Board, where the parties developed an extensive factual record before fact discovery closed in 2012. The Trademark Board sided with Defendant in 2014, concluding that "PRETZEL CRISPS" was generic. *Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, 109 U.S.P.Q.2d 1949, 1960 (T.T.A.B. 2014). It did not reach the acquired-distinctiveness question. *Id.* at 1960 n.13.

Plaintiffs then faced a choice. Under the Lanham Act, they could seek review of the Trademark Board's 2014 decision in either the Federal Circuit (pursuant to 15 U.S.C. § 1071(a)) or a district court (pursuant to § 1071(b)). The two paths have distinctive features. The Federal Circuit path generally provides for faster resolution of the appeal and restricts the record to that developed before the Trademark Board. *See* 15 U.S.C. § 1071(a)(4). Additionally, the Federal Circuit "review[s] the [Trademark] Board's factual findings for substantial evidence." *In re St. Helena Hosp.*, 774 F.3d 747, 750 (Fed. Cir. 2014). By contrast, the district court path allows for additional development of the record and de novo review—but it opens the appellant up to counterclaims by the other party. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 144 (2015); 3 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 21:20 (5th ed. 2020 & Supp. 2021).

If the appellant elects Federal Circuit review under § 1071(a), the appellee can choose instead to have the case proceed in district court pursuant to § 1071(b). *See* 15 U.S.C. § 1071(a)(1). But the reverse is not true. In other words, either party can force selection of § 1071(b) (district court) review, but neither can force selection of § 1071(a)

(Federal Circuit) review. Federal Circuit review occurs only when the appellant selects it and the appellee acquiesces in that selection.

Plaintiffs opted for the § 1071(a) route and appealed the Trademark Board's 2014 decision to the Federal Circuit. They assert that they made this choice because they wished to raise only a legal issue and believed the Federal Circuit would be the more efficient route. Defendant did not elect to force § 1071(b) review in district court instead.

Accordingly, the case proceeded before the Federal Circuit, which agreed with Plaintiffs in 2015. The Federal Circuit concluded that the Trademark Board had "applied the incorrect legal standard in evaluating whether the mark [wa]s generic." *Princeton Vanguard*, 786 F.3d at 962. Specifically, the court concluded the Trademark Board had erroneously evaluated the terms "PRETZEL" and "CRISPS" separately, rather than the complete phrase "PRETZEL CRISPS." *Id.* at 969. Moreover, the court noted that the Trademark Board could not "disregard the results of survey evidence without explanation," as its decision appeared to do. *Id.* at 970. Accordingly, the Federal Circuit "vacate[d] and remand[ed to the Trademark Board] for further proceedings." *Id.* at 962.

On remand, in a 2017 decision, the Trademark Board again concluded that "PRETZEL CRISPS" was generic. *Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, 124 U.S.P.Q.2d 1184, 1204 (T.T.A.B. 2017). However, the Trademark Board also concluded, in the alternative, that "PRETZEL CRISPS" lacked acquired distinctiveness. *Id.* at 1206.

This time, Plaintiffs sought review of the Trademark Board's 2017 decision in federal district court pursuant to § 1071(b). They assert that they opted for district court

review of the Trademark Board's second decision because they wished to expand the record to include additional evidence of acquired distinctiveness that had arisen in the intervening years—something they could only do in district court.

The case proceeded for two years in district court. The parties cross-moved for summary judgment and introduced new evidence. But before the district court could rule on the motions, the case was reassigned to a different judge. The court then raised for the first time the question of whether it had jurisdiction to review the Trademark Board's 2017 decision in light of Plaintiffs' earlier election of Federal Circuit review of the Trademark Board's 2014 decision. The parties briefed the issue, with Plaintiffs arguing for jurisdiction and Defendant arguing against.

After considering the parties' arguments, the court dismissed the case without prejudice for lack of subject matter jurisdiction. The court concluded that Plaintiffs' initial election of the § 1071(a) path meant that they could only appeal subsequent decisions by the Trademark Board to the Federal Circuit. *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 414 F. Supp. 3d 822, 824 (W.D.N.C. 2019). This appeal followed.

## II.

This Court "reviews a dismissal for lack of subject matter jurisdiction and questions of statutory interpretation de novo." *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 302 (4th Cir. 2017).

## III.

Under 28 U.S.C. § 1295, "the Federal Circuit shall have exclusive jurisdiction" of appeals from decisions of the Trademark Board. 28 U.S.C. § 1295(a)(4)(B). Accordingly,

the question of whether § 1071(b) applies—thus modifying § 1295's otherwise bright-line rule and permitting review by the district court—implicates our jurisdiction and that of the court below.

In cases involving statutory interpretation, "we begin our analysis with the text of the governing statute[]. Only when statutory text is ambiguous do we consider 'other indicia of congressional intent such as the legislative history.'" *Copley v. United States*, 959 F.3d 118, 123 (4th Cir. 2020) (citation omitted) (quoting *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015)).

We conclude that the statutory text of the Lanham Act, while ambiguous, favors Plaintiffs' argument in favor of jurisdiction. This conclusion is further bolstered by legislative history, our sister circuits' holdings in similar cases, and policy considerations. Accordingly, we hold that the district court erred in dismissing the case for lack of jurisdiction.

## A.

The statutory text of the Lanham Act provides in relevant part that:

[(a)] An applicant for registration of a mark . . . who is dissatisfied with the decision of the . . . [Trademark] Board, may appeal to the . . . Federal Circuit thereby waiving his right to proceed under subsection (b) of this section: *Provided*, That such appeal shall be dismissed if any adverse party to the proceeding . . . , within twenty days after the appellant has filed notice of appeal . . . , files notice with the Director that he elects to have all further proceedings conducted as provided in subsection (b) of this section. Thereupon the appellant shall have thirty days thereafter within which to file a civil action under subsection (b) of this section, in default of which the decision appealed from shall govern the further proceedings in the case.

. . . .

> [(b)] Whenever a person authorized by subsection (a) of this section to appeal to the . . . Federal Circuit . . . is dissatisfied with the decision of the . . . [Trademark] Board, said person may, unless appeal has been taken to . . . the Federal Circuit, have remedy by a civil action if commenced within such time after such decision, not less than sixty days, as the Director appoints or as provided in subsection (a) of this section.

15 U.S.C. § 1071(a)(1), (b)(1).

The parties agree that, by the plain language of the statute, an applicant dissatisfied with the *initial* decision of the Trademark Board may seek review of *that* decision via either avenue, subject to the opposing party's right to elect district court review. In other words, there is no dispute that, in 2014, Plaintiffs properly exercised their right to appeal to the Federal Circuit under § 1071(a).

Additionally, the parties agree that issues decided by the Federal Circuit in its review cannot subsequently be relitigated. Plaintiffs acknowledged in briefing before the district court that the Federal Circuit's holding on certain points of law was binding as the law of the case. And beyond general law-of-the-case principles, this rule may be mandated by the statute itself, which provides that the Federal Circuit's "opinion . . . shall govern the further proceedings in the case."[2] *Id.* § 1071(a)(4); *see Gillette Co. v. "42" Prods. Ltd.*, 435 F.2d 1114, 1117 (9th Cir. 1970) (interpreting § 1071(a)(4) in this way). Put another

---

[2] Plaintiffs suggest that this provision may apply solely to bind the Trademark Board, not other federal courts. *See* Opening Br. at 37; Oral Arg. at 18:29–57; *cf. Hoover Co. v. Coe*, 325 U.S. 79, 83 (1945) (appearing to endorse this interpretation in the patent context). We need not decide this question for purposes of this appeal.

8

way, a party may not take a second bite at the apple by seeking re-review in district court of issues already decided by the Federal Circuit.[3]

Further, the parties agree that the Trademark Board's decisions in 2014 and 2017 were unique "decisions." While Defendant argues that the decisions were nearly identical, it agreed at oral argument that they were, indeed, separate decisions.

But the parties part ways on the question of whether Plaintiffs had the same choice of review options in 2017 as they did in 2014. Essentially, Defendant claims that Plaintiffs' decision to appeal to the Federal Circuit in 2014 binds them to that choice for the remainder of this case. By contrast, Plaintiffs argue that they may make a new election for each new decision by the Trademark Board. While we find the statutory language somewhat ambiguous, we conclude that Plaintiffs have the better interpretation.

Admittedly, some aspects of the plain language appear to favor Defendant's interpretation of the statute. After all, § 1071(a) instructs that when a party elects to appeal to the Federal Circuit, that party "thereby waiv[es] his right to proceed under subsection (b) of this section." 15 U.S.C. § 1071(a)(1). Moreover, § 1071(b) provides that a party

---

[3] The district court concluded that "Plaintiffs took their one bite at the proverbial apple when they opted for a Federal Circuit appeal and are not entitled to take another one in this Court." *Princeton Vanguard*, 414 F. Supp. 3d at 830. Similarly, Defendant argues that "allowing Princeton Vanguard to pursue its appeal in district court would give it multiple bites at the same apple." Response Br. at 26–27. This argument misunderstands the nature of this case. Plaintiffs may not—as they acknowledge—seek reconsideration of the Federal Circuit's original decision, which acts as the law of the case. Nor may they now seek review of the Trademark Board's original decision; the Federal Circuit already reviewed it. They seek only to choose a different venue for review of the *unresolved* aspects of the *new* decision. There is no second bite at the apple.

dissatisfied with a Trademark Board decision "may, unless appeal has been taken to . . . the Federal Circuit, have remedy by a civil action." *Id.* § 1071(b)(1). At first blush, that language suggests that where a party selects Federal Circuit review, it may not then select district court review.[4]

On closer inspection, however, Defendant's interpretation leads to difficulties. While the statute speaks of "waiving [one's] right" to district court proceedings and refers to an "appeal [that] has been taken" to the Federal Circuit, it says nothing about how long a choice of forum remains in effect, or whether it can bind a party across appeals from related, but distinct "decisions."

Common sense, however, suggests that there must be *some* limitation. After all, in most circumstances, waivers apply only to the proceedings in question. Defendant wisely does not argue that the waiver applies for the rest of time, including in another proceeding altogether or regarding a different trademark. We think it plain that we must avoid an interpretation with such farcical results.

Perhaps unsurprisingly, then, both parties suggest that we read some implicit limitation into the literal language of the text. Defendant suggests the waiver is limited to

---

[4] One interesting question is what would happen if a party *first* selected district court review, and later sought Federal Circuit review. The statutory language is silent on this issue. Defendant suggested at oral argument that such a situation could never arise, as the case would not return to the Trademark Board from the district court, and accordingly there would never be a subsequent Trademark Board decision to appeal to the Federal Circuit. Oral Arg. at 28:00–29:55. There is some statutory language to support that view. *See* 15 U.S.C. § 1071(b)(1). *But see In Re Booking.com B.V.*, No. 79122365, 2017 WL 6033941, at *1 (T.T.A.B. Nov. 16, 2017) (on remand from district court). In any event, this question is not before us in this appeal.

"any subsequent decision in the same proceeding," Response Br. at 19, whereas Plaintiffs argue the waiver applies "per decision, [but] not per case," Opening Br. at 17 (internal quotation marks omitted). We think Plaintiffs' reading is more persuasive.

To see why, consider the relevant sentences as a whole. Under Plaintiffs' interpretation, the text of § 1071(a)(1) indicates that a party "dissatisfied with the [Trademark Board's] decision . . . may appeal [that decision] to the . . . Federal Circuit thereby waiving his right to proceed under subsection (b) [for that decision]." By contrast, according to Defendant, a party "dissatisfied with the [Trademark Board's] decision . . . may appeal [that decision] to the . . . Federal Circuit thereby waiving his right to proceed under subsection (b) [for that and all future decisions in the same proceeding]." Plaintiffs' interpretation carries the same meaning forward throughout the sentence; Defendant asks us to switch gears halfway through. We think it plain that the former is preferable. *See Tibbetts Indus., Inc. v. Knowles Elecs., Inc.*, 386 F.2d 209, 212 (7th Cir. 1967) ("No violence is done to [a similar patent-law statute] by reading the word 'decision' to refer to every independent adjudication made by the Board [of Patent Interferences]." (quoting *Tibbetts Indus., Inc. v. Knowles Elecs., Inc.*, 263 F. Supp. 275, 278 (N.D. Ill. 1966))); *cf. IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) (noting that "identical words used in different parts of the same statute are generally presumed to have the same meaning").

This problem is even more apparent in § 1071(b)(1). According to Plaintiffs, a party "dissatisfied with the decision" of the Trademark Board "may, unless appeal [of that decision] has been taken to" the Federal Circuit, pursue a remedy in district court, as long as the action is "commenced within [a certain] time after such decision." But per Defendant

11

and the district court, a party "dissatisfied with the decision" of the Trademark Board "may, unless appeal [of that or any earlier decision in the same proceeding] has [ever] been taken to" the Federal Circuit, pursue a remedy in district court, as long as the action is "commenced within [a certain] time after [this particular] decision." This interpretation asks the reader to switch back and forth between meanings twice in a single sentence.

Defendant's interpretation is complicated even further when one considers the appellee's option to force district court review. Imagine Bob's Burgers loses before the Trademark Board and selects Federal Circuit review, and Shirley's Sandwiches does not object. The Federal Circuit reviews the case and remands. Bob's Burgers loses a second time before the Trademark Board, and again selects Federal Circuit review. This time, Shirley's Sandwiches would like to select district court review instead—as is its right— perhaps because it lost before the Federal Circuit the first time and thinks history is likely to repeat itself, or because some circumstance has changed to alter its calculus. Under the statute, Shirley's Sandwiches selects district court review by filing notice to that effect, at which point "the appellant [Bob's Burgers] shall have thirty days thereafter within which to file a civil action under subsection (b) of this section, in default of which the decision appealed from shall govern the further proceedings in the case." 15 U.S.C. § 1071(a)(1).

But, under the reading of § 1071(b)(1) favored by Defendant and the district court, Bob's Burgers *cannot* "file a civil action under subsection (b)" because "appeal has been taken" to the Federal Circuit. Defendant rejects this interpretation, arguing that the statute "explicitly provides authorization for the original dissatisfied party [Bob's Burgers] to file a civil action in that situation." Response Br. at 23. True, § 1071(a)(1) provides that

12

authorization—but § 1071(b)(1) does not. And § 1071(a)(1) does not provide standalone authorization; rather, it allows the appellant "to file a civil action *under subsection (b)*." 15 U.S.C. § 1071(a)(1) (emphasis added).

Accordingly, for Defendant's reading to work, we have to read *even more* language into § 1071(b)(1). The tortured result: a party "dissatisfied with the decision" of the Trademark Board "may, unless appeal [of that or any earlier decision in the same proceeding] has [ever] been taken to" the Federal Circuit (except that such prior appeal does not act as a bar if the appellee has exercised its right for district court review under § 1071(a)(1)), pursue a remedy in district court, as long as the action is "commenced within [a certain] time after [this particular] decision."

Further, Defendant's argument rests, in part, on interpreting § 1071(b)(1)'s "unless appeal has been taken" language to apply to different decisions across time in the same way that, in its view, § 1071(a)(1)'s waiver language applies across time. *See* Response Br. at 20, 23, 43; Oral Arg. at 38:54–39:21; *see also Princeton Vanguard*, 414 F. Supp. 3d at 827 (district court taking this view). Yet Defendant simultaneously takes the contradictory stance that its interpretation is the better one because it avoids rendering part of the statute superfluous—an argument that rests on interpreting the relevant waiver language in the two subsections differently.

Specifically, in Defendant's view, if Congress merely aimed to make clear that the options were mutually exclusive for each Trademark Board decision, "then the language in subsection (a) providing that a party that appeals to the Federal Circuit 'thereby waiv[es] his right to proceed under subsection (b)' would be mere surplusage." Response Br. at 18

13

(alteration in original). Defendant's argument appears to be that the "waiver" language in subsection (a) is broader than the "appeal has been taken" language in subsection (b), with the latter being sufficient to establish mutual exclusivity of the options for *each* decision, and the former being required to establish that the choice of Federal Circuit review waives district court review throughout the proceedings. *See* Oral Arg. at 23:57–27:15.

Putting aside the contradiction in Defendant's interpretations, there is some appeal to this argument. After all, the fact that Congress used different terminology in the two subsections could well be significant.

But at least as plausible is the argument that the different language was simply necessitated by the structure of the statute: the choice of (a) *waives* the choice of (b); (b) may be chosen *unless it has been waived by* the choice of (a). And, to the extent "that this interpretation does not eliminate all superfluity between" the two sections, "there is a ready explanation for the redundancy that remains": in a statute providing two different options for review, it makes sense that Congress reinforced the same idea by repeating it in each subsection. *Lockhart v. United States*, 136 S. Ct. 958, 966 (2016); *see also United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 137 (2007) ("[O]ur hesitancy to construe statutes to render language superfluous does not require us to avoid surplusage at all costs."); *N.H. Lottery Comm'n v. Rosen*, 986 F.3d. 38, 60 (1st Cir. 2021) ("[W]hile avoiding surplusage is definitely preferred, avoiding surplusage at all costs is not, particularly where, as is the case here, syntax offers a good reason for why the qualifier was repeated[.]" (internal quotation marks and alterations omitted)); *United States v. Enrique-Ascencio*, 857 F.3d 668, 675 (5th Cir. 2017) ("[T]he surplusage canon 'cannot always be dispositive because (as with most

14

canons) the underlying proposition is not *invariably* true. Sometimes drafters *do* repeat themselves . . . .'" (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176–77 (1st ed. 2012))).

Further, the district court relied too heavily on the statute's use of the definite article to support its interpretation. The court concluded that, "by using the words 'the decision' instead of 'a decision,' the statute suggests that there is only one, rather than a possible series of decisions, to which the statutory choice between a Federal Circuit and a District Court appeal applies." *Princeton Vanguard*, 414 F. Supp. 3d at 827.

That plainly cannot be right. If "the decision" necessarily refers *only* to the Trademark Board's first decision, there is no right to review of any subsequent decisions. *See* 15 U.S.C. § 1071(a)(1) (a party "dissatisfied with *the decision*" of the Trademark Board may appeal to the Federal Circuit (emphasis added)); *id.* § 1071(b)(1) (a party "dissatisfied with *the decision*" of the Trademark Board may "have remedy by a civil action" (emphasis added)). Yet the statutory text—not to mention common sense—makes clear that parties may seek review of multiple Trademark Board decisions. *See id.* § 1071(b)(1) ("*Whenever* a[n authorized] person . . . is dissatisfied with *the decision* of the . . . [Trademark] Board, said person may, unless appeal has been taken to . . . the Federal Circuit, have remedy by a civil action . . . ." (emphases added)); *Hoover Co. v. Coe*, 325 U.S. 79, 84 (1945) (noting that, in the parallel patent provision, the use of the word "[w]henever" "states a case where the examiner's decision may be only one of a series of rulings in the Patent Office prior to issue of a patent"); *see also* 15 U.S.C. § 1071(a)(2) ("[W]hen an appeal is taken to the . . . Federal Circuit, the appellant shall file . . . a written notice of appeal . . . within such time

15

after the date of *the decision from which the appeal is taken* as the Director prescribes, but in no case less than 60 days after that date." (emphasis added)). We cannot ignore these other statutory provisions in seeking to understand the relevant text. *See Sijapati v. Boente*, 848 F.3d 210, 215 (4th Cir. 2017) ("[I]n construing the statute's plain language, we must consider the context in which the statutory words are used because we do not construe statutory phrases in isolation; we read statutes as a whole." (internal quotation marks and alterations omitted)).

To be clear, we do not understand the district court to have been asserting that there was *no* review right of subsequent Trademark Board decisions in *any* forum. We simply note that that would be the result of applying literally the district court's understanding of Congress's use of the definite article in this statute.

The district court also relied on § 1071(a)(4). As noted, that subsection provides that, where the option of Federal Circuit review is selected, the Federal Circuit must review the case and, "[u]pon its determination[,] the court shall issue its mandate and opinion . . . , which shall . . . govern the further proceedings in the case." 15 U.S.C. § 1071(a)(4). The district court found that this provision requires that if Federal Circuit review has once occurred, a district court may not review the case, concluding that this was "[t]he only interpretation of the statute that gives full effect to the mandated primacy of a Federal Circuit opinion under § 1071(a)(4), and avoids the conflict of one Court of Appeals being 'bound' by the decision of another Court of Appeals in an appeal from one of its District Courts." *Princeton Vanguard*, 414 F. Supp. 3d at 827–28. We disagree.

16

First, the plain language of § 1071(a)(4) may actually cut the other way: there would be no reason to specify that the Federal Circuit's decision would "govern the further proceedings in the case" if all future appeals would, of necessity, be returning to the Federal Circuit.[5]

Second, the reference to "further proceedings in the case" makes clear that Congress knows how to refer to the *whole* case when it wants to—reinforcing that "the decision" refers to each individual Trademark Board decision and that the waiver applies only to any given decision, not to the full proceedings. *See Tibbetts*, 386 F.2d at 212 ("The statute speaks solely in terms of 'decisions,' not interferences or proceedings." (quoting *Tibbetts*, 263 F. Supp. at 278)).

And third, the district court's interpretation—that § 1071(a)(4) means that the Federal Circuit, having once reviewed the case, must hear all future appeals in the proceedings—would eliminate the right of the *winner* before the Trademark Board to elect proceedings before the district court if the initial review had been before the Federal Circuit. To return to our earlier example, if Shirley's Sandwiches won against Bob's Burgers before the Trademark Board and Bob's Burgers appealed to the Federal Circuit, then Shirley's Sandwiches' choice not to force district court review of that first decision would forever bind it to Federal Circuit review of future decisions—even if it continued to win before the Trademark Board. Yet the waiver in § 1071(a)(1)—the same subsection as

---

[5] That is, unless this provision is directed only at the Trademark Board. *See supra* note 2.

the "further proceedings" language of § 1071(a)(4)—refers only to a waiver made by *the aggrieved party*.[6] *See* 15 U.S.C. § 1071(a)(1) (party dissatisfied with Trademark Board's decision may appeal to Federal Circuit, "thereby waiving *his right* to proceed under subsection (b)" (emphasis added)). And, other than deadlines, § 1071(a)(1) does not contain any limiting language on the appellee's right to force district court review.

We think the better interpretation of § 1071(a)(4), to the extent it is relevant at all,[7] is that it incorporates a strict version of the "law of the case" rule in the event that the Federal Circuit renders a decision and, later, the case comes before a different circuit court.[8] Again, the parties do not dispute that the Federal Circuit's earlier decision in this case is binding as to the issues it decided. And, of course, it is not unheard of for one appellate court to need to apply another's prior decision as the law of the case. *E.g.*, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (noting, in a case involving decisions by both the Seventh and Federal Circuits, that the law of the case

---

[6] Admittedly, the waiver language in § 1071(b)(1) is not so limited. *See* § 1071(b)(1) (district court review permitted "unless appeal has been taken to" the Federal Circuit). But the right of the appellee to force district court review is given in § 1071(a)(1), so the appropriate waiver language to consider is that in that same subsection.

[7] *See supra* note 2.

[8] By itself, the law of the case doctrine is "'discretionary' rather than 'mandatory,' and admits of a variety of exceptions." *Owens v. Stirling*, 967 F.3d 396, 425 (4th Cir. 2020) (quoting *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 397 n.1 (4th Cir. 1995)). By contrast, the use of the word "shall" in § 1071(a)(4) indicates that its limitation is mandatory.

18

"doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions," and collecting cases).

We conclude that the statutory language, while not free from ambiguity, supports Plaintiffs' interpretation. And other sources of authority largely support that reading. We turn to those other sources next, beginning with legislative history.

## B.

The parties do not cite, and research has not revealed, relevant legislative history for § 1071 itself. However, § 1071 originally "incorporated by reference the procedures for appellate review of patent application denials," and Congress later "eliminated the cross-reference" to the patent statute "and, in its place, added . . . language substantially similar to the language pertaining to the procedures for review of patent denials." *Shammas v. Focarino*, 784 F.3d 219, 226–27 (4th Cir. 2015) (internal quotation marks and alterations omitted); *see B & B Hardware*, 575 U.S. at 144 (describing the patent-law scheme as "analogous"). For that reason, this Court has looked to the legislative history of the patent provisions, 35 U.S.C. §§ 141 and 145, for insight into Congress's intent in enacting § 1071. *E.g.*, *Shammas*, 784 F.3d at 226–27; *cf. Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014) (in a case involving § 1071(b), relying on Supreme Court precedent interpreting the patent statute).

In *Hoover Co. v. Coe*, the Supreme Court explained the origin of those parallel patent provisions. For many years, a party who lost in one of the Federal Circuit's predecessor courts could then seek a remedy *for the same decision* in district court. 325 U.S. at 84–88. But in the hearings for a 1927 act of Congress that created the modern

19

structure, *see* Act of Mar. 2, 1927, ch. 273, 44 Stat. 1335, 1336, "it was proposed that Congress eliminate either the appeal or the bill in equity," with "some interested parties" suggesting dropping one or the other remedy. *Hoover Co.*, 325 U.S. at 86–87. Ultimately, "Congress decided not to do away with either, but to allow an applicant to have the decision of the Patent Office reviewed either by the court of appeals or by filing a bill in equity, but not both." *Id.* at 87 (internal quotation marks omitted).

This legislative history does not directly speak to the question at hand: whether this choice—review by the Federal Circuit or a district court, "but not both"—can only be made once, or whether the option becomes newly available with each Trademark Board decision. However, it provides context for why the statute includes the waiver language at all. After all, even in the face of the elements of the plain language that favor Plaintiffs' interpretation, a reasonable reader might wonder why Congress bothered with waiver language if the choice could be made anew after each decision. Why did Congress not simply use "either / or" language and call it a day?

This legislative history provides the answer. Given the historical backdrop—in which the options were *not* mutually exclusive—Congress wanted to make abundantly clear that the choice of one path of review of a decision of the Trademark Board precluded the other.

For that reason, while the legislative history does not directly support either party's interpretation, we conclude that it indirectly lends support to Plaintiffs' reading.

C.

We are further persuaded to adopt Plaintiffs' reading because it is in accord with

that of our only two sister circuits to have considered the issue, the Seventh and Ninth.

In *Tibbetts Industries v. Knowles Electronics*, the Seventh Circuit confronted a

similar situation in the patent context. Plaintiff George Tibbetts and defendant Hugh

Knowles each filed for patents related to the same idea. *Tibbetts*, 386 F.2d at 210. The

Board of Patent Interferences ("Patent Board")[9] awarded Tibbetts priority of invention, and

Knowles appealed to the Court of Customs and Patent Appeals (the Federal Circuit's

predecessor). *Id.* Tibbetts, too, "filed a protective appeal seeking affirmance and preserving

alternate grounds for affirmance." *Id.*

---

[9] The Board of Patent Appeals and Interferences was the predecessor to the modern Patent Trial and Appeals Board. *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1058 (Fed. Cir. 2020). The Patent Board plays a role in patent proceedings similar to that played by the Trademark Board in trademark proceedings. Patent applications are first reviewed by patent examiners, just as trademark registration applications are initially reviewed by trademark examiners. *See Kappos v. Hyatt*, 566 U.S. 431, 434 (2012) (patents); *B & B Hardware*, 575 U.S. at 143 (trademarks). Denied applications may be appealed to the Patent Board or Trademark Board, respectively. *See Kappos*, 566 U.S. at 434 (Patent Board); 3 McCarthy, *supra*, § 21:1 (Trademark Board). Similarly, disgruntled third parties may dispute a granted application before either the Patent Board or Trademark Board. *See Thryv, Inc v. Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1370 (2020) ("Inter partes review is an administrative process in which a patent challenger may ask the U.S. Patent and Trademark Office . . . to reconsider the validity of earlier granted patent claims."); *B & B Hardware*, 575 U.S. at 143 ("If a trademark examiner believes that registration is warranted, the mark is published in the Official Gazette of the [Patent and Trademark Office]. At that point, any person who believes that he would be damaged by the registration may file an opposition." (citations, internal quotation marks, and alterations omitted)). A party dissatisfied with the result before either the Patent Board or Trademark Board has the same options for review at issue in this appeal: Federal Circuit review or district court review. *See Kappos*, 566 U.S. at 434 (discussing review options for Patent Board decision).

21

The Court of Customs and Patent Appeals reversed the Patent Board on one issue and remanded on another. This time, on remand, the Patent Board awarded priority to Knowles. *Id.*

Tibbetts then sought review of the Patent Board's second decision in district court. Knowles "filed an emergency motion" in the Court of Customs and Patent Appeals "asking that court to confirm its sole jurisdiction in th[e] matter," which that court "summarily denied." *Id.* at 211. Knowles then moved the district court to dismiss the case for lack of jurisdiction, arguing that "Tibbetts waived his right to institute the present action by filing a notice of appeal [to the Court of Customs and Patent Appeals] from the first decision." *Id.* The district court, too, denied the motion but certified the issue for appeal under 28 U.S.C. § 1292(b).

The Seventh Circuit concluded that the issue *resolved* by the Court of Customs and Patent Appeals had been "finally determined," and therefore that issue was "no longer before" the Seventh Circuit. *Id.* But as to the *remanded* issue, the question was "whether, when the [Patent] Board makes two separate decisions at different times involving different issues, a waiver of a [district court] suit as to the first [Patent] Board decision constitutes a waiver as to the second decision as well." *Id.* at 212 (quoting *Tibbetts*, 263 F. Supp. at 278). The Seventh Circuit held it did not.

Reviewing the statutory text in the patent context—which, as noted, is quite similar to § 1071—the Seventh Circuit concluded that "[t]he statutory language does not preclude and slightly favors Tibbetts' right to sue here" because "[n]o violence is done to [the statute] by reading the word 'decision' to refer to every independent adjudication made by

22

the [Patent] Board," and "[i]t can hardly be debated that the [Patent] Board made two 'decisions' in this case." *Id.* (quoting *Tibbetts*, 263 F. Supp. at 278).

Moreover, the Seventh Circuit pointed out that "[t]he legislative history favors Tibbetts' right to sue here" because "[t]he purpose of requiring an election of remedies was to foreclose redundant appeals"—appeals of the *same* decision in different forums—not to prevent appeals of *subsequent* decisions in different forums. *Id.* (quoting *Tibbetts*, 263 F. Supp. at 278 (citing *Hoover Co.*, 325 U.S. at 86–87)). In other words, "[p]ermitting Tibbetts to sue here on the [Patent] Board's *second* decision does not proliferate appeals since there is certainly a right to one more appeal in this case in *some* forum." *Id.* (quoting *Tibbetts*, 263 F. Supp. at 278).

The Seventh Circuit also held that policy considerations favored Tibbetts' interpretation of the statute. Because "Tibbetts' need for this forum became clear only later, after the [Patent] Board's second decision[,] such a need could not have been discerned, except in pure prophecy, prior to that time. It is unreasonable to attribute to Congress the intention to force a litigant to make his choice not only on the basis of present facts, but on uncertain future ones as well." *Id.* (quoting *Tibbetts*, 263 F. Supp. at 278). Accordingly, the Seventh Circuit concluded, "[t]he statute cannot be read to give a waiver made in one set of circumstances on one decision, binding effect in new, radically different circumstances on another decision."[10] *Id.* (quoting *Tibbetts*, 263 F. Supp. at 278).

---

[10] Indeed, as in our case, the Seventh Circuit noted that "it appears that Tibbetts may have need to resort to evidence now relevant in a *de novo* hearing in the district court and could not make such showing on appeal on a closed record in the [Court of Customs and

23

Defendant argues that *Tibbetts* is inapposite because the party seeking district court review (Tibbetts) was the Patent Board *winner* when the original election of Federal Circuit review was made, whereas here, Plaintiffs have lost both times before the Trademark Board. But nothing in the *Tibbetts* analysis rested on that point. The Seventh Circuit mentioned those facts as an explanation for why Tibbetts did not initially see a need for pursuing district court review, but the court's actual legal analysis rested on the statutory language, legislative history, and policy considerations.

Defendant further argues that which party won before the Trademark Board at each step matters because under § 1071(a), a party selecting Federal Circuit review waives "his right" to proceed before the district court. Accordingly, "[b]ecause the waiver explicitly applies to the appellant and not to the appellee," the Seventh Circuit's decision in *Tibbetts* "is entirely consistent with the text of Section 1071." Response Br. at 41–42. That is, in Defendant's view, only Knowles waived district court review when Knowles appealed to the Court of Customs and Patent Appeals.

This argument is unpersuasive for two related reasons. First, as noted, Tibbetts *also* appealed to the Court of Customs and Patent Appeals, so, under Defendant's reading of the statute, the "waiver" language in the § 1071(a) parallel provision should have applied to him as well. *See Tibbetts*, 386 F.2d at 211 (citing 28 U.S.C. § 1542 (1964)). And second, under the patent provision parallel to § 1071(b), a party dissatisfied with the decision of

---

Patent Appeals]. What may be readily apparent now was not apparent prior to the second decision of the [Patent] Board." *Tibbetts*, 386 F.2d at 213.

24

the Patent Board could file suit in district court "unless *he* has appealed to the United States Court of Customs and Patent Appeals." *Id.* (emphasis added) (quoting 35 U.S.C. § 146 (1964)). Again, Tibbetts *had* appealed to that court. *Id.* at 210. Nevertheless, the Seventh Circuit concluded that the language created a waiver only for each individual decision.

A few years later, in *Gillette Co. v. "42" Products Ltd.*, the Ninth Circuit confronted a very similar situation in the trademark context.[11] *Gillette*, 435 F.2d 1114. A company called "42" Products sought to register a mark. Gillette opposed registration. The Trademark Board dismissed Gillette's opposition, and Gillette appealed to the Court of Customs and Patent Appeals. That court concluded that the Trademark Board had erred and remanded. This time, the Trademark Board found in favor of Gillette. "42" then filed an action in district court. *Id.* at 1115. Gillette moved to dismiss for lack of jurisdiction. As in *Tibbetts*, the district court denied the motion, but certified the issue for appeal under § 1292(b). *Id.* at 1114–15.

Before the Ninth Circuit, "Gillette argue[d] that because '42' did not elect a civil action when Gillette was the dissatisfied party taking an appeal to the [Court of Customs and Patent Appeals], appellee '42' waived its right to bring a civil action in all further proceedings in this trademark registration dispute." *Id.* at 1115. "42" responded that "its earlier election was binding only as to the appeal from the first [Trademark Board] decision, and that it did not waive its right to make an election by appealing, when it was first a dissatisfied party, from the second [Trademark Board] decision." *Id.* at 1116.

---

[11] The language of the relevant provisions of § 1071 was substantively the same at the time of *Gillette* as it is now.

The Ninth Circuit concluded that "42" had the better interpretation of the "bare statutory language," although it was "not conclusive." *Id.* Moreover, "42" had *Tibbetts* on its side. And the court noted that while Gillette cited various cases for the proposition "that once an election is made, the alternative remedy is waived," none of those cases went "so far as to stand for the principle that the dissatisfied party cannot elect the other tribunal in an appeal from a second and later decision." *Id.* Rather, "[t]he cited cases only teach that the two remedies are intended to be alternative and not successive. Once the dissatisfied party has chosen a path of appeal *from a particular decision*, he cannot seek to pursue the other." *Id.* (emphasis added).

The Ninth Circuit was careful to note that "[t]his interpretation fully protects the integrity of the earlier decision of the [Court of Customs and Patent Appeals]. The district court must and will recognize that the [Court of Customs and Patent Appeals'] opinion foreclosed all points which it decided." *Id.* at 1117. And the court further recognized that this interpretation would satisfy the statutory requirement that the Federal Circuit's decision "shall govern the further proceedings in the case." 15 U.S.C. § 1071(a)(4); *see Gillette*, 435 F.2d at 1117.

Defendant argues that *Gillette* is inapposite because, like in *Tibbetts*, the party seeking district court review was the winner before the Trademark Board when the original election of Federal Circuit review was made. The district court below agreed. *Princeton Vanguard*, 414 F. Supp. 3d at 829. But again, we do not read the *Gillette* analysis to have rested on that point. As the Seventh Circuit had in *Tibbetts*, the Ninth Circuit mentioned those facts as an explanation for why "42" did not initially see a need for pursuing district

26

court review. But its analysis hinged instead on the statutory language, *Tibbetts*, and legislative history, all of which supported jurisdiction. *See Gillette*, 435 F.2d at 1116–18.

Against this significant authority, Defendant has produced only dicta from a single, out-of-circuit district court decision. In *Beaudet v. Quigg*, plaintiff Leo Beaudet applied for a patent. *Beaudet v. Quigg*, No. Civ. A. 86-2876, 1987 WL 16329, at *1 (D.D.C. Aug. 14, 1987). The patent examiner rejected the application. Beaudet appealed to the Patent Board, which upheld the examiner's decision. Beaudet then appealed to the Federal Circuit, which remanded to the Patent Board "for clarification." *Id.* The Patent Board issued the clarifying opinion, at which point Beaudet sought review in district court.

The Commissioner of Patents and Trademarks moved to dismiss for lack of jurisdiction. The district court agreed, concluding that "the [Patent] Board's clarification opinion" was not "a second, distinct 'decision'" because the Federal Circuit "did not direct the [Patent] Board to conduct any further proceedings or provide any additional support for its decision," and instead "merely asked the [Patent] Board to clarify ambiguous language so that the basis for its decision could be fully understood." *Id.* Accordingly, the Patent Board had not issued a new decision, and the Federal Circuit had not surrendered appellate jurisdiction.[12]

---

[12] The district court below concluded that *Beaudet* was directly on point because here, "the Federal Circuit plainly envisioned that it would be reviewing the case again after remand." *Princeton Vanguard*, 414 F. Supp. 3d. at 825. Thus, "[w]hile *Beaudet* might arguably be distinguished . . . because [in *Beaudet*] the Federal Circuit only asked the [Patent] Board for clarification (rather than[, as here,] ordering a reconsideration [by the Trademark Board] under a different legal standard), the Federal Circuit in this case as in *Beaudet* expressed its intention to reach the full merits of the appeal after remand." *Id.*

27

In footnoted dicta, the *Beaudet* court went on to muse that, "[i]ndeed, the statutory language involved casts doubt on whether, under any circumstances, there can be multiple 'decisions' on an applicant's appeal of the rejection of a particular application." *Id.* at *1 n.2. The court noted that the statute referred to "the" decision, not "a" decision, and drew from this the puzzling inference that "the [Patent] Board's initial affirmance of an examiner's decision . . . , as well as any subsequent reconsideration, should be considered a single decision of the [Patent] Board." *Id.* We find that counterintuitive reading of the plain language of the statute to be quite a stretch from the mere use of the definite article.

Moreover, on that shaky basis alone (and without acknowledging *Tibbetts* or *Gillette*), the *Beaudet* court deduced a general "rule that when the Federal Circuit reverses a decision of the [Patent] Board and remands for further proceedings, any subsequent appeals must be directed to the court which has already developed the 'law of the case.'" *Id.*

---

at 828 n.10. *But see Gillette*, 435 F.2d at 1118, 1120 (majority finding jurisdiction to be appropriate in the district court over dissent's objection that the Court of Customs and Patent Appeals had "*impliedly*" retained jurisdiction (emphasis added)).

We disagree. Even if the *Beaudet* court was correct that the Federal Circuit could retain appellate jurisdiction, thereby rendering the first and second decisions one single decision—a question we need not reach—there is no doubt that the Federal Circuit did *not* retain jurisdiction here. True, its opinion *might* be read to evince a *vague assumption* that the case would return to it in the future. *E.g.*, *Princeton Vanguard*, 786 F.3d at 970 ("Our review under [the substantial evidence] standard can only take place when the agency explains its decisions with sufficient precision, including the underlying factfindings and the agency's rationale." (internal quotation marks omitted)). But that is not the same as deliberately retaining appellate jurisdiction. The second decision by the Trademark Board here is plainly a separate decision, as Defendant concedes. *See* Oral Arg. at 36:25–28.

We do not find this conclusion compelling when its questionable underpinnings are stacked up against the plain language, legislative history, and case law favoring Plaintiffs' position. Rather, we are persuaded to join our sister circuits in holding that each separate "decision" by the Trademark Board affords the parties a new opportunity to choose between the review options presented in § 1071.

### D.

Finally, we turn to policy considerations.[13] We agree with our sister circuits that such considerations favor Plaintiffs' view of the statute.

As the Seventh Circuit noted, in cases such as this one, a party's "need for [district court review] [may] bec[o]me clear only later, after the [reviewing] Board's second decision." *Tibbetts*, 386 F.2d at 212. Indeed, Plaintiffs provide a ready explanation for why Federal Circuit review made sense initially and district court review made sense following the Trademark Board's second decision: they believed the Trademark Board's first decision erroneously applied the law, and they believed (correctly) that the Federal Circuit would swiftly correct that error; but, after the Trademark Board's second decision years later, they believed further factfinding would support their case. Their need for such additional factfinding after a second Trademark Board decision years down the road "could not have been discerned, except in pure prophecy," at the time of the first Trademark Board decision. *Id.* And of course, it is up to parties to choose their own litigation strategies.

---

[13] We note that secondary sources are of little help on this question, as they appear merely to describe the current state of the law. *See* 3 McCarthy, *supra*, § 21:20 (citing *Gillette*, 435 F.2d 1114; *Princeton Vanguard*, 414 F. Supp. 3d 822); 15B Federal Procedural Forms § 64:421 (2020) (citing *Gillette*, 435 F.2d 1114).

29

Plaintiffs' interpretation furthers this principle by allowing the parties to reassess the review options after each Trademark Board decision.

For its part, the district court's decision appears to have rested in part on concerns about judicial economy. We do not find this view persuasive.

First, the district court noted that the Federal Circuit has "extensive expertise" in the area of trademark law. *Princeton Vanguard*, 414 F. Supp. 3d at 829; *see also id.* at 830 (noting that the Federal Circuit is "ideally fitted by its expertise and experience for a complete decision in this matter" (quoting *Gillette*, 435 F.2d at 1120 (Carter, J., dissenting))). That is certainly true. Yet Congress, in its policy judgment, has unambiguously allowed for district court review in at least *some* instances. So the Federal Circuit's expertise, while undeniable, cannot tip the scales in our analysis.

Second, the district court concluded that "[t]he Federal Circuit, rather than this Court, is far better suited . . . to determine if the [Trademark Board] has faithfully followed its earlier ruling." *Id.* at 829. But, as noted, federal courts are perfectly capable of applying the law of the case doctrine. Of course, federal appellate judges are occasionally brought into cases that are already underway and must apply the earlier decisions within that case of panels on which they did not sit. Sometimes they must even apply decisions within the same case from other circuits. *See Christianson*, 486 U.S. at 816 (collecting cases). Indeed, it is hard to see how this is any different from applying Supreme Court or circuit precedent to a new set of circumstances, which, of course, all federal courts do routinely.

Finally, the district court found that "[a]llowing Plaintiffs—having already voluntarily chosen to proceed in the Federal Circuit—to appeal *de novo* to this Court . . .

30

would be wasteful in terms of judicial economy." *Princeton Vanguard*, 414 F. Supp. 3d at 830. But judicial economy actually favors Plaintiffs' view. After all, as Plaintiffs note, if an appellant can only ever obtain the benefits of district court review by choosing it initially, their counsel may feel obligated to pursue that route most of the time so as not to foreclose the possibility of being able to further develop the record in light of the precarity of future events—even in the face of the drawbacks of that form of review.

An interpretation of the statute that encourages parties to choose district court review of *all* Trademark Board decisions would counteract congressional intent. As this Court has noted, "§ 1071(b)(3) plainly incentivizes trademark applicants to appeal routine trademark denials to the Federal Circuit." *Shammas*, 784 F.3d at 226. And such an interpretation would also detract from judicial efficiency, with more appellants seeking the more drawn-out proceedings in district court rather than a quicker review by the Federal Circuit.[14]

---

[14] This case provides a good illustration. Defendant argues that Plaintiffs' "challenges across multiple tribunals over nearly a decade have come at great expense to the parties and the courts" and that "efficiency and judicial economy" favor continuing Federal Circuit review. Response Br. at 32. Certainly, had Plaintiffs elected Federal Circuit review of both the 2014 and 2017 Trademark Board decisions, this case may have already been resolved. But that is not the proper counterfactual. Rather, had Plaintiffs thought in 2014 that their election of Federal Circuit review was *final*, they likely would have chosen district court review instead in order to maintain their ability to further develop the record, which had closed before the Trademark Board two years earlier. Initial review of the 2014 decision by the district court would almost certainly have taken longer than the review by the Federal Circuit did—and would have been subject to appeal to this Court, further prolonging the proceedings. And then, after those initial questions related to the 2014 decision were resolved, there would have been further litigation. In other words, we think it highly likely that an initial choice of district court review would have lengthened these proceedings even more.

31

IV.

For the above reasons, we conclude that the waiver language in § 1071 relates only to the choice of review options for the decision appealed from. In other words, a party seeking review of a subsequent Trademark Board decision may seek review in either the Federal Circuit or the district court, even if the Trademark Board's initial decision was reviewed by the Federal Circuit. Therefore, the district court erred in dismissing this case for lack of subject matter jurisdiction. We reverse the dismissal and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*